# EXHIBIT E

# In re Garlock Sealing Technologies, LLC, et al.
# Bar Date Notice Plan

This bar date notice plan ("Notice Plan") is submitted in connection with Debtors' Motion for (A) Establishment of Asbestos Claims Bar Date, (B) Approval of Asbestos Proof of Claim Form, (C) Approval of Form and Manner of Notice, (D) Estimation of Asbestos Claims, and (E) Approval of Initial Case Management Schedule (the "Motion"). The bar date will apply to all holders of Asbestos Claims (as that term is defined in Exhibit B to the Motion) based on an asbestos-related injury manifested as of January 15, 2011 (the "Bar Date"). The Bar Date will not apply to holders of Asbestos Claims based on an asbestos-related injury that has not manifested as of the Bar Date. These claimants with post-Bar Date manifestation will not have their claims disallowed if they fail to file a Proof of Claim by the Bar Date, but will instead have the opportunity to assert claims against the post-confirmation Trust.

This Notice Plan is devised to provide constitutionally adequate notice of the Bar Date to all Asbestos Claimants subject thereto. It employs a variety of media calculated to reach potential holders of Asbestos Claims and apprise them of the Bar Date.

Known claimants (i.e. persons who sued Garlock before June 5, 2010 (the "Petition Date")) will receive direct notice of the Bar Date through their counsel of record.[1]

Garlock will notify unknown claimants (i.e., persons who manifested injury before the Petition Date but had not yet sued Garlock, and persons who manifested injury between the Petition Date and the Bar Date) through numerous means:

- Notice to the law firms that are actively recruiting the kinds of claims that Garlock faced in the years leading up to its petition;

- Notice to the unions likely to contain individuals most likely to have been exposed to asbestos during the course of their employment;

- Notice to public health organizations likely to serve persons developing conditions that may be linked to asbestos exposure;

- Posts on social media forums used by asbestos claimants and attorneys;

- Press releases to general interest publications and publications targeted to asbestos attorneys;

- Paid advertising on search engines (Google, Yahoo) that will display when persons search for terms related to this bankruptcy, such as "mesothelioma," "asbestos," and "Garlock";

---

[1] This Notice Plan will provide notice to persons holding claims against any of the three Debtors. The Plan sometimes refers to all the Debtors as "Garlock" for convenience.

- Publication notice in newspapers and national magazines, to reach any persons not reached through the law firms, unions, public health organizations, press releases, social media, and search engines;

- A toll-free number where Asbestos Claimants may request a notice of bar date package; and

- A website containing the notice and related information.

The methods chosen reflect:

- Garlock's asbestos-related business and products;

- The demographics of potential Asbestos Claimants;

- The nature of asbestos litigation and asbestos claim recruiting methods today;

- Third-party organizations such as trade and professional associations that may include individuals with asbestos-related injuries; and

- Media through which potential Asbestos Claimants and potential attorneys for Asbestos Claimants typically receive information.

Garlock developed the paid advertising and publication notice components of this Notice Plan in consultation with Paul Verbinnen and Renee Soto of Sard Verbinnen, one of the nation's preeminent public relations firms, which routinely offers services in the area of restructurings and bankruptcies.

## A. Relevant Background Information

As described more fully in the Information Brief of Garlock Sealing Technologies LLC ("Information Br."), Docket No. 24, Garlock used to manufacture certain asbestos-containing products, primarily encapsulated non-friable asbestos-containing gaskets and packing used in a wide variety of industrial applications. Information Br. 10-13. All of Garlock's products, both those containing asbestos and those containing no asbestos, have been sold under the "Garlock" name. Principal marks which have been used in connection with asbestos-containing products (as well as with products that do not contain asbestos) have been "Belmont," "Guardian," "Chevron," "Lattice Braid," "Palmyra," "Synthepak," and "Paperpak."

Garlock acquired five subsidiary companies that made and/or sold encapsulated asbestos gasket and sealing products substantially equivalent to similar such products made and/or sold by Garlock. These companies were the Belmont Packing and Rubber company, Crandall Packing Company, Dealers Steam Packing Company, US Gasket Co., and The Anchor Packing Company. Ultimately each of these subsidiaries except Anchor (now a debtor in these cases) was merged into Garlock. Garrison Litigation Management, Ltd. managed the asbestos liabilities of Garlock and Anchor, and did not manufacture or distribute asbestos-containing products. A listing of Garlock and Anchor asbestos-containing products (though not necessarily all such products) is contained in the Notice of Asbestos Claims Bar Date attached as Exhibit B to the Motion.

The Garlock and Anchor products were distributed in all fifty states, with limited distribution in the Virgin Islands, Guam, and Puerto Rico. Because the vast majority of the sales were made through distributors, Garlock generally has no readily accessible records regarding where the products ended up or were used, and no way to identify which individuals might assert a claim against Garlock.

The first asbestos lawsuits were brought in the 1970s. Information Br. 36. Garlock has received claims for the past 35 years, from individuals claiming to suffer from all the conditions allegedly connected to asbestos, including mesothelioma, lung cancer, other cancers, and asbestosis. Information Br. 39 *et seq.* These claimants allege bodily injury caused by exposure to the asbestos encapsulated in the Garlock products. Historically, nearly all the claims against Garlock have been based on alleged exposure to encapsulated non-friable asbestos-containing gaskets or packing.

## 1. Demographics of Garlock claimants

Historically, asbestos plaintiffs have consisted principally of men alleging occupational exposure to asbestos between the 1930s and the mid-1970s. The claims arise from this period for two reasons. First, the era of heavy exposure to asbestos occurred before the OSHA, EPA, and Consumer Products Safety Commission regulations took effect in the 1970s. Information Br. 19. Second, asbestos-related conditions have long latency periods. The mean latency period for asbestos-related conditions is between 30 and 40 years until manifestation after first exposure. Information Br. 18-19. As a result, persons developing asbestos-caused conditions today likely experienced exposure many years ago, and thus tend to be older than 65 today.

The vast majority of plaintiffs against Garlock have been men older than 50.  Most have been older than 65.  There have, however, been a small number of plaintiffs who developed conditions at relatively younger ages.  Younger claimants could also conceivably exist as a result of a loss of consortium or other claim based on the condition of an older spouse.  No significant number of Garlock claimants have been younger than 30.

Garlock has no global data on the age of its claimants, but the records kept by its local counsel in Austin, Texas confirm these demographics.  That office handled approximately 17,000 cases since 2000, and has age data for approximately 10,000 claimants.  The vast majority of all claimants were older than 65 when they prosecuted claims against Garlock, as were the vast majority of known mesothelioma claimants where age data exists.

| Texas claimants with ages | Under 30 | 30-50 | 51-65 | 66+ |
|---|---|---|---|---|
| 10,206 | 0 | 51 | 2,268 | 7,887 |
| 100% | 0% | 0.5% | 22.2% | 77.3% |

| Known mesothelioma claimants with ages | Under 30 | 30-50 | 51-65 | 66+ |
|---|---|---|---|---|
| 1,084 | 0 | 29 | 176 | 879 |
| 100% | 0% | 2.7% | 16.2% | 81.1% |

## 2. Conditions of Garlock claimants

Over the past 35 years, Garlock has received lawsuits alleging every kind of asbestos-related injury.  During the last five years, however, the mix of conditions alleged by plaintiffs has changed dramatically.  For many years, Garlock received thousands upon thousands of non-malignant claims each year.  Information Br. 39-41.  But beginning in 2005, the number of claimants alleging a non-malignant condition substantially decreased as a result of tort reform in key states like Texas and Mississippi and the discovery of widespread abuse and irregularity in the diagnoses of recruited non-malignant plaintiffs.

By 2006, Garlock was sued only a few thousand times each year by non-malignant claimants, down from the peak of over 45,000 non-malignant claims filed in 2002.  Information Br. 44-46.  This trend was reflected in Garlock's litigation expenditures.  In  2003, for example, approximately 48% of Garlock's annual aggregate indemnity payments were devoted to resolving non-malignant claims, and 38% mesothelioma claims.  In 2010, however, approximately 90% of Garlock's aggregate indemnity payments on asbestos claims resolved mesothelioma claims and less than 5% non-malignant claims.  Information Br. 56-58.  During the last half of the last decade, compensable non-malignant claims were progressively disappearing.

Mesothelioma claims dominated asbestos litigation in the last half of the decade, but were (and are) relatively small in number. There are fewer than 2,000 mesothelioma plaintiffs who bring suit in the tort system each year. In the three-year period prior to the Petition Date, Garlock was named by most of these plaintiffs. Information Br. 62.

Because lawyers receive lucrative contingency fees for mesothelioma claims (especially now that Trusts paying billions of dollars to asbestos claimants have emerged from the bankruptcies of major defendants), plaintiffs' firms have developed a highly effective network to identify and recruit mesothelioma plaintiffs. These firms use aggressive advertising strategies to attract and recruit persons suffering from mesothelioma: ubiquitous television advertising, print ads, websites, advertising on popular search engines such as Google and Yahoo, and profiles on social media websites such as Facebook. The firms are in stiff competition today to identify the very persons with mesothelioma who would have sued Garlock had it not filed its petition, seeking to represent those persons in bringing claims against other defendants still in the tort system and against Trusts.

Mesothelioma claims formed the most significant part of Garlock's active litigation docket as of the Petition Date. Garlock was, however, also receiving a decreasing number of lung cancer, other cancer, and non-malignant claims.

## 3. Occupations of Garlock claimants

Pipefitters were the workers who might reasonably be expected to have directly used Garlock's asbestos-containing sealing products—though installing or removing asbestos-containing gaskets and packing was a rare event, and even then did not produce significant exposures to asbestos fibers. Pipefitters have sued Garlock in the past in large numbers.

Garlock has also been sued by individuals in virtually every other industrial occupation that could have experienced exposure to any kind of asbestos, even if they would have had no direct exposure to Garlock gasket and packing products. These occupations include insulators, construction workers, shipyard workers, carpenters, painters, and welders. Frequently, the theories of exposure to Garlock encapsulated asbestos gasket and packing products relied upon by these claimants were scientifically implausible. Nevertheless, these claimants did allege asbestos claims against Garlock in large numbers. The majority of these claims were ultimately resolved without payment. Finally, some non-workers sued Garlock, either because they alleged a derivative claim such as a loss of consortium claim, or because they alleged they were exposed to asbestos fibers brought home on the clothes of persons with alleged occupational asbestos exposure.

The vast majority of the workers who sued Garlock were in blue-collar occupations, such as the above.

## B. Notice Strategy

The persons who must receive legally adequate notice of the Bar Date consist of Asbestos Claimants who have manifested injury as of the Bar Date. Notice can easily be provided to persons who sued Garlock before the Petition Date, through their counsel of record.

In addition, certain unknown claimants will be subject to the Bar Date: (a) those who manifested injury before the Petition Date but had not yet sued, and (b) those who manifest injury between the Petition Date and Bar Date. Garlock has no way to identify the claimants who may fall within this category, and thus need only provide constructive or publication notice. The following principles inform Garlock's strategy for providing notice to these unknown Asbestos Claimants:

- Plaintiffs' firms devote entire practices to representing persons with asbestos-related injuries. They make massive investments in advertisements aimed to recruit persons manifesting asbestos-related injury.
- All (or virtually all) of the claimants who would have sued the Debtors absent their petition are suing or will sue multiple other defendants still in the tort system, and will make claims against bankruptcy Trusts.
- These claimants are thus being recruited and represented by plaintiffs' firms—despite the Debtors' petitions—to make claims against tort system defendants and against Trusts.
- This is especially true for mesothelioma claimants, who accounted for over 90% of the Debtors' asbestos-related expenditures in the years immediately before their petitions. Plaintiffs' firms compete aggressively to identify these claimants, through ubiquitous advertising in a wide variety of media.
- Plaintiffs' firms also have an interest in representing those claimants in bringing claims in this bankruptcy, to ensure those claimants will have a chance to receive a distribution and the plaintiffs' firms will receive their contingency fees on that distribution.
- For all of these reasons, any person who manifests asbestos-related injury and desires to make a claim is extremely likely to be placed in quick contact with a plaintiffs' firm, which will have an interest in representing him or her in asserting a claim in these cases prior to the Bar Date.

Because the same claimants who would have sued Garlock absent the petition continue to be identified by plaintiffs' firms—and because those firms have an incentive to file claims in this bankruptcy to preserve the opportunity to receive a distribution on behalf of those claimants— the most effective component of the Notice Plan for unknown claimants is notice to the plaintiffs' firms. Thus, in addition to providing notice to counsel of record for pending claims, Garlock will provide notice to all known asbestos plaintiffs' firms, even if they do not have pending claims against Garlock.

The risk that a claimant will manifest injury and desire to make a claim but will not have an opportunity to consult with an attorney before the Bar Date is small. Nevertheless, to reach any such claimants, Garlock will provide notice to other organizations likely to come into contact with persons manifesting asbestos-related injury, such as unions and public health organizations.

Finally, for the claimants reached by none of these other means, Garlock will also give notice designed to reach claimants directly.  The most effective form of notice to these claimants will be via the Internet.  This is a cost-effective and targeted way to reach claimants who have just manifested a condition and who are investigating their condition or their legal options—as the massive investments made by plaintiffs' firms in this form of advertising shows.  This form of notice will consist of (a) paid advertisements on Internet search engines, for the length of the notice period attached to search words related to asbestos and the Debtors, and (b) a Bar Date website managed by the claims agent.

Finally, to reach persons who are not reachable by any of these other means, Garlock will publish notice of the Bar Date in hundreds of newspapers nationwide and a variety of national magazines read by the demographic likely to possess potential Asbestos Claims against the Debtors.

The precise details of Garlock's Notice Plan follow.

## C. Notice to Known Claimants

To provide notice to known claimants, Garlock will send a Bar Date Notice Package (consisting of the Notice of Bar Date for Asbestos Claims, Bar Date Order, and Proof of Claim form with instructions) to counsel of record for all persons with a pending asbestos-related claim against Garlock.

## D. Constructive Notice to Unknown Claimants

To provide notice to unknown claimants, Garlock will send a Bar Date Notice Package to all known asbestos plaintiffs' firms, along with a letter requesting they seek to provide notice to any unknown claimants who are known to them. Because these firms actively engage in recruiting and attracting new claimants, this is the most effective way to provide notice to unknown claimants.

To reach unknown claimants who do not become associated with a plaintiffs' firm before the Bar Date, Garlock will send a Bar Date Notice Package, along with a letter requesting they seek to provide notice to any unknown claimants who are known to them, to other entities likely to come into contact with persons diagnosed with asbestos-related conditions:

- Union officials for trade unions whose members are known to have experienced occupational asbestos exposure, including the:

    - International Association of Heat & Frost Insulators and Asbestos Workers
    - International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers (IABSORIW)
    - International Brotherhood of Electrical Workers
    - International Brotherhood of Painters and Allied Trade
    - International Union of Bricklayers and Allied Craftsmen
    - International Union of Operating Engineers (IUOE)
    - Laborers' International Union of North America
    - Operative Plasterers' and Cement Masons' International Association of the United States and Canada
    - Sheet Metal Workers' International Association
    - United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States & Canada
    - United Brotherhood of Carpenters and Joiners of America

- Organizations and websites that serve individuals with cancer, including the:

    - American Cancer Society—www.cancer.org (Nationwide voluntary health organization dedicated to cancer prevention and treatment)
    - American Institute for Cancer Research—www.aicr.org (Promotes cancer research)

- o Association of Community Cancer Centers (Organization of institutions and state oncology societies that provide community cancer care)
- o Association of American Cancer Institutes (Directors of cancer centers across the country)
- o Association of Online Cancer Resources—www.acor.org (Collection of online communities providing information on cancer)
- o Cancer Care—www.cancercare.org (Non-profit dedicated to serving people with cancer and their families)
- o Cancer Guide—www.cancerguide.com
- o Cancer Information Service (Organization whose trained counselors provide information on cancer diagnosis, treatment, and research)
- o Cancer News—www.cancernews.com (Online resource for information about cancer)
- o Center for Disease Control—www.cdc.gov (Government source for information on disease)
- o International Association of Cancer Victors and Friends (Organization that promotes independent cancer research)
- o National Cancer Center (Engages in research and education relating to cancer)
- o National Cancer Institute—www.cancer.gov (Unit of National Institutes of Health devoted to elimination of cancer)
- o National Coalition for Cancer Research (Organization devoted to elimination of cancer)
- o National Coalition for Cancer Survivorship—www.canceradvocacy.org (Organization that advocates for people with cancer and their families)
- o OncoLink—www.oncolink.com (Provides free, reliable information on cancer)
- o People Against Cancer (Promotes research into alternative cancer treatments)

- Social media websites frequented by persons active in asbestos litigation and by potential claimants, including:

  - o http:// www.facebook.com/pages/Syracuse-NY/Mesothelioma-Asbestos-Awareness-Center/364322925220
  - o http://www.facebook.com/group.php?gid=111054215113&ref=search&sid=5308944.1601272852..1&v=info
  - o http://www.facebook.com/notes.php?id=25761760653#!/pages/Mesothelioma-Resource-Center/25761760653
  - o http://www.facebook.com/pages/The-Law-Offices-of-James-Sokolove-LLC/7979554372

## E. Direct Notice to Asbestos Claimants

In addition to providing notice to plaintiffs' firms, unions, public health organizations, and social media websites, Garlock will provide the following forms of notice calculated to reach those claimants directly.

### 1. Internet notice

The Internet is the first place many potential claimants—or their friends or family members—turn upon receiving a diagnosis. It is an effective way to reach potential claimants, as illustrated by the many advertisements purchased by plaintiffs' firms in order to recruit claimants. Garlock will, in the first place, reach many unknown claimants through the significant number of advertisements purchased by plaintiffs' firms. Those advertisements will place new claimants in touch with firms that have the ability and interest in filing claims in this bankruptcy.

Garlock will also reach claimants through its Bar Date website, administered by its claims agent. This website will likely appear in Internet search engine results for claimants who may search for information about this bankruptcy or the Bar Date.

In addition, Garlock will purchase its own advertisements, to run on Google and Yahoo in connection with certain search words related to the Debtors. The advertisements will direct claimants to the Bar Date website and to the Bar Date toll-free telephone number. The form of the Internet advertisement is attached hereto as Exhibit 1.

Search-engine advertising is a highly effective method of giving notice, for several reasons. *First*, the advertisements are displayed only to persons who are conducting searches with words connected to the Debtors, so the ads are most likely to reach persons with an interest in the bankruptcy. *Second*, the advertisements are shown to persons who are already looking for, and therefore receptive to, information—rather than persons leafing through a newspaper or magazine reading about unrelated topics, who might overlook a notice. *Third*, the method is cost-effective because the estate only pays when a claimant clicks on the advertisement. The estate does not pay when the advertisement is shown to someone who passes it by. *Fourth*, the method is not restricted to persons who choose to purchase media such as newspapers and magazines: it reaches anyone who conducts a search in one of these popular search engines. *Finally*, because the method is so cost-effective, it can run for the entire notice period, and thus reach potential claimants who would not see or notice a one-time publication in even a large number of newspapers and magazines.

Garlock will purchase ads on Google and Yahoo, to run for the entire period from October 1, 2010 until the Bar Date, January 17, 2011. The ads will run when users search for the following words:

Garlock
Anchor Packing
asbestos gasket

asbestos packing
asbestos sealing
asbestos seal
Garlock asbestos
Anchor asbestos
Garlock mesothelioma
Anchor mesothelioma
Garlock asbestosis
Anchor asbestosis
Garlock cancer
Anchor cancer
Garlock pleural plaque
Garlock pleural effusion
Anchor pleural effusion
Anchor pleural plaque

This search term list is crafted to capture searches that might be conducted by persons who are investigating their exposure to Garlock or Anchor asbestos-containing products, or who believe their asbestos-related condition was caused by a Garlock or Anchor product. The ad will reach users who enter more complicated searches as well: on both Google and Yahoo, the ad is displayed whenever a user enters a search that includes the search terms, in any order, and disregarding plural forms. The search terms above will therefore be triggered by a wide variety of possible searches, including those listed on Exhibit 2 attached hereto (generated with the help of the Google AdWords Keywords analytic tool).

In general, the addition of a "Garlock" or "Anchor" qualifier to general terms like "asbestos" and "mesothelioma" is warranted. Attaching the Garlock advertisement to the general terms would be costly. Those words are already in high demand from law firms seeking to represent persons who wish to make asbestos claims; many such firms appear when a searcher types in the general word. The high degree of competition makes advertisements linked to the unqualified words extremely expensive. The Google AdWords Traffic Estimator tool estimates that placing an ad next to the general words "asbestos" and "mesothelioma" could cost up to $21,000 per day.

Furthermore, spending so much to run the Garlock ad next to the general words would not be productive. Because the firms are already advertising in connection with the general words, a person interested in making a claim of any sort (including a claim in this case) and who enters a general search term would have the full opportunity to contact one of those firms and receive notice of the Bar Date (if applicable to the claimant). Finally, because of the high degree of competition for the general words, Garlock's ad even if purchased would not necessarily be noticed: it would appear among many ads for law firms, and would not necessarily appear near the top of the search results.

For these reasons, Garlock has tailored its Internet program to target persons specifically investigating their exposure to Garlock or Anchor products: i.e. persons who would enter the search terms above. These are precisely the persons who may not be reached by a law firm

before the Bar Date.  Such persons, investigating their exposure on their own, without the assistance of counsel, will come across the Garlock ad and receive notice of the Bar Date. Persons investigating such exposure with the assistance of attorneys will receive notice of the Bar Date through their attorneys, as described above.

Individuals investigating Garlock or Anchor exposure through Google or Yahoo will see the ad displayed prominently.  The Google AdWords Traffic Estimator tool projects that the Garlock ad will fall in either the first or second position in the advertisements that appear with the selected search terms.

Under both the Google and Yahoo pricing scheme, the estate will pay only when someone clicks on the advertisement.  The Google AdWords Traffic Estimator tool estimates that the cost of this advertising program will not exceed $15 per day for the notice period, for a total cost of approximately $1605.  Because these costs are based on historical data, however, they may depart from the estimate.  In any event, the total cost of this program (including Yahoo) should not exceed $10,000.

Garlock has already established accounts with both Google and Yahoo advertising, and entered the form of ad described in Exhibit 1.  These ads could begin running the day the Court approves this Notice Plan (assuming the claims agent has established the Bar Date website by then).

## 2. Print notice

Finally, to supplement all the other forms of notice, Garlock will provide notice through print media.  First, it will send a press release to more than 2,000 newspapers, wire services, magazines, and broadcast points across the United States, directing them to the Bar Date website. The Bar Date will also undoubtedly receive coverage in publications that cover asbestos litigation and asbestos bankruptcies and are read by asbestos litigators, such as Mealey's Asbestos Bankruptcy Reporter and Andrews Asbestos Litigation Reporter.

Garlock will also place the Summary Bar Date Notice (Exhibit 3) as a black and white advertisement in newspapers and magazines.  It will place a standard magazine size ad (6-3/4" by 10-3/4") once in *Parade* magazine.  *Parade* is a general interest newspaper supplement inserted into hundreds of newspapers across the country each week.

Garlock will also place the Summary Bar Date Notice in the following consumer magazines:

- A full-page ad once in *Time.  Time* is the most-read general current events magazine.

- A full-page ad once in *Reader's Digest.  Reader's Digest* is a popular general interest magazine.

- A full-page ad once in *American Legion*. *American Legion* is a general interest magazine focusing on topics of interest to veterans.

- A full-page ad once in *VFW Magazine*. *VFW Magazine* focuses on issues important to veterans.

The publications chosen have a number of characteristics that will maximize the chances that the notice will be received and read by the target population (*see* Exhibit 4 for statistics substantiating these characteristics):

- *Parade*, *Reader's Digest*, and *Time* are among the publications with the highest readership in the United States.

- Readers of *Parade*, *American Legion*, *VFW Magazine*, and *Reader's Digest* have a median age that equals or exceeds 50.

- *American Legion* and *VFW Magazine* have high veteran readership. A substantial number of veterans, especially Navy veterans, have sued Garlock.

- *American Legion* and *VFW Magazine* have high male readership.

- The chosen publications reach households with a wide range of incomes. The readers of *Reader's Digest*, *American Legion*, and *VFW Magazine* have a median household income near or below the median U.S. household income of approximately $52,000.[2] The readers of *Time* have relatively high median household incomes.

Finally, to reach claimants who may live in Guam, Puerto Rico, or the U.S. Virgin Islands, and are not reached by other methods, Garlock will place a full-page ad once in each of the following newspapers:

| U.S. Territory/Possession | Newspaper |
|---|---|
| Guam | *Pacific Daily News* |
| Puerto Rico | *El Nuevo Dia* |
| Puerto Rico | *El Vocero* |
| St. Croix, St. Thomas (U.S. Virgin Islands) | *Virgin Islands Daily News* |
| St. John (U.S. Virgin Islands) | *St. John Trade Winds* |

---

[2] *See* http://quickfacts.census.gov/qfd/states/00000.html (last visited August 5, 2010).

## F. Notice Plan Timeline and Budget

### 1. Timeline

| | October 2010 | November | December | January 1-15, 2011 |
|---|---|---|---|---|
| **Mailing to plaintiffs' firms, public health organizations, unions, social media** | ██████ | | | |
| **Press release** | ██████ | | | |
| **Bar Date website** | ██████ | ██████ | ██████ | ██████ |
| **Google, Yahoo advertisements** | ██████ | ██████ | ██████ | ██████ |
| **Parade** | ██████ | | | |
| **Time** | | ██████ | | |
| **Reader's Digest** | | | ██████ | |
| **American Legion** | | | | ██████ |
| **VFW Magazine** | | | | ██████ |
| **Territorial newspapers** | ██████ | | | |

### 2. Budget

| | |
|---|---|
| Search engine advertisements | $10,000 (estimate) |
| Parade | $584,200 |
| Time | $186,840 |
| Reader's Digest | $149,900 |
| American Legion | $49,915 |
| VFW Magazine | $28,960 |
| Territorial newspapers, direct mail costs, other incidental expenses | Less than $100,000 |
| **Total** | **$1,100,000** |

**Exhibit 1: Form of Internet advertisement**

The following advertisement will run next to searches conducted for the selected keywords and combinations, from October 1, 2010 until January 17, 2011, linking to the Bar Date website established by the claims agent:

**<u>Garlock Asbestos Bar Date</u>**
Asbestos claim against Garlock or
Anchor: Must file by January 17!
www.[bar date website].com

**Exhibit 2: Searches That Will Trigger the Garlock Internet Advertisement (generated with the assistance of the Google AdWords Keywords analytic tool)**

Garlock asbestos
Garlock asbestos exposure
Garlock asbestos lung cancer
Garlock asbestos cancer lawsuit mesothelioma settlement
Garlock asbestos cancer mesothelioma
Garlock asbestos mesothelioma
Garlock asbestos related lung cancer
Garlock asbestos related cancer
Garlock symptoms of asbestos exposure
Garlock asbestos exposure cancer
Garlock asbestos cancer lawsuit
Garlock asbestos exposure lawyer
Garlock asbestos related disease
Garlock mesothelioma asbestos exposure
Garlock mesothelioma asbestos lung cancer
Garlock asbestos cancer
Garlock asbestos lung disease
Garlock asbestos exposure lawsuit
Garlock asbestos attorney
Garlock asbestos related lung disease
Garlock mesothelioma asbestos
Garlock chrysotile asbestos
Garlock asbestos poisoning
Garlock asbestos law firm
Garlock asbestos lawsuit
Garlock asbestos disease
Garlock asbestos related illness
Garlock asbestos law
Garlock asbestos law suit
Garlock asbestos fibers
Garlock cancer caused by asbestos
Garlock asbestos cases
Garlock asbestos case
Garlock effects of asbestos
Garlock asbestos lung
Garlock asbestos containing materials
Garlock asbestos disease mesothelioma
Garlock asbestos lawyer
Garlock exposed to asbestos
Garlock asbestos attorney cancer law lawyer mesothelioma
Garlock asbestos related lawsuits
Garlock navy asbestos
Garlock asbestos attorney lawsuit

Garlock asbestos pleural disease
Garlock asbestos products
Garlock asbestos pleural plaques
Garlock asbestos cancer lawsuit mesothelioma
Garlock asbestos claim
Garlock asbestos claims
Garlock asbestos materials
Garlock asbestos related pleural disease
Garlock asbestos lung mesothelioma
Garlock asbestos illness
Garlock asbestos lawsuits
Garlock asbestos related injury
Garlock products containing asbestos
Garlock asbestos cancer mesothelioma settlement
Garlock asbestos encapsulation products
Garlock asbestos attorney lawsuit mesothelioma settlement
Garlock asbestos liability
Garlock asbestos wrongful death
Garlock asbestos court
Garlock asbestos mesothelioma
Garlock asbestos legal advice
Garlock asbestos legal
Garlock asbestos cancer law lawsuit mesothelioma
Garlock asbestos cancer law lawsuit mesothelioma settlement
Garlock asbestos stomach cancer
Garlock asbestos lung cancer symptoms
Garlock asbestos exposure attorney
Garlock asbestos plaques
Garlock asbestos personal injury
Garlock asbestos mesothelioma lawsuit
Garlock asbestos trust
Garlock asbestos trial
Garlock exposure asbestos
Garlock asbestos litigation
Garlock exposure to asbestos
Garlock asbestos laws
Garlock asbestos compensation claims
Garlock mesothelioma
Garlock mesothelioma victim
Garlock diagnosed with mesothelioma
Garlock asbestosis lung cancer
Garlock mesothelioma death
Garlock mesothelioma diagnosis
Garlock mesothelioma compensation
Garlock malignant peritoneal mesothelioma
Garlock cancer law mesothelioma

Garlock diffuse malignant peritoneal mesothelioma
Garlock mesothelioma lawyer
Garlock mesothelioma attorney
Garlock mesothelioma settlement
Garlock mesothelioma lawsuit
Garlock mesothelioma treatment asbestos pleural cancer peritoneal
Garlock cancer asbestos mesothelioma treatment
Garlock veterans with mesothelioma
Garlock mesothelioma legal help
Garlock diffuse malignant mesothelioma
Garlock mesothelioma lung cancer
Garlock diffuse mesothelioma
Garlock mesothelioma compensation claims
Garlock mesothelioma legal advice
Garlock mesothelioma adenocarcinoma
Garlock mesothelioma peritoneum
Garlock mesothelioma claim
Garlock mesothelioma cases
Garlock mesothelioma smoking
Garlock pleural mesothelioma diagnosis
Garlock malignant mesothelioma
Garlock malignant pleural mesothelioma
Garlock mesothelioma disease
Garlock mesothelioma tumor
Garlock pleural mesothelioma
Garlock mesothelioma patient
Garlock peritoneal mesothelioma
Garlock asbestosis mesothelioma
Garlock asbestosis
Garlock asbestosis mesothelioma
Garlock asbestosis asbestos mesothelioma attorney
Garlock asbestosis pleural plaques
Garlock asbestosis claim
Garlock asbestosis claims
Garlock asbestosis cancer
Garlock asbestosis diagnosis
Garlock pleural plaque
Garlock pleural effusion
Garlock pleural effusion lung cancer
asbestos gasket
asbestos packing
asbestos sealing
asbestos seal
Garlock
Anchor
Anchor asbestos

Anchor asbestos exposure
Anchor asbestos lung cancer
Anchor asbestos cancer lawsuit mesothelioma settlement
Anchor asbestos cancer mesothelioma
Anchor asbestos mesothelioma
Anchor asbestos related lung cancer
Anchor asbestos related cancer
Anchor symptoms of asbestos exposure
Anchor asbestos exposure cancer
Anchor asbestos cancer lawsuit
Anchor asbestos exposure lawyer
Anchor asbestos related disease
Anchor mesothelioma asbestos exposure
Anchor mesothelioma asbestos lung cancer
Anchor asbestos cancer
Anchor asbestos lung disease
Anchor asbestos exposure lawsuit
Anchor asbestos attorney
Anchor asbestos related lung disease
Anchor mesothelioma asbestos
Anchor chrysotile asbestos
Anchor asbestos poisoning
Anchor asbestos law firm
Anchor asbestos lawsuit
Anchor asbestos disease
Anchor asbestos related illness
Anchor asbestos law
Anchor asbestos law suit
Anchor asbestos fibers
Anchor cancer caused by asbestos
Anchor asbestos cases
Anchor asbestos case
Anchor effects of asbestos
Anchor asbestos lung
Anchor asbestos containing materials
Anchor asbestos disease mesothelioma
Anchor asbestos lawyer
Anchor exposed to asbestos
Anchor asbestos attorney cancer law lawyer mesothelioma
Anchor asbestos related lawsuits
Anchor navy asbestos
Anchor asbestos attorney lawsuit
Anchor asbestos pleural disease
Anchor asbestos products
Anchor asbestos pleural plaques
Anchor asbestos cancer lawsuit mesothelioma

Anchor asbestos claim
Anchor asbestos claims
Anchor asbestos materials
Anchor asbestos related pleural disease
Anchor asbestos lung mesothelioma
Anchor asbestos illness
Anchor asbestos lawsuits
Anchor asbestos related injury
Anchor products containing asbestos
Anchor asbestos cancer mesothelioma settlement
Anchor asbestos encapsulation products
Anchor asbestos attorney lawsuit mesothelioma settlement
Anchor asbestos liability
Anchor asbestos wrongful death
Anchor asbestos court
Anchor asbestos mesothelioma
Anchor asbestos legal advice
Anchor asbestos legal
Anchor asbestos cancer law lawsuit mesothelioma
Anchor asbestos cancer law lawsuit mesothelioma settlement
Anchor asbestos stomach cancer
Anchor asbestos lung cancer symptoms
Anchor asbestos exposure attorney
Anchor asbestos plaques
Anchor asbestos personal injury
Anchor asbestos mesothelioma lawsuit
Anchor asbestos trust
Anchor asbestos trial
Anchor exposure asbestos
Anchor asbestos litigation
Anchor exposure to asbestos
Anchor asbestos laws
Anchor asbestos compensation claims
Anchor mesothelioma
Anchor mesothelioma victim
Anchor diagnosed with mesothelioma
Anchor asbestosis lung cancer
Anchor mesothelioma death
Anchor mesothelioma diagnosis
Anchor mesothelioma compensation
Anchor malignant peritoneal mesothelioma
Anchor cancer law mesothelioma
Anchor diffuse malignant peritoneal mesothelioma
Anchor mesothelioma lawyer
Anchor mesothelioma attorney
Anchor mesothelioma settlement

Anchor mesothelioma lawsuit
Anchor mesothelioma treatment asbestos pleural cancer peritoneal
Anchor cancer asbestos mesothelioma treatment
Anchor veterans with mesothelioma
Anchor mesothelioma legal help
Anchor diffuse malignant mesothelioma
Anchor mesothelioma lung cancer
Anchor diffuse mesothelioma
Anchor mesothelioma compensation claims
Anchor mesothelioma legal advice
Anchor mesothelioma adenocarcinoma
Anchor mesothelioma peritoneum
Anchor mesothelioma claim
Anchor mesothelioma cases
Anchor mesothelioma smoking
Anchor pleural mesothelioma diagnosis
Anchor malignant mesothelioma
Anchor malignant pleural mesothelioma
Anchor mesothelioma disease
Anchor mesothelioma tumor
Anchor pleural mesothelioma
Anchor mesothelioma patient
Anchor peritoneal mesothelioma
Anchor asbestosis mesothelioma
Anchor asbestosis
Anchor asbestosis mesothelioma
Anchor asbestosis asbestos mesothelioma attorney
Anchor asbestosis pleural plaques
Anchor asbestosis claim
Anchor asbestosis claims
Anchor asbestosis cancer
Anchor asbestosis diagnosis
Anchor pleural plaque
Anchor pleural effusion
Anchor pleural effusion lung cancer

**Exhibit 3: Summary Bar Date Notice**

Legal Notice                                                                                                         Legal Notice

# If You Have a Personal Injury Claim Based On A Condition Caused by Asbestos Exposure Against Any of the Companies Listed Below:

**Garlock Sealing Technologies LLC**      **The Anchor Packing Company**      **Garrison Litigation Management Group, Ltd.**

## YOU MUST FILE A CLAIM BY JANUARY 17, 2011

On _____, 2010, the United States Bankruptcy Court for the Western District of North Carolina established January 17, 2011 as the claims bar date in the chapter 11 cases of the Debtor companies listed above (In re Garlock Sealing Technologies LLC, et al., No. 10-BK-31607 (Bankr. W.D.N.C.))

The Court has established January 17, 2011 as the claims bar date for personal injury claims caused by asbestos exposure. All persons who have such Claims against the Debtors must file proofs of claim before 5:00 p.m., Eastern Time, on January 17, 2011 or lose their right to file a claim.

**Who Must File A Proof of Claim**

The Bar Date applies to all persons with claims against any of the companies listed above based on, arising from, or relating to an asbestos-related injury, disease, or death that has manifested, become evident, or been diagnosed as of the Bar Date.

If you wish to make a claim against any Debtor, you must file a proof of claim by January 17, 2011.

**Additional Information**

Certain of the Debtors manufactured or sold, at various times, a number of products that contained asbestos. These products include asbestos-containing sealing products, such as gaskets and packing that contained asbestos.

For more information regarding the Debtors and the products containing asbestos that may have been sold by the Debtors, refer to Garlock Bar Date Website.

Additional information about the claims process and this Bar Date may be obtained from the Garlock Bar Date Website, the Garlock Claims Helpline, or the Claims and Noticing Agent Listed below.

**Procedure for Filing Proofs of Claim**

If you have a claim as described above and wish to make such a claim, you must use the Debtors' proof of claim form. These forms can be downloaded from the Garlock Bar Date Website or obtained by calling the Garlock Claims Helpline listed below.

If you are represented by an attorney, you must file the proof of claim form electronically on the Garlock Bar Date Website by 5:00 p.m., Eastern Time, on January 17, 2011. Otherwise, you must send a signed, complete original of the proof of claim form, so as to be received no later than 5:00 p.m., Eastern Time, on January 17, 2011. Any proof of claim submitted by facsimile or e-mail will not be accepted and will not be deemed filed until the proof of claim is submitted as described above.

**What Happens If You Do Not File a Proof of Claim**

If you are required to file a proof of claim, but fail to do so by January 17, 2011, you shall be forever barred and lose your right to make any claim for personal injury, disease, or death based on asbestos exposure that you hold or wish to make against any of the Debtors.

Failure to use the Debtors' proof of claim form for such claims, or failure to include all of the information and documentation required by that proof of claim form, may lead to such claim being barred even if it was filed prior to January 17, 2011.

**You may wish to consult an attorney regarding this matter.**

**For complete information, including all relevant forms, notices, and instruction, please consult:**

Garlock Bar Date Website
**[Garlock Bar Date website]**

Garlock Claims Helpline
**1-800-000-0000**

Write to:  **[Claims Agent]**

**Exhibit 4: Readership and Circulation Statistics for Print Publications in Notice Plan**

| Publication | Audience/Readership | Circulation/Rate Base | Age and Gender | Median HHI | Education |
|---|---|---|---|---|---|
| Parade | 71.9 million | 32.2 million | Median age: 50<br>47% male<br>53% female | $67,254 | 61% some college |
| Reader's Digest | 37.8 million | 8 million | Median age: 52<br>39% male<br>61% female | $57,587 | 57% some college<br>27% graduated college |
| Time | 20.6 million | 3.3 million | Median age: 47<br>52% male<br>48% female | $73,946 | 43% graduated college |
| American Legion | 5 million | 2.5 million | Median age: 62<br>65% male<br>35% female | $37,718 | |
| VFW Magazine | 2.6 million | 1.6 million | Median age: 65<br>99% male | $47,500 | |