IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In the matter of:                      )
                                       )
GARLOCK SEALING TECHNOLOGIES, LLC, ) No. 10-31607
et al.,                                ) Jointly Administered
                                       ) Charlotte, NC
        Debtors.                       ) Aug. 26, 2010, 9:29 a.m.


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GEORGE R. HODGES
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

John R. Miller, Jr.
Shelley K. Abel
Rayburn, Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte NC, 28202-1672

Garland S. Cassada
Jonathan C. Krisko
Robinson, Bradshaw & Hinson
101 North Tryon Street, Suite 1900
Charlotte, NC 28246




Electronic Recorder
Operator:                      Julia Adams

Transcriber:                   Patricia Basham
                               6411 Quail Ridge Drive
                               Bartlett, TN  38135
                               9O1-372-O613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

APPEARANCES:

Travis W. Moon
Hamilton Moon Stephens Steele Martin
2020 Charlotte Plaza
201 S. College Street
Charlotte, NC 28244-2020

Trevor W. Swett III
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005

Richard M. Mitchell
Mitchell & Culp, PLLC
1001 Morehead Square Drive
Suite 330
Charlotte, NC 28203

Michael P. Cascino (Telephonically)
Cascino Vaughan Law Offices Ltd.
220 S. Ashland Ave.
Chicago, IL 60607

3

(CALL TO ORDER)

THE COURT: Good morning.  Have a seat.  All right we are here for the Garlock matter.  What time do you have, Mr. Moon?

MR. MOON: 9:30.

THE COURT: Okay.  Good.  We are having a little musical prelude here, I guess.  Why don't we go ahead and get your appearances on the record.  We will start with Mr. Moon and go across that way.

MR. MOON: Your Honor, I am Tom Moon for the creditors committee.

MR. SWETT: Good morning, Your Honor.  Trevor Swett, Caplin & Drysdale for the asbestos personal injury claimants committee.

MR. CASSADA: Good morning, Your Honor.  I am Garland Cassada.  I am here with Jon Krisko of my firm.  We are special counsel for the debtors in this case.

MR. MILLER: Good morning, Your Honor.  Jack Miller and Shelley Abel, here with Rayburn, Cooper & Durham on behalf of the debtors.

MR. MITCHELL: Rick Mitchell, appearing on behalf of two claimants, Roe and Eckenrode.

THE COURT: All right.  Do we need to wait or do you all want to proceed?

MR. CASSADA: I believe that Michael Cascino is calling

4

in.  He represents –

THE COURT: He filed some papers.

MR. CASSADA: – multiple asbestos claimants and he has an interest in the first thing on the agenda, the motion for Rule 2019 compliance.

THE COURT: Do you have any of this other stuff you want to go through other than that?

MR. MILLER: Your Honor, everything else on the agenda is essentially uncontested.  We did file a limited response to Mr. Mitchell's two stay relief motions and that may take a few minutes but, otherwise, I think we could motor through everything else pretty quickly.

MR. MITCHELL: I have a number of matters in the other court, if I could move on.

THE COURT: Well, let's take care of Mr. Mitchell.

MR. MILLER: Very well, Your Honor.  Shelley Abel from our firm is going to take care of that one.

MR. MITCHELL: Your Honor, we have filed motions for relief from stay on behalf of two deceased former employees, although there may be some question as to one of them, whether they were an employee but, nevertheless, these are asbestos claims in the state of New York and we have asked for relief from stay in order to prosecute a work comp action on behalf of each one of these.  We have a relatively short window.  I think the statute of limitation runs sometime next week.  So we

5

really need to get an order.  And all we are asking is to be allowed to prosecute the claim in the appropriate forum in New York.

THE COURT: Okay. Ms. Abel.

MS. ABEL: Yes, Your Honor.  We have just filed this limited response.  As it states in there, we consent to relief from stay on a limited basis just for these claimants, and further wanted to clarify some points of law and facts that appeared in the motions just to make sure that those didn't become precedental in this case, and further just wanted to make sure that the court was aware of the fact that there is worker's comp coverage for these claims but that there is a large deductible that will have to be met before the insurance will be involved, but that's the purpose of the limited response and an opportunity to review the proposed order before it's submitted.

MR. MITCHELL: But I am looking at some stuff in the limited response about confirming the application of the automatic stay to worker's compensation claims, which is not something that we raised.  We just want to go forward with ours, and requiring alleged worker's compensation claimants to seek relief from automatic stay, these are much broader issues than our very limited request for relief from stay and, if they want to raise those, I think they need to raise them in the appropriate action and not in this.

6

THE COURT: Well, why don't we grant your relief from stay subject to their objections and just be sure your order doesn't do the things that they are concerned about and it will allow you to do wht you need to do.

MR. MITCHELL: Do you want to enter a ruling that the automatic stay applies because I don't know whether it does or not?

THE COURT: No, I don't think we need to litigate that one way or the other if it doesn't affect your case.

MR. MITCHELL: I agree with that.

THE COURT: So why don't you all do an order, whatever you can agree with, that lets you do what you want to do.

MR. MITCHELL: All right, sir.

THE COURT: And protects the debtor's interest or whatever it is concerned about.  Okay.

MS. ABEL: Yes, sir.

THE COURT: So just be sure Ms. Abel gets to see your order before you submit it.

MR. MITCHELL: Do I have to?

THE COURT: Yeah.  There was a fine looking pickup truck in your driveway yesterday, too.  I thought you had gotten a new truck with twenty-two inch wheels and fans.

MR. MITCHELL: No, that's my same old truck.

THE COURT: Well, it turned out that there must have been somebody visiting your house during the day, your wife's

7

new boyfriend.

MR. MITCHELL: What time of day was it?

THE COURT: Your wife's new boyfriend has a really good-looking truck.

MR. MITCHELL: She likes a pickup truck.

THE COURT: All right.  Let's go, then, to – we will go back, then, to the motions, the contested motions, and let you all proceed with that.  Mr. Cassada.

MR. CASSADA: Yes, Your Honor.  I think - is Mr. Cascino on the line?

MR. CASCINO: Yes, I am on the line.

THE COURT: Okay.  Good.

MR. CASSADA: Your Honor, I know that you have read the briefs.

THE COURT: I have.

MR. CASSADA: And I will make my argument as concise as possible.  But this is a motion to compel compliance with Rule 2019.  As the court well knows, Rule 2019 requires each law firm representing more than one creditor in a reorganization case to file a verified statement, and that statement has to identify, among other things, identify the creditor or claimant represented, the nature and amount of such claimant's claim and pertinent facts relating to the attorney's employment by such creditor.

The rule is designed to promote openness and

8

transparency in reorganization cases. It's a disclosure provision. It is designed to ensure that lawyers involved in Chapter 11 reorganization cases adhere to certain ethical standards and approach all reorganization cases openly and subject to scrutiny of the court.

Your Honor, the rule is particularly important in cases where entities like the law firms in these cases, who represent asbestos claimants, literally control large blocks of claims. In these cases, eleven law firms have appeared, each to represent, according to their papers, numerous unnamed asbestos claims. These appearances, Your Honor, we submit triggered an obligation on the part of the lawyers to file verified statements under Rule 2019. To-date no statements have been filed.

On July 21, the debtors filed a motion seeking an order directing law firms representing multiple asbestos claimants to file 2019 statements. As the committee points out, we did not accuse any particular firm of violating the rules. Nor, Your Honor, did we ask for the types of remedies for violation specified in Rule 2019. In fact, our motion is intended to be a non-confrontational, friendly reminder to firms that Rule 2019 existed and that they were required to comply with it.

To our surprise, Your Honor, only a single law firm responded to our motion, the Cascino Vaughan firm. Mr. Cascino

9

is on the line.  They in their response concede that 2019 statements must be filed but object to the ten-day deadline and they also object to having to include other matters and pertinent facts regarding their employment by their clients in the statements saying that that goes beyond the scope of the rule and improperly requires disclosure of information that Mr. Cascino claims is confidential and privileged.

No other firm filed a response.  Instead they sent the committee to object for them.  Of course, this is not a committee issue.  This is a disclosure and ethics rule that applies to law firms, not claimants.  Nevertheless the committee raised a number of objections, and I am not going to go over the objections each in detail, but it raised basically three objections.

One, a trigger objection.  The committee says no firm has failed to comply because Rule 2019 is not triggered by a firm's appearance to represent multiple creditors.  They actually had to take some unspcified action instead.

Second, they raised a scope objection.  The motion would require, they claim, and our proposed order, more than the rule does.

And finally they raised an undue burden objection, but this undue burden is not an undue burden on the claimants. They say that it would be an undue burden on the court because the court would get buried in paper.

10

Now we have addressed each of these in our brief.  The short answer is that the language of the rule itself and orders entered in other asbestos Chapter 11 cases refute each of the committee's points.  Entering an appearance triggers compliance with the rule and, if you look at orders entered by other bankruptcy courts in asbestos cases, they require 2019 rule upon entry of an appearance to represent claimants.

Disclosure of fee arrangements, fee-sharing arrangement and referral fees is required by the literal language of the rule.  This comes directly out of the *Baron and Budd* case, Your Honor, and the *Congoleum* bankruptcy case.

And finally there is no undue burden.  In fact, other courts have minimized the filing of paper by requiring that information be or permitting information to be submitted electronically on disks that would be filed with the court and provided to parties-in-interest.

Your Honor, the order we have tendered we believe is completely consistent with Rule 2019 as interpreted by the court in the other cases.  If ten days is too short, as Mr. Cascino contends, then the court should extend that to thirty or I think he suggested sixty.  We don't object to that.

We don't object to filing an exemplar authorization, but we believe that any exemplar filed should be a real authorization executed by a real client, and there should be a verified statement as to whether every claimant represented by

11

the firm has given the same authorization in these cases.  If different authorizations have been given, those should be attached.  And, Your Honor, there should be a recital of pertinent facts and circumstances in connection with the engagement of a firm and it should include a detailed explanation of the fee arrangement, as well as fee-sharing arrangements and referral fees.

If the court wishes to craft an order that takes into account input of plaintiff's lawyers, who are the ones that are required to file these, that seems perfectly appropriate to us, but they should be here to explain their concerns and they shouldn't do so through the committee.

We are willing to have the court continue this hearing until the next omnibus hearing date or even the one after that to permit the ten firms that have not responded and any other firm, who wishes to, to respond to the motion and express their concerns and have input on the form and content of the 2019 statement.

A final word, Your Honor, the sophisticated market for asbestos claims gives rise to the core disclosure issues implicated by Rule 2019.  As anyone knows who watches television, clients are recruited by national recruiting firms that refer patients to specific law firms that will pay the highest referral fees.  You have seen the ads when you watch golf tournaments or NASCAR races or NFL games on TV.  They are

12

the Sokolove firms and others are posting national television ads recruiting clients who suffer asbestos diseases.

The law firms, in turn, who receive these claims charge contingency fees, typically forty percent, to represent the claimant and, in every case we know of, Your Honor, some bankruptcy debtors offer higher settlement payments to certain firms than others, and the favored firms will file claims for the law firms for fee-sharing arrangements. There is a complex web of fee-sharing and referral fees. Several firms may have an interest in any claim asserted against a debtor and the law firms are given control over the claim. Every decision made in the case by a client is made by the law firm. And in short, the law firms own a huge portion of the claim. Rule 2019 requires a detailed disclosure of all of these arrangements.

Thank you. I will sit down now and just reserve my right to respond to specific points that may be raised by Mr. Cascino and Mr. Swett.

THE COURT: All right, Mr. Swett.

MR. SWETT: Good morning, Your Honor. Trevor Swett for the personal injury claimants. We oppose the motion and think that it should be denied. There are three basic issues. One is what I would call the trigger. Why should there be an order at all when the rule is self-executing and, where it applies, people have to comply?

Let me make one observation about that. Counsel

13

raises the question why aren't the law firms here voicing their concerns other than the Cascino firm.  Well, one reason may be that the debtor treats the filing of an objection to its motion as a trigger for the rule.  So there is a Catch-22 that they have sprung.  I say that because, in their reply brief where they list the various appearances, opposite the appearance of the Cascino firm, one of the things that they note that firm has done to trigger the rule is file an objection on behalf of the Cascino Vaughan asbestos claimants.  So there is a certain overreaching in the debtor's theory of what triggers the rule, which I will get to in more detail.

There is also the question of the timing of compliance. That doesn't seem to be a major issue since counsel seems to be amenable to sixty days following the trigger as an appropriate time period during which a law firm that is required to file may do so.

And then there is what I think is probably the key issue for the court and that is what are the contents of a Rule 2019 statement that, when required, would satisfy the rule and how can that process be administered in such a way as to appropriately balance the administrative burden on the court, the privacy interest of the filers and their clients and the demands of the – and how to make the rule work where the underlying claims are multitudinous asbestos personal injury claims, not the typical claim that the rule was written with a

14

view to.

One of the interesting things about asbestos bankruptcy cases at every turn is how you make the code and the rules work sensibly with regard to these unusual kinds of claims that exist in such large numbers.  So that's another consideration that the court will need to take in hand.

And I would suggest that there is no rule of interpretation or construction that requires the court to read the rule in the way that would create the maximum inconvenience and burdens on everyone.  That's not required.  Where the rule applies, the court has discretion to apply it in a way that makes sense in the case before it, and the debtor's proposed order does not for reasons that I will get to.

I am going to argue these in reverse order, though, Judge.  I am going to go straight to the contents of the rule and our critique of the debtor's order, which is where the rubber really hits the road.

I am looking at the proposed order filed with the motion.  First I notice, in the first decretal paragraph before the numbered and lettered parts, that the debtors have written in a test for what ought in their view trigger the rule, and that test includes representing any individual asserting an asbestos claim in the debtor's bankruptcy case.

I just observe at the outset that that is a gloss that they placed on the rule that is actually inconsistent with the

15

content of the rule, which is triggered by action on behalf of multiple claimants. A law firm that happens to represent multiple claimants, but takes action in the case on behalf of one, is not thereby subjecting itself to the rule.

This is actually important in the context of the committee silence. Most of the appearances that the debtor says trigger the rule were filed by law firms in the process of putting forward clients for appointment to the committee. Now, the rule says that it does not apply with respect to statutory committees. Unlike the debtor, we don't think that just means committee counsel doesn't have to file 2019 statements; it means that a lawyer who takes a step with respect to an asbestos claimants committee in this case and a statutory committee more generally, including a step intended to put forward a client for appointment to that committee is not triggering the rule.

If you ruled otherwise, you would discourage the participation in the committee formation process. That would be a significant detriment to the case. It shouldn't happen. It's not required by the rule. Indeed it would be contrary to the rule because only one claimant gets to step into a particular seat on the committee and that law firm that puts forward that client is the legal representative of that individual and that individual's fiduciary capacity as a member of the committee. In that respect, that law firm is not

16

representing multiple clients.  It is the legal representative of one client on the committee, and that does not trigger the rule.

Now, the next thing I would observe about the proposed order by the debtor is that it requires the filing of the statement and the attachments on the ECF system.  By and large, I have to acknowledge, Judge, notwithstanding the arguments I will make at the back end concerning appropriate trigger, that Rule 2019 has been applied in a good number of asbestos bankruptcy cases in the sense that courts have made orders to implement them.  Perhaps because it is not necessarily obvious how Rule 2019 ought to be applied in an asbestos case, perhaps because of other considerations that I am not aware of.  But in any event, most of the orders have not required the public filing of the statements.  When I say that, I mean the substantive contents of the statements.

The first of these orders to become commonly adopted in other cases was entered by Judge Judith Fitzgerald in the *Pittsburgh Corning* case.  As I will get to, that order was the subject of appeals and has stood up both in the district court level and, in the context of another case, an identical order stood up on appeal in the Third Circuit where there was a challenge to the standing of the appellant.  But Judge Fitzgerald's order is very clear that what the law firm had to file in the record, once the rule applied, was a statement

17

giving its own name and address and a notice that it had submitted a 2019 statement, the contents of which were not placed on the ECF system, were not publicly available for review, were restricted as to access to persons who made application on notice to the court and stated some good reason for wanting to get access to the content.

Now, that had a couple of virtues, one of which was to protect the privacy interest of the claimants since the order that Judge Fitzgerald crafted included some claimant information that I will argue later is not necessary and not required by or consistent with the rule, but she did that but she protected it by a procedure that kept the information off the public record.

Second, it was an aid to the clerk's office. People submitted their voluminous attachments in the form of CD-rom disks that the clerk maintained under, in effect, the seal of the restrictions on access.

Now, when I said at the beginning that the rule need not be read to maximize burden, this is an example of what I mean. Purporting to base their, quote, form of order on a commonly adopted form from similar cases, in fact what the debtors have done is embraced the most onerous version of 2019 orders entered in such cases. It was entered in only one case, the *Congoleum* case, and the *Congoleum* case was highly unusual in its facts and has in effect been confined to its facts by

18

the Third Circuit.  The facts had to do with a prepackaged bankruptcy where a couple of law firms orchestrated a negotiation with the debtor prepetition, and the proposed plan would have provided security to the claimants represented by those law firms that helped to form the plan before it was presented to the court, but not equal security to other claimants who would then come in and seek redress through the bankruptcy process.  There was an issue of discrimination that had to do with which lawyer represented which client, and that's why the *Congoleum* court went off as it did in a situation that itself described as unprecedented.  That's why that court, unlike all of the others, concerned itself with co-counsel arrangements.  That's why its form of order was particularly exacting and demanding on the law firms because conflict of interest had been shown.

We, of course, have none of that.  We are not in a prepackaged case.  There is no indication in the debtor's paper that it has reason to believe that any law firm has a conflict of interest.  Those concerns do not arise and yet, because of the debtor's peculiarly aggressive approach to the asbestos claimants and their lawyers, it has decided right off the bat to go to the far extreme of the spectrum and tender to Your Honor the unique, one-off *Congoleum* order, as though it were the commonly applied one in asbestos cases.  It is far from that.

19

Now, one of the virtues of the restricted access to the contents is because it makes it easier for law firms to comply without worrying about unintended consequences to their clients, such as the revealing of Social Security numbers. Some of the law firms use forms at intake that record the Social Security number of the claimant in full and they don't want those sensitive data points to be brandished about needlessly and gratuitously at some risk to the privacy of the claimant in this era of identity theft.

Now, in their reply the debtors attach an exemplar of a Rule 2019 statement, (inaudible/9:54:49) unique *Congoleum* order. You will see there that it includes multiple executed powers of attorney from claimants and that the form used by that law firm for that purpose includes the full Social Security number of the claimant, which the debtor has blithely published as an exhibit to its reply brief, quite gratuitously.

Now, that law firm was incautious in putting forth that information, and the debtor was equally incautious in republishing it as an exhibit here for no good reason, and that's an example of the kinds of things that busy lawyers overlook, in the press and competition of the motions practice and such, that can lead to serious consequences to a person who isn't here and that person deserves protection in this process.

So a large bone of contention between the committee and the debtor with respect to their proposed form of order is

20

the idea that the details that they would elicit, which we contest, as well, but I will get to that in a minute, would be spread on the public record in a way that is not necessary, doesn't serve the purposes of the rule and involves collateral harms to claimants, as well as unnecessary burdens on the ECF system.

You know, Judge, I am not that sure about the ECF requirements in this district.  In other districts where I have had this problem, you had to register with the ECF system, you had to go through a local counsel if you didn't have a *pro hac* in the case.  Otherwise you had to file a motion to be exempted from the ECF system.  So those logistical problems are costly and burdensome for filers, too, and there is absolutely no need to impose that kind of burden in order to satisfy this rule where it applies.

So I think the logistics of the submission of information, if and when you rule that it is required, will bear a lot more careful thought, and I will be happy to consult with the debtor's counsel when we get to that point to see if we could work out something more sensible than the proposed form of order is.

Another big bone of contention between us and the committee – I am sorry – and the debtor has to do with their interest, which I will describe as  (Inaudible/9:57:23) in co-counsel arrangements.  As I mentioned, that theme crept into

21

the *Congoleum* order because of the very peculiar unique circumstances of that case. And yet this debtor would require both a description in the statement and elaborate documentation of every signed document having to do with a co-counsel fee-sharing or consulting arrangement. That shouldn't be required. There is no basis for it in the rule. It is in effect commercial information as among the law firm. It had nothing to do with the representation of that individual client in the case. It is beside the point. There being, as I mentioned, no reason to suspect conflict of interest.

Counsel made unsubstantiated assertions just a few minutes ago about the nature of these arrangements. There is no evidence of that. There was nothing about that in their papers. It is gratuitous and it doesn't comport with the vast majority of the orders entered under 2019 in other similar cases.

Co-counsel arrangements are beside the point and shouldn't be elicited either by way of description or, much less, by way of actual copies as attachments and certainly not on the public record.

There is also a requirement in the debtor's order for powers of attorney with respect to the bankruptcy cases. Other courts other than *Congoleum* have handled that by way of exemplars. Counsel seemed to indicate that that would be okay with the debtor. The exemplars, however, have typically under

22

Judge Fitzgerald's model been blank, though unredacted, complete copies but not executed, not actual instruments with respect to any particular client.

People have submitted exemplars of each variety of such power of attorney that they have employed with asbestos claimants.  So that, if there are multiple versions, they are all submitted in blank but unredacted form.

So in those three respects, public record, the co-counsel arrangements and the insistence upon actual copies, albeit now by way of concession, I take it, exemplars of actual powers of attorney instruments, are where we differ quite significantly with the debtor over the contents of the 2019 statement once one is required.

As to the other contents, I am looking again at their proposed order.  They want an Excel spreadsheet in electronic format containing the name of the creditor.  Okay.  That's hardly controversial.  The personal address of each such creditor.  Why?  Why is it important what the personal address of the creditor is?  It is more important where they can be served.  The law firm's address is the relevant address for the creditor, I would submit, although I acknowledge that some of the courts have not agreed with that in the 2019 orders that they have made.

A reserved space for the creditor's Social Security number.  It is interesting, it doesn't purport to require the

23

space to be filled out.  This comes out of Judge Fitzgerald's form.  She never, to my knowledge, did require that that space be completed with the Social Security numbers.  In any event, the debtor doesn't seem to require them here, so that seems to be an academic point, but I would suggest it is not applicable because, after all, the point of the 2019 statement is to provide information concerning the filing entity, not discovery with respect to the underlying claimants.  There is no occasion in the 2019 statement to elicit the Social Security numbers of the individual claimants.

The amount of the claim of any creditor if liquidated and, for unliquidated claims, an indication that says claims are unliquidated.  Okay.  We don't have any disagreement with that.  We would note that the vast bulk of the claims in the pipeline are unliquidated and a simple statement to that effect would seem to suffice.  There may be some settled claims that haven't been paid.  There may be some judgment claims that remain on appeal.  No harm in asking the law firm to set forth the amounts of liquidated claims if applicable.  But again I would ask the question why since – well, let me pass that.  I really don't have any issue with that.  It's okay, if and when a 2019 statement is required, to put liquidated amounts, if any, and there won't be very many of them, I should think.

The date of acquisition of such claim unless alleged to have been acquired more than one year before the petition

24

date.  Well, what does that mean where the underlying claims are asbestos personal injury claims?  These claims are not acquired.  They are suffered.  People get injured.  They manifest disease.  That's when the claim arises under state law.  There is absolutely no reason to require that granular degree of fact specific information about individual claims in a 2019 statement to serve the purposes of the rule.  A simple statement that it's an asbestos personal injury or wrongful death claim would suffice.

Type of disease giving rise to the asbestos claim.  Why?  It doesn't say anything about that in the rule.  If you say that it is an asbestos personal injury or wrongful death claim, the particular kind of disease that the claimant suffers from has no bearing on the purposes of Rule 2019.  It is not intended to probe the particulars of the underlying claims.

Now, again, I acknowledge that, based on Judge Judith Fitzgerald's form, which became adopted in other cases including the many that she had in front of her, she required that information.  I would ask this court to go back to the rule and ask the question why.  One of the objectives that the court should be pursuing, if it crafts an order here, is to confine the contents to what reasonably flows from the text of the rule as applied to an asbestos personal injury driven bankruptcy and to draw a sharp distinction between the 2019 contents and discovery of individual claimants, and the disease

25

type can await discovery in the claim estimation process or at some other stage of the case. It has nothing to do with 2019.

Finally, the facts and circumstances in connection with the employment of such firm. 2019 does have language of that general effect but the debtor then goes to put this great gloss on it having to do with the co-counsel arrangements and the paper work behind that, which I have already addressed.

So I emphasize, Your Honor, that the debtor's form comes out of the *Congo* case. The *Congo* case was unique, has not been followed elsewhere, has been distinguished by the Third Circuit in the *Pittsburgh Corning* case, which is cited in our brief. It is an unpublished decision. It is at 260 Fed, appendix 463. And there the court said this. The appellants in that case were insurance companies ultimately and the court held that they lacked standing. But in the process of that analysis, it said:

> "Appellants merely speculate that there are any unethical procedures or conflicts of interest to reveal. They do not point us to even one actual ethical violation or conflict of interest. It stands on the filings and have failed to investigate these issues so as to support their contention."

That is precisely the posture in which the debtor has made its assertions about a supposed need to interpret this rule expansively in order to combat supposed but totally

26

undemonstrated conflict.

Footnote six to the statement I just read out of the *Pittsburgh Corning* decision says:

"For this reason this case is distinguishable from *In re Congoleum* upon which appellants so heavily relied," as here, "as the facts necessary to find that an actual conflict of interest existed had already been developed and left no room for speculation."

That was the situation in the *Congoleum* case. That's the case that led to the debtor's form of order. It is inapposite here.

I would also like to refer you to the *Kaiser* case, Judge, cited in our brief, decided by the District Court in Delaware on appeal from the – based upon, I believe it was also insurer's unhappiness with Judge Fitzgerald's form of 2019 order in an asbestos case.

Judge Farnan again found that the insurer lacked standing but he also made an alternative holding. He describes it expressly as that. It is not mere dictum. His alternative holding was that Judge Fitzgerald was not in error to require only exemplars, actual but unredacted exemplars of powers of attorney authorizing the lawyers to act, and she was not in error in restricting the access to that information and the rest of the contents of the 2019 attachments in the manner that I described earlier. So her approach to those issues withstood

27

appeal in *Kaiser*, 327 Bankruptcy 554, and as previously mentioned in the *Pittsburgh Corning* appeal in the Third Circuit, albeit there on an issue of standing

Now, let me turn briefly to the question of the trigger and timing. Timing, we will leave aside. The debtor is amenable to the sixty-day period for compliance once the rule applies. So that leaves us with the question of when ought it to come into play. And the debtors squarely take the position that the filing of an appearance for whatever purpose in the bankruptcy case triggers the rule. Those rules, it says, although in polite tones, are in violation.

Now, it is interesting to me that all of the appearances that they list in their reply were on the record and known to them when they filed their motion and yet they did not refer to any of those appearances in the motion itself. They did not suggest that there had been any violation. I don't think that was out of tender regard for the plaintiff's law firm's feelings. It is because the idea that there have been violations here, that the rule has already been triggered, is afterthought, and it is natural that it should be an afterthought. None of those firms has done anything in the case. Most of the appearances, as I mentioned, were in respective efforts to get clients on the committee and I have already given the argument why, under the plain terms of the rule itself, those are not triggers for 2019.

28

I should point out that, if it is true that Judge Fitzgerald's order, a form of order applied in several cases and other cases, too, have treated the filing of an appearance in a bankruptcy case as a trigger for Rule 2019, I concede that that is so, but I would ask a question, under the language and the purposes of the rule, why should that be the case?  Why burden the filer of an appearance with a 2019 compliance obligation if the appearance is in effect notice to the debtor that, hey, I am here, I represent these people, serve me please with papers because, when it comes to the point where you are attacking my individual claimants, I am going to be representing them.

That seems to me comes under the heading of you don't have to read the rule in the most rigorous purpose and fashion. You can wait until the law firm actually does something in the case by way of active representation.

It is true that the rule speaks of representation by active representation, but I believe that that gloss, unlike the ones the debtor would apply, is well within your discretion and does not soften the rule from the standpoint of its substantive significance and is administratively tractable, which is one of the virtues that we should be trying to achieve here.

In the *Pittsburgh Corning* case, in the *G-1 Holdings* case, in the *Thorp* case out in California – *G-1* was in Newark,

29

New Jersey, and even in the *Congoleum* case, a trigger was voting. When it came time to have a vote, the courts made the 2019 ruling so that the law firms would know what they should do.

Well, we are far from voting. Hopefully that day will not be as far off as the debtor's informational brief seems to suggest but it is not now, and I would suggest that only at that point as a general matter should law firms who propose to vote for multiple claimants come in and file their 2019 statements with the contents tailored as I have suggested with a practical eye to the nature of the case and the underlying claims.

Your Honor, unless you have some questions for me, I think I have made my points in chief. I would reserve some time to respond to whatever replies.

THE COURT: Anything else, Mr. Cassada.

MR. CASSADA: Mr. Cascino.

THE COURT: Oh, I am sorry. Yes, Mr. Cascino.

MR. CASCINO: Your Honor, this is Michael Cascino. I want to thank the court for allowing me to appear by telephone today, with consent of the debtor's counsel.

I wish to make four brief points, and my points are more about logistics than anything else and that's why I filed the pleading that I filed.

When I saw that there was a requirement of ten days,

30

that's too short of a period of time and I request ninety days once it is decided what paper work or forms need to be provided to satisfy the court with regard to 2019.

My second point is as to what is actually going to be submitted and important for confidentiality as to whatever is submitted and what we have suggested is that we get one copy of the forms that we use to either (inaudible).

THE COURT: Mr. Cascino, we are having trouble hearing you.  Give us a second to see if we can't fix something on our end.  Why don't we just take a five-minute break and –

(Recess from 10:14 a.m. until 10:25 a.m.)

THE COURT: Okay.  We will proceed with your argument.

MR. CASCINO: Thank you, Your Honor.  I wish to thank the court and counsel for the debtor for allowing me to appear by telephone.  I wish to make four points.

Number one, receiving a draft of a motion that says we have to file 2019s within ten days is too short a period of time and, once it is decided what instrument will be filed or is necessary to be filed, we would request ninety days to do so as we requested in our pleading.

My second point is as to what needs to be submitted. Obviously confidentiality of personal information of the individual creditors is very, very important. That's why we suggest that, in compliance with 2019, that we simply provide a copy of the instrument which would be a blank exemplar of

31

what would be used in that particular plan.

(Inaudible)

THE COURT: Mr. Cascino, something has happened again, another sunspot or something, I guess.  Hold on just a minute.

(Pause)

THE COURT: Okay.  Can you try to say something and let us –

MR. CASCINO: Okay.  Can you hear me now?

THE COURT: Yes.

MR. CASCINO: My third point concerns the fee arrangements, and I believe that, if fees should be disclosed, it should be limited as to claims against this debtor only.  In other words, if I am going to be sharing a fee as to a particular plaintiff with another law firm, it would only be by a sharing of fee as to the Garlock bankruptcy matter as opposed to anything else.

The final point I wish to make is that counsel for the debtor makes a lot of sweeping assumptions that honestly don't apply to my law firm.  I don't nationally advertise or participate in any of that.  We think that thirty-three and a third is plenty enough.  So I take exception just with counsel's statements because I am not part of any group that he's asserting any allegations, and anything in terms of what he is complaining about, the problems, that's going to be solved by the plan when it's eventually implemented.

32

Those are the points I wish to make.  Thank you.

THE COURT: All right.  Thank you.

MR. SWETT: Your Honor, Mr. Cassada has graciously consented to my standing up again out of turn in order to address a point that I failed to speak to in my opening remarks having to do with the debtor's papers challenges the committee's standing to oppose their 2019 motion.  There is a simple answer to that which is sufficient.  We've also a subtler answer which I think is worth mentioning.  The simple one is under 1109(b).  The creditors committee is a party-in-interest.  It has a right to be heard on any issue in the case, full-stop.  Anything that the debtor has standing on, the committee has standing on.  It doesn't require the debtor's supervision of committee counsel to keep them within any particular scope.  Any issue in the case is fair game for the committee.

The motion, of course, goes to an important question of administration of the case and the committee is vitally concerned with that.  It also would burden the claimant's counsel and any burden on the claimant's counsel discourages participation in the case.  As I mentioned, particularly with respect to efforts to become participants in the affairs of the committee, that's a detriment to the committee.  It is also a detriment to the case.  It is also a detriment to the claimants.  Burdens on the legal representative of the claimant

33

are a detriment to the claimants who are our constituents.

Finally, in some important particulars, the debtor's proposed form of 2019 order goes to claimant information. And as the fiduciary for asbestos personal injury claimants in the case, we, of course, have every right to address matters touching on that subject.

Thank you, Judge.

THE COURT: Okay. Mr. Cassada.

MR. CASSADA: Your Honor, I will begin by just pointing out the two extraordinary events that we think are happening here, and one is the committee's position here is the first bid by the plaintiff's bar to make sure that this case is cloaked in opacity, and the point of Rule 2019 is to promote openness and transparency in a bankruptcy case.

Now, the plaintiff's lawyers don't show up to answer; they get the committee to do that, and then the committee raises these unspecified privacy concerns of claimants.

Now, I will concede that the Social Security number is a real issue, but in other cases that is dealt with by just providing the last four digits of the Social Security number. But the committee has raised for the plaintiff's firms this idea that there are these privacy concerns and that the court should enter an order that provides essentially all of the information on the plaintiffs on a disk and then have that disk be submitted under seal or be somewhere where no one can see

34

it.

I would like to call the court's attention to a very important rule or Bankruptcy Code provision and that's code provision 107 entitled "Public Access to Papers."  And that rule provides that, except as provided in this rule, and subject to section 112, a paper filed in a case under this title and the dockets of the bankruptcy court are public records and open to examination by an entity at reasonable times without charge.  So that's not just talking about the interest that parties – the right that parties-in-interest have to see papers filed in a case but this is talking about are public.    And the rule provides a means for protecting information filed in papers from public filing, and the rule is very specific.  It requires a motion by a party-in-interest, so presumably the law firms or the committee, if it is going to somehow take the position that the identity of a plaintiff is a privacy concern, it requires a motion and then it requires a showing that the information sought to be protected fits within this rule, and the rule is limited and it does not provide that the identity of persons who allege that they have claims against the estate should be held under cover.  In fact, they are turning this rule on its ear asking the court to require a filing, put it under seal, and then put the burden on any party-in-interest, much less the public, if they want access to this information, they have to show good cause, but basically

35

they are turning this rule on its ear.  And a public filing by litigants in federal court is a bedrock principle of federal courts.  We don't allow – you don't use opacity in a case unless there is a very good reason to do so or specific information.

So before the court accepts Mr. Swett's invitation to permit things to be filed under seal and put the burden on other people to show a need for it, I believe the court should examine that provision and require anyone who takes a position that anything required to be filed under Rule 2019, they have to file a motion on that and they have to show the basis for that information not being available to the public, much less other parties-in-interest in a bankruptcy case.

Another point, Your Honor, is that the ACC is here literally negotiating for the plaintiff's bar.  We don't think that's appropriate.  Certainly the ACC could point to specific things in the rule or motion that may affect their constituency but, again, this rule, it's an ethics rule and it is up to the law firms that are required to comply with this rule to come in and to respond and to raise any problems that the rule causes them in filing statements for their particular clients.

Another point I would like to make is Mr. Swett, he has very carefully avoided the language of Rule 2019 and he purports to bring in all of this gloss.  Well, the language is quite clear and particularly on the trigger.  It says that any

36

law firm that represents more than one creditor in a case must comply with the rule.  That has not been regarded, as far as I know, as ambiguous in this district, in this court, or in any other court I have been in, and the committee makes up this rule that, well, representation means that you actually do something in a case other than file a notice of appearance or ask to be admitted so that you can represent multiple creditors.  Well, there is a lot that goes on outside of the courtroom and specifically there are law firms representing multiple creditors that are pulling the strings in this case and that are directing the creditors committee on what to do and how to conduct the case.  And if the committee had its way, then the whole class of claimants, the people who control this case, which are law firms, law firms that represent individual clients and who make decisions for this large group of clients, they are all just going to fly under the radar and no one is ever going to have access to who these people are, much less the information required by 2019.

As it relates to Mr. Cascino's objections, I think we have already said that ten days is not – ten days was the amount of time required in several of the orders we saw. Certainly we have said sixty days is fine on that.

He raises the point on confidentiality.  Again, if this court is going to do anything on confidentiality, it is going to require a motion under Bankruptcy Code section 107 and

37

a showing that confidentiality is appropriate.

He wants any disclosure of fee arrangements to be limited to fee arrangements as it relates to these debtors.  I think that's what the rule requires and we have no objection to that.

But if Your Honor is thinking about crafting a specific order, then again we submit that we should let the plaintiff's law firms actually appear and take a position on what that order should say or shouldn't say and what burdens the order places on the plaintiff's firms, and we are certainly willing to allow that to happen.

Thank you, Your Honor.

THE COURT: Anybody else?

MR. SWETT: Your Honor, with respect to the section 107 public access, I would call your attention to the *Kaiser* decision on appeal of Judge Fitzgerald's Rule 2019 order in the District of Delaware.  One of the key issues decided in the alternative holding was whether she had erred in restricting access to the detailed contents of the 2019 statement.  And the district judge held as follows:

"Judge Fitzgerald's Rule 2019 orders strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused.  Accordingly, the court concludes that the Bankruptcy Court did not err

38

in declining to post the Rule 2019 information on the electronic docket and in permitting access to that information by motion of the parties and order of the court."

That's the only appellate decision I am aware of on that narrow issue and it went our way, not the debtor's way, and it was in the face of specific argumentation under the same code section that the debtor has cited.  Their motion for a 2019 order going beyond the literal terms of the rule triggers, implicates, the issue of public access.  No separate motion is required in order for the court to do the right thing.

Now, they invite all the law firms to come in and object to their motion.  That's a gotcha.  They already said in their reply brief that that's a trigger for subjecting the law firm to Rule 2019 requirements.  That's not a fair play and it's not appropriate.

The law firms don't own claims and this is in reference to counsel's opening argument to the idea that the law firms have interest.  The law firms have compensation rights under contracts with clients out of proceeds received by their clients.  They are not stakeholders in the case.  They don't own the claims.

Our big point that I would like to leave the court with for its consideration, first of all, no order is required for the rule is self-executing.  You could, if you want, await

39

developments.   When people file, the debtor can test the adequacy of their submission or, if the debtor wants to reach out and accuse particular firms of having violated the rule, you could address specific disputes.

If you prefer, then there is ample authority in the case law and asbestos bankruptcies for you to issue an order that would establish a safe harbor.  If a law firm is subject to the rule and it submits a 2019 statement along the following lines, it will be deemed to have complied.  You can do that. Judge Fitzgerald did that.  Others have done it.  It's not necessary but it's an option.

You should not require the submission of the details on these get systemed.  You should strike the same balance if you require these statements at this stage as Judge Fitzgerald described in her many cases, as upheld by the District of Delaware on appeal.

You should not require the attachment of voluminous, multitudinous copies of powers of attorney or other instruments engaging the law firm.  If you require anything along those lines, exemplars of the different varieties of instruments used that are blank and not specific to any particular claimant would certainly suffice.  That has been the practice in Judge Fitzgerald's many cases.  It is the practice in other cases, as well.   Only *Congoleum* went beyond that.   Only *Congoleum* required the co-counsel arrangements on a factual predicate

40

which is underscored by the Third Circuit in the *Pittsburgh Corning* case, which is utterly lacking here.

Thank you, Judge.

MR. CASSADA: Just one point.  In the *Quigley* case and the other cases cited, at least there was a motion, there was a request to deny access to the public.  Here, there has never been such a request and, upon request, there is a showing.  The committee is trying to bypass all of that.

I think that the appropriate thing to do would be for the court to note the debtors having pointed out that there are numerous firms that have filed notice of appearance in this case to represent multiple claimants, and then the court can decide whether, based on this court's practice, the plain language of the rule and any case law that the court deems relevant and whether those firms have violated the rule or whether they are required to file Rule 2019 statements, and then the court can require them to do so.  And if those firms want to come forward and they want to make a motion that their 2019 statements be filed in a way that the public and other parties-in-interest don't have access to them or have restricted access, then that motion would be before the court. There would be a specific showing of why that would be necessary and the court could make an informed decision on that.

If the court does not believe that filing a notice of

41

appearance to represent multiple claimants triggers Rule 19, then the court should enter that order and then we will have a new rule of law, at least in this district and, as far as I know, even in the cases that the committee has cited.

THE COURT: Well, here is what I think we ought to do. Rule 2019 has its own requirements and specifies what's supposed to be done.  It has its own set of consequences.  So there is some temptation just to leave things at that, but I am afraid that trying to make that language fit the context of this type of case would probably just invite a whole lot of satellite litigation that would take up everybody's time and not really advance the ball for anybody that much. So I think it is probably worthwhile to have that on that order.

What I would suggest is that you all try to get together and we will continue this hearing for thirty days, or whatever you think you need, and my inclination would be to enter an order similar to what Judge Fitzgerald has done, which has received the approval of superior courts, courts superior to us, and to do something along those lines.  And let me ask you all to try to get together, craft an order and submit something prior to the next hearing that would have language that you agreed on and then, where there are disagreements, each of you submit the language that you would like.  We can then – either you can just submit that and I will do it or you can submit that and have some argument about it.  Probably

42

that's the best way.  And then I will take what you all have done and then try to come up with an order.  At least that wouldn't screw up the parts that you have agreed on.

Would that work for you all?

MR. CASSADA: I think so, Your Honor.  The only point I would make is that, if the court is inclined to enter an order that restricts access, that some party, whether it be the committee or someone, be required to file a motion to explain the basis for any confidentiality.

THE COURT: Well, you all – we could take that up again, but we will – how long do you think you need to talk about these things?

MR. SWETT: Your Honor, there is a lot that's going to happen at the September 16 hearing.  So I would propose that it be the next hearing after that.  I am also going to be away next week.

MR. CASSADA: That's fine.

THE COURT: All right.  That would be September 30.  So we will continue this matter until September 30th and sometime, if you would, sometime prior to that – it doesn't have to be a long time prior to that but a day or two prior to that submit whatever you have agreed on and then whatever opposing language that you or any other parties have.  Okay.

MR. SWETT: Thank you, Judge.

MR. CASSADA: Thank you, Your Honor.

43

THE COURT: Now, we have some other uncontested things. I think we can let Mr. Cascino off of the phone. Has he hung up? Okay. At any rate.

MR. MILLER: Yes, Your Honor, we have got several uncontested matters that we haven't hit yet, beginning with the debtor's motion to extend the removal deadline, and I believe Mr. Cassada's firm may be handling that one. There were no objections filed in that one, Your Honor, and we can take that one however you would like.

THE COURT: All right.

MR. KRISKO: Yes, Your Honor. John Krisko from Robinson Bradshaw for the debtors. This is a motion to extend the deadline for the removal period of any related proceedings. No objections have been entered by any party. Essentially what this motion seeks is to establish a "no earlier than" date of March 31st of next year. Under Rule 9027, the debtors have various amounts of time to remove proceedings. Those triggers have not run but, in the interest of ensuring that the debtor has enough time to evaluate any proceedings that it may choose to remove and to ensure, given the number of potential proceedings that might be removed, that that examination is done in an orderly fashion, we would ask the court to set March 31st as the earliest date in which any removal notice may need to be given.

THE COURT: Okay. That sounds good to me. We will

44

approve that.

MR. KRISKO: Thank you, Your Honor.

MR. MILLER: Your Honor, the next item on the agenda is the debtor's motion to extend the exclusive periods to file a plan and solicit acceptances to the plan.  Your Honor, that deadline currently is set to run – the deadline to file a plan is currently set to run October 3rd, and the solicitation deadline is December 2nd.  Obviously we are not in a position to file and solicit a plan at this point, and the debtors have requested a one hundred and eighty day extension through April 1, 2011, for filing and through May 31, 2011, for solicitation. We have had no objections to that relief and would submit to the court that we have been moving along and making good progress and been busy with a lot of things and hope to have a plan on file by then but reserve our right to request further extensions.

THE COURT: Okay.  Well, that sounds reasonable.  We will approve that.

MR. MILLER: Thank you, Your Honor.

The next matter is the debtor's motion to extend the deadline for assuming or rejecting unexpired non-residential real property leases. Again, that deadline runs on October 3rd, and we requested a ninety-day extension as provided under the Bankruptcy Code.  I anticipate that we will have those determinations made within that next ninety-day period and

45

won't need any further extensions but obviously reserve the right to confer with the landlords and get their consent to an additional extension and bring that before the court.

THE COURT: All right.  We will approve that.

MR. MILLER: Thank you, Your Honor.  Your Honor, there was one – actually two additional items that we had on.  The first, Your Honor had previously entered an order authorizing the engagement of ordinary course professionals and those professionals had a certain period of time after entry of an order or entry of a supplement to file their Rule 2014 statements.  The initial order was entered in mid July and the first batch that was set forth on Exhibit "A" to the order, the first batch of professionals had until, I believe it was August 16th to file their ordinary course statements.  We filed about fifty plus of those but there were two that we still have not gotten yet.  And by this motion, we had asked that the court enter an order extending the deadline for that first batch to file for an additional fifteen days through August 31st.  We are hoping those folks will get on the stick and get those in within that time period.

THE COURT: Okay.  That's approved.

MR. MILLER: Thank you, Your Honor.  There was one final motion which Ms. Abel is going to handle, and I think that will wrap us up.

THE COURT: Okay.

46

MS. ABEL: Your Honor, the final motion is a motion to clarify the bank account and cash management order.  As you will recall, on the first – well, you weren't there actually on the first day of the case.  There was an order entered by Judge Whitley approving the cash management order.  This is really just a comfort request to ensure that Bank of America and the debtors are authorized to execute certain investment account agreements for the securities account with Bank of America Securities.  There are provisions in the investment account that permit the bank to set off for any bank fees, which is pretty customary, but wanted to ask the court for your blessing to enter into that agreement.

THE COURT: Okay.  We will approve that and whatever modification it requires.

MS. ABEL: Thank you, Your Honor.

THE COURT: All right.  Will that do us, then?  Thank you all for your efforts and we will see you the next time.

(Off the record at 10:53 a.m.)

47

C E R T I F I C A T E


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Patricia Basham

Patricia Basham, Transcriber

Date:  September 10, 2010