# EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | : : :___X | CIVIL ACTION NO. MDL 875 |
| This Document Relates To: | : : | MISC. ACTION No. 09-MC-103 (Oil Rig Cases) |
| (See Exhibit A - attached case list) | : :___X | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE						July    , 2010

### I.  Introduction

On May 14, 2010, the Court granted in part and denied in part Union Carbide Corporation's ("Defendant") "Motion for Leave to File Bill of Costs," (Doc. 104), which was filed in response to Plaintiffs' motion to dismiss seven of the remaining twenty-five oil rig cases with each party "bearing its own costs of court and counsel fees," (Doc. 100). *See* Doc. 112. As set out in our May 14, 2010 Memorandum Opinion, we determined that, as a condition of dismissal, Plaintiffs' counsel should be responsible for the costs and fees associated with Defendant's participation in the development of the document segregation protocol that was to be used to facilitate discovery of the litigation and screening materials of diagnosing physician, Dr. Jay T. Segarra. *Memorandum Opinion*, (Doc. 111 at 17-19) (citing FED. R. CIV. P. 41(a)(2)). We therefore granted Defendants Motion for Leave to File a Bill of Costs only as it related to the costs and fees associated with the development of this protocol and withheld "any specific ruling granting Plaintiffs' Motion to Dismiss pending our assessment of the reasonableness of the costs and fees reflected in Defendant's Bill of Costs, as well as to give Plaintiffs' counsel an opportunity to consider whether they in fact choose to pursue the Motion to Dismiss." (*Id.* at 2.)

Presently before the Court is the "Bill of Costs of Defendant Union Carbide Corporation" (Doc. 113), Plaintiffs' "Response and Objections to Defendant's Bill of Costs" (Doc. 116),[1] and Defendant's "Reply in Support of Bill of Costs and Response to Plaintiff's Objections" (Doc. 117). The matter is now ripe for our further consideration. Accordingly, we issue our recommendation regarding Plaintiffs' Motion to Dismiss. For the following reasons, it is respectfully **RECOMMENDED** that Plaintiff's Motion to Dismiss be **GRANTED** as to the dismissal of the seven cases listed in Exhibit A of their motion, (Doc. 100), subject to payment of Defendant's counsel fees and costs as further set out in this report.

## II. Discussion

With its Bill of Costs, Defendant asserts that it is entitled to $34,994.00 in costs and fees in connection with its participation in the development of the Segarra production protocol. (Doc. 113.) Plaintiffs contend that the Court should disregard the attorneys' fee asserted in Defendant's Bill of Costs in that Forman Perry failed to provide sufficient justification in support thereof.[2] (Doc. 116 at 4-5.) In addition, Plaintiffs assert that the Defendant's "[i]temization of fees" reveals charges that are excessive, redundant, or otherwise unnecessary and that there is no indication that Forman Perry

---

[1] Plaintiffs initially filed "Objections to Union Carbide Corporation's Bill of Costs Order and Memorandum Opinion of May 14, 2010." (Doc. 114.) We ordered Plaintiffs to file a response to Defendant's Bill of Costs, and explained that they could renew their objection to our May 14, 2010 Memorandum Opinion in connection with any objection they might have to our determination as to the reasonableness of the costs and fees included in Defendant's Bill of Costs. *See* Doc. 115.

[2] Plaintiffs do not challenge the reasonableness of the costs Forman Perry expended in connection with the development of the Segarra production protocol. *See* Doc. 116 at 7 ("Defendant has only provided proper documentation and support for costs in the amount of $149.65"); Doc. 113, Ex. C (reflecting itemized costs for the telephone conferences regarding Segarra production).

actually billed its client, Union Carbide Corporation, for these fees. (*Id.* at 5-7.)

Initially, we are unable to conclude that Forman Perry's Bill of Costs is legally insufficient. In connection with the assessment of counsel fees as a condition of dismissal pursuant to Federal Rule of Civil procedure 41(a)(2), an itemization of attorney hours and rates has been deemed sufficient to allow an opposing party to challenge the reasonableness of a fee request.[3] Forman Perry included with its submission a declaration, as required by 28 U.S.C. § 1924, and an itemized list of all of the fees assessed to its client, which provided a detailed description of the work performed in connection with the Segarra production protocol as well as the hourly rate of each partner, senior attorney, special counsel, associate, and paralegal who performed the services described. *See* Doc. 113, Ex. B. We therefore consider the Defendant to have satisfied its initial burden to submit evidence in support of its asserted attorneys' fee and proceed to consider whether the fee is reasonable.[4] *See Andrew Meyer Designs, LLC v. Hassan*, Civ. No 06-1045, 2006 WL 2251703 at

---

[3] *See Shulley v. Mileur*, 115 F.R.D. 50, 52-53 (M.D. Pa. 1987) (requesting the party to submit a "customary itemization showing attorney hours and rates" in connection with a conditional dismissal under Federal Rule of Civil Procedure 41(a)(2)); *McNulty for Estate of McNulty v. Borough of Norristown*, Civ. No. 88-3354, 1988 WL 156166 at *2-3 (E.D. Pa. Apr. 22, 1988) (same).

[4] The cases Plaintiffs relies upon in support of their argument as to the legal sufficiency of Forman Perry's Bill of Costs are based upon federal fee-shifting statutes, not Federal Rule of Civil Procedure 41(a)(2). *See Blum v. Stenson*, 465 U.S. 886, 893 (1984) (considering the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988(b)); *Moldonado v. Houstoun*, 256 F.3d 181, 182 (3d Cir. 2001) (same); *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1034-35 (3d Cir. 1996) (same); *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (considering the fee-shifting provision of the Clean Water Act, 33 U.S.C. § 1365(d)); *Rode v. Dellarciparete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (considering 42 U.S.C. § 1988(b)); *Murphy v. Housing Authority & Urban Redevelopment Agency*, 158 F. Supp. 2d 438, 452 (D. N.J. 2001) (same). Although these cases are instructive in certain respects, we are unwilling to accept that they required Forman Perry to submit specific documentation in connection with its Bill of Cost, such as an affidavit describing the

(continued...)

*5 (E.D. Pa. Aug. 4, 2006).

A fee is presumptively reasonable if it is based upon the loadstar, which is computed by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Hassan*, 2006 WL 2251703 at *5 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Total Containment*, 1991 WL 75192 at *6 n.16 (noting that "the law that has developed in statutory fee award cases is instructive" in this respect). A reasonable hourly rate is based upon the prevailing market rate in the forum of the litigation. *Interfaith Community Organization v. Honeywell Intern. Inc.*, 426 F.3d 694, 704-05 (3d Cir. 2005). This determination also necessarily involves, however, consideration of the skill, experience, and reputation of the attorneys involved. *Id.* at 708. As reflected in its submissions, Forman Perry has considerable experience in asbestos litigation and the pursuit of medical screening and litigation materials of experts employed in cases within Mississippi as well as in the MDL 875. *See* Reply at 6-10; *Affidavit of Marcy Croft*, (Doc. 117, Ex. B). Considering these factors and the nature of the work performed in this case, together with the affidavit submitted by Forman Perry,[5] we conclude that the

---

[4](...continued)
qualifications of the attorneys involved. *See Total Containment, Inc. v. Aveda Mfg. Corp.*, Civ. No. 90-4788, 1991 WL 75192 at *6 n.15 & n.16 (E.D. Pa. May 5, 1991) (noting that cases applying federal fee shifting provisions are "simply irrelevant to the Court's determination of fees and costs under rule 41(a)(2)"). In any event, Forman Perry has since provided an affidavit discussing its hourly rates in relation to the prevailing market rate and the qualifications and position of those members of the firm who participated in developing the document segregation protocol. (Reply at 5-10); *Affidavit of Marcy Croft*, (Doc. 117, Ex. B).

[5] Along with setting out the qualification and experience of each Forman Perry employee involved, the affidavit of Attorney Marcy Croft also provided that "Forman Perry's rates are competitive, if not lower than average, for a national defense firm in asbestos mass tort litigation." *Affidavit of Marcy Croft*, (Doc. 117, Ex. B); *see also* Reply ("Forman Perry's rates match (if not fall slightly below) the prevailing market rates and, therefore, are reasonable.")
(continued...)

hourly rates Forman Perry charged for the work of its attorneys and paralegal were representative of the appropriate prevailing market rates for similar services by lawyers and paralegals of comparable skill and experience within the forum of this litigation.[6]

In reviewing the hours of work asserted by Forman Perry, we must also conduct an analysis of the entries in its "[i]temization of fees," based upon our experience with the case and general experience as to how much time the services rendered might take.[7] In this regard, we are not persuaded by Plaintiffs' contention that the presence of "nine different individuals" on the Segarra production protocol project or the total number of hours expended renders the fee unreasonable, especially considering the nature and extent of the production Defendant sought from Dr. Segarra.

---

[5](...continued)
Although the "national" rate may not be dispositive of this issue, given the unique procedural context of this litigation and our knowledge and experience as to fees charged by attorneys in general and within this specific setting, we have no trouble concluding the rate is reasonable in the particular context of this MDL. *See Total Containment*, 1991 WL 75192 at *6 n.16 ("A judge is presumed to have knowledge as to the fees charges by attorneys in general and as to the quality of the legal work presented to him by particular attorneys; these presumption obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers.") (quoting *Lindy Bros. Builders Inc., v. American Radiator Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir. 1973)).

[6] The hourly rates asserted by Forman Perry, by position, are as follows: Partners, Marcy B. Croft and David M. Setter, billed $275.00; Special Attorney, Daniel Mulholland billed $275.00; Special Counsel, Jeanette S. Eirich and John M. Seebohm, billed $250.00; Associates, Ashley E. Calhoun, Alison E. O'Neal and Christi G. Jones, billed $170.00; and Paralegal, Teresa L. Mize, billed $85.00. (Reply at 7.)
We note that although Defendant did not specifically set out the hourly rate for each specific attorney in its initial submission, it did provide a chart which identified the hourly rate assessed by Forman Perry according to the position of those who worked on the Segarra production protocol. *See* Doc. 113, Ex. B. Plaintiffs did not challenge Forman Perry's rates for a partner, senior attorney, special counsel, or associate as excessive or above the prevailing market rate in the forum of this litigation.

[7] *See Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 361-62 (3d Cir. 2001); *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989).

*See* Doc. 116 at 5-6. We are also unable to conclude that it was unreasonable for two attorneys to complete an analysis and logging of documents produced by Dr. Segarra between August 7, 2009 and August 18, 2009, over the course of 46.7 hours. *See* Doc. 113, Ex. B at 4. This project involved a vast quantity of materials – over 13,000 documents in Defendant's estimation – and was done on an expedited basis to facilitate the Segarra production and satisfy the Court's requirement of the cataloging of these materials.[8] *See* Doc. 41 (reflecting Court order which directed Defendant to report status of such logging during August 18, 2009 telephone conference).

Further, although we appreciate Plaintiffs' concerns regarding the number of individuals involved in preparing for and participating in the telephone conferences with the Court, *see* Doc. 116 at 6, we are satisfied that Forman Perry has met its burden to establish that the number of hours it expended were reasonable in this respect. The time entries of each of the four attorneys who participated on these calls, as well as our review of the available transcripts of these conferences and our experience with these counsel, convince us that each played a different role and had certain different, albeit overlapping, responsibilities during these conferences. We are therefore unable to find that the hours billed were excessive, redundant, or otherwise unnecessary in this respect.[9]

---

[8] We are unable to accept with Plaintiffs' unsupported contention that the two attorneys "apparently analyzed the same documents[.]" (Doc. at 6.) Forman Perry's itemization of fees reflects that Attorney Christi Jones performed an "[a]nalysis of records" on August 7 and August 8, while Attorney Ashley Calhoun "[c]ontinue[d]" the analysis and created a summary log on August 10, 11, 12, 18. *See* Doc. 113, Ex. B at 4. We simply do not consider these entries to reflect that the attorneys performed redundant or unnecessary work.

[9] By way of example, it appears that Attorney Marcy Croft assumed a leadership role in three of the four conferences, and Attorney Ashley Calhoun provided input during the July 27 and August 5 conferences in a supporting role. *See generally* Doc. 42 (reflecting transcript of July 27, 2009 hearing); Doc. 47 (reflecting transcript of August 5, 2009 hearing). Attorney Calhoun also co-managed these cases on a day-to-day basis and performed substantial work
(continued...)

6

Plaintiff also asserts that there is no indication that Forman Perry billed Union Carbide on a hourly basis and that the Defendant should therefore not be entitled to assessment of these fees. (Doc. 116 at 7) (citing *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995). Plaintiffs' contention is supported only by the bald assertion that the information was received from "Forman Perry's co-counsel[.]" (Doc. 116 at 7.) Counsel for Defendant, however, has provided a sworn affidavit that the fees reflected in its Bill of Cost reflect the rates the firm charges the client. *Affidavit of Marcy Croft*, (Doc. 117, Ex. B.) This affidavit has not been contradicted. Without more from Plaintiffs, we are prepared to accept it.

We are, however, troubled by certain of the hours Forman Perry billed in connection with its participation in the development of the Segarra production protocol. The time Attorney Daniel Mulholland billed for participating in the telephone conferences of July 27, 2009, August 5, 2009, and August 18, 2009 is significantly longer than that billed by Attorney David Setter for participation in the same conferences.[10] We conclude that the discrepancies between these entries reflect

---

[9] (...continued)
cataloguing and logging the materials Dr. Segarra already produced to the Defendants. *See* Doc. 113, Ex. B; Doc. 117, Ex. B. Attorney Daniel Mulholland deposed Dr. Segarra at his document deposition, which was subject of the July 27, 2009 conference, *see* Doc. 30, and worked with Attorney David Setter to plan and develop argument points for the conferences, *see* Doc. 113, Ex. B at 1-3. In addition, both Attorneys Mulholland and Setter argued on behalf of Defendants at the September 2, 2009 hearing. *See* Doc. 66 at 11-20, 24-26. Given the nature of each attorneys' participation and the extent of the production sought from Dr. Segarra as reflected in Defendant's itemization of fees and subsequent submissions, we are simply unable to conclude that the participation of these attorneys in conferences with the Court was unreasonable – particularly considering that Plaintiffs' challenge does not include any specific justification to convince us otherwise. *See* Doc. 116 at 6 ("There is absolutely no indication why it was reasonable or appropriate for five individuals to "prepare for" and "participate in" the hearing, much less claim entitlement to an astounding $3,251.50.")

[10] On July 27, 2009, Attorney Mulholland billed 2 hours for "[p]articipat[ing] on hearing (continued...)

7

excessive billing as to the hours expended by Attorney Mulholland and recommend that Forman Perry's Bill of Costs be reduced by $522.44.[11]

In addition, we conclude that the entries for December 8 and December 9 are also excessive. *See* Doc. 113, Ex. B at 7-8. The order which was the subject of these entries was a two page document that stated that the Court would defer implementation of the Segarra production protocol and accept the untimely submission of client lists from counsel for third parties asserting the consulting expert privilege, until Judge Robreno considered Plaintiffs' motion for remand and Motley Rice's objections to the Segarra production order. (Doc. 73.) We are unwilling to accept the proposition that it was reasonable for Attorneys O'Neal and Mulholland to spend 1.7 hours reviewing the order, particularly where another attorney had already prepared a "[d]raft summary and analysis" of it the day before. *See* Doc. 113, Ex. B at 7-8. We therefore strike the 0.7 hours of review provided by Attorney O'Neal and reduce Attorney Mulholland's review from 1 hour to 0.5 hours, amounting to a reduction of $256.40.

### III. Conclusion

We conclude that Plaintiffs' Motion to Dismiss should be granted as to the dismissal of the seven cases listed in Exhibit A of their motion, (Doc. 100), conditioned upon the payment of costs and fees. We further conclude, however, that Forman Perry's Bill of Costs was unreasonable in

---

[10](...continued)
on Segarra document subpoena," while Attorney Setter billed 1.1 hours for "[p]articipat[ing] and attend[ing] magistrate Strawbridge status hearing about Segarra production and Daubert hearing issues in MDL 875." (Doc. 113, Ex. B at 2.) On August 5, 2009, Attorney Mulholland billed 2 hours for "[p]articipat[ing] in hearing," while Attorney Setter billed 1.3 hours for "participating on conference call[.]" (*Id.* at 3.) Finally, on August 18, 2009, Attorney Mulholland billed 1.5 hours, while Attorney Setter billed 1.2. (*Id.* at 5.)

[11] We arrived at this number by reducing the hours Attorney Mulholland asserted in connection with his participation in the July 27, August 5, and August 18 telephone conferences to align with the hours asserted by Attorney Setter. We then reduced his fee accordingly.

certain respects and recommend that the costs and fees assessed therein should be reduced accordingly. Specifically, we conclude that the Forman Perry's its asserted costs and fees should be reduced $778.84, from $34,994 to $34,215.16.

Our recommendation follows.

## R E C O M M E N D A T I O N

AND NOW, this            day of July, 2010, it is **RESPECTFULLY RECOMMENDED** Plaintiff's Motion to Dismiss be **GRANTED** as to the dismissal of those cases set out in Exhibit A of their Motion, (Doc. 100), subject to payment of Defendant's fees and costs in the amount of $34,215.16.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

**ATTACHED LIST OF CASES**

| Last Name | First Name | Mississippi State Dist Court Number | EDPA Docket No. |
| --- | --- | --- | --- |
| Brady | Clinton L. | 2006-407-CV11 | 5:08-cv-87071 |
| Broom | Harvey E. | 2006-519-CV11 | 5:08-cv-87069 |
| Bullock | Deloice | 2006-520-CV11 | 5:08-cv-87072 |
| Crawford | Joseph | 2006-394-CV11 | 5:08-cv-87080 |
| Curd | Patrick | 2006-525-CV11 | 5:08-cv-87083 |
| Daniels | Willie Lee | 2006-409-CV11 | 5:08-cv-87068 |
| Daughdrill | Dan Mack | 2006-526-CV11 | 5:08-cv-87081 |
| Dearman | Rolland | 2006-410-CV11 | 5:08-cv-87070 |
| Dixon | George D. | 2006-374-CV11 | 5:08-cv-87077 |
| Emler | Louie T. | 2006-464-CV11 | 5:08-cv-87084 |
| Faust | Johnny W. | 2006-90-CV3 | 5:08-cv-85894 |
| Herring (dec'd) | Henry A. | 2006-468-CV11 | 5:08-cv-87079 |
| Livingston | Daniel | 2006-94-CV3 | 5:08-cv-85987 |
| Lord, Sr. | Archie A. | 16-0056 | 5:08-cv-87030 |
| McPhail | Ralph T. | 2006-345-CV9 | 5:08-cv-87048 |
| Mounteer, Sr. | Eliel K. | 2006-555-V11 | 5:08-cv-87073 |
| Newsom | Joseph | 16-0018 | 5:08-cv-87076 |
| Newsom | Lonnie | 2006-414-CV11 | 5:08-cv-87031 |
| Piner | Ted L. | 2006-415-CV11 | 5:08-cv-87078 |
| Polk | Brandon Kaye | 2006-206-CV3 | 5:08-cv-85986 |
| Polk | Dale F. | 2006-85-CV3 | 5:08-cv-85985 |
| Rawls | Ray C. | 2006-417-CV11 | 5:08-cv-87075 |
| Smith (dec'd) | Cleophus | 2006-75 | 5:08-cv-87032 |
| Thomas | Tony N. | 2006-573-CV11 | 5:08-cv-87082 |
| Wallace | Terry | 2006-491-CV11 | 5:08-cv-87074 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

July 21, 2010

RE: Asbestos Products Liability Litigation (No. VI)
CA No. 09-mc-103

### NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Strawbridge, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge**.

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: s/Thomas Giambrone
Thomas Giambrone, Deputy Clerk

cc: P. Lacey, Jr.
K. Gates
R. Burson
R. Foster

civ623.frm
(11/07)