# EXHIBIT 2

```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA



IN RE:                          *    Docket 00-CV-558-R
                                *
THE BABCOCK & WILCOX COMPANY     *    January 25, 2002
                                *    10:00 a.m.
* * * * * * * * * * * * * *



            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                HONORABLE SARAH S. VANCE
              UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Debtors:                 Kirkland & Ellis
                                 BY:  DAVID M. BERNICK, ESQ.
                                 200 E. Randolph Drive
                                 Chicago, Illinois 60601


For the Asbestos                 Caplin & Drysdale
   Claimants Committee:          BY:  ELIHU INSELBUCH, ESQ.
                                 399 Park Avenue, 27th Floor
                                 New York, New York 10022


Official Court Reporter:         Toni Doyle Tusa, CCR
                                 501 Magazine Street, Room 406
                                 New Orleans, Louisiana 70130
                                 (504) 589-7778
```

Proceedings recorded by mechanical stenography, transcript produced by computer.

```
 1   APPEARANCES, (Continued):

 2
     For the Unofficial                ELIZABETH W. MAGNER, ESQ.
 3      Committee of Select            228 St. Charles Avenue
        Claimants:                     Suite 1110
 4                                     New Orleans, Louisiana 70130

 5
     For the Futures                   Young, Conaway, Stargatt
 6      Representative:                   & Taylor
                                       BY:  JAMES L. PATTON, JR., ESQ.
 7                                     1000 West Street, 17th Floor
                                       Wilmington, Delaware 19801
 8

 9   For the Futures                   Session, Fishman & Nathan
        Representative:                BY:  J. DAVID FORSYTH, ESQ.
10                                     201 St. Charles Avenue, 35th Floor
                                       New Orleans, Louisiana 70170
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

# I N D E X

|  | Page | Line |
|---|---|---|
| David M. Bernick, Esq. | 4 | 10 |
| Elihu Inselbuch, Esq. | 36 | 20 |
| J. David Forsyth, Esq. | 50 | 1 |
| James L. Patton, Esq. | 50 | 9 |
| Elizabeth W. Magner, Esq. | 58 | 9 |
| David M. Bernick, Esq. | 60 | 14 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  rules do not change in Chapter 11.  The next question, is it
2  simply an --
3         THE COURT:  Let me get to what's on my mind about
4  this.  I've read all of your materials and a number of
5  questions leap out at me.  You have 221,000 proofs of claim.
6         MR. BERNICK:  That's correct.
7         THE COURT:  How much are the company's assets and
8  insurance?
9         MR. BERNICK:  The face value of the insurance is
10 $1.3 billion.  That requires also a plugging of insolvency
11 holes of about $150 million, which would have to be supplied by
12 the company.  Beyond the insurance, the company's net assets as
13 of the time of the insolvency hearing -- I would have to find
14 out for Your Honor.
15        THE COURT:  Can you give me sort of a ballpark?
16        MR. BERNICK:  Oh, I don't know -- somebody want to
17 help me out?  $500 million or $600 million.
18        THE COURT:  How much debt do you have that's
19 nonasbestos-related?
20        MR. BERNICK:  I believe the number we gave you is the
21 net assets number.
22        THE COURT:  That was net?
23        MR. BERNICK:  Yes.
24        THE COURT:  Now, the process that you're talking
25 about, essentially of these 221,000 claims you contend that

1 only about 22,000 of them are arguably viable?

2     MR. BERNICK: 22,000, I take it Your Honor has gone
3 through and kind of marked out categories that we put numbers
4 on and done the subtraction?

5     THE COURT: Right.

6     MR. BERNICK: I'm not sure that's correct because
7 there's overlap between some of those categories.

8     THE COURT: Well, what I looked at was you had these
9 categories that you say are claims that are nonviable. There
10 were like 22,000 left that are arguably viable, to which you
11 say you have other defenses as to the 22,000.

12     MR. BERNICK: I don't know what exactly the math was
13 that Your Honor followed. As I indicated, some of these
14 categories that we put numbers on are overlapping, so you would
15 have to see how they net out.

16     THE COURT: I think I was following what you put in
17 your surreply brief because the original brief that you
18 submitted didn't do that. Your supplemental brief basically
19 listed that there were: 50,000 claims that were challengeable
20 on the basis of duplication, that were paid already, they were
21 employees, or they lacked some sort of documentation; another
22 160,000 had no exposure; 40,000 that had arguable exposure, had
23 no impairment; and that there were 22,000 left after.

24     MR. BERNICK: That's fair enough.

25     THE COURT: If what you are saying is true, that

1  still would mean that before we got to the 22,000 that are
2  arguably viable I would have to make 200,000 discrete
3  determinations that these claims were not sufficient to
4  proceed, is that right?
5       MR. BERNICK: You would have to make a determination
6  with regard to those claims. The word "discrete" suggests it
7  would be individualized.
8       THE COURT: How else?
9       MR. BERNICK: That's the whole purpose of Rule 42.
10 It enables the Court to aggregate claims for purposes of
11 addressing a common issue.
12      THE COURT: But the issues are still individual
13 issues. If you are going to lump them all together and say,
14 okay, these 160,000 may have an issue involving exposure --
15 each one of those people has an issue as to exposure that has
16 to be determined. Simply putting them together for Rule 42
17 doesn't make the individual issue go away.
18      MR. BERNICK: It depends upon the nature of the issue
19 and the nature of the proof. Obviously, in order to make a
20 determination binding with regard to an individual claimant,
21 that claimant's particular claim has to be before the Court.
22 But in the same fashion, if you were to say we had 100,000
23 people all of whom got a certain disease from exposure to a
24 pharmaceutical drug --
25      THE COURT: That doesn't have anything to do with

1  this.  You are saying that you have 160,000 people who weren't
2  exposed to your boilers.
3       MR. BERNICK:  Right.
4       THE COURT:  Now, how can I do that except one at a
5  time?
6       MR. BERNICK:  Because you take the proof of claim
7  forms, and where they say by their own proof of claim forms
8  they were exposed to Babcock & Wilcox asbestos, it's right in
9  their claim forms.  You compare what their claim forms say was
10 the site of that exposure to the Babcock & Wilcox boiler sites
11 which are documented and recorded.  A boiler is not something
12 that floats in and out.  They are huge facilities.  You see if
13 there's an overlap between those 95,000 --
14      THE COURT:  That's not the end of the story.  We
15 don't know the validity of your data.  There has to be a
16 determination.  The fact they say, "I was exposed to a boiler
17 at X, Y, Z location," and you say, "No, you weren't," is not
18 the end of the story.
19      MR. BERNICK:  I could see there might be a necessity
20 of some discovery to verify the accuracy of our documentation,
21 and that verification I believe would be fairly
22 straightforward.  We would establish it was a business practice
23 to create files for each and every boiler that was manufactured
24 and supplied, that they had been kept in the ordinary course of
25 business, they had been maintained and what work done on those

1  boilers recorded, these are the boiler files, and they are what
2  they are.
3  Now, if somebody is going to say, "No, it turns
4  out that you really had another boiler that you didn't even
5  know about that's not in your files, not in your records,
6  nobody ever heard about it, but I swear it was a Babcock &
7  Wilcox boiler," then you could argue there's an issue of fact.
8  The question is whether it's a credible issue of fact given
9  what the proofs would be.
10  THE COURT: Well, we would have to get into 160,000
11  of those possibilities.
12  MR. BERNICK: There's that possibility, or the Court
13  could determine based upon the evidence that's been provided
14  about how these boilers were set up, how they were certified,
15  how they were tracked, and how they were logged. That oral
16  testimony saying, "I saw what I thought to be a Babcock &
17  Wilcox boiler," does not present a reasonable issue of fact.
18  It is not an issue of fact in which reasonable minds could
19  differ and shouldn't go to the jury.
20  THE COURT: We still would have to get to that as to
21  each one.
22  MR. BERNICK: I would disagree with that, Your Honor.
23  You get to that on the basis of the nature of the proof that's
24  offered by the company about what the documentation means. So,
25  in other words, we say if the documentation is solid, reliable

1  documentation that's been properly kept, had to be kept, and
2  that all that's on the other side, therefore, is somebody who
3  says, "I was there and I saw a different thing," you don't have
4  to make that determination 160,000 times. The question is
5  whether the oral testimony in some fashion has enough
6  credibility as against the documented history of record-keeping
7  to create a reasonable issue of fact. It's the whole question
8  of the summary judgment standard of proof. It's not just a
9  disagreement between two people saying something.
10             THE COURT: It's your contention there are 160,000
11 people who have said they were exposed to your boilers who were
12 not at any place where there was --
13             MR. BERNICK: There are 93,000 people who already in
14 their claim forms say, "I was exposed to Babcock & Wilcox
15 asbestos," and they fill in the blank with the site where there
16 was never a Babcock & Wilcox boiler. There are 95,000 of those
17 people. There are an additional 65,000 where we think that's
18 what they have done, but we are not quite sure, so we create a
19 45-day window, or thereabouts, for them to clarify what was the
20 particular site where they say a boiler existed. These can be
21 done on an aggregated basis.
22             It's really a question of whether summary
23 judgment means anything. If all that it takes to defeat
24 summary judgment is somebody to say, "I disagree. I saw it,"
25 then we won't have summary judgment, but that's not the

1  standard. The standard is it has to be sufficient evidence to
2  clear a directed verdict motion. It must be evidence
3  sufficient to give rise to a reasonable difference of view
4  about what the facts were.
5      THE COURT: All right. Let me ask you something
6  else. Even if you lose on these 200,000, before we get to the
7  22,000 there are additional grounds you can challenge any one
8  of those people in the first 200,000. There are multiple
9  grounds that you could keep coming back. If you lost, say, on
10 the boiler issue, you would come back later on a sophisticated
11 user or some other motion later, right?
12     MR. BERNICK: Right. Well, in the case of the boiler
13 issue, if the boiler wasn't there, it's going to be difficult
14 for us --
15     THE COURT: Suppose there's an issue of fact and you
16 lose that summary judgment motion. That's not the end of it
17 because you have a backup summary judgment motion down the road
18 because you have about 644,000 possible objections that could
19 be made to these claims if I add all this stuff up.
20     MR. BERNICK: I understand what you say. If we lose
21 on summary judgment as to whether the boiler is there, will we
22 have other backup defenses, and the answer is there are medical
23 defenses. Some of the other defenses are not really backup
24 defenses because you have to know what the boiler was and when
25 it was put in place to make them. For example, the statute of

1  repose assumes that you can identify a boiler and know when it
2  was finished, so that's a defense that can't be a backup
3  defense.  By contrast, the defense that says that there's a
4  medical condition that has not been proven by reliable
5  evidence, yes, that would be a second wave of defenses not
6  focused on our conduct or on product identification, that are
7  focused on the medicine, and the reason we put them second is
8  because we believe they are going to be a little more difficult
9  to deal with because they will require some expert testimony.
10         THE COURT:  How long do you envision this process
11 taking?
12         MR. BERNICK:  I think this process is really almost
13 purely a question of paperwork, with some limited discovery.  I
14 think the first wave of this process could be before Your Honor
15 in a matter of months.
16         THE COURT:  I'm talking about the total lifetime of
17 this process.
18         MR. BERNICK:  The total lifetime?
19         THE COURT:  Getting it before me -- I'm not a claims
20 adjustor.  I was trained as a lawyer and as a judge, and if I
21 get motions it takes me time to look at things.  It's not going
22 to be months for me to decide 200,000 discrete questions.  I
23 know that.  It takes months to get your arms around the 200,000
24 that you even have in the Court.
25         MR. BERNICK:  I think realistically what Your Honor

```
 1  would get is a brief from us -- let's take the boilers as an
 2  example.  We would take the 93,000 and we would file an omnibus
 3  objection and move for summary judgment, and we would attach to
 4  the motion for summary judgment affidavits of documentation of
 5  where our boilers were.
 6           That is one of the most perverse issues, that
 7  somehow there's a big boiler there and nobody really knew about
 8  it except this person saw it.  So we would submit that
 9  documentation.  They would be entitled to conduct some
10  discovery, obviously, to verify what the accuracy of that
11  documentation is.
12           THE COURT:  You would give them 30 days to do that?
13           MR. BERNICK:  I would give them 30 days on the
14  discovery, probably, yes.  It's really relatively simple
15  discovery.  All it is is taking the depositions of the people
16  who maintained the records and finding out what records they
17  have.  This is not rocket science.  It's not that complex.  We
18  take the discovery, then --
19           THE COURT:  You don't want to depose them?  You don't
20  want to depose the plaintiffs on that issue?
21           MR. BERNICK:  Well, on the issue of what they saw,
22  no.  I think that, in fact, the claim form is probably enough
23  for us to pose the issue; that is, that we would rest upon the
24  reliability of our documentation in order to establish, in
25  fact, the boiler was not there.
```

1    THE COURT: If the plaintiff came in and said, "I saw
2 something different," you would be content not to cross-examine
3 the plaintiff?
4    MR. BERNICK: It might be interesting to take a few
5 depositions and develop some feel for the Court on what kind of
6 testimony is offered, but we are not going to sit there and
7 take 95,000 depositions.
8    THE COURT: Tell me how long this first 95,000 is
9 going to take to dispose of.
10    MR. BERNICK: That, I think, could be done in three
11 months. Again, because --
12    THE COURT: Who is doing what? Your part or my part?
13    MR. BERNICK: It depends on how fast you read the
14 papers. Your Honor I think is justifiably and
15 understandably -- I'll use the word I think it's --
16    THE COURT: Try awe-struck.
17    MR. BERNICK: Awe-struck, intimidated, disconcerted
18 by the numbers, but the numbers are not what drive the
19 equation. What's going to drive the equation is our ability to
20 pick out common predicate facts that can be adjudicated, and it
21 has to be a small number of common predicate facts. If we
22 can't do that, it will take a very long time, and that's not
23 our concept. Our concept is to pick out what counts and put it
24 before Your Honor, what counts here. What counts here is the
25 accuracy of our records in convincing you that there was a

1   is reasonable.

2        MR. BERNICK:  There are two huge restrictions that
3   absolutely foreclose those.  It would be clearly erroneous.
4   Restriction No. 1, the Fifth Circuit's decision in the <u>Cimino</u>
5   case, you can't extrapolate and, therefore, deprive a litigant
6   of a right to have an individual claim litigated and decided
7   and their business is --

8        THE COURT:  I think you want to totally undo the
9   bankruptcy process, and I just don't agree with your
10  interpretation of how that works, that you can't have an
11  estimation process that considers past history of how claims
12  were settled, to make an estimation that you have to have an
13  individualized determination of every single claim.

14       MR. BERNICK:  You have to have an individualized
15  determination.  Even when you extrapolate, all you are doing is
16  considering only a certain aspect of the claim, is what it got
17  settled for.  You are still using all the individual data.  You
18  take a lot of individual data and are analyzing it
19  statistically and making a projection.  You can go ahead and do
20  that, but it can't decide liability.  When liability is
21  disputed, you can't use estimation or extrapolation to resolve
22  liability.

23       THE COURT:  I'm just saying that it could determine
24  the potential size of the universe for the purposes of voting.
25  I think --