IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | * | |
| ACandS, Inc. | * | Case No: 02-12687 (JKF) |
| | * | |
| In re: | * | |
| | * | |
| Specialty Products Holding Corporation | | Case No: 10-11780 (JKF) |
| | * | |
| In re: | * | |
| | * | |
| Kaiser Aluminum Corporation | * | Case No: 02-10429 (JKF) |
| | * | |
| In re: | * | |
| | * | |
| Owens Corning | | Case No: 00-03837 (JKF) |
| | * | |
| In re: | * | |
| USG Corporation | * | Case No: 01-02094 (JKF) |
| | * | |

ACandS ASBESTOS SETTLEMENT
TRUST; KAISER ALUMINUM &          *
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST; OWENS      *
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and        *
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT        *
TRUST (the "**Trusts**");
                                  *
and
                                  *
TRUST ADVISORY COMMITTEE FOR
THE ACANDS ASBESTOS SETTLEMENT    *
TRUST; TRUST ADVISORY
COMMITTEE FOR THE KAISER          *
ALUMINUM & CHEMICAL
CORPORATION ASBESTOS PERSONAL     *

INJURY TRUST; TRUST ADVISORY
COMMITTEE FOR THE OWENS                    *
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and TRUST          *
ADVISORY COMMITTEE FOR THE
UNITED STATES GYPSUM ASBESTOS             *
PERSONAL INJURY SETTLEMENT
TRUST (the "**TACs**");                        *

and                                          *

HON. DEAN M. TRAFELET (RET.), THE         *
LEGAL REPRESENTATIVE FOR
FUTURE CLAIMANTS AGAINST THE              *
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT                *
TRUST (the "**Futures Representative**")        Adv. Pro. No:    10-53702 (JKF)
                                             *

     Plaintiffs
                                             *
v.
                                             *

HARTFORD ACCIDENT AND
INDEMNITY CO., FIRST STATE                *
INSURANCE CO., NEW ENGLAND
INSURANCE COMPANY, NATIONAL               *
UNION FIRE COMPANY OF
PITTSBURGH, PA, AMERICAN HOME             *
ASSURANCE CO., GARLOCK SEALING
TECHNOLOGIES, LLC., SPECIALTY             *
PRODUCTS HOLDING CORP.,
DELAWARE CLAIMS PROCESSING                *
FACILITY, LLC, and VERUS CLAIMS
SERVICES, LLC                              *

     Defendants                         *


## MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

MOTION FOR PRELIMINARY INJUNCTION.......................................................................1

BACKGROUND ..................................................................................................................1

*The Court's Role in Creating and Continuing Jurisdiction over the Trusts* ......................1

*The Trusts' Sole Purpose is to pay Claimants in Accordance with the TDP* ......................2

*The Massive Discovery Facing the Trusts* ........................................................................4

ARGUMENT......................................................................................................................9

I.   This Court Has Authority to Enjoin Attempts to Issue Discovery Requests to the Trusts That Violate the Trusts' Governing Documents and Threaten the Trusts' Purpose..................................................................................................................10

II.  Preliminary Injunctive Relief Is Appropriate and Necessary ...........................................12

    A.   Plaintiffs are likely to succeed in obtaining the declaratory and injunctive relief sought in the complaint ...............................................................................13

    B.   The Trusts and claimant constituencies will be irreparably harmed if the massive and abusive discovery is allowed to proceed ..........................................14

    C.   Preliminary injunctive relief will not harm the parties seeking the inappropriate discovery.......................................................................................15

    D.   The public interest will be served by protecting the Trusts from abusive and improper discovery.......................................................................................20

    E.   The Plaintiffs should not be required to post a bond or security ...........................20

CONCLUSION..................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acierno v. New Castle Cty.,*
   40 F.3d 645 (3d Cir. 1994)................................................................................12

*A.H. Robins Co. v. Piccinin,*
   788 F.2d 994 (4th Cir. 1986) .......................................................................11, 12

*In re Am. Film Techs., Inc.,*
   175 B.R. 847 (Bankr. D. Del. 1994) ...............................................................12

*In re AP Indus., Inc.,*
   117 B.R. 789 (Bankr. S.D.N.Y. 1990)..............................................................11

*In re Armstrong World Indus., Inc.,*
   348 B.R. 111 (D. Del. 2006)............................................................................17

*Andaloro v. Armstrong World Indus., Inc.,*
   799 A.2d 71 (Pa. Super. 2002).....................................................................18, 19

*Baker v. ACandS,*
   755 A.2d 664 (Pa. 2000) ..................................................................................18

*Collins v. Plant Insulation Co.,*
   185 Cal. App. 4th 260 (Cal. App. 2010) .........................................................19

*Concord Boat Corp. v. Brunswick Corp.,*
   169 F.R.D. 44 (S.D.N.Y. 1996) .......................................................................14

*Coulter v. Asten Group, Inc.,*
   230 P.3d 169 (Wash. App. 2010)......................................................................18

*Dent v. Westinghouse,*
   MDL No. 875, 2010 WL 56054 (E.D. Pa. Jan. 4, 2010) .........................................15

*In re Eagle-Picher Indus., Inc.,*
   963 F.2d 855 (6th Cir. 1992) .......................................................................12, 13

*In re Eagle-Picher Indus., Inc.,*
   189 B.R. 681 (Bankr. S.D. Ohio 1995)........................................................16, 17

*In re Federal-Mogul Global Inc.,*
   330 B.R. 133 (D. Del. 2005).............................................................................17

*Garcia v. Duro Dyne Corp.*,
   156 Cal. App. 4th 92 (Cal. App. 2007) ...................................................................19

*In re Johns-Manville Corp.*,
   26 B.R. 420 (Bankr. S.D.N.Y. 1982) .....................................................................11

*McIntyre v. Balentine*,
   833 S.W.2d 52 (Tenn. 1992)..................................................................................17

*In re Monroe Well Serv., Inc.*,
   67 B.R. 746 (Bankr. E. D. Pa. 1986) .....................................................................12

*In re New York City Asbestos Litig.*,
   750 N.Y.S.2d 469 (N.Y. Sup. Ct. 2002) ................................................................19

*Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*,
   25 B.R. 1018 (D.N.M. 1982) .................................................................................11

*Owens Corning v. Credit Suisse First Boston (In re Owens Corning)*,
   322 B.R. 719 (D. Del. 2005)..................................................................................17

*Phar-Mor, Inc. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.)*,
   166 B.R. 57 (W.D. Pa. 1994) ................................................................................12

*Shepherd v. Pneumo-Abex, LLC*,
   MDL No. 875, 2010 WL 3431633 (E.D. Pa. Aug. 30, 2010)..................................15

*Sparks v. Owens-Illinois, Inc.*,
   32 Cal. App. 4th 461 (Cal. App. 1995) ..................................................................19

*In re Stadium Mgmt. Corp.*,
   95 B.R. 264 (D. Mass. 1988) .................................................................................11

*In re W. R. Grace & Co.*,
   386 B.R. 17 (Bankr. D. Del. 2008) ...................................................................12, 20

*In re Zale Corp.*,
   62 F.3d 746 (5th Cir. 1995) ...................................................................................12

**STATUTES**

11 U.S.C. § 105............................................................................................... *passim*

11 U.S.C. § 362.........................................................................................................11

11 U.S.C. § 524(g) .......................................................................................... *passim*

Alaska Stat. § 09.17.080(d) (1997)...........................................................................18

Wyo. Stat. Ann. § 1-1-109(e) (1988) .......................................................................................18

**OTHER AUTHORITIES**

Fed. R. Bankr. R. 7065 ...........................................................................................................20

Fed. R. Civ. P. 45 ..............................................................................................................13, 14

Fed. R. Civ. P. 65 ....................................................................................................................21

H.R. Rep. No. 95-595 (1977) ...................................................................................................10

Jean Macchiaroli Eggen, *Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions*, 73 Tex. L. Rev. 1701 (1995) ................................................18

S. Rep. No. 95-989 (1978) ........................................................................................................11

Tex. Civ. Prac. & Rem. § 33.004 .............................................................................................19

## MOTION FOR PRELIMINARY INJUNCTION

The ACandS Asbestos Settlement Trust, the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, and the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Trusts**"); the Trust Advisory Committees for the ACandS Asbestos Settlement Trust, the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, and the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**TACs**"); and Hon. Dean M. Trafelet (Ret.), the Legal Representative for Future Claimants Against the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Futures Representative**") (collectively, "**Plaintiffs**"), having filed an adversary complaint in the captioned cases seeking declaratory and injunctive relief protecting the Trusts from abusive and improper discovery (the "**Complaint**"), move pursuant to Federal Rule of Bankruptcy Procedure 7065 and 11 U.S.C. § 105 for preliminary injunctive relief enjoining the continuation of the discovery against the Trusts described in the Complaint and all discovery of a similar nature until such time as the Court has ruled on the issues raised in the Complaint.

## BACKGROUND

### *The Court's Role in Creating and Continuing Jurisdiction over the Trusts*

1.     As the Plaintiffs set forth in detail in their Complaint in this adversary proceeding, this Court presided over the bankruptcies that occasioned the creation of each of these section 524(g) Trusts, and reviewed and confirmed the Plans of Reorganization in the captioned cases (the "**Plans**") that established these Trusts and the corresponding Trust Distribution Procedures ("**TDP**") pursuant to which the Trusts operate.

2.     In its Orders confirming the Plans and in the Plans themselves, this Court retained

exclusive jurisdiction post-confirmation to "[i]ssue injunctions, enforce the injunctions contained

in the Plan and Confirmation Order, enter and implement other orders or take such other actions

as may be necessary or appropriate to restrain interference by any Entity with consummation,

implementation, or enforcement of the Plan or Confirmation Order",[1] and to "[d]etermine any

other matters that may arise in connection with or relate to the Plan, the Disclosure Statement,

the Confirmation Order or any contract, instrument, release or other agreement or document

entered into or delivered in connection with the Plan, the Disclosure Statement, or the

Confirmation Order."[2]  The Court's continuing jurisdiction under these provisions encompasses

this motion requesting that third-parties be enjoined from attempting to force the Trusts to

produce massive amounts of information regarding the Trusts' claimants in contravention of the

TDP in cases in which the Trusts have no role or interest.

### *The Trusts' Sole Purpose is to Pay Claimants in Accordance with the TDP*

3.     The Trusts exist to resolve those asbestos liabilities that are channeled to them

under section 524(g).  The TDP provide a mechanism for resolving the channeled claims by

---

[1] Joint Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10709].

[2] Second Amended Joint Plan of Reorganization at Art. XIII.1 & XIII.n, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Sept. 7, 2005) [Dkt. No. 7312].  *See also* Order Confirming ACandS's Second Plan of Reorganization, *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. May 8, 2008) [Dkt. No. 3309] and Second Plan of Reorganization of ACandS Inc. at 13.3(d) & 13.3(e), *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109]; Order Confirming the Sixth Amended Joint Plan of Reorganization at 57-58, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. Sept. 26, 2006) [Dkt. No. 19366] and Sixth Amended Joint Plan of Reorganization at 13.1(a) & (l), *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. July 10, 2006) [Dkt. No. 18339, Appendix A]; Order Confirming the First Amended Joint Plan of Reorganization at 27-28, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. June 15, 2006) [Dkt. No. 11688] and First Amended Chapter 11 Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10810].

paying those claims that satisfy the TDP's medical and exposure criteria. The TDP for the Trusts have been developed over the course of asbestos bankruptcy litigation, and, although they include some minor variations, are largely uniform.

4.     The primary objective of the TDP is to "provide fair, equitable, and substantially similar treatment for all PI Trust Claims that may presently exist or may arise in the future." Owens Corning Asbestos Personal Injury TDP § 1.1.

5.     This Court is generally familiar with the legal and factual basis for each of the carefully crafted provisions included in the TDP for each of the Trusts. Over the course of the bankruptcies in which the Trusts were established, this Court reviewed numerous versions of the TDP, and heard and considered objections, evidence and arguments regarding the reasonableness and appropriateness of the TDP's provisions.

6.     Generally, the TDP are aimed at mimicking how defendants settle cases in the tort system throughout the country. *See, e.g.*, Transcript of Plan Confirmation Hearing at 85-86, *In re W.R. Grace & Co.*, No. 01-1139 (Bankr. D. Del. Sep. 8, 2009) (Inselbuch, Elihu) (excerpt attached as Ex. 1). They attempt to settle claims submitted to the Trusts for the asbestos bankrupt's several share of the total liability, and aim to pay each claim only once. *Id.*

7.     Because the TDP are carefully designed to leave the tort system as they found it, they include provisions intended to ensure that the Trusts are not forced to respond to discovery that could not be enforced against the defendants whose insolvencies occasioned the creation of the Trusts. In the tort system, for example, courts routinely refuse to allow defendants to obtain information regarding the amounts claimants have received from others, including settling asbestos trusts. Similarly, plaintiffs could not obtain information regarding settlements a defendant has made with other plaintiffs. The TDP ensure that the Trusts treat claimant

submissions in the same manner as a solvent settling co-defendant would treat settlement information, and provide the same protections for those materials as a settling co-defendant has in the tort system. Under the TDP, the Trusts are required to protect the confidentiality of their claimants' information, and may respond only to properly limited discovery requests arising in individual asbestos personal injury cases to the extent required by state or other applicable non-bankruptcy law with the permission of the claimant whose information is subject to disclosure.[3]

8.    The TDP also include confidentiality provisions crafted to guard the confidentiality of claimants' submissions.[4] These provisions provide that the Trusts' claimants' information will be protected by "all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions."[5] The TDP's confidentiality provisions also require the Trusts to preserve the confidentiality of the submissions and to obtain the permission of any individual claimant whose information is called for before responding to a validly issued subpoena.

### The Massive Discovery Facing the Trusts

9.    Because the Trusts, like all asbestos trusts, collect and store a great deal of information regarding their claimants, including medical and settlement data, they are tempting targets for discovery abuse, and have recently been subjected to burdensome third-party discovery requests in cases all around the country in which the Trusts have no role or interest.

---

[3] *See* Owens Corning Asbestos Personal Injury Trust TDP § 6.5 (providing that "[t]he PI Trust will preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only, with the permission of the holder . . . in response to a valid subpoena of such materials issued by the Bankruptcy Court"). *See also* ACandS, Inc. Asbestos Settlement TDP § 6.5 (Aug. 19, 2008); Kaiser Aluminum & Chemical Corporation Third Amended Asbestos TDP § 6.5 (Nov. 20, 2007); United States Gypsum Asbestos Personal Injury Settlement TDP § 6.5 (Mar. 29, 2010).

[4] *See id.*

[5] *See id.*

These requests are made by, among others, other insolvent asbestos defendants that are attempting to reorganize, creditors' committees in asbestos bankruptcies, and insurers. These requests have intensified in frequency and scope over the past several months.

10.    The need for a definitive ruling construing the Plan documents, and guidance on a high-level basis regarding what information the Trusts are permitted to produce in response to third-party discovery requests for information regarding hundreds and thousands of the Trusts' claimants, has become urgent. Often, the courts in which these third-party discovery requests are litigated are unfamiliar with the history of asbestos litigation and the role and purpose of the Trusts, and are actively engaged in the administration of complex reorganizations and contentious litigation, to which the Trusts are unknown third-parties, and thus may not appreciate the importance of protecting the Trusts from improper discovery, and the significance of the confidentiality provisions included in the TDP. For example, in the *Motors Liquidation* bankruptcy case, Judge Gerber was unmoved by the full panoply of objections presented by the Trusts and the claims processing facilities, third-parties to the reorganization, to producing information that was protected under the TDP, and bearing the burden of notifying the thousands of individual claimants whose information was implicated.[6]

11.    Attempts to obtain massive quantities of claimant information from the Trusts via third-party discovery have become increasingly frequent over the past several months. Insurers and reorganizing asbestos defendants, as well as other entities involved in asbestos bankruptcies,

---

[6] Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (II) the Trusts, and (III) General Motors LLC and the Debtors, *In re Motors Liquidation Co., f/k/a General Motors Corp.*, No. 09-50026 (Bankr. S.D.N.Y. Aug. 24, 2010) [Dkt. No. 6749]. *See also* Transcript of Hearing, *In re Motors Liquidation Co., f/k/a General Motors Corp.*, No. 09-50026 (Bankr. S.D.N.Y. Aug. 9, 2010) [Dkt. No. 540-544].

have both issued and threatened discovery requests seeking truly massive amounts of the Trusts' claimants' information, culminating in an unprecedented request for the entirety of dozens of asbestos trusts' claimant information.

12.    In May of 2010, in connection with insurance coverage litigation between Federal-Mogul Products, Inc./Federal-Mogul U.S. Asbestos Bodily Injury Trust and several insurers in New Jersey state court, several of the insurers served a subpoena on Verus Claims Services, LLC ("**Verus**"), the claims processing facility for several asbestos trusts, including the ACandS Asbestos Settlement Trust and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust.[7] The subpoena noticed a deposition and sought all documents and information submitted to Verus or any trust by more than 100,000 asbestos claimants, including all documents and communications regarding any resolution and/or allowance decisions regarding those claims, any documents identifying a claim deficiency, and any printable claims forms, computer data and/or databases identifying, reflecting, or in any way relating, to a claim submitted to Verus or any Trust by those asbestos claimants.[8]

13.    In July of 2010, the Official Committee of Unsecured Creditors in the *Motors Liquidation Co.* bankruptcy case moved for leave to serve subpoenas compelling the production of documents by the claims processing facilities for seven asbestos trusts, including "any and all claims forms and other filings submitted to each of the Trusts by the plaintiffs in each of the pre-petition asbestos personal injury actions against Old GM in which the plaintiffs alleged they suffered from mesothelioma" and "the amounts paid by each of the Trusts to the plaintiffs in the

---

[7] Subpoena, *Federal-Mogul Prods., Inc. v AIG*, No. MRS-L-2535-06 (N. J. Sup. Ct. May 25, 2010) (Ex. 2).

[8] *Id.*

Mesothelioma Cases."[9]  The request encompassed the seven trusts' claim files and settlement

payment history for more than 7,000 individuals,[10] potentially encompassing hundreds of

thousands of pages of individuals' detailed medical files and evidence of exposure to asbestos-

containing products of other companies.  The creditors' committee claimed this information was

necessary to fill in certain alleged "gaps" in the debtors' claims database, and to show that the

actual values at which the debtor historically resolved its claims were wrong.[11]

14.    On October 1, 2010, several insurers served a subpoena on Verus in connection

with insurance coverage litigation between Porter Hayden and several of its insurers pending in

the federal district court in Maryland.[12]  The subpoena noticed a deposition and ordered

production of all information as many as 20,000 claimants that had filed claims against both

Porter Hayden and other asbestos trusts submitted to any trust, all amounts paid to a claimant by

any trust, and the claim status of any claim which had not yet been paid.

15.    On October 11, 2010, in the *In re Specialty Products Holding Corp.* bankruptcy

case currently pending before this Court, the debtors, Specialty Products Holding Corp. and

Bondex International, Inc., requested leave to issue subpoenas to several claims processing

---

[9] Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents By (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors at 9-10, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. July 20, 2010) [Dkt. No. 6383] ("**GM Motion**") (Ex. 3).

[10] *See* Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document Discovery and Deposition Testimony from the Debtors and from General Motors LLC, Its Subsidiaries and Affiliated Companies, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. July 20, 2010) [Dkt. No. 6382] (Ex. 4).

[11] GM Motion at 8.

[12] Notice of Subpoena, *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, No. 03-3414 (D. Md. Oct. 1, 2010) (Ex. 5).

facilities that process claims for the Trusts.[13]  The debtors requested that the asbestos trusts be

forced to produce all information in their possession regarding every claimant that has filed

claims against the debtors and the trusts, including the information each claimant supplied on the

claim forms submitted to each of the trusts, the amounts paid, if any, to each claimant by each of

the trusts, and the status of each claimant's claim that has been submitted but not resolved

against every trust.[14]  The debtors also seek an order that would compel the Trusts and claims

facilities to produce all of the requested discovery, and the debtors seek to have this order issue

before the discovery is even served.  The debtors' proposed discovery would encompass an

enormous amount of data, including settlement information.

16.    Two days later, the debtors in the *In re Garlock Sealing Technologies LLC*

bankruptcy case presently pending in the Bankruptcy Court for the Western District of North

Carolina filed a similar motion seeking leave to serve discovery on several claims processing

facilities and numerous asbestos trusts, including the Trusts that are plaintiffs in this adversary

proceeding.[15]  Discovery sought in *Garlock* of the claims processing facilities and trusts is

nothing less than a "complete electronic copy of the Trust's[s'] database[s] of asbestos claims,

often described as 'individual level claims data' or 'claimant and claim level database'," and a

"complete electronic copy of any database relating to asbestos claims filed against any Debtor

---

[13] Motion of the Debtors for an Order, Pursuant to Rule 2004 of the Federal Rules of Bankruptcy
Procedure, Directing Production of Information by Claims Processing Facilities for Certain
Asbestos Personal Injury Trusts, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D.
Del. Oct. 11, 2010) [Dkt. No. 437] (Ex. 6).

[14] *Id.*

[15] Motion of Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of
Data by Claims Processing Facilities and Asbestos Trusts, *In re Garlock Sealing Techs., LLC*,
No. 10-31607 (Bankr. W.D.N.C. Oct. 13, 2010) [Dkt. No. 601] ("**Garlock Motion**") (Ex. 7).

prior to the date the respective Debtor petitioned for relief under the Bankruptcy Code."[16]   The

debtors seek the Trusts' entire claims files/records for every single one of the Trusts' claimants;

literally, hundreds of thousands of claimants' information.   And, as in *Bondex*, the debtors also

seek an order that would compel the Trusts and claims facilities to produce all of the requested

discovery, and they would have this order issue before the discovery is even served.   The

justification offered by the debtors for this wholesale demand for the Trusts' information is that

it is required in order to investigate the degree to which the debtors' claimants have provided

evidence of exposure to other asbestos products when making claims against other parties and

denied such exposure when making claims against the debtors, and to accurately calculate the

shared responsibility of asbestos co-defendants given the debtors' claimants' access to the "tens

of billions of dollars available from wealthy asbestos trusts."[17]

## ARGUMENT

17.   Ultimately, permanent injunctive relief will be necessary to ensure that these

Trusts, and other trusts like them, resulting from complex, tort-driven bankruptcies, and created

to compensate the victims of asbestos pursuant to a bespoke provision of the Bankruptcy Code,

are not turned into clearinghouses of information, forced to provide data for manipulation by

parties in cases in which the Trusts have no interest or role.

18.   Because, as set forth in the Complaint, numerous discovery requests to the Trusts

are pending or threatened, this Court should issue a preliminary injunction preventing such

discovery until this Court has had an opportunity to consider and rule on the questions presented

in the Complaint.

---

[16] Garlock Motion at Ex. B.

[17] Garlock Motion at 8.

19.    It is essential that this Court shield the Trusts from further improper attempts to gain *carte blanche* access to the Trusts' claimants' information, including settlement data, because such discovery violates the TDP and threatens the ability of the Trusts to fulfill their mandate. If the Trusts are continually forced to defend against improper third-party discovery, and routinely compelled to respond to such discovery, irreparable harm will be done to the Trusts and to their claimants. The Trusts' sole purpose, to pay claimants, will be frustrated. Resources of the Trusts will be diverted to continuous efforts to protect claimants' information.

20.    Any harm that would result to the entities requesting broad swaths of information from the Trusts, information that they would never have been able to access in the tort system from the defendants whose insolvencies occasioned the creation of the Trusts, as a resolution of the requested preliminary injunction is dramatically outweighed by the likelihood that the Trusts will be irreparably harmed if such requests continue unchecked. The injunctive relief sought in this motion will ensure that the Trusts are able to function without hindrance and pay claimants in the manner approved by this Court.

## I.    This Court Has Authority to Enjoin Attempts to Issue Discovery Requests to the Trusts That Violate the Trusts' Governing Documents and Threaten the Trusts' Purpose

21.    The Court is empowered to grant injunctive relief pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) confers broad powers upon this Court to implement the bankruptcy process, providing that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Section 105 confers on bankruptcy courts all of the traditional injunctive powers of a court of equity. *See* S. Rep. 95-989, at 12 (1978); H.R. Rep. No. 95-595, at 11, 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 5973, 6298. Section 105(a) therefore authorizes and empowers this Court to

issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of a Chapter 11 case, aid in the preservation of the assets of an estate, and aid in the promulgation and confirmation of a Chapter 11 plan that will maximize recovery to all of the debtor's creditors. *Id.*

22.    The powers conferred on the Court by section 105(a) are broader than the automatic stay provisions, and permit this Court to enter a stay even in a situation that is not included within the automatic stay. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 (4th Cir. 1986) ("The statutory power of the bankruptcy court to stay actions involving the debtor or its property is not, however, limited to section 362 . . . . It has been repeatedly held that 11 U.S.C. § 105 . . . 'empowers the bankruptcy court to enjoin parties other than the [debtor] from commencing or continuing litigation'.") (citing *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 25 B.R. 1018, 1020 (D.N.M. 1982)); *In re AP Indus., Inc.*, 117 B.R. 789, 801 (Bankr. S.D.N.Y. 1990); *In re Stadium Mgmt. Corp.*, 95 B.R. 264, 266-78 (D. Mass. 1988); *see also* S. Rep. No. 95-989, at 12 (1978); H.R. Rep. No. 95-595, at 342-43 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 5973, 6298 ("The court has ample other powers to stay actions not covered by the automatic stay. Section 105 of proposed title 11 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11.").

23.    "Pursuant to § 105(a), the Bankruptcy Court may extend the automatic stay under § 362 of the Code to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of [the debtors'] estates . . . [The Bankruptcy Court has] ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case.'" *In re Johns-Manville Corp.*, 26 B.R. 420, 425, 436 (Bankr. S.D.N.Y. 1982) (citation omitted);

*see also In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995) (Section 105(a) injunction against

suits involving non-debtor third-parties was "necessary and appropriate"); *A.H. Robins Co.*, 788

F.2d at 1003; *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr. E. D. Pa. 1986) ("The

large majority of the courts which have considered the question have held that the bankruptcy

courts have the power to restrain legal action by creditors of the debtor against non-debtor third-

parties, in certain circumstances, pursuant to 11 U.S.C. § 105.").

24.     This Court also has broad power under the Orders this Court entered confirming

the Plans in the captioned cases, as well as the Plans themselves, to construe the Plan documents,

and to act to preserve the integrity of those documents by enjoining third-parties from doing

violence to the Plans and the Trusts. The injunctive relief sought by the Plaintiffs in this action

falls squarely within the authority bestowed upon this Court by these Plans.

## II.     Preliminary Injunctive Relief Is Appropriate and Necessary

25.     In considering the propriety of an injunction under section 105(a), a bankruptcy

court generally considers the typical elements for injunctive relief:

> (1)     the likelihood that the plaintiff will prevail on the merits at a final hearing;
>
> (2)     the extent to which the plaintiff is being irreparably harmed by the conduct complained of;
>
> (3)     the extent to which the defendant will suffer irreparable harm if the preliminary injunction is granted; and
>
> (4)     the public interest.

*In re W. R. Grace & Co.*, 386 B.R. 17, 32 (Bankr. D. Del. 2008); *In re Am. Film Techs., Inc.*, 175

B.R. 847, 849 (Bankr. D. Del. 1994); *see also Acierno v. New Castle County*, 40 F.3d 645, 653

(3d Cir. 1994); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir, 1992); *Phar-Mor,*

*Inc. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.)*, 166 B.R. 57, 61 (W.D. Pa.

1994). The factors are "to be balanced and [are] not prerequisites that must be satisfied. These

factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements. 'A fixed legal standard is not the essence of equity jurisprudence.'" *In re Eagle-Picher*, 963 F.2d at 859 (citations omitted).

26.    Each of the factors weigh in favor of granting the injunctive relief sought here. The Plaintiffs are likely to prevail on the merits of any inquiry regarding the meaning and import of the TDP's confidentiality provisions. The interpretation of the TDP urged by the Plaintiffs is in keeping with the legal framework within which the Trusts were established, and comports with the purpose the Trusts were created to serve. The Trusts exist to pay claims. They were not created to provide reorganizing debtors and insurers with a virtual well of claimants' medical and settlement data, to be drawn on and manipulated in cases in which the Trusts have no interest whatsoever whenever those entities see fit.

### A.    Plaintiffs are likely to succeed in obtaining the declaratory and injunctive relief sought in the Complaint

27.    The Plaintiffs are also likely to be successful in quashing or modifying many of the third-party discovery requests leveled at the Trusts. As detailed above, several entities have moved for leave to issue wholesale demands for a truly massive amount of the Trusts' information, and one reorganizing debtor has even asked that the Trusts be forced to turn over their entire database, attempting to conduct comprehensive discovery into any claims asserted against the Trusts by any person. These requests vastly exceed the scope of permissible discovery. Federal Rule of Civil Procedure 45 commands that "[a] party or an attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expenses on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1). As a corollary, Rule 45 entitles the subpoena respondent to an order quashing or limiting a subpoena inconsistent with the foregoing duty. "On timely motion, the issuing court must quash or modify

a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or

waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv)

(emphasis added). The Advisory Committee's Notes stress the mandatory character of these

provisions, pointing out that "[s]ubparagraph (c)(3)(A) identifies those circumstances in which a

subpoena *must* be quashed or modified." Fed. R. Civ. P. 45, advisory committee's note

(Subdivision c) (emphasis added). For example, in *Concord Boat Corp. v. Brunswick Corp.*, 169

F.R.D. 44, 50 (S.D.N.Y. 1996), the court quashed a request that called for virtually every

document in a non-party's files for a span of ten years where the requested documents had little

relevance to the underlying case. *Id.* at 51. The factors leading to this result were the burden

imposed, the attenuated relevance of the documents, the time period covered, and the generality

of the requests. *See id.* at 53. Several of the subpoenas and discovery requests at issue here are

similarly unreasonable and oppressive on their face.

### B.    The Trusts and claimant constituencies will be irreparably harmed if the massive and abusive discovery is allowed to proceed

28.    The balance of harms strongly favors an injunction of third-parties' attempts to

force the Trusts to allow broad access to claimant information protected under the Trusts'

charging and governing documents. The Trusts are likely to suffer irreparable harm if this Court

does not act to ensure that the Trusts can function pursuant to the TDP that it confirmed and fend

off attempts to force the Trusts to respond to burdensome and improper discovery requests in

violation of those TDP. Once the information sought is produced, it can no longer be protected

from further disclosure. The Trusts presently face the risk of being subjected to conflicting

decisions regarding the appropriateness of the discovery sought by various third-parties in cases

pending in numerous different jurisdictions. Because the Trusts are required to protect the

confidentiality of their claimants' information, they are forced to divert resources from their

central purpose, the payment of claimants, to defend against these requests.  The amount of resources the Trusts are compelled to devote to dealing with the requests has increased as the requests become more frequent.  If the requests continue unabated, it is possible that the purpose which the Trusts are intended to serve will be entirely frustrated.

### C.    Preliminary injunctive relief will not harm the parties seeking the inappropriate discovery

29.    By no stretch of logic will the requested preliminary injunction harm the third-parties that seek access to massive amounts of the Trusts' claimants' information, including settlement materials.  In the tort system, courts routinely refuse to allow defendants to obtain information regarding the amounts claimants have received from others, including settling asbestos trusts.  *See, e.g., Dent v. Westinghouse*, MDL No. 875, EDPA Civil Action No. 08-83111, 2010 WL 56054, at *1 (E.D. Pa. Jan. 4, 2010); *Shepherd v. Pneumo-Abex, LLC*, MDL No. 875, EDPA Civil Action No. 09-91428, 2010 WL 3431633, at *2 (E.D. Pa. Aug. 30, 2010).  No entity attempting to compel the Trusts to respond to discovery vastly exceeding the scope of discovery that was available from the Trusts' asbestos defendant predecessors has any legitimate argument that it would be impaired in any way by the injunction sought by the Plaintiffs.

30.    The third-parties that have sought the discovery of hundreds of thousands of claimants' settlement information attempt to justify their requests in several ways.  None of the justifications, however, warrant permitting such massive discovery, and causing the Trusts irreparable harm.  A recurring argument made by parties seeking information from the Trusts is that claimants make inconsistent claims to trusts and defendants in the tort system.  Similarly, they argue that claimants withhold evidence of exposures to insolvent defendants in their tort-system actions, by fraud or strategic claiming.  No meaningful evidence of this alleged fraud or inconsistent claiming has ever been produced, however.  The TDP themselves do not operate to

"conceal" claims.  As seen above, the TDP do not prohibit the Trusts from responding to

subpoenas pursuant to applicable non-bankruptcy law on an individual case-by-case basis.

Moreover, state courts are capable of policing discovery in the tort system and of fashioning the

appropriate remedy for any failure to provide complete and correct discovery responses, should

evidence of such an occurrence emerge.  The Trusts should not be subject to massive and

intrusive discovery of thousands of claims in an effort to troll for inconsistencies.

      31.    Reorganizing debtors seeking massive discovery from the Trusts have also

contended that information from the Trusts is necessary in order for them to accurately estimate

the value of their aggregate asbestos liability because it will allow them to somehow "correct"

their historical settlement values to account for the impact the insolvency of other asbestos

defendants had upon their trial risks and claims resolution decisions.[18]  It is well settled,

however, that the data that can be extracted from an asbestos defendant's own individual history

in the tort system provides the only realistic starting point for deriving a reasonable estimate of

that defendant's remaining asbestos-related liability.[19]  In most asbestos bankruptcy cases

featuring a contested estimation, courts have recognized that the debtor's settlement history

provides the best data for use in estimating liability, and have relied on that data as the starting

---

[18] *See, e.g.*, Reply of the Official Committee of Unsecured Creditors of Motors Liquidation
Company in Further Support of its Motion for an Order Pursuant to Bankruptcy Rule 2004
Directing Production of Documents at 3-4, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr.
S.D.N.Y Aug. 5, 2010) [Dkt. No. 6540].

[19] *See In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 686 (Bankr. S.D. Ohio 1995) ("In valuation,
the only sound approach is, if possible, to begin with what is known").  *See also* Order, *In re
Owens Corning*, No. 00-3837-3854 (Bankr. D. Del. Aug. 19, 2004) [Dkt. No. 12520] (Ex. 8) (the
court set a truncated case management order for the estimation proceeding that did not provide
fact discovery deadlines, and stated that "the data now available – the Debtor's claim history, the
experience in other cases, etc. – viewed in light of the expert testimony at the scheduled hearing,
should probably suffice for Claims Estimation purposes").

point for estimation.[20] The vast majority of asbestos cases in the tort system are resolved by settlement in which the settling party undertakes to resolve only its own share of liability. The historical settlement values of debtors therefore already reflect those debtors' own assessment, developed through whatever tort system discovery they sought, of the likelihood that other parties were responsible for any given claimant's injury.

32.    Reorganizing debtors seeking information from the Trusts claim that after top tier asbestos defendants became insolvent, their risk of being held accountable on a verdict for liability properly attributed to the insolvents increased because claimants withheld evidence of their exposures to the insolvents.[21] Debtors further assert that, after the Trusts began functioning, their trial risks increased because claimants could wait to allege claims against the Trusts until after the debtors resolved the claimant's claim, thereby depriving the debtor of its right to set-off a judgment for compensation paid by the Trust.[22] Any "trial risks" of a verdict holding a solvent defendant responsible for liability properly attributable to an asbestos bankrupt or a Trust, or a verdict that the solvent defendant is unable to set-off by settlement payments that were or should have made by insolvents, were certainly not created by the bankruptcies of other defendants or the allegedly fraudulent conduct of the defendant' claimants, however. Such trial

---

[20] The key considerations that should enter into a court's estimate of a debtor's aggregate asbestos liability are: (1) the past claims resolution history of the debtor company; and (2) *foreseeable* trends in the incidence of asbestos related diseases and in the real world litigation landscape in which the claims would have been resolved, but for the bankruptcy. *See In re Armstrong World Indus., Inc.,* 348 B.R. 111, 123-24 (D. Del. 2006); *Owens Corning v. Credit Suisse First Boston (In re Owens Corning),* 322 B.R. 719, 721-25 (D. Del. 2005); *In re Federal-Mogul Global Inc.,* 330 B.R. 133, 155 (D. Del. 2005); *Eagle-Picher,* 189 B.R. at 690-92.

[21] *See* Garlock Motion at 7; Informational Brief of Debtors at 8, 10-11, *In re Specialty Prods. Holding Corp.,* No. 10-11780 (Bankr. D. Del. May 31, 2010) [Dkt. No. 7].

[22] *See* Garlock Motion at 7.

risks are the direct result of how judgments are rendered and molded, an exclusive function of state law which varies from state to state.[23]

33.    The argument that a non-settling solvent defendant can not obtain set-off for compensation paid by asbestos trusts is overstated and largely inaccurate. A solvent defendant against whom a verdict is entered does not have the right to offset a settled joint tortfeasor's payment to a plaintiff in those states that have adopted pure "several" liability, where each joint tortfeasor can only be subjected to a judgment reflecting its own "share" of liability.[24] Nor does a solvent, non-settling defendant have a right to set-off in jurisdictions where the trial courts permit the listing of all potentially responsible parties on the verdict sheet, and no liability is attributed to the settling party. Numerous joint and several liability jurisdictions routinely allow non-settling defendants to set-off a judgment for compensation paid by asbestos trusts.[25] Some

---

[23] Each state's judgment molding law is influenced by their approach to the larger questions of comparative negligence and joint and several liability. *See, e.g.*, Jean Macchiaroli Eggen, *Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions*, 73 Tex. L. Rev. 1701, 1701 (1995) ("In many actions, some defendants settle, while others proceed to trial. The effect that such settlements have on the plaintiff's judgment and on the nonsettling defendants' liabilities varies depending upon the applicable law in the jurisdiction. The approaches that the states take to these matters are remarkably fragmented in light of the fact that model uniform legislation exists.").

[24] *See, e.g.*, Alaska Stat. § 09.17.080(d) (1997) ("The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault."); Wyo. Stat. Ann. § 1-1-109(e) (1988) ("Each defendant is liable only to the extent of that defendant's proportion of the total fault determined" by law). *See also McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992) (removing joint and several liability in Tennessee, and holding that "because a particular defendant will henceforth be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, situations where a defendant has paid more than his 'share' of a judgment will no longer arise, and therefore the Uniform Contribution Among Tortfeasors Act, T.C.A. §§ 29-11-101 to 106 (1980), will no longer determine the apportionment of liability between codefendants.").

[25] *See, e.g.*, *Coulter v. Asten Group, Inc.*, 230 P.3d 169, 174 (Wash. App. 2010) (setting off a judgment for "the settlement amounts currently received by Plaintiffs from settling defendants and bankruptcy trusts"); *Baker v. ACandS*, 755 A.2d 664, 672 (Pa. 2000) (setting off a judgment by the amount the plaintiff received from an asbestos bankruptcy trust); *Andaloro v. Armstrong (Footnote continued on next page.)*

states have even allowed trial courts to retain jurisdiction over a case after the entry of a verdict

to provide credit for post-verdict compensation received from asbestos trusts.[26]

34.   The debtors' assertion that claimants could conceal evidence of exposure to the

asbestos-containing products of other tortfeasors ignores the fact that many states permit the

finder of fact to apportion fault among bankrupt entities,[27] and numerous jurisdictions allow

named defendants to join responsible third-parties in tort actions, including insolvents, provided

that the defendant establishes that the party is a joint tortfeasor.[28]

35.   The debtors' contention that claimants could wait to file claims against the Trusts,

thereby depriving them of their right to set-off, ignores the fact that, as noted above, several trial

courts have retained jurisdiction post-verdict to apply judgment credits for compensation the

---

*(Footnote continued from previous page.)*
*World Indus., Inc.*, 799 A.2d 71, 82 (Pa. Super. 2002) (allowing set-off of judgments for the amounts to be paid to plaintiffs by a bankruptcy trust).

[26] *See Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 100-01 (Cal. App. 2007).

[27] *See Collins v. Plant Insulation Co.*, 185 Cal. App. 4th 260, 264 (Cal. App. 2010) (noting that, for purposes of allocation of fault, the trial court used a verdict form that listed 17 entities, including several asbestos bankrupts (Fibreboard, Johns-Manville, and Owens Corning), and holding that the U.S. Navy should also have been listed); *Baker*, 755 A.2d at 666 ("The trial court, sitting without a jury, found ACandS, Owens Corning, Pfizer, ACME, and the Manville Trust jointly liable.  The trial court proceeded to apportion the damages among each of these defendants, determining that each was responsible for an equal, one-fifth share of the award"); *In re New York City Asbestos Litig.*, 750 N.Y.S.2d 469, 479 (N.Y. Sup. Ct. 2002) (holding that the "culpability of a bankrupt, non-party tortfeasor will be included when calculating the defendant-tortfeasors' exposure" unless the plaintiff proves that with due diligence he or she was unable to obtain personal jurisdiction over the bankrupt or its estate).

[28] *See Sparks v. Owens-Illinois, Inc.*, 32 Cal. App. 4th 461 (Cal. App. 1995) (under California law, the defendant bears the burden of proof in attempting to allocate fault to alleged concurrent tortfeasors; the defendant has to prove the alleged concurrent tortfeasor exposed the plaintiff to a defective asbestos product, that this exposure was a legal cause of the plaintiff's injuries, and what percentage of responsibility should be attributed to it).  *See also* Tex. Civ. Prac. & Rem. § 33.004 (allowing a named defendant to seek to designate a person as a responsible third-party by motion).

plaintiff receives after a judgment, and some state courts have entered case management orders
requiring that claimants file all claims against asbestos trusts promptly.

36.    These state-by-state variations certainly had a profound impact on the defendants'
case resolution decisions, and are already reflected in the defendants' settlement data.   The
debtors' arguments are all truly complaints about the tort system, and provide insufficient
justification for burdening the Trusts and overriding the TDP's confidentiality provisions.

### D.    The public interest will be served by protecting the Trusts from abusive and improper discovery

37.    The "public's interest" in "resolving thousands of [asbestos-related] claims in a
uniform and equitable manner," *In re W. R. Grace*, 386 B.R. at 36, ensuring that all funds
directed to a section 524(g) Trust are devoted to the payment of asbestos victims, and protecting
plaintiffs' settlement information, will all be served by protecting the ability of the Trusts to
function in accordance with the TDP approved by this Court.   No public interest would be
furthered by allowing reorganizing debtors, insurers, or any other third-parties to harvest the
enormous amounts of information gathered by the Trusts to process the payment of claims for
asbestos-related injuries for nuggets that can be pulled out, manipulated, and cited in support of
arguments regarding the breadth and depth of those third-parties' asbestos-related liabilities.

### E.    The Plaintiffs should not be required to post a bond or security

38.    Bankruptcy Rule 7065 exempts an application made by a debtor, trustee, or debtor-
in-possession from the bond requirement.   *See* Fed. R. Bankr. P. 7065 ("a temporary restraining
order or preliminary injunction may be issued on application of a debtor, trustee, or debtor-in-
possession without compliance with [Federal Rule of Civil Procedure] 65(c) [which governs the
posting of a bond or security].").   This Court has discretion to alter or relieve the bond in
appropriate circumstances.   Because this is a discovery dispute that would not ordinarily warrant

the imposition of a bond, and because the Trusts are tantamount to debtors, in that they stand in the shoes of their predecessor debtors for purposes of the debtors' asbestos liabilities, the Plaintiffs request that this Court forego imposing a bond requirement if the injunctive relief is granted.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that this Court grant the Motion, enter a preliminary injunction in the form attached, and grant to the Plaintiffs such other and further relief as this Court deems just and appropriate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: October 27, 2010
    Wilmington, Delaware

Respectfully submitted,

CAMPBELL & LEVINE, LLC

*/s/Bernard G. Conaway*

Bernard G. Conaway (DE 2856)
Kathleen Campbell Davis (DE 4229)
800 N. King Street, Suite 300
Wilmington, Delaware 19801
Telephone:  (302) 426-1900
Facsimile:  (302) 426-9947

Douglas A. Campbell
Philip E. Milch
Stanley E. Levine
1700 Grant Building
Pittsburgh, Pennsylvania 15219
Telephone:  (412) 261-0310

*Counsel for the Owens Corning/Fibreboard
Asbestos Personal Injury Trust and the
United States Gypsum Asbestos Personal
Injury Settlement Trust*

KEATING MUETHING & KLEKAMP
PLL
Kevin E. Irwin
Jennifer Morales
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:  (513) 579-6400
Facsimile:  (513) 579-6457

*Counsel for ACandS Asbestos Settlement
Trust*

FRANK GECKER, LLP
Joseph Frank
Frances Gecker

325 N. LaSalle, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035

*Counsel for Kaiser Aluminum & Chemical
Corporation Asbestos Personal Injury Trust*

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
Rita C. Tobin
375 Park Avenue, 35th Floor
New York, New York  10152-3500
Telephone:  (212) 319-7125
Facsimile:  (212) 644-6755

Peter Van N. Lockwood
Ann C. McMillan
James P. Wehner
One Thomas Circle, N.W., Suite 1100
Washington, D.C.  20005
Telephone:  (202) 862-5000
Facsimile:  (202) 429-3301

*Counsel to Trust Advisory Committee for the
ACandS Asbestos Settlement Trust; Trust
Advisory Committee for the Kaiser
Aluminum & Chemical Corporation
Asbestos Personal Injury Trust; Trust
Advisory Committee for the Owens
Corning/Fibreboard Asbestos Personal
Injury Trust; and Trust Advisory Committee
for the United States Gypsum Asbestos
Personal Injury Settlement Trust*

KAYE SCHOLER, LLP
Andrew Kress
425 Park Avenue

New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Hon. Dean M. Trafelet (Ret.),*
*Legal Representative for Future Claimants*
*Against the United States Gypsum Asbestos*
*Personal Injury Settlement Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                        *

   ACandS, Inc.                             *           Case No:  02-12687 (JKF)

                                              *

In re:                                        *

   Specialty Products Holding Corporation   *           Case No:  10-11780 (JKF)

                                              *

In re:                                        *

   Kaiser Aluminum Corporation              *           Case No:  02-10429 (JKF)

                                              *

In re:                                        *

   Owens Corning                            *           Case No:  00-03837 (JKF)

                                              *

In re:                                        *

   USG Corporation                          *           Case No:  01-02094 (JKF)

                                              *

ACandS ASBESTOS SETTLEMENT
TRUST; KAISER ALUMINUM &                       *
CHEMICAL CORPORATION ASBESTOS
PERSONAL INJURY TRUST; OWENS                   *
CORNING/FIBREBOARD ASBESTOS
PERSONAL INJURY TRUST; and                     *
UNITED STATES GYPSUM ASBESTOS
PERSONAL INJURY SETTLEMENT                     *
TRUST (the "**Trusts**");
                                              *
and
                                              *
TRUST ADVISORY COMMITTEE FOR
THE ACANDS ASBESTOS SETTLEMENT                 *
TRUST; TRUST ADVISORY
COMMITTEE FOR THE KAISER                       *
ALUMINUM & CHEMICAL
CORPORATION ASBESTOS PERSONAL                  *

{D0188987.1 }

| | |
|---|---|
| INJURY TRUST; TRUST ADVISORY COMMITTEE FOR THE OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST; and TRUST ADVISORY COMMITTEE FOR THE UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST (the "**TACs**"); | * <br> * <br> * <br> * |
| and | * |
| HON. DEAN M. TRAFELET (RET.), THE LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS AGAINST THE UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST (the "**Futures Representative**") | * <br> * <br> * <br> * |
| Plaintiffs | * |
| v. | * |
| HARTFORD ACCIDENT AND INDEMNITY CO., FIRST STATE INSURANCE CO., NEW ENGLAND INSURANCE COMPANY,  NATIONAL UNION FIRE COMPANY OF PITTSBURGH, PA, AMERICAN HOME ASSURANCE CO., GARLOCK SEALING TECHNOLOGIES, LLC., SPECIALTY PRODUCTS HOLDING CORP., DELAWARE CLAIMS PROCESSING FACILITY, LLC, and VERUS CLAIMS SERVICES, LLC | * <br> * <br> * <br> * <br> * <br> * |
| Defendants | * |

Adv. Pro. No:

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The ACandS Asbestos Settlement Trust, the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos Personal Injury Trust, and the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Trusts**"); the Trust Advisory Committees for the ACandS Asbestos Settlement Trust, the Kaiser Aluminum &

Chemical Corporation Asbestos Personal Injury Trust, the Owens Corning/Fibreboard Asbestos

Personal Injury Trust, and the United States Gypsum Asbestos Personal Injury Settlement Trust

(the "**TACs**"); and Hon. Dean M. Trafelet (Ret.), the Legal Representative for Future Claimants

Against the United States Gypsum Asbestos Personal Injury Settlement Trust (the "**Futures**

**Representative**") (collectively, "**Plaintiffs**") by and through their undersigned counsel, state:

## SUMMARY OF ACTION

1.      This is an action for declaratory and injunctive relief pursuant to Rules 7001(7),

7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and

11 U.S.C. § 105, seeking construction and interpretation of the Plans of Reorganization in the

captioned cases (the "**Plans**") and the corresponding Trust Distribution Procedures ("**TDP**")

pursuant to which the Trusts operate, and seeking also an injunction barring Defendants from

seeking certain discovery from the Trusts in excess of that permitted by the Plans and TDPs.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to hear the matters set forth in this Adversary

Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1).

3.      In addition, pursuant to its Orders confirming the Plans and provisions in the

Plans themselves, this Court has retained exclusive jurisdiction post-confirmation to "[i]ssue

injunctions, enforce the injunctions contained in the Plan and Confirmation Order, enter and

implement other orders or take such other actions as may be necessary or appropriate to restrain

interference by any Entity with consummation, implementation, or enforcement of the Plan or

Confirmation Order",[1] and to "[d]etermine any other matters that may arise in connection with or

relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

---

[1] Joint Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094
(Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10709].

release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order."[2]

4.     This Adversary Proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O).

5.     This Adversary Proceeding has been brought in accordance with Bankruptcy Rules 7001(7), 7001(9) and 7065.

6.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

## PARTIES

7.     Plaintiff ACandS Asbestos Settlement Trust is a Delaware statutory trust with its principal place of business located in New Jersey.

8.     Plaintiff Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust is a Delaware statutory trust with its principal place of business located in Delaware.

9.     Plaintiff Owens Corning Fibreboard/Asbestos Personal Injury Trust is a Delaware statutory trust with its principal place of business located in Delaware.

10.    Plaintiff United States Gypsum Asbestos Personal Injury Settlement Trust is a Delaware statutory trust with its principal place of business located in Delaware.

---

[2] Second Amended Joint Plan of Reorganization at Art. XIII.l & XIII.n, *In re Kaiser Aluminum Corp.*, No. 02-10429 (Bankr. D. Del. Sept. 7, 2005) [Dkt. No. 7312]. *See also* Order Confirming ACandS's Second Plan of Reorganization, *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. May 8, 2008) [Dkt. No. 3309] and Second Plan of Reorganization of ACandS Inc. at 13.3(d) & 13.3(e), *In re ACandS, Inc.*, No. 02-12637 (Bankr. D. Del. Nov. 19, 2007) [Dkt. No. 3109]; Order Confirming the Sixth Amended Joint Plan of Reorganization at 57-58, *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. Sept. 26, 2006) [Dkt. No. 19366] and Sixth Amended Joint Plan of Reorganization at 13.1(a) & (l), *In re Owens Corning*, No. 00-03837 (Bankr. D. Del. July 10, 2006) [Dkt. No. 18339, Appendix A]; Order Confirming the First Amended Joint Plan of Reorganization at 27-28, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. June 15, 2006) [Dkt. No. 11688] and First Amended Chapter 11 Plan of Reorganization of USG Corp. at Art. X.A.9, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. Mar. 27, 2006) [Dkt. No. 10810].

11.     Plaintiff Trust Advisory Committee for the ACandS Asbestos Settlement Trust is a committee created pursuant to the trust agreement in that case.

12.     Plaintiff Trust Advisory Committee for the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust is a committee created pursuant to the trust agreement in that case.

13.     Plaintiff Trust Advisory Committee for the Owens Corning/Fibreboard Asbestos Personal Injury Trust is a committee created pursuant to the trust agreement in that case.

14.     Plaintiff Trust Advisory Committee for the United States Gypsum Asbestos Personal Injury Settlement Trust is a committee created pursuant to the trust agreement in that case.

15.     Plaintiff Hon. Dean M. Trafelet (Ret.) is the Legal Representative for Future Claimants Against the United States Gypsum Asbestos Personal Injury Settlement Trust.

16.     Defendant Hartford Accident and Indemnity Company is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

17.     Defendant First State Insurance Company is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in the Commonwealth of Massachusetts.

18.     Defendant New England Insurance Company is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in the Commonwealth of Massachusetts.

19.    Defendant National Union Fire Company of Pittsburgh, Pennsylvania is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the State of New York.

20.    Defendant American Home Assurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York.

21.    Defendant Garlock Sealing Technologies, LLC ("**Garlock**") is a limited liability company organized and existing under the laws of North Carolina with its principal place of business in the State of New York. On or about June 5, 2010, Garlock filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the Western District of North Carolina.

22.    Defendant Specialty Products Holding Corporation ("**Specialty Products**") is a corporation organized and existing under the laws of Ohio with its principal place of business in the State of Ohio. On or about May 31, 2010, Specialty Products filed a petition for chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware.

23.    Defendant Delaware Claims Processing Facility, LLC ("**DCPF**") is a limited liability corporation organized and existing under the laws of Delaware with a principal place of business in Delaware. DCPF is the claims processing facility for the Owens Corning Fibreboard Asbestos Personal Injury Trust and the United States Gypsum Asbestos Personal Injury Settlement Trust.

24.    Defendant Verus Claims Services, LLC ("**Verus**") is a limited liability company organized and existing under the laws of New Jersey with a principal place of business in New Jersey. Verus is the claims processing facility for the ACandS Asbestos Settlement Trust and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust.

## BACKGROUND

25.     Over the past several months, and in separate actions around the country, insurers and certain asbestos defendants that have recently filed for chapter 11 bankruptcy have launched massive and intrusive discovery efforts against asbestos personal injury trusts, including the Plaintiff Trusts here, seeking vast amounts of information concerning claims submissions made by claimants to the trusts. Some of these discovery requests seek the complete records for hundreds of thousands of claimants, demanding every scrap of electronic information maintained by dozens of asbestos personal injury trusts. Not only are these discovery requests extraordinarily burdensome and overbroad, they are part of an improper and concerted effort to use the trusts to obtain discovery that no tort system participant would have access to, distorting the tort system rights and obligations that the Trusts were carefully designed to leave intact as closely as possible.

26.     In this action, the Plaintiff Trusts, all of whom are subject to the continuing jurisdiction of this Court, together with the TACs and the FCR, seek to resolve in one jurisdiction, in one action, the proper scope of discovery of their claimant information and data that the Defendants have sought, and the protections that the Trusts may properly and consistently invoke in the event of future discovery efforts.

*I.      The Trusts Were Created to Pay Asbestos Claims Against Specific Bankrupt Entities While Affecting the Tort System as Little as Possible*

27.     This Court presided over the bankruptcies that resulted in the creation of each of the Plaintiff Trusts, and reviewed and confirmed the Plans and related documents that established and govern them. The Court is intimately familiar with the legal framework within which the Trusts were created and well-versed in the background and rationale that supports each of the

carefully crafted provisions included in the TDP that govern the Trusts after they begin functioning. A summary is presented here.

28.    Each of the Trusts was created pursuant to section 524(g) of the Bankruptcy Code, a provision enacted by Congress specifically to deal with the complex and unique issues raised by asbestos-driven bankruptcies. When a section 524(g) plan is confirmed, present and future asbestos claims against the reorganized debtor are channeled to a post-confirmation trust that considers and resolves the claims pursuant to settlement criteria approved by the Court as part of a plan of reorganization. In return for being freed of such claims, the debtors and others fund the trust, and the asbestos claimants have recourse to the assets of the trust.

29.    The Trusts exist solely to resolve the asbestos liabilities that are channeled to them. The TDP effectuate the resolution of the debtors' asbestos liability by providing a mechanism for paying channeled asbestos claims. The primary objective of the TDP is to distribute money fairly and equitably to all claimants, present and future.

30.    To achieve this objective, the TDP resolve those claims that satisfy the TDP's medical and exposure criteria in lieu of litigating them to judgment in the tort system. The criteria are designed to approximate the settlement process of the debtor and asbestos defendants generally in the tort system.

31.    The TDP were designed and intended to leave state tort law where they found it, affecting state tort law rights as little as possible while accomplishing the goals of the Plans.

32.    The TDP do not alter the ordinary discovery practices applicable in individual asbestos claims in the tort system.

33.     The TDP, for example, do not prohibit an asbestos defendant in the tort system

from deposing a plaintiff and asking the plaintiff whether it has filed a claim against any Trust,

and what evidence he or she submitted in support of that claim.

34.     The TDP also do not prohibit an asbestos defendant from obtaining such evidence

from a Trust, but contain provisions intended to preserve the confidentiality of the submissions.

*See* ACandS, Inc. Asbestos Settlement TDP § 6.5 (Aug. 19, 2008); Kaiser Aluminum &

Chemical Corporation Third Amended Asbestos TDP § 6.5 (Nov. 20, 2007); Owens

Corning/Fibreboard Asbestos Personal Injury TDP § 6.5 (Feb. 2, 2010); United States Gypsum

Asbestos Personal Injury Settlement TDP § 6.5 (Mar. 29, 2010).   Although these provisions

contain some minor variations, they are largely uniform.

35.     For example, the confidentiality provision included in the Owens Corning TDP

provides as follows:

> **6.5 Confidentiality of Claimants' Submissions.** All submissions to the PI Trust
> by a holder of a PI Trust Claim or a proof of claim form and materials related
> thereto shall be treated as made in the course of settlement discussions between
> the holder and the PI Trust and intended by the parties to be confidential and to be
> protected by all applicable state and federal privileges, including, but not limited
> to, those directly applicable to settlement discussions. The PI Trust will preserve
> the confidentiality of such claimant submissions, and shall disclose the contents
> thereof only, with the permission of the holder, to another trust established for the
> benefit of asbestos personal injury claimants pursuant to section 524(g) and/or
> section 105 of the Bankruptcy Code or other applicable law, to such other persons
> as authorized by the holder, or in response to a valid subpoena of such materials
> issued by the Bankruptcy Court. Furthermore, the PI Trust shall provide counsel
> for the holder a copy of any such subpoena immediately upon being served. The
> PI Trust shall on its own initiative or upon request of the claimant in question take
> all necessary and appropriate steps to preserve said privilege before the
> Bankruptcy Court and before those courts having appellate jurisdiction related
> thereto. Notwithstanding anything in the foregoing to the contrary, with the
> consent of the TAC and the Future Claimants' Representative, the PI Trust may,
> in specific limited instances, disclose information, documents, or other materials
> reasonably necessary in the PI Trust's judgment to preserve, litigate, resolve, or
> settle coverage, or to comply with an applicable obligation under an insurance
> policy or settlement agreement within the OC Asbestos Personal Injury Liability

Insurance Assets; provided, however, that the PI Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents and materials, and prior to the disclosure of such information, documents or materials to a third party, the PI Trust shall receive from such third party a written agreement of confidentiality that (a) ensures that the information, documents and materials provided by the PI Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b) prohibits any other use or further dissemination of the information, documents and materials by the third party.

Owens Corning Asbestos Personal Injury TDP § 6.5 (Feb. 2, 2010 rev.).

36.    Consistent with the overall objective of the TDP to minimize any impact on state tort law rights and obligations, the TDP's confidentiality provisions were expressly designed to treat claimant submissions in the same manner as a solvent settling co-defendant would treat settlement information, and to provide the same protections for those materials as such a settling co-defendant would expect.

## II.    *The Trusts Are Being Subjected to Improper and Abusive Discovery That Violates the Purpose of the Trusts and the Confidentiality Provisions of the TDP*

37.    As set forth below, attempts to obtain massive quantities of claimant information from the Trusts have become increasingly frequent over the past several months, threatening the purpose for which the Trusts were created, contravening the provisions that control the Trusts' functions and consuming Trust resources that should be directed to paying claimants.

38.    These requests are made by, among others, other insolvent asbestos defendants that are attempting to reorganize, creditors' committees in such asbestos bankruptcies, and insurers. These requests aim to turn the Trusts into clearing houses for information regarding the hundreds of thousands of claimants that submit claims to the Trusts.

39.    In May of 2010, in connection with insurance coverage litigation between Federal-Mogul Products, Inc./Federal-Mogul U.S. Asbestos Bodily Injury Trust and several

insurers in New Jersey state court,[3] the insurers served a subpoena on Verus, the claims

processing facility for several asbestos trusts, including the ACandS Asbestos Settlement Trust

and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust. The

subpoena noticed a deposition and sought all documents submitted to Verus or any section

524(g) trust by more than 100,000 asbestos claimants, including all documents and

communications regarding the resolution and/or allowance decision regarding those asbestos

claims, including any documents identifying a claim deficiency, and any printable claims forms,

computer data and/or databases identifying, reflecting, or in any way relating, to a claim

submitted to Verus or any trust by those asbestos claimants. The insurers contend that this

information would allow them to uncover information regarding claims for which the insured is

seeking coverage, and would permit them to locate inconsistent claims.

40.    In July of 2010, the Official Committee of Unsecured Creditors in the *Motors*

*Liquidation Co.* bankruptcy case moved for leave to serve subpoenas compelling the production

of documents by the claims processing facilities for seven asbestos trusts, including "any and all

claims forms and other filings submitted to each of the trusts by the plaintiffs in each of the pre-

petition asbestos personal injury actions against Old GM in which the plaintiffs alleged they

suffered from mesothelioma" and "the amounts paid by each of the Trusts to the plaintiffs in the

Mesothelioma Cases."[4] The request encompassed the seven trusts' claim files and settlement

---

[3] Subpoena, *Federal-Mogul Prods., Inc. v AIG*, No. MRS-L-2535-06 (N. J. Sup. Ct. May 25, 2010).

[4] Motion of the Official Committee of Unsecured Creditors of Motors Liquidation Company for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents By (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), and (II) General Motors LLC and the Debtors at 9-10, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. July 20, 2010) [Dkt. No. 6383] ("**GM Motion**").

payment history for more than 7,000 individuals,[5] potentially encompassing hundreds of

thousands of pages of individuals' detailed medical files and evidence of exposure to asbestos-

containing products of other companies. The creditors' committee claimed this information was

necessary to fill in certain alleged "gaps" in the debtors' claims database, and to show that the

actual values at which the debtor historically resolved its claims were wrong.[6]

41.    On October 1, 2010, several insurers served a subpoena on Verus in connection

with insurance coverage litigation between Porter Hayden and several of its insurers pending in

the federal district court in Maryland.[7] The subpoena noticed a deposition and sought production

of all information that as many as 20,000 claimants had submitted in claims forms (including any

attachments or other documents appended thereto) to any section 524(g) trust, all amounts paid

to a claimant by any trust, and the claim status of any claim which had not yet been paid. The

insurers contend that this information is necessary in order for them to determine whether any

Porter Hayden Trust claimants have filed claims for compensation with other trusts, to compare

the information submitted to the trusts, and to determine the levels of total compensation that

such claimants are receiving from all the trusts and the tort system.

42.    On October 11, 2010, in the *In re Specialty Products Holding Corp.* bankruptcy

case currently pending before this Court, the debtors, Specialty Products Holding Corp. and

Bondex International, Inc., requested leave to issue subpoenas to several claims processing

---

[5]*See* Application of the Official Committee of Unsecured Creditors Holding Asbestos-Related
Claims for an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Taking of Document
Discovery and Deposition Testimony from the Debtors and from General Motors LLC, Its
Subsidiaries and Affiliated Companies, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr.
S.D.N.Y. July 20, 2010) [Dkt. No. 6382]. Ultimately, the request was narrowed.

[6] GM Motion at 13-14.

[7] Notice of Subpoena, *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, No. 03-3414 (D. Md. Oct.
1, 2010).

facilities, including the Delaware Claims Processing Facility, Trust Services, Inc., and Verus.[8]

The debtors request that they be permitted to seek all information supplied on the claim forms

submitted by each claimant to each trust, the amounts each of the trusts paid, if any, to each

claimant, and the status of every claim against every trust that has been submitted but not

resolved.  The debtors also seek an order that would compel the trusts and claims facilities to

produce all of the requested discovery, and the debtors seek to have this order issue before the

discovery is even served.  The debtors claim to need this information in order to take into

account the trusts' claimants' history of exposure to other asbestos defendants' products as well

as the availability of other sources to compensate the claimants for their alleged harm, and to

obtain information about recoveries plaintiffs have obtained or could obtain from the trusts that

has been obscured by plaintiffs' alleged, but undemonstrated, delay and concealment.

   43.  Two days later, the debtors in the *In re Garlock Sealing Technologies LLC*

bankruptcy case, presently pending in the Bankruptcy Court for the Western District of North

Carolina, filed a similar motion seeking leave to serve discovery on numerous claims processing

facilities and dozens of trusts, including virtually every major asbestos trust.[9]  The scope of

discovery sought in *Garlock* is astounding.  The debtors ask that the claims processing facilities

and trusts be ordered to provide a "complete electronic copy of the Trust's[s'] database[s] of

asbestos claims, often described as 'individual level claims data' or 'claimant and claim level

database'", and a "complete electronic copy of any database relating to asbestos claims filed

---

[8] Motion of the Debtors for an Order, Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Directing Production of Information by Claims Processing Facilities for Certain Asbestos Personal Injury Trusts, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Oct. 11, 2010) [Dkt. No. 437].

[9] Motion of Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Data by Claims Processing Facilities and Asbestos Trusts, *In re Garlock Sealing Techs., LLC*, No. 10-31607 (Bankr. W.D.N.C. Oct. 13, 2010) [Dkt. No. 601] ("**Garlock Motion**").

against any Debtor prior to the date the respective Debtor petitioned for relief under the Bankruptcy Code."[10] The debtors made no attempt whatsoever to tailor or focus this discovery to information pertaining to the debtors' claimants. They seek every section 524(g) trusts' entire claims files/records for every single claimant; the information of hundreds of thousands of claimants. And, as in *Bondex*, the debtors also seek an order that would compel the trusts and claims facilities to produce all of the requested discovery, and they would have this order issue before the discovery is even served. The justification offered by the debtors for this wholesale demand for the Trusts' information is that the information is required in order to investigate the degree to which Garlock claimants have provided evidence of exposure to other asbestos products when making claims against other parties and denied such exposure when making claims against Garlock and to accurately calculate the shared responsibility of asbestos co-defendants given Garlock claimants' access to the "tens of billions of dollars available from wealthy asbestos trusts."

44.     In several cases, the discovery has been directed in whole or in part to the Trusts' claims processing facilities, Verus and DCPF. The claimant information in the hands of those entities, which are service providers and vendors to the Trusts, remains the property of the Trusts. Verus and DCPF have been named here as nominal defendants so that the declaratory and injunctive relief sought in this action may be directed to and binding upon such claims processors.

---

[10] Garlock Motion at Ex. B.

**III.   *The Discovery Violates the Confidentiality Provisions of the TDP and the Purpose of the Trusts***

45.     To ensure that the functioning of the Trusts leaves the tort system as they found it, the TDP include provisions designed to permit discovery akin to discovery that might be permitted of a co-defendant in the tort system.

46.     To that end, the TDP include confidentiality provisions substantially similar to the one contained in the Owens Corning TDP, the text of which is provided in paragraph 35. *See* ACandS, Inc Asbestos Settlement Trust Distribution Procedures, § 6.5 (Aug. 19, 2008); Kaiser Aluminum & Chemical Corporation Third Amended Asbestos Trust Distribution Procedures, § 6.5 (Nov. 20, 2007); Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures § 6.5 (Feb. 2, 2010); United States Gypsum Asbestos Personal Injury Settlement Trust Distribution Procedures, § 6.5 (Mar. 29, 2010).

47.     These confidentiality provisions provide that submissions claimants made to the Trusts shall be treated as confidential settlement communications, and will be protected by "all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions."

48.     The confidentiality provisions also require the Trusts to preserve the confidentiality of the submissions.

49.     The confidentiality provisions are carefully crafted to ensure that the Trusts are not forced to produce information beyond the limited, individual, claimant-specific information the asbestos defendants who preceded the Trusts could have been required to produce in the tort system in individual cases.

50.    The confidentiality provisions do not contemplate and do not authorize the production of the Trusts' claimants' submissions, information, or settlements in bulk, or for purposes beyond discovery in an individual asbestos personal injury action.

51.    Requiring the Trusts to produce information regarding their claimants *en masse* ignores the limitations placed on proper discovery in the tort system, violates the letter and spirit of the TDP, and is antithetical to the spirit of the Trusts' charge to protect and guard their claimants' information.

52.    The discovery, moreover, improperly subjects the Trusts to the cost of defending against such attempts. Should such discovery be authorized, the Trusts would bear the burden of complying with the discovery.

53.    Resources diverted to defending against third-party discovery requests and providing third-parties information they are not entitled to in the tort system would thus not be available for the primary purposes of the Trusts, to compensate asbestos victims.

*IV.    The Discovery Sought is Far Beyond What a Participant in the Tort System could Expect*

54.    In the tort system, an asbestos defendant's ability to obtain discovery of co-defendants' settlements is very limited. Although it varies from state to state, in general such discovery is permitted only after the defendant has suffered a verdict and is seeking set-off for settlement payments made to the plaintiff by co-defendants.

55.    Certainly no asbestos defendant in the tort system could expect to obtain through discovery in an individual asbestos personal injury case settlements between a co-defendant and thousands of other claimants, nor would an asbestos plaintiff expect to obtain discovery of any and all settlements a defendant has made with other plaintiffs.

56.     In the tort system, asbestos defendants were able to obtain information regarding the claims their claimants had filed and could file against the Trusts and other defendants only on an individual, case-by-case basis.

## V.     The Purposes for Which the Proponents of the Discovery Claim to Need the Information Fail to Justify Abuse of the Trusts

57.     The parties seeking the discovery of hundreds of thousands of claimants' settlement information justify their requests in several ways. None of the justifications, however, warrant permitting such massive discovery.

58.     A recurring argument made by parties seeking information from the Trusts is that claimants make inconsistent claims to trusts and in the tort system. Similarly, they argue that claimants withhold evidence of exposures to insolvent defendants in their tort-system actions, by fraud or strategic claiming. No meaningful evidence of this alleged fraud or inconsistent claiming has ever been produced, however.

59.     The TDP themselves do not operate to "conceal" claims. As seen above, the TDP do not prohibit the Trusts from responding to subpoenas pursuant to applicable non-bankruptcy law on a case-by-case basis.

60.     Moreover, state courts are capable of policing discovery in the tort system and of fashioning the appropriate remedy for any failure to provide complete and correct discovery responses, should evidence of such an occurrence emerge. The Trusts should not be subject to massive and intrusive discovery of thousands of claims in an effort to troll for inconsistencies.

61.     Reorganizing debtors seeking massive discovery from the Trusts have also contended that information from the Trusts is necessary in order for them to accurately estimate the value of their aggregate asbestos liability because it will allow them to somehow "correct"

their historical settlement values to account for the impact the insolvency of other asbestos defendants had upon their trial risks and claims resolution decisions.

62.    The debtors claim that after several top tier asbestos defendants became insolvent, their risk of their being held accountable for liability properly attributed to the insolvents increased if they went to judgment because claimants withheld evidence of their exposures to the insolvents. The debtors further assert that, after the Trusts began functioning, their trial risks increased because claimants could wait to allege claims against the Trusts until after the debtor resolved the claimant's claim, thereby depriving the debtor of its right to set-off for compensation paid by the Trust. But any "trial risk" of a verdict holding a solvent defendant responsible for liability properly attributable to an asbestos bankrupt or a Trust was certainly not created by the bankruptcies of other defendants or the allegedly fraudulent conduct of the defendant' claimants, however. Such trial risks are the direct result of how judgments are rendered and molded, an exclusive function of state law that varies from state to state.

63.    The debtors' argument that claimants could conceal evidence of exposure to the asbestos-containing products of other tortfeasors ignores the fact that many states permit the finder of fact to apportion fault among bankrupt entities, and numerous jurisdictions allow named defendants to join responsible third-parties in tort actions, provided that the defendant establishes that the party is a joint tortfeasor. Moreover, issues of discovery in tort cases are particularly within the purview of state courts.

64.    The debtors' contention that claimants could wait to file claims against the Trusts, thereby depriving them of their right to set-off, is overstated. Several states require claimants to produce in discovery all the proofs of claim forms they have submitted, and to file all potential claims against the Trusts promptly. Moreover, the debtors do not have the right to offset a

settled joint tortfeasor's payment to a plaintiff in those states that have adopted pure "several" liability, where each joint tortfeasor can only be subjected to a judgment reflecting its own "share" of liability. Nor do the debtors have a right to set-off in jurisdictions where the trial courts permit the listing of all potentially responsible parties on the verdict sheet, and no liability is attributed to the settling party. Numerous joint and several liability jurisdictions permit non-settling defendants to set-off a judgment for compensation paid by the Trusts, and some states have even allowed trial courts to retain jurisdiction post-verdict to provide credit for post-verdict compensation received from the Trusts.

65.     These state-by-state variations certainly had a profound impact on the defendants' case resolution decisions, and are already reflected in the defendants' settlement data. The debtors' arguments are truly complaints about the tort system, and provide insufficient justification for burdening the Trusts and overriding the TDP's confidentiality provisions.

66.     The data that can be extracted from an asbestos defendant's own individual history in the tort system provides the only realistic starting point for deriving a reasonable estimate of that defendant's remaining asbestos-related liability. In most asbestos bankruptcy cases featuring a contested estimation, courts have recognized that the debtor's settlement history provides the best data for use in estimating liability, and have relied on that data as the starting point for estimation.

67.     The vast majority of asbestos cases in the tort system are resolved by settlement in which the settling party undertakes to resolve only its own share of liability. The historical settlement values of debtors therefore already reflect those debtors' own assessment, developed through whatever tort system discovery they sought, of the likelihood that other parties were responsible for any given claimant's injury.

**VI.**   *Turning the Trusts Into Information Clearing Houses to Change the Tort System, or to Alter a Debtor's Settlement History, Threaten the Purpose and Goals of the Trust, and Impair Their Ability to Function*

68.     The Trusts collect information pursuant to the TDP in order to resolve claims. This information was not intended to be used to alter the tort system, or to allow a reorganizing debtor to back away from its own claims resolution history. Improper attempts to treat the Trusts as a virtual well of information that can be drawn on to support debtors,' solvent defendants,' and insurers' various arguments that their past and future liability should be reduced contravene the very purpose of the Trusts, and should not stand.

**COUNT I**

**<u>DECLARATORY RELIEF</u>**

69.     The Plaintiffs incorporate by reference each of the foregoing averments as though fully set forth herein.

70.     This action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Bankruptcy Rule 7001(9), and there is an actual controversy among the parties.

71.     Plaintiffs are entitled to a declaration of the Trusts' rights and obligations under the Plans and TDPs as follows:

72.     The TDP permit discovery of an individual claimant's submissions to the Trust only to a party in an actual personal injury lawsuit brought by that claimant and only pursuant to a subpoena issued in compliance with the TDP and subject to state or other applicable non-bankruptcy law.

73.     No single subpoena may seek the submission of more than one claimant to the Trust. No party or entity may obtain multiple claimant submissions from a Trust for any purpose, except as specifically authorized by this Court.

## COUNT II

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

74.     The Plaintiffs incorporate by reference each of the foregoing averments as though fully set forth herein.

75.     Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 authorize and empower this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code.

76.     The issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 is necessary and appropriate here.

77.     Plaintiffs are likely to succeed on the underlying merits of this action.

78.     Continued prosecution of the discovery against the Trusts will result in irreparable harm to the Trusts and to present and future claimants of the Trusts, because such discovery violates the TDP, and because claimant information, once produced, may not be recalled.

79.     The likelihood of irreparable harm to the Trusts in the absence of the injunctive relief sought herein far outweighs any harm to the Defendants.

80.     The requested injunctive relief will serve the public interest by avoiding distortions of the tort system and preserving the Trusts in the form in which they were approved by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants and pray that the Court grant each of the following remedies:

a.     A declaration that the discovery sought by the Defendants from the Trusts is beyond the scope of proper discovery from the Trusts, and that the Trusts need not and may not provide individual claimant information except pursuant to subpoenas issued in connection with an asbestos personal injury lawsuit relating

to a single claimant subject to the relevant confidentiality provisions of the Trusts
and in conformance with the relevant state or other applicable non-bankruptcy
law;

b.   A preliminary and permanent injunction barring Defendants from having,
continuing, or otherwise obtaining the discovery sought from the Trusts, or any
section 524(g) trust similarly situated, by any means, including by subpoena to
DCPF, Verus or any other claims processing facility;

c.   A preliminary and permanent injunction barring DCPF or Verus from providing
discovery sought from the Trusts except in conformance with the declaration
sought above;

d.   Such other and further relief as may be necessary or appropriate.

Dated: October 27, 2010                         Respectfully submitted,


                                                CAMPBELL & LEVINE, LLC


                                                /s/Bernard Conaway
                                                Bernard Conaway (2856)
                                                Kathleen Campbell Davis (4229)
                                                800 N. King Street, Suite 300
                                                Wilmington, Delaware 19801
                                                Telephone:  (302) 426-1900
                                                Facsimile:  (302) 426-9947

                                                Douglas A. Campbell
                                                Philip E. Milch
                                                Stanley E. Levine
                                                1700 Grant Building
                                                Pittsburgh, Pennsylvania 15219
                                                Telephone:  (412) 261-0310
                                                Facsimile:  (412) 261-5066

                                                *Counsel for the Owens Corning/Fibreboard
                                                Asbestos Personal Injury Trust and the
                                                United States Gypsum Asbestos Personal
                                                Injury Settlement Trust*

KEATING MUETHING & KLEKAMP
PLL
Robert G. Sanker
Kevin E. Irwin
Jennifer Morales
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone: (513) 579-6400
Facsimile: (513) 579-6457

*Counsel for ACandS Asbestos Settlement
Trust*


FRANK GECKER, LLP
Joseph Frank
Frances Gecker
325 N. LaSalle, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035

*Counsel for Kaiser Aluminum & Chemical
Corporation Asbestos Personal Injury Trust*


CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
Rita C. Tobin
375 Park Avenue, 35th Floor
New York, New York  10152-3500
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

Peter Van N. Lockwood
Ann C. McMillan
James P. Wehner
One Thomas Circle, N.W., Suite 1100
Washington, D.C.  20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Counsel to the Trust Advisory Committees
for the ACandS Asbestos Settlement Trust,
the Kaiser Aluminum & Chemical
Corporation Asbestos Personal Injury Trust,*

*the Owens Corning/Fibreboard Asbestos
Personal Injury Trust, and the Trust
Advisory Committee for the United States
Gypsum Asbestos Personal Injury Settlement
Trust*

KAYE SCHOLER, LLP
Andrew Kress
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Counsel for Hon. Dean M. Trafelet (Ret.),
Legal Representative for Future Claimants
Against the United States Gypsum Asbestos
Personal Injury Settlement Trust*

LANDIS RATH & COBB, LLP
Adam G. Landis
Kerri K. Mumford
Rebecca L. Butcher
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE 19899
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Counsel for the Kaiser Aluminum &
Chemical Corporation Asbestos Personal
Injury Trust*

## VERIFICATION

I, Marla Rosoff Eskin, having been first duly sworn, depose and state that I am one of

counsel for the Owens Corning/Fibreboard Asbestos Personal Injury Trust and the United States

Gypsum Asbestos Personal Injury Settlement Trust, that I have read the foregoing Verified

Complaint, and that the allegations made therein are true to the best of my knowledge, and that

allegations made upon information and belief are believed by me to be true.

_____

I declare pursuant to 28 U.S.C. § 1746 under
penalty of perjury under the laws of the United
States of America that the foregoing is correct.

Executed on October 27, 2010