# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
                                                      :

In re:                                         :          Chapter 11 Case No.:
                                         :

MOTORS LIQUIDATION COMPANY., et al.,  :          09-50026 (REG)
f/k/a General Motors Corp., et al.         :
                                         :

                       Debtors.      :          (Jointly Administered)
                                         :

------------------------------------------------------- X

**SUPPLEMENTAL DECLARATION OF DR. CHARLES H. MULLIN IN
SUPPORT OF APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MOTORS LIQUIDATION COMPANY FOR ENTRY OF
ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
BATES WHITE, LLC AS CONSULTANT ON VALUATION OF
ASBESTOS LIABILITIES**

        Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure
and 28 U.S.C. § 1746, CHARLES H. MULLIN hereby declares under penalty of perjury:

        1.       I am a partner at the firm Bates White, LLC ("**Bates White**"), an
economic consulting firm retained by the Official Committee of Unsecured Creditors (the
"**Creditors' Committee**") of Motors Liquidation Company ("**Old GM**") and its
affiliated debtors and debtors-in-possession (together with Old GM, the "**Debtors**") in
connection with the estimation of the Debtors' current and future asbestos liabilities.  I
am duly authorized to make this supplemental declaration (the "**Supplemental
Declaration**") on behalf of Bates White.  Unless otherwise stated, I have personal
knowledge of the facts set forth herein.

        2.       I submit this Supplemental Declaration to supplement the
disclosures provided in the April 8, 2010 declaration of Dr. Charles E. Bates (the "**Bates
Declaration**") [Dkt. No. 5480] in support of the Creditors' Committee's application (the

"**Application**") [Dkt. No. 5480] for entry of an order authorizing Bates White's retention and employment, *nunc pro tunc* to March 16, 2010, as the Creditors' Committee's consultant with respect to the valuation of asbestos liabilities.  Specifically, this declaration provides supplemental disclosures regarding the connections of myself and a number of my Bates White colleagues to a firm by the name of Litigation Resolution Group, LLC ("**LRG**").

3.      LRG was not discussed in the Bates Declaration, because neither Dr. Bates nor I believed (nor do we now believe) that the connections between Bates White personnel and LRG create any interests adverse to the Debtors' estates or raise any issue concerning Bates White's disinterestedness.  As detailed below, LRG's financial interests are no different from those commonly held by asbestos estimation experts, including those employed in this case.  Nevertheless, in light of allegations made by counsel for the Asbestos Claimants' Committee (the "**ACC**") and for certain mesothelioma claimants at the November 22, 2010 hearing in this case – allegations that were both unsupported and false – I believe it is necessary and appropriate to supplement Bates White's initial disclosures to address the issues that were raised.

**Litigation Resolution Group, LLC**

4.      LRG is a Delaware LLC, which was formed in April 2007.  I have controlled LRG and managed its operations at all times since its creation.  I have a 24.24% economic interest in LRG.

5.      Other Bates White partners hold passive economic interests in LRG.  Specifically, Drs. Charles Bates, David DeRamus, Eric Gaier, Mathew Raiff and Halbert White each own 12.12% of LRG, and Dr. Douglas Bernheim owns 6.06% of

2

LRG.  These passive economic stakes were granted in exchange for "angel funding" provided by these individuals, which totaled less than $600,000 in the aggregate and was used to fund LRG's operations.  The remainder of LRG is owned by Messrs. Andrew Evans (6.06%) and Peter Kelso (3.03%), who served as LRG employees from 2007 until July 2009.

6.      The concept underlying LRG, which I developed in 2006, was that it would serve a function akin to that of an insurance broker.  Specifically, the hope was that LRG would facilitate a novel sort of financial transaction, under which third-party investors (e.g., insurance companies, pension funds and hedge funds) would assume the asbestos-related liabilities of an asbestos defendant in exchange for that company's payment of a substantial fee.  After the transaction, the investors would hold the company's asbestos liabilities and manage the defense of the asbestos suits against the company.  It was never contemplated or proposed that LRG would invest capital of its own (it never had any capital to invest) or that LRG would ever hold any portion of any company's asbestos liabilities.  Instead, the expectation was always that LRG would merely be paid a fee for facilitating the transaction.

7.      During 2007 and 2008, LRG performed due diligence in connection with six potential transactions, each involving a different asbestos defendant. The initial level of interest in such transactions led LRG to raise additional operating funds and to hire three employees.  However, the market for LRG's contemplated product never developed.  By early 2009, LRG's operating funds were largely depleted, none of the potential clients that had expressed interest in the product had entered into a transaction, and new inquiries had dramatically slowed.  The future prospects were sufficiently remote that LRG was unable to raise additional operating funds.  As a result, in July 2009, LRG laid off all three of its employees and largely closed down.  Although LRG left its previously-created website in place (because doing so was costless), LRG

3

has engaged in no asbestos-related activity and has had no employees at any time since July 2009.

8.      Between July 2009 and January 2010, I explored several potential applications of LRG's intellectual capital entirely unrelated to asbestos.  These included possible matters involving residential mortgage-backed securities, trade disputes and tax disputes.  None of these potential applications proved fruitful.  As a result, since January 2010, LRG has had no client activity of any sort, nor any meaningful business prospects.

9.      During the 16 months since LRG ceased its asbestos-related activities in July 2009, I have spent less than 5% of my time on LRG in any given month, and no time at all in most months.  Since March 16, 2010, the effective date of Bates White's engagement by the Creditors' Committee in this case, I have spent a total of six hours on LRG, including only two hours within the past six months.

**Certain Allegations Made at the November 22 Hearing**

10.      At the November 22, 2010 hearing in this case, counsel for the ACC and for certain mesothelioma claimants alleged that LRG has financial interests "completely different than [those of] any other expert" in this case, in that LRG supposedly assumes the liabilities of asbestos defendants and consequently has a financial stake in the outcome of ongoing asbestos litigation.  (Tr. of Nov. 22, 2010 hearing at, *e.g*., 18, 27, 35.)

11.      As detailed above, this allegation is simply untrue.  LRG has never invested capital in any transaction (it has never had any capital to invest), nor has it ever contemplated or proposed doing so.  Nor has LRG ever assumed any portion of any company's asbestos liabilities, or ever contemplated or proposed doing so.  Instead, LRG's role has always been limited to that of a broker, and its economic interest has merely been to receive a fee in connection with the potential transaction.  The fees

4

proposed by LRG were hourly fees or fixed retainers, plus in some instances a success

fee contingent upon the closing of the proposed transaction.  In this regard, LRG's

proposed fees were no different than the fees that are commonly earned by asbestos

estimation experts when they provide due diligence in connection with a potential merger

or acquisition of a company with asbestos exposure – a common sort of assignment for

such experts.

12.     Another allegation repeatedly advanced at the November 22

hearing was that Bates White concealed its connections with LRG and employed "false

pretenses" to obtain the ACC's consent to the stipulated orders entered by this Court on

August 24 and October 22, 2010 with respect to the trust discovery sought by the

Creditors' Committee.  (Tr. of Nov. 22, 2010 hearing at, *e.g.*, 30, 48.)

13.     Nothing could be further from the truth.  Since LRG's inception, I

and my Bates White colleagues have been open and public about LRG and our

connections to it.  Among other things, I have spoken about LRG repeatedly and at length

at numerous industry conferences; I have discussed, and exchanged emails about, LRG

with prominent members of the asbestos plaintiffs' bar; and LRG's website at all times

has prominently disclosed my identity as a Bates White partner.

14.     Indeed, I or my business partners have discussed LRG on multiple

occasions with or in the presence of the ACC's counsel (Elihu Inselbuch and several other

Caplin & Drysdale partners), as well as the two lawyers whose firms represent all three of

the ACC's members (John Cooney and Steven Kazan).  For example, I have spoken at

length about LRG at several asbestos litigation conferences that Mr. Cooney co-chaired

or at which he was my co-panelist, as well as conferences at which Mr. Inselbuch and his

partners were also featured speakers; and I have exchanged multiple emails about LRG with Mr. Kazan, after he contacted me through the LRG website to inquire about LRG's activities.  These facts are reflected in numerous documents, which I am prepared to furnish should the Court or the parties wish.

*       *       *

15.     This Supplemental Declaration is made to supplement those disclosures already made in connection with the Application.  If any new material facts or relationships are discovered, Bates White will promptly file a further supplemental declaration.

16.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:    December 1, 2010
          Washington, D.C.


_____
Charles Mullin, PhD

6