## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

_____
| | )
|In Re: | )    Chapter 11
| | )
|GARLOCK SEALING TECHNOLOGIES | )    Case No. 10-31607
|LLC, et al. | )
| | )
|Debtors. | )    Jointly Administered
_____ )

## MEMORANDUM OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS IN OPPOSITION TO MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING SUBMISSION OF INFORMATION BY CURRENT ASBESTOS MESOTHELIOMA CLAIMANTS

**HAMILTON MOON STEPHENS STEEL & MARTIN, PLLC**

Travis W. Moon (Bar No. 1067)
201 South College Street
Charlotte Plaza, Suite 2020
Charlotte, NC  28244-2020
Telephone:  (704) 344-1117

*Co-Counsel for the Official Committee
of Asbestos Claimants*

**CAPLIN & DRYSDALE, CHARTERED**

Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY  10152-3500
Telephone:  (212) 319-7125

Trevor W. Swett III
Leslie M. Kelleher
One Thomas Circle, N.W.
Suite 1100
Washington, D.C.  20005
Telephone:  (202) 862-5000

*Co-Counsel for the Official Committee
of Asbestos Claimants*

446954

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABF Capital Mgmt. v. Askin Capital*,
  Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178,
  98 Civ. 7494, 2000 WL 191698 (S.D.N.Y. Feb. 10, 2000) .....................................7

*In re A.H. Robins Co.*,
  880 F.2d 694 at 697-98 (4th Cir. 1989) ...............................................................16

*In re Armstrong World Indus., Inc.*,
  348 B.R. 111 (D. Del. 2006) ...............................................................................11

*In re Bennett Funding Group, Inc.*,
  203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...................................................................12

*In re Blinder, Robinson & Co.*,
  127 B.R. 267 (D. Colo. 1991) .............................................................................12

*Cohn v. Bond*,
  953 F.2d 154 (4th Cir. 1991) ..............................................................................13

*Convolve, Inc. v. Compaq Computer Corp.*,
  223 F.R.D. 162 (S.D.N.Y. 2004) .........................................................................14

*Crawford-El v. Britton*,
  523 U.S. 574 (1998) ...........................................................................................14

*Dent v. Westinghouse*,
  MDL No. 875, EDPA Civil Action No. 08-8311, 2010 WL 56054
  (E.D. Pa. Jan. 4, 2010) .........................................................................................7

*In re Drexel Burnham Lambert Group, Inc.*,
  123 B.R. 712 (Bankr. S.D.N.Y. 1991) .................................................................15

*In re Eagle-Picher Indus., Inc.*,
  169 B.R. 130 (Bankr. S.D. Ohio 1994) ................................................................15

*In re Federal-Mogul Global Inc.*,
  330 B.R. 133 (D. Del. 2005) .................................................................11, 16, 17

*Marshall v. Celotex Corp.*,
  651 F. Supp. 389 (E.D. Mich. 1987) ...................................................................18

*In re N.Y. Cnty. Data Entry Worker Prod. Liab. Litig.*,
  635 N.Y.S.2d 641 (1995) ......................................................................................7

i

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...........................................................................................12

*Owens Corning v. Credit Suisse First Boston*,
  322 B.R. 719 (D. Del. 2005)......................................................................11, 16

*In re Related Asbestos Cases*, 543 F. Supp. 1152 (N.D. Cal. 1982)............................18

*Shepherd v. Pneumo-Abex, LLC*,
  MDL No. 875, EDPA Civil Action No. 09-91428, 2010 WL 341633
  (E.D. Pa. Aug. 30, 2010)......................................................................................7

*In re Szadkowski*,
  198 B.R. 140 (Bankr. D. Md. 1996) .....................................................................13

*In re Valley Forge Plaza Assocs.*,
  109 B.R. 669 (Bankr. E.D. Pa. 1990) ..................................................................13

*Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*,
  No. Civ. A. 97-3012, 1998 WL 249217 (E.D. La. May 14, 1998)..........................14

**DOCKETED CASES**

*In re ACandS*
  No. 02-12687 (Bankr. D. Del.) ..............................................................................2

*Allison v. Goodyear Tire & Rubber Co. (In re Asbestos Prods. Liab. Litig.)*, MDL
  No. 875, No. 07-69104 (E.D. Pa.) .........................................................................7

*In re Specialty Prods. Holding Corp*,
  No. 10-11780 (Bankr. D. Del.) ................................................................3, 10, 18

**OTHER AUTHORITIES**

9 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy (16th ed. 2009) ...................12, 13

6 Bankr. Serv. Law. Ed. (West 2008) .............................................................................13

Fed. R. Bankr. P. 2004 ..................................................................................................12, 13

Fed. R. Bankr. P. 7026 ..................................................................................................12, 14

Fed. R. Civ. P. 26 ..........................................................................................................12, 13

Fed. R. Civ. P. 26(b) .....................................................................................................13

Fed. R. Civ. P. 26(b)(2)..................................................................................................13, 14

Fed. R. Civ. P. 26(b)(4)..................................................................................................13

Fed. R. Civ. P. 26(c) ...................................................................................................................14

44A N.Y. Jur. 2d *Disclosure* .....................................................................................................7

Prosser and Keeton on Torts (5th ed. 1984) ..............................................................................18

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... i

PRELIMINARY STATEMENT ...................................................................................1

I.      The Questionnaire Motion Rehashes the Debtors' Bar Date / Proof of Claim
        Motion.................................................................................................................4

II.     Federal Rule of Civil Procedure 26, Rather than Bankruptcy Rule 2004, Governs
        Discovery in this Contested Matter, and Precludes the Discovery Sought Here as
        Irrelevant and Burdensome ............................................................................11

III.    The Proposed Questionnaire is Not Relevant to Aggregate Estimation for Plan
        Formulation Purposes .....................................................................................15

CONCLUSION.......................................................................................................19

The Official Committee of Asbestos Personal Injury Claimants (the "**Asbestos Claimants Committee**" or "**ACC**") respectfully submits this Memorandum in Opposition to the Motion of the Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Information by Current Asbestos Mesothelioma Claimants, dated January 5, 2011 [Dkt. No. 1006] ("**Questionnaire Motion**").

## PRELIMINARY STATEMENT

On December 9, 2010, after six days of hearings, the Court entered an Order denying the Debtors' Bar Date / Proof of Claim Motion[1] without prejudice, granting the ACC's Scheduling Motion[2] in part, and instructing, *inter alia*, that the parties should, for a period of six months, "conduct preliminary discovery related to estimation, for purposes of formulating a plan of reorganization, of the Debtors' liability for pending and future asbestos-related claims for personal injury and wrongful death."[3]

The Debtors' current Questionnaire Motion seeks an order by this Court requiring all persons "known to have" a mesothelioma-related claim against the Debtors to fill out a questionnaire, the contents of which are not specified, but which the Debtors make clear would

---

[1]    *See* Debtors' Motion for (A) Establishment of Asbestos Claims Bar Date, (B) Approval of Asbestos Proof of Claim Form; (C) Approval of Form and Manner of Notice, (D) Estimation of Asbestos Claims, and (E) Approval of Initial Case Management Schedule, dated August 31, 2010 [Dkt. No. 461] ("**Bar Date / Proof of Claim Motion**").

[2]    *See* Motion of the Official Committee of Asbestos Personal Injury Claimants for Entry of a Scheduling Order for Plan Formulation Purposes, dated August 30, 2010 [Dkt. No. 451] ("**Scheduling Motion**") (collectively, with the Bar Date / Proof of Claim Motion, the "**Case Administration Motions**").

[3]    Order on Motion of the Official Committee of Asbestos Personal Injury Claimants for Entry of a Scheduling Order and Debtors' Motion for Establishment of Asbestos Claims Bar Date, Etc. ¶ 3, dated December 9, 2010 [Dkt. No. 853] ("**December 9 Order**").

generally duplicate the Proof of Claim ("**POC**") form that the Court has already rejected.   In addition to this Questionnaire Motion, Garlock has filed a motion seeking discovery of the entire claims databases of all established 524(g) Trusts,[4] has filed motions to obtain Rule 2019 statements filed by asbestos claimants in 12 different bankruptcy cases,[5] and intends to seek discovery against plaintiffs' law firms representing Garlock's more than 100,000 asbestos claimants.[6]  The Questionnaire Motion and the Debtors' entire Proposed Discovery Plan make clear that the Debtors are refusing to abide by the Court's December 9 Order requiring the parties to focus on aggregate estimation but, rather, are simply repackaging their efforts to conduct discovery that is both comprehensive and detailed about individual claims.

Oddly, Garlock has not provided the Court or the parties with the form of questionnaire that it proposes but, rather, is seeking a declaration by this Court that there be a questionnaire, and an order requiring the Debtors, the ACC, the Future Claims Representative ("**FCR**"), and any other interested persons (*i.e.*, the lawyers for individual claimants) to negotiate its form.[7] Garlock would submit a proposed form if the parties fail to agree.[8]  As a preliminary matter, this

---

[4]    *See* Motion of Debtors for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Data by Claims Processing Facilities and Asbestos Trusts, dated October 13, 2010 [Dkt. No. 601].

[5]    *See e.g.,* Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in this Court and for Related Relief, *In re ACandS, Inc., et al.*, No. 02-12687 (Bankr. D. Del. Jan. 10, 2011) [Dkt. No. 3639].

[6]    *See* Debtors' Preliminary Plan for Initial Discovery Period, dated January 12, 2011 [Dkt. No. 1052] ("**Debtors' Proposed Discovery Plan**").

[7]    Garlock has represented that it served the Questionnaire Motion on approximately 700 law firms, each.  As ordered by the Court at the January 13 hearing, the ACC has tried to inform its constituency that individual claimants' law firms will not be held to the response date set forth in the Motion.

[8]    Garlock purports to have modeled this approach on the *Bondex* case.  *See* Questionnaire Motion ¶¶ 20-21.  But the debtor in *Bondex* did not seek approval of a questionnaire in the abstract as Garlock does here.  Rather, the *Bondex* debtor presented its proposed questionnaire *(Footnote continued on next page.)*

Court should not entertain a motion for a questionnaire in the abstract, particularly as it is apparent from Garlock's own papers that its conception of the questionnaire is essentially the same as the POC form that this Court has already rejected as unnecessary for aggregate estimation and as threatening to embroil the parties in "a quagmire of disputes and great expense." Hr'g Tr. 1296:20, Nov. 19, 2010 (excerpts attached as **Ex. A**). In any event, for the reasons that follow, no form of questionnaire directed to individual claimants is appropriate or necessary for aggregate estimation.

The Questionnaire Motion is nothing more than a retread of the arguments Garlock put forth in support of its POC form. The Questionnaire Motion should be rejected on the same grounds, as a questionnaire is inappropriate and unnecessary in the current context of these cases, and, like a POC form, would create enormous costs in time and money for the estates and the parties. The proper focus at this stage of the proceedings is on aggregate estimation, not a determination of how much any individual claimant is entitled to receive. Thus, discovery must be tailored to assist the parties and their experts to determine the total amount that the claimants, as a group, could have recovered in the tort system in the absence of bankruptcy. That amount can best be determined by reference to the average settlement values Garlock achieved in the tort system; individualized claims data simply is not relevant or necessary. Indeed, the Debtors' own

---

*(Footnote continued from previous page.)*
with its motion on October 11, 2010. At the hearing on the motion, the court expressed concerns "as to why the debtor may need [such] specific information" and ordered the parties to attempt to negotiate a more limited questionnaire that would be acceptable to all parties. *See* Hr'g. Tr. 107-10, *In re Specialty Prods. Holdings Corp.*, No. 10-11780 (Bankr. D. Del. Nov. 15, 2010) excerpts attached as **Ex. B**. The result has been a highly contentious and protracted dispute that has triggered the rights of individual claimants, and involves a number of claimants' counsel. A decision on the form of the questionnaire is not expected before February — a full five months after the debtor originally submitted its motion. This process is entirely inconsistent with this Court's timeline for discovery in these proceedings, and with the Court's stated concerns about the disputes that would have been generated by a POC form in these cases.

expert has conceded that the kind of comprehensive discovery of information related to individual claims Garlock seeks here is not necessary for aggregate estimation. *See* Hr'g. Tr. 848-49, Oct. 28, 2010 (excerpts attached as **Ex. C**). A questionnaire directed at individual claimants will distract the parties and the Court from the proper focus of this stage of the cases, while undermining the key virtues of aggregate estimation for the purposes of plan formulation: efficiency, brevity, and the avoidance of disputes triggering the due process rights of individual claimants.

## I.     The Questionnaire Motion Rehashes the Debtors' Bar Date / Proof of Claim Motion

The Questionnaire Motion makes clear that Garlock is seeking to gather the same information that it first proposed to gather through its POC form, which the Court has not embraced. The purpose of the POC form was to contest individual claims in allowance proceedings. Now re-proposed as a questionnaire, Garlock's demands for individualized claim information are a thinly-veiled attempt to circumvent the Court's December 9 Order that discovery should be aimed at estimation of the Debtors' total asbestos liability for plan formulation purposes, rather than at the merits of individual claims. Garlock's arguments in support of its conception of the questionnaire are the very same arguments it presented earlier in its unsuccessful effort to impose the POC form. In attempting to justify a questionnaire, Garlock even cites to the papers it submitted months ago in support of the POC. *See* Questionnaire Motion ¶¶ 3, 14.

For example, just as it argued with respect to the POC form, Garlock insists that a questionnaire would not burden asbestos claimants because it would seek the same information they would compile to submit a claim to an asbestos trust, and that their questionnaire responses could later be used by claimants as the basis for their claims against the 524(g) trust to be

4

established by the Debtors.[9]  In fact, though, Garlock mischaracterizes trust claim forms, and its description of its goals for the questionnaire leaves no doubt that it would demand far more information than any 524(g) Trust requires from mesothelioma claimants — and this is precisely the same sleight of hand it employed in arguing for the POC form.  To assert a claim against a Trust, mesothelioma claimants typically need only demonstrate "meaningful and credible exposure" to the products for which the trust is responsible.[10]  Further, many Trusts provide a list of sites at which those products were used.[11]  Garlock has not suggested that it would provide such a list, and rather than seeking only information about claimants' exposures to its own products, Garlock would have them detail their entire history of occupational exposure to asbestos, including a complete account of their contacts with asbestos-containing products of other manufacturers, and, for each period of exposure, identification of occupation, industry, site and the duration of exposure.  Garlock also would have claimants identify all Trusts and tort system defendants against whom the claimant has brought or intends to bring a claim, the status of any such claims, any settlement amount, the amount paid, and the date of payment.  *See* Questionnaire Motion at 6-7.

---

[9]    *See* Questionnaire Motion at 6, 8; *see also* Debtors' Response to Motion of Official Committee of Asbestos Personal Injury Claimants for Entry of Scheduling Order for Plan Formulation Purposes at 23, 33-34, dated September 24, 2010 [Dkt. No. 540] ("**Debtors' Response to Scheduling Motion**").

[10]    *See, e.g.,* CE Trust Distribution Procedures ("TDP") §§ 5.7(b)(1) & 5.7(b)(3) (ACC Ex. 73) (attached as **Ex. D**).  *See also* Declaration of Mark T. Eveland, dated Oct. 26, 2010, ¶ 18 (ACC Ex. 45) (attached as **Ex. E**).  The AWI Trust Claim form Garlock appends to its Questionnaire Motion is typical in the limited product exposure information it requires of mesothelioma victims.  *See* Ex. B to Questionnaire Motion.  ACC Ex. _ refers to exhibits introduced by the ACC at the Hearing on the Case Administration Motions.

[11]    *See* Eveland Decl. ¶ 17 (Ex. E), citing http://www.cetrust.org/trust.html.

As the ACC already demonstrated during the hearings on the Case Administration Motions, 524(g) Trusts do not make such sweeping informatic demands.[12]   Further, the settlement information Garlock would seek is confidential.[13]   Indeed, Garlock itself insisted that any settlement it reached with plaintiffs in the tort system remain confidential, and did not share such information with its co-defendants.  Thus, as Garlock's own expert has recognized, Garlock and other asbestos defendants generally could not obtain discovery of settlement payments in the tort system.[14]  Garlock has never offered any cogent reason why it should be given the advantage over claimants and solvent defendants of wholesale discovery of settlement data.

Nor will courts compel discovery of such information.  The Eastern District of Pennsylvania, which oversees the federal multi-district asbestos litigation, comprising about

---

[12]   *See* Hr'g Tr. 905-09, Oct. 28, 2010 (Ex. C); Hr'g Tr. 1238-40, Nov. 19, 2010 (Ex. A); *see also* Eveland Decl. ¶¶ 11–22 (Ex. E).

[13]   To the extent that Garlock hopes to obtain such information from 524(g) Trusts, its demands would violate confidentiality provisions of the Trust Distribution Procedures approved by the courts that established the Trusts.  Accordingly, certain Delaware Trusts have applied to Bankruptcy Judge Fitzgerald of the District of Delaware for preliminary injunction barring efforts by several entities, to obtain discovery of settlements from those Trusts and have joined Garlock in that litigation with leave of this Court.  This Court has postponed consideration of Garlock's Rule 2004 application regarding the Trusts, awaiting Judge Fitzgerald's anticipated ruling.  In addressing the Questionnaire Motion, therefore, the Court should reserve comment on the Trust confidentiality issued that is *sub judice* in Judge Fitzgerald's court.

[14]      The true average total recovery for mesothelioma claims is not readily available since no one person or entity has access to all the required information.  Plaintiff law firms only know what their claimants receive; they do not know what claimants of other plaintiff law firms attain.  *Defendant companies only know what they pay each claimant;* they do not know what other defendants paid that same plaintiff.  Insurance companies observe a patchwork quilt of information.  Moreover, none of these parties sees it as being in its interest to reveal this information to others.

Charles E. Bates & Charles H. Mullin, *Show Me the Money*, Mealey's Litigation Report: Asbestos, Vol. 20, Iss. 21 (Dec. 3, 2007) at 1, Commentary (attached as **Ex. F**) (emphasis added).  Obtaining comprehensive settlement data on asbestos claimants might gratify the curiosity or serve the business interests of Garlock's experts, but such extraneous considerations hardly make settlement data a reasonable subject for discovery.

60,000 cases and 3.5 million individual claims, routinely refuses to allow defendants to obtain information regarding the amounts plaintiffs have received from co-defendants or other potentially responsible parties, including settling asbestos trusts. *See, e.g.*, *Dent v. Westinghouse*, MDL No. 875, EDPA Civil Action No. 08-83111, 2010 WL 56054, at *1 (E.D. Pa. Jan. 4, 2010); *Shepherd v. Pneumo-Abex, LLC*, MDL No. 875, EDPA Civil Action No. 09-91428, 2010 WL 3431633, at *2 (E.D. Pa. Aug. 30, 2010). *See also* Memorandum and Order at 4, *Allison v. Goodyear Tire & Rubber Co.* (*In re Asbestos Prods. Liab. Litig.*), MDL No. 875, No. 07-69104 (E.D. Pa. Aug. 19, 2010) [Dkt. No. 29] (attached as **Ex. G**) (denying defendant's motion to compel plaintiff to produce settlement releases from other defendant companies, and finding, *inter alia*, that the request violated Fed. R. Evid. 408 because it "amounts to nothing more than a test of the credibility of Plaintiff's claims.") Even when that court has required asbestos claimants to produce trust claim forms in the tort system, it has stopped short of requiring disclosure of settlement data. *See, e.g., Shepherd*, 2010 WL 3431633 at *2 (requiring the asbestos plaintiff to produce proof of claim forms, but ordering redaction of settlement information). Indeed, under the laws of most jurisdictions, prior to the entry of a verdict, "[d]efendants are generally not entitled to disclosure of settlement agreements, if the agreements do not have any relation to the underlying causes of action, and do not relate to any issue that any party will need to prove at trial."[15]

---

[15]    44A N.Y. Jur. 2d *Disclosure* § 214. *See also In re N.Y. Cnty. Data Entry Worker Prod. Liab. Litig.*, 635 N.Y.S.2d 641, 641-42 (1995) ("Other than the amount of the settlement, which plaintiffs acknowledge must be disclosed in the event of a verdict in their favor, such materials have no conceivable relevance to a possible postverdict apportionment under General Obligations Law § 15-108."). *See also ABF Capital Mgmt. v. Askin Capital*, Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178, 98 Civ. 7494, 2000 WL 191698, at *2 (S.D.N.Y. Feb. 10, 2000) (denying motion to compel production of settlement agreement between co-defendant and plaintiff on the grounds of relevance because, although the defendants *(Footnote continued on next page.)*

Thus, it is clear that Garlock could not access information regarding settlements when it was a solvent defendant in the tort system, other than in those few cases that it took to trial,[16] and, even in those cases, only after suffering a verdict awarding damages against it. The information about settlements with third parties therefore is categorically irrelevant to aggregate estimation. The task of aggregate estimation is to approximate the amount of money it would have cost Garlock to resolve all pending and future asbestos claims against it had it remained in the tort system. In the context of aggregate estimation, and particularly given that Garlock can determine from publicly available sources the average settlement amounts each Trust pays, Garlock cannot establish good cause for obtaining settlement payment information, whether from claimants by means of a questionnaire or otherwise, or from trusts or other third parties by other devices.

Garlock's theory that Trust payments should reduce its own future liability does not make it necessary or appropriate for it to take discovery of individual settlements from claimants. For aggregate estimation, after all, it is *average* settlement values, not any particular settlement that matters. And Garlock already knows, or can readily find out, the Trusts' average settlement payments, because they are set forth in their Trust Distribution Procedures, which are matters of public record.[17]

---

*(Footnote continued from previous page.)*

were similarly situated and "disclosure of the terms of the Settlement Agreement may allow [movant] Kidder and the other remaining defendants to approach settlement negotiations from a more enlightened perspective, this alone does not determine Kidder's entitlement to the Settlement Agreement at issue"; and noting that although under New York's General Obligations Law the defendant may be entitled to disclosure of the settlement amount post-verdict, it was not entitled to it at this stage of the case).

[16]   Hr'g Tr. 166:25-167:5, Oct. 14, 2010 (excerpts attached as **Ex. H**).

[17]   *See* Memorandum from Marc Scarcella (Bates White LLC) re: Analysis of 524(g) Asbestos Personal Injury Trust Compensation for Sherrie Moore, dated March 22, 2010 (attached as **Ex.** *(Footnote continued on next page.)*

Garlock claims that the settlement information and other data it seeks is "necessary" for estimation, citing the same reason Garlock claimed the information was "necessary" during the hearing on the Case Administration Motions: that is, to allow its expert to determine what payments individual mesothelioma claimants have received or can anticipate receiving from trusts and from co-defendants in the tort system.  *See* Questionnaire Motion at 7, ¶ 18; *see also* Debtors' Response to Scheduling Motion at 35-37.  But, as Judge Fitzgerald suggested at a recent hearing in the *Bondex* case, there is no fixed maximum amount that a mesothelioma victim is entitled to recover, and the only way for a defendant to determine its "share" of the victim's damages is to try the case and have the jury allocate damages among the potentially liable persons.[18]  Settlement values, like the prices of commodities, change over time, and are

---

*(Footnote continued from previous page.)*

**I**); Scapa Dryer Products, Inc. Trust Recovery and Recovery Analysis by Bates White, dated October 2010 (attached as **Ex. J**).  Garlock's expert conceded as much during the hearings on the Case Administration motions.  *See* Hr'g Tr. 176-77, Oct. 14, 2010 (Ex. H).  Indeed, Dr. Bates and his colleagues regularly use that information to calculate the amounts they believe that mesothelioma claimants can anticipate receiving from trusts in the tort system.  Thus, there is no need for Garlock to obtain settlement information through the questionnaire.

[18]   In a discussion of whether the amount a claimant settled for with a co-defendant would be properly discoverable, the Court in Bondex made the following remarks:

> THE COURT:  I don't have any idea why it matters whether a plaintiff got a particular amount of money.  It may very well be relevant that they settled with another entity and in an action in which they also sued the debtor, but what difference the specific amount makes is beyond me. How would you ever get that in the tort system?
>
> . . . .
>
> THE COURT:  Right. How has the amount of the claim ever been fixed so that you could possibly know that the plaintiff has recovered a full share if it's pursuant to a settlement?
>
> . . . .
>
> THE COURT:  And you may be able to get the information as to who else they settled with.  I wholly agree, whether they settled with another entity is relevant.

*(Footnote continued on next page.)*

affected by a number of system-wide factors, including increasing jury verdicts and the increase in the quality and concentration of the strongest cases among the strongest law firms.[19]  Dr. Bates's notion of some fixed maximum recovery for which Garlock's proper "share" can be determined is a chimera, and case-specific data regarding settlements paid by other defendants simply has no relevance to an aggregate estimation of Garlock's liabilities.

In its Bar Date / Proof of Claim Motion, Garlock proposed mass disallowance proceedings through consolidated summary judgment motions, with only those claims that survived summary judgment proceeding to estimation.  *See* Bar Date / Proof of Claim Motion at 25-26.  Now, in its Questionnaire Motion, Garlock argues that unless asbestos claimants make allegations "*sufficient to survive a summary judgment motion* . . . their claims plainly should receive *no* value in the estimation."  Questionnaire Motion at 7 n.3 (emphasis added).  But this is to inject allowance notions into aggregate estimation in a muddled and anomalous way.  The average settlement values that Garlock achieved in the tort system reflect the full spectrum of cases, from weak to strong.  It would be illogical and unfair for Garlock to assign zero value in estimation to a higher percentage of claims than it was actually able to dismiss without payment

---

*(Footnote continued from previous page.)*

> The amount I don't see because this is only the debtor's share.  The debtor isn't going to be paying somebody else's share.
>
> . . . .
>
> THE COURT: If you're going to judgment, I think that's a different issue.  If you're going to litigate each independent tort in the context of a complaint, in a state court system for example, in which, to pick a number, there are ten co-defendants and the plaintiff settles with three and you're going to trial as to the rest, it may very well be relevant at that point in time because there may be some entitlement to an offset after a jury says your share is X and so-and-so's share is Y, but in the bankruptcy, you're only paying your own share.

*See* Hr'g Tr. at 24-29, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 13, 2010) (attached as **Ex. K**).

[19]     *See* Hr'g Tr. 700-02 , Oct. 27, 2010 (excerpts attached as **Ex. L**).

in the tort system.  And importing claim-by-claim summary judgment criteria would not only be

foreign to the whole idea of *aggregate* estimation — it would also tend to force individual claim

holders to intervene in the estimation proceeding or otherwise defend their claims, triggering

disputes and inefficiencies that a well-designed approach to aggregate estimation process should

avoid.  *See Owens-Corning v. Credit Suisse First Boston*, 322 B.R. 719 (D. Del. 2005); *In re

Federal-Mogul Global Inc.*, 330 B.R. 133 (D. Del. 2005); *In re Armstrong World Indus., Inc.,*

348 B.R. 111 (D. Del. 2006).  By proposing to engraft onto aggregate estimation a set of criteria

for testing the merits of individual claims, Garlock is again pointing to the path that this Court

wisely declined to travel down when it opted for estimation rather than allowance proceedings.

Garlock may reckon that creating the specter of a litigation quagmire and of the attendant

delay in the resolution of these bankruptcy cases will exert pressure on its asbestos creditors to

knuckle under to an unfair plan of reorganization.  But an asbestos defendant who seeks refuge

in bankruptcy is not entitled to distort the reorganization process by using bankruptcy as the

continuation of the "tort wars" by other means.  The Questionnaire Motion (and in due course,

the Debtors' Proposed Proposed Discovery Plan as a whole) should be judged by whether or not

they promote a fair and speedy reorganization process.  By that touchstone, Garlock's approach

is sorely lacking.

The Bankruptcy Court need not indulge Garlock's overreaching.  The Supreme Court has

instructed that "[i]n deciding whether a request comes within the discovery rules, a court is not

required to blind itself to the purpose for which a party seeks information . . . . [W]hen the

purpose of a discovery request is to gather information for use in proceedings other than the

pending suit, discovery properly is denied.  Likewise, discovery should be denied when a party's

aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks

discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) (citations omitted). Neither the Debtors' impractical desire to amass comprehensive and detailed data on every mesothelioma claimant, nor the tactical goal of wearing down their adversaries through inordinate discovery demands, can justify the questionnaire they seek.

No doubt, these arguments have a familiar ring. The Court heard them in the Case Administration hearing and then decided upon the direction these cases should take. Garlock should now be held to that decision.

## II.     Federal Rule of Civil Procedure 26, Rather than Bankruptcy Rule 2004, Governs Discovery in this Contested Matter, and Precludes the Discovery Sought Here as Irrelevant and Burdensome

The Debtors have styled the Questionnaire Motion as one governed by Bankruptcy Rule 2004. But the Court's December 9 Order made clear that the Debtors' solvency is a contested matter, and that discovery should proceed accordingly: "All discovery conducted by the parties shall be governed by and conducted pursuant to the Bankruptcy Rules and Federal Rules of Civil Procedure *applicable to contested matters*, except as may be modified by further Order of this Court." December 9 Order at 3, ¶ 3 (emphasis added). As this is a contested matter, discovery is governed by Federal Rule of Civil Procedure 26. It is a "well recognized rule . . . that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.,* rather than by a Fed. R. Bankr. P. 2004 examination." *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citations omitted); *see also In re Blinder, Robinson & Co.*, 127 B.R. 267, 275 (D. Colo. 1991) (holding that Bankruptcy Rules 7026 through 7037, which adopt various provisions of the Federal Rules of Civil Procedure, provide for their use in adversary proceedings and contested matters, and "Rule 2004 should not be used" therein). 9 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶

12

2004.01 [1], at 2004-3 (16th ed. 2009); 6 Bankr. Serv. Law. Ed. (West) §§ 52:144-52:145 (2008).

The Debtors may not sidestep the Federal Rules of Civil Procedure by basing their Questionnaire Motion on Rule 2004. "[O]nce an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F. R. Civ. P. rather than the broader bounds of R2004. . . . The admonition that the F. R. Civ. P. in general apply to discovery in adversary proceedings and contested matters has been specifically applied to prevent attempts to avoid the proscriptions of F. R. Civ. P. 26(b)(4) by the use of R2004." *In re Valley Forge Plaza Assocs.,* 109 B.R. 669, 674-75 (Bankr. E.D. Pa. 1990). *See also In re Szadkowski*, 198 B.R. 140, 142 (Bankr. D. Md. 1996) ("this court holds that once an adversary proceeding or contested matter has been commenced, the discovery of matters related to that adversary proceeding or contested matter must proceed in accordance with the discovery provisions of the Federal Rules of Civil Procedure"). Thus, this Court must evaluate the Questionnaire Motion under Fed. R. Civ. P. 26.

The Federal Rules give effect to principles of cost-effectiveness and proportionality in shaping discovery to the needs of the case. They empower the court to prevent excesses and to rein in parties who are overbroad, wasteful or otherwise. Rule 26(b) directs that discovery

> shall be limited by the court if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). While the scope of permissible discovery is broad, it is not unlimited and "should not become a 'fishing expedition.'" *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991). If the utility of proposed discovery is slight in relation to the expense, trouble, distraction

13

or delay it would entail, the Court should intervene to prevent the discovery, either "upon its own

initiative after reasonable notice or pursuant to a motion under Rule 26(c)."[20]  Accordingly, trial

courts routinely invoke Rule 26 to prohibit discovery that requires "an expenditure of time and

resources far out of proportion to the marginal value of the materials to th[e] litigation."

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 168 (S.D.N.Y. 2004) (applying Rule

26(b)(2)'s "general limitations on the scope of discovery in the form of a 'proportionality test.")

*See also, e.g., Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, No. Civ.A. 97-3012, 1998

WL 249217, at *2 (E.D. La. May 14, 1998) (finding that the production of thousands of loan

documents for vehicles sold by a dealership "would cross the sometimes difficult to discern

proportionality line drawn by Rule 26(b)(2)").

   As the Supreme Court has recognized, "Rule 26 vests the trial judge with broad

discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v.

Britton*, 523 U.S. 574, 598 (1998).  Here, the Court already has determined the sequence of

discovery, having ruled that individual claims evaluation will not go forward at this time, and

that the parties instead are to pursue discovery "related to estimation" of the Debtors' aggregate

asbestos liabilities.  *See* December 9 Order ¶ 3.  As shown below, the discovery sought here is

not properly tailored or necessary for aggregate estimation, and accordingly the burden and

delays it would entail are unjustified.

   For example, the Debtors would have each claimant list every occupational exposure to

asbestos that he or she ever experienced, and the dates and places of such exposures, often over

the course of a lengthy career that ended a decade or more ago.  While the Debtors glibly portray

---

[20]   *See also* Notes of Advisory Committee on 1993 amendments to Rules, subdivision (b) ("The
revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose
additional restrictions on the scope and extent of discovery. . . .").

such information as easily obtainable, it is not. Typically, claimants do not know all of the

products they were exposed to — at the time they were exposed, they may not have even known

that the product contained asbestos and, in any event, it is a rare worker who can recall every

asbestos-containing product he worked with or around over a decades-long career. *See* Hr'g Tr.

544-45, Oct. 27, 2010 (Ex. L). To compile a complete list of exposures, the claimants and their

counsel must conduct extensive investigation and discovery, including co-worker depositions

and examination of employers' invoices and other documents. When Garlock filed bankruptcy

and triggered the automatic stay, pending claims were in various stages of discovery and

preparation for trial. Realistically, few claimants will have already gathered the information

Garlock's questionnaire would seek. And, as was demonstrated during the hearings held by this

Court on the Case Administration Motions, finding and assembling that information is far more

time-consuming, costly and burdensome than Garlock pretends.[21] Thus, the proposed

questionnaire should be rejected because it is disproportionately burdensome in relation to its

attenuated relevance, discussed below, for aggregate estimation.[22]

---

[21]  *See* Response of Kelley & Ferraro LLP to Debtors' Third Set of Interrogatories To Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms, *In re W.R. Grace & Co.*, No. 01-1139 (Bankr. D. Del. July 13, 2007) (ACC Ex. 43) (attached as **Ex. M**); Motley Rice LLC's Objections & Responses to Debtors' Third Set of Interrogatories To Certain Asbestos Personal Injury Pre-Petition Litigation Claimants' Law Firms, *In re W.R. Grace & Co.*, No. 01-1139 (Bankr. D. Del. July 13, 2007) (ACC Ex. 44) (attached as **Ex. N**).

[22]  Even if Rule 2004 were applicable, the Court would still be required to balance the Debtors' interest in collecting the information sought by the questionnaires against the claimants and estates' interests in avoiding the cost and burden of the discovery. *See, e.g.*, *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 712 (Bankr. S.D.N.Y. 1991) (requiring a "balanc[ing] [of] the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination."); *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). Under such a balancing test, the sum of (a) the burden on individual claimants of compiling and providing the information, (b) the costs to the estates of analyzing the data, and (c) the costs to the parties and the Court of the delays all this would entail far exceeds any *(Footnote continued on next page.)*

### III.   The Proposed Questionnaire is Not Relevant to Aggregate Estimation for Plan Formulation Purposes

In an asbestos bankruptcy, aggregate estimation serves "to prevent undue delay in the administration of the estate." *Federal-Mogul,* 330 B.R. at 154. *See also In re A.H. Robins Co.*, 880 F.2d 694, at 697-98 (4th Cir. 1989). It is not the purpose of aggregate estimation to "decid[e] how much each claimant will actually be entitled to receive." *Owens Corning*, 322 B.R. at 722. Rather, as Defendants' own expert has conceded,[23] the proper purpose of estimating tort liabilities in the aggregate is to foster plan confirmation by gauging "the total amount which the claimants, as a group, could legitimately have claimed as compensation, as of the petition date." *Id.* "[T]he claims are to be appraised on the basis of what would have been a fair resolution of the claims in the absence of bankruptcy." *Id.* "The values of future claims should be estimated on the same basis − *i.e.*, what their claims would have been worth in the tort system as it existed on the petition date." *Id.*

By definition, estimation is not exact. Especially when so much of the liability lies in the future, mathematical precision would be illusory, and that unobtainable goal is subordinated to the eminently practical one of formulating a plan of reorganization in a reasonable period of time. Thus, as the court recognized in *Federal Mogul*, estimation must focus on aggregate liability, and not become a meta-litigation of the merits of individual claims. To allow Garlock to focus on "the discovery of individual claims . . . would eviscerate the purposes of the estimation process," *Federal-Mogul,* 330 B.R. at 155, triggering the due process rights of the claimants and consuming in litigation the scarce resources that should be preserved for the

_____

*(Footnote continued from previous page.)*
legitimate benefit the Debtors would conceivably obtain the information, especially since the data is not necessary for, or relevant to, aggregate estimation.

[23]   *See* Hr'g Tr. 782, Oct. 28, 2010 (Ex. C).

stakeholders.

The evidence presented at the hearing on the Case Administration Motions showed that Garlock resolved without trial almost all asbestos cases against it during more than thirty years in the tort system, and paid in settlement amounts that Garlock's management, counsel, and insurers agreed were in Garlock's best interests.[24]   The evidence also demonstrated that Garlock's rich claims database provides more than sufficient data from which can be determined the percentage of claims that Garlock resolved without payment.[25]   Garlock's data leave no room for doubt that two factors drive any reasonable estimate of its aggregate liability:   the average settlement value of its mesothelioma claims (the disease category that in recent years accounts for more than 80% of its total settlement payments)[26] and the percentage of mesothelioma claims that it resolves by payment.[27]   The parties differ on whether payments by 524(g) Trusts will significantly affect Garlock's settlement values in the future.   But the information Garlock wishes to seek through a questionnaire will not assist in the resolution of that issue, as it rests on the faulty assumption of Garlock's expert that there is a $1.2 - $1.4 million ceiling on the amount

---

[24]   *See* Memorandum of the Official Committee of Asbestos Personal Injury Claimants: (1) In Opposition to the Debtors' Motion for (A) Establishment of Asbestos Claims Bar Date, (B) Approval of Asbestos Proof of Claim Form, (C) Approval of Form and Manner of Notice, (D) Estimation of Asbestos Claims, and (E) Approval of Initial Case Management Schedule; and (2) In Further Support of Its Motion for Entry of a Scheduling Order for Plan Formulation Purposes at 34, dated September 24, 2010 [Dkt. No. 548].

[25]   *See* Hr'g Tr. 368:15-371:2, Oct. 15, 2010 (excerpt attached as **Ex. O**).

[26]   *See* Chart of Claims Payments, dated October 26, 2010 (attached as **Ex. P**); *see also* Hr'g Tr. 687:22-23 Oct. 27, 2010 (Ex. L) ("In the last five years, eighty-one percent [of payments] went to mesothelioma claimants.")

[27]   *See* Hr'g Tr. 167:11-17, Oct. 14, 2010 (Ex. H).

asbestos claimants can collect in settlements,[28] and that any settlement amount recovered by a claimant from one defendant necessarily will reduce Garlock's share of the total amount. As Judge Fitzgerald recently noted in the *Bondex* case, the value of a claim is not "fixed," other than by a verdict at trial that has become final and non-appealable. *See* Hearing Transcript at 26, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 13, 2010) (**Ex. K**) ("How has the amount of the claim ever been fixed so that you could possibly know that the plaintiff has recovered a full share if it's pursuant to a settlement?"). In the tort system, Garlock had at its disposal the full panoply of litigation instruments — discovery, cross-claims, third-party practice, and contribution claims — for ensuring that, when settling asbestos claims, it paid only its own liabilities and not those of other culpable entities.[29] It is not a proper purpose of bankruptcy to revise the Debtors' historical claims experience, and no amount of claim-by-claim discovery could do so even if such an effort were permissible.

A questionnaire focused on the facts of individual claims has little to do with estimation of liabilities in the aggregate. Rather, approaching aggregate estimation by attempting to value each individual claim would subvert the intended benefits to the estate of aggregate estimation

---

[28] *See* Hr'g Tr. 113:19-22, Oct. 14, 2010 (Ex. H) (Charles Bates: "I believe that number across the country is an average which is less than one and half million dollars, probably about one point two, one point four.").

[29] Throughout these cases, Garlock has insisted that it has been paying more than its fair share of damages, and has been unfairly saddled with the shares of top-tier asbestos defendants. But "market share" liability has been uniformly rejected by the courts in asbestos litigation. *See, e.g., Marshall v. Celotex Corp.*, 651 F. Supp. 389, 393 (E.D. Mich. 1987) ("I find that asbestosis litigation is an inappropriate area in which to extend market share liability."); *In re Related Asbestos Cases*, 543 F. Supp. 1152, 1158 (N.D. Cal. 1982) ("[T]he market share liability theory was not intended to be applied in a context such as the one which is before the court. Where asbestos is the product in question, numerous factors would make it exceedingly difficult to ascertain an accurate division of liability along market share lines."); Prosser and Keeton on Torts § 103 (5th ed. 1984) ("it would not be appropriate to apply [the fungible product concept of market share liability] to asbestos-containing products . . . .").

— efficiency and speed — and the related goal of obtaining such an aggregate estimation in a manner that does degenerate into claim-by-claim disputes and thus not trigger the due process rights of individual claimants.  Thus, such discovery is neither appropriate nor necessary at this time.[30]

Indeed, the Debtors' own expert, Charles Bates, has admitted that he does not need to obtain information on every claim to provide an aggregate estimate of liability, as opposed to assessing the merits of individual claims, and that a sample would suffice.[31]  Dr. Bates has also admitted that he has for many years provided asbestos liability estimations in a number of contexts, including for his clients' reports to the Securities and Exchange Commission, and for insurance purposes, and for bankruptcy purposes without access to any of the individualized claim information Garlock would seek with the questionnaire.[32]  There is no reason he cannot do the same here, and provide an estimate of the Debtors' aggregate liabilities that is more than

---

[30]    Elsewhere in these cases, Garlock has argued that any discovery that its expert desires cannot be challenged at this point on relevance grounds, and that such challenges must be made later in the proceedings by *Daubert* motions.  *See* Debtors' Omnibus Reply in Support of Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Data by Claims Processing Facilities and Asbestos Trusts at B, ¶ 20, dated December 9, 2010 [Dkt. No. 863]. But, as noted above, the Court must apply a proportionality analysis to determine whether to permit Garlock the discovery it seeks, and an assessment of the relevance *vel non* of that discovery is a necessary part of that analysis.  Where as here, the discovery sought has only attenuated relevance, at best, to the issue at hand, and the burden on the parties and the estates is so great, there can be no question that the Court has ample power to prevent the discovery.  The expert cannot dictate anything so vital to the efficient administration of these cases.

[31]    Q. [Jonathan Guy] We are focused now on the proof of claim and whether you can ask for a limited sample rather than requiring fifteen thousand claimants to give detailed information. And as I understand your testimony, that is something that you could do; correct?

A. [Charles Bates] *From a valuation standpoint on the aggregate class, yes.*

*See* Hr'g Tr. 848:19-25, Oct. 28, 2010 (Ex. C) (emphasis added).

[32]    *See* Hr'g Tr. 775-76, Oct. 28, 2010 (Ex. C).

sufficient for a solvency analysis.  Dr. Bates may aspire to a "higher degree of certainty" in

estimation through the comprehensive and exhaustive discovery Garlock first proposed to obtain

by means of a specialized Proof of Claim form and now wants to gather through a questionnaire.

But the record presented at the Case Administration hearing shows that if Garlock's claims

experience in the last five years before bankruptcy provides the basis for forecasting its future

liability, Garlock will be found deeply insolvent.  The best interests of the estates and their

creditors demand swift joinder of issue and resolution of the question of solvency, and it

behooves the parties to devise approaches to discovery for aggregate estimation that can make

this possible.  This is not a case in which a "higher degree of certainty" can justify the resources

and delays that the highly uncertain search for it would inflict on the estate, the creditors, and the

Court.

## **CONCLUSION**

The Questionnaire Motion should be denied.


Respectfully submitted,

HAMILTON MOON STEPHENS STEELE &
MARTIN, PLLC

By: /s/ Travis W. Moon
Travis W. Moon (Bar No. 1067)
201 South College Street
Charlotte Plaza, Suite 2020
Charlotte, NC  28244-2020
Telephone:  (704) 344-1117

CAPLIN & DRYSDALE, CHARTERED

Elihu Inselbuch (EI-2843)
(ei@capdale.com)
375 Park Avenue, 35th Floor
New York, NY  10152-3500

20

Trevor W. Swett III
(tws@capdale.com)
Leslie M. Kelleher
(lmk@capdale.com)
One Thomas Circle, N.W.
Washington, D.C.  20005
(202) 862-5000

*Attorneys for the Official Committee of Asbestos*
*Personal Injury Claimants*