# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | | |
|---|---|---|
| | ) | |
| In Re: | ) | Chapter 11 |
| | ) | |
| GARLOCK SEALING TECHNOLOGIES LLC, et al. | ) ) | Case No. 10-31607 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF MARK T. EVELAND**

I, Mark T. Eveland, declare and state as follows:

I make this declaration based on my own personal knowledge, and the facts stated herein are true and correct to the best of my knowledge, information and belief.

1. I am President of Verus Claims Services, LLC ("Verus"), which is located in Hopewell, N.J. Verus, which my partners and I formed in 2004, provides claims administration and consulting services for asbestos-related bankruptcy trusts, as well as for class action settlements and tort defendants. Verus is the claims administrator for several Asbestos Settlement Trusts established under Section 524(g) of the Bankruptcy Code, including the Combustion Engineering 524(g) Asbestos Personal Injury Trust (the "CE Trust"), the Burns and Roe Personal Injury Settlement Trust, the ACandS Asbestos Settlement Trust, and the Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust.

2. I have more than sixteen years experience in operations, data and document management and reporting specifically related to mass tort and class actions claims, including asbestos settlement trusts. I have been heavily involved in the design, development and implementation of three successive generations of claims administration applications. Most

LV1 1262796v1 10/26/10



**EXHIBIT**
ACC 45
10/28/10

recently, I oversaw the design of the proprietary web-based application used by Verus to service our client base, including Asbestos Settlement Trusts.

3.     Before forming Verus, I worked for the Center for Claims Resolution ("CCR") from 1997-2001.  The CCR was an organization formed in 1988 by some 21 asbestos defendants to handle all asbestos personal-injury suits filed against them.  My responsibilities at the CCR included internal audits of the claims evaluation and processing functions, and oversight of the processing of filing against member companies, and processing, billing and payment of settlements.  During my tenure at the CCR, I was heavily involved in all aspects of reporting and analysis.  In 2000, I was responsible for the design of a new claims management processing and reporting systems for the CCR.

4.     Prior to joining the CCR, I was employed from 1993-1997 by Peterson Consulting, LLC, which provided outsourced information management, claims processing, and insurance allocation services for the CCR.  (Peterson Consulting is not affiliated with Mark Peterson, who I understand is an expert for the ACC in this case.)  Among my duties at Peterson Consulting, I was responsible for data integrity, system design and testing for the billing of indemnity and expense costs to member companies of the CCR, which was a client of Peterson Consulting.

5.     I have been asked by the Official Committee of Asbestos Personal Injury Claimants to provide this declaration to respond to statements made in the declaration of Mark Scarcella, dated September 24, 2010 ("Scarcella Dec."), and to explain the manner in which claims are filed with and processed by asbestos settlement trusts.

6.     Mr. Scarcella is correct that Verus and other claim processing facilities have developed and utilize electronic claim filing systems that allow claimants to file their claims

2

electronically.  His statement that these electronic claim filing "technologies have been designed to be compatible with the electronic claim databases that claimant law firms have developed for internal use" is misleading and a significant over-simplification.  Scarcella Dec. at ¶ 4.  Since claimant law firms' electronic claims databases vary significantly in the manner in which data is stored (both in terms of database architecture the manner in which specific fields may be formatted and stored), and the scope of data captured for each claim, it would be a practical impossibility for the trust to design "off the shelf" compatibility into their claims filing systems. Rather, the trusts make use of programming standards that allow for cross-platform communications and publish sample code to assist claimants' law firms in understanding how to program their systems to interface with the trusts' databases.  It is the responsibility of individual law firms to produce the software necessary to enable their databases to communicate with the databases used by the claims processing facilities, each of which use their own proprietary software.

7.      The process of synchronizing a particular law firm's database to that of a particular claims facility, and the trusts it administers, is complicated.  Verus, like other claims processing facilities, provides information to assist the firms in writing software programs that will allow them to interface with the various trusts' claims forms, including Online Filing User's Guides[1] and data import format specifications,[2] and sample code of "webservices" methods (a technology for implementing direct database-to-database data exchange).  A firm that chooses to use the electronic filing methods must make a significant commitment of time by information

---

[1]   *See e.g,* http://www.cetrust.org/docs/Online_Filing_User__Guide.pdf (last viewed on October 25, 2010).

[2]   *See, e.g.,* http://www.cetrust.org/docs/CE%20Data%20Import%20File%20Format%20Specifications.xl s (last viewed on October 25, 2010).

LV1 1262796v1 10/26/10

technology specialists, and must incur significant costs.  The costs are ongoing, as the systems are not static, but are regularly being revised to improve the claims filing process, and firms must update their programs regularly to continue to be able to synchronize their databases with those of the various trusts.  Because each claims processing facility has its own system, and each trust may request slightly different information on its claim form, the firms must have customized code for filing with each trust.  The costs in time and money are substantial, and the process requires specialized technical expertise.  Thus, only six firms have developed programs to make their databases compatible with the trusts' databases.

8.       Mr. Scarcella is correct that the bulk of claims are filed electronically (*pro se* claimants cannot, however, file electronically, and there are law firms which lack the resources or capabilities to file electronically).  Law firms whose databases have not been made compatible with the trusts' databases may also file claims electronically using a web-based claim form.  But each piece of information that is entered on the electronic claim form has to be typed in manually by the claimant's representative.  In addition, information is often submitted in the form of pdfs attached to the claim form.  For example, rather than manually enter work histories on the electronic form provided, law firms and claimants often attach separate documents.  Law firms and claimants often attach affidavits or depositions of co-workers, invoices or other documentary evidence to establish exposure, and often submit additional documentary evidence if they are seeking Individual Review rather than Expedited Review of their claims, alternative processes for claim resolution that are discussed further below.  When documentary evidence is attached, employees of the claims processing facility must review that documentation to determine whether it contains the necessary information to process the form.  That review is labor intensive and takes considerable time.

LV1 1262796v1 10/26/10

9.     Asbestos Settlement Trusts typically provide claimants a choice between "Expedited Review" and "Individual Review" of their claims.  An example is the CE Trust's Trust Distribution Procedures ("TDP")[3].  *See* CE Trust TDP at § 5.3.  The Expedited Review Process is designed to promote expeditious and inexpensive resolutions of claims.  The TDP set out presumptive medical and exposure criteria.  *See id.* at § 5.3(a)(3).  If a claimant satisfies those criteria, he can seek expedited review.  If his claim is approved, an offer is extended to the claimant, and upon return of a properly executed release the claim is placed in the FIFO queue for payment in the amount set out in the TDP.  *Id.* at § 5.3(a)(2).  If a claimant does not satisfy the medical and exposure criteria set out in the TDP, he or she can seek Individual Review to determine if the claim would otherwise be cognizable in the tort system.  *See id.* at § 5.3(b)(1)(A).[4]  In addition, any claimant may choose Individual Review if he or she believes that the claim would be worth more in the tort system than the Scheduled Value offered in settlement by the Trust.  *See id.* at § 5.3(b)(1)(B).  The TDP establish maximum values that will be offered in settlement.  *See id.*

10.     Claims that are submitted for Individual Review generally require more time and cost more to process because, among other things, the claimant electing the process typically submits additional supporting documentation that must be reviewed.  Thus, claims submitted for Individual Review are not resolved as quickly by the Trust as those submitted for Expedited Review.  For example, in 2009, the CE Trust received 38,086 claims.  Of those claims, 22,303 were submitted for Expedited Review and 15,783 were submitted for Individual Review.  In that

---

[3]  The CE Trust TDP can be found online at http://www.cetrust.org/docs/CE_First_Amended_TDP_20091026.pdf (last viewed on October 24, 2010).

[4]     Claimants with "Lung Cancer 2" are required to undergo Individual Review.  *See* CE Trust TDP § 5.3(b).

LV1 1262796v1 10/26/10

year, the CE Trust liquidated and paid 6,695 claims following Expedited Review, but liquidated and paid just 689 claims following Individual Review.[5]

11.     I have reviewed Garlock's proposed proof of claim ("POC") form in this action, and disagree with Mr. Scarcella's conclusions that "by and large, the information sought in the POC is the same information and documentation necessary to establish a valid 'basis for claim' to support a trust claim."   To the contrary, Garlock's proposed POC demands far more information than any trust claim form of which I am aware.  To illustrate, I detail below the ways in which the POC differs from the CE Trust proof of claim form.  While the various trusts each have their own claim forms, the CE form is representative.  The CE Trust proof of claim form can be found on the CE Trust website (http://www.cetrust.org) at:

 http://www.cetrust.org/docs/CE%20Claim%20Form%201-14-08.doc (last viewed on October 25, 2010).

12.     As a preliminary matter, Garlock's proposed POC states on page 1 that the form must be submitted electronically if the claimant is represented by counsel.  It should be noted that the settlement trusts administered by Verus do not require claimants who are represented by counsel to file their claims electronically.  Nor do other Asbestos Settlement Trusts or claims processing facilities, to the best of my knowledge.  Some firms either are not equipped to submit claims electronically or prefer not to do so, and those firms submit the claims in paper form by mail.

13.     Garlock's POC also provides on page 1 that the failure to complete any part of the form "will result in the denial of the claim."  That is not the case for claims submitted to asbestos

---

[5]     *See* 2009 Annual Report, Financial Statements and Results of Operations of the Combustion Engineering 524(g) Asbestos PI Trust for Fiscal Year Ended December 31, 2009, *In re Combustion Eng'g,* Case NO. 03-10495, filed April 29, 2010 [Dkt. No. 3375].

LV1 1262796v1 10/26/10

settlement trusts administered by Verus or any other claims processing facility.  Claims are not automatically rejected if they are "deficient", in the sense of submitted without adequate supporting information.  Rather, if a claim form is not complete, the claimant or his law firm is notified of the deficiency and allowed to cure the deficiency by providing additional data, supporting documentation, or explanation.[6]  The CE Trust, for example, provides up to three years for a deficiency to be cured before it is deemed withdrawn.  And even after the claim is deemed withdrawn, it may be resubmitted, so long as the statute of limitations for the claim has not run.[7]

14.   The Garlock POC asks for a list of all trusts against which claims have been filed or may be filed in the future, as well and claim status, amount received, and payment date.  *See* Garlock POC at 2, block 4.  To the best of my knowledge, no Asbestos Settlement Trust asks claimants for that information.

15.   The Garlock POC asks for information regarding claims that have been asserted against, or may in the future be asserted against, parties other than Asbestos Settlement Trusts, including the status of the claim, any payment or judgment received, and the payment date, as well as the claimant's assessment of each such party's respective share of the claimant's damages.  *See* Garlock POC at 2, block 5.  To the best of my knowledge, no Asbestos Settlement Trust asks for that information.

16.   Garlock's POC asks for details of all exposure to Garlock products.  By contrast, the CE Trust asks for evidence of exposure to CE products sufficient to satisfy the presumptive

---

[6]   *See, e.g.,* Asbestos PI Trust Online Filing User's Guide at 55, available at http://www.cetrust.org/docs/Online_Filing_User_Guide.pdf (last viewed on October 25, 2010).
[7]   *See* Combustion Engineering 524(g) Asbestos PI Trust: Deadlines for Responding to Offers and Deficiency Notifications, found at http://www.cetrust.org/docs/20100501_CE_Deadline_Notice.pdf (last visited October 25, 2010).

LV1 1262796v1 10/26/10

exposure requirements established in the CE TDP. *See* CE Trust Claim Form at Part 7. Unlike the Garlock POC, the CE Trust claim form does not ask for the owner of each site where exposure occurred, the CE product name, style number and description, or "equipment and service" in which the product was used. On the CE Claim Form, the claimant may check one of more choices on a list of ways in which CE products were used. *See id.* The Garlock POC asks the claimant to describe how he or she worked with the product, "including the tasks and tools involved and how many times, on average, Injured Party or Other Exposed Person worked with Product each year." The CE Claim Form, and trust claim forms in general, do not ask for that information. Nor do the CE Claim Form or those for other Asbestos Settlement Trusts with which I am familiar ask whether the claimant worked with non-debtor asbestos products at that site. *See* Garlock POC at p. 3, block 8.

17.     It should be noted as well that the Asbestos Settlement Trusts generally provide site lists, available on their websites, listing the sites where the defendant's products were known to be used. *See, e.g.,* http://www.cetrust.org/trust.html. Claimants may establish product exposure by confirming that they worked at one of the listed sites during the period when CE's asbestos-containing products are known to have been present there. Garlock does not appear to have provided such site lists for the claimants filling out its POC.

18.     The Garlock POC also asks for details of all exposures to non-debtor asbestos products. Neither the CE Claim Form nor any other trust claim form I have seen asks for that information. The claimant ordinarily is required to provide evidence of exposure to other manufacturers' products only if the exposure to asbestos for which the trust is responsible is not sufficient to satisfy the presumptive exposure requirements set out in the TDP. Typically, mesothelioma claimants are not required to provide any evidence of exposure to non-debtor

8

products.   The CE Trust TDP, for example, provides that to meet the presumptive exposure requirements for Mesothelioma (Disease Level VIII), the claimant need only demonstrate "meaningful and credible exposure" to CE asbestos-containing products.  *See* CE Trust TDP §§ 5.7(a)(3) & 5.7(b)(3).   Presumptive exposure criteria for other disease levels may require a claimant to show exposure to non-debtor asbestos-containing products, but only if the claimants' exposure to CE's products is not sufficient, in and of itself, to demonstrate   Significant Occupational Exposure to asbestos.  For example, for Severe Asbestosis (Level IV), the claimant must show at least six months of exposure to CE asbestos products plus Significant Occupational Exposure to asbestos.   *See* CE Trust TDP §§ 5.3(a)(3) & 5.7(b)(1).   Only if the Severe Asbestosis claimant cannot satisfy the Significant Occupational Exposure requirement by exposure to asbestos for which CE is responsible will he or she be required to provide any information on exposure to other manufacturers' products.

19.     The Garlock POC asks for details on the claimant's entire occupational history, regardless of whether the claimant claims to have been exposed to asbestos at each of his job sites.  I am not aware of any Asbestos Settlement Trust that asks for information regarding the claimant's occupational history in periods where no allegations of asbestos exposure are being made.

20.     The Garlock POC requires details of the smoking history of the claimant.  *See* Garlock POC at p. 7, block 12.  While some trusts ask for smoking history regardless of the nature of the illness, the CE Trust and most other trusts ask for smoking history only when the claim is for Lung Cancer, because smoking is not believed to be a significant factor in causing mesothelioma or other asbestos-related malignancies.  *See, e.g.,* CE Trust Claim Form at Part 11.

LV1 1262796v1 10/26/10

21.    The Garlock POC requires that all claimants submit a diagnostic report that is made by a pathologist, pulmonologist, or internist certified the by American Board of Pathology or the American Board of Internal Medicine, <u>and</u> was made after a personal examination of the injured party. *See* Garlock POC at p. 7, Block 14.  The CE Trust TDP requires only that diagnoses of asbestos-related malignancies are based upon <u>either</u> (i) a physical examination of the claimant by the physician providing the diagnosis <u>or</u> (ii) a diagnosis by a board-certified pathologist <u>or</u> by a pathology report prepared at or on behalf of a hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO").  *See* CE Trust TDP § 5.7(a)(1)(B).

22.    The Garlock POC requires the names of the earliest diagnosing physician and date of the earliest diagnosis. *See* Garlock POC at p. 7, Block 14.  The CE Trust generally requires only either (a) a statement by the physician providing the diagnosis that 10 years have elapsed between the date of the exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period. *See* CE Trust TDP § 5.7(a).

I, Mark T. Eveland, hereby state, under penalty of perjury, that the foregoing statements are true and correct.

Executed this 26th day of October, 2010.

_____
Mark T. Eveland