## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| IN RE: | Case No. 10-31607 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al., | Chapter 11 |
| | Jointly Administered |
| Debtors.[1] | |

## MOTION FOR ORDER AUTHORIZING DEBTORS TO (A) TERMINATE DEBTOR-IN-POSSESSION FINANCING ARRANGEMENT WITH BANK OF AMERICA, N.A., AND (B) ENTER INTO CASH COLLATERAL AGREEMENT WITH BANK OF AMERICA, N.A.

Garlock Sealing Technologies LLC ("Garlock"), Garrison Litigation Management Group, Ltd. ("Garrison") and The Anchor Packing Company ("Anchor"), debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code (together with all amendments thereto, the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (together with all amendments thereto, the "Bankruptcy Rules"), authorizing Garlock and Garrison to (a) terminate certain debtor-in-possession financing arrangements with Bank of America, N.A. (together with its successors and assigns, the "DIP Lender") and (b) enter into the Cash Collateral Agreement (as such term is defined below). In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

---

1    The Debtors include Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd. and The Anchor Packing Company.

1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. § 1408.

     2.     The statutory bases for the relief requested herein are sections 105(a), 363 and 364 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

## BACKGROUND

     3.     On June 5, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). On June 16, 2010, the Court entered an order appointing an Official Committee of Asbestos Personal Injury Claimants ("Asbestos Committee") (Docket No. 101) and subsequently amended that order on July 20, 2010 (Docket No. 260). On June 17, 2010, the Court entered an order appointing an Official Committee of Unsecured Creditors (the "Unsecured Creditors Committee") (Docket No. 104).

     4.     The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

     5.     On the Petition Date, the Debtors filed the Motion of Debtors-in-Possession for Interim and Final Orders (I) Authorizing the Debtors-in-Possession (A) to Enter Into Post-Petition Loans with Bank of America, N.A. and (B) to Use Cash Collateral and (II) Granting Related Relief (the "DIP Financing Motion") (Docket No. 20).

     6.     On June 8, 2010, after a hearing before this Court on the DIP Financing Motion, this Court entered the Order After Final Hearing (1) Authorizing Debtors-In-Possession to Obtain Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (2) Modifying Automatic Stay; and (3) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363(c)(2) (the "Interim DIP Financing Order") (Docket No. 45). Among other things, the Interim DIP Financing order authorized Garlock and

Garrison to enter into the DIP Loan Agreement (as such term is defined below) and DIP Lender

to make advances and other financial accommodations available to Garlock and Garrison during

the Interim Period (as such term is defined in the Interim DIP Financing Order).

7.    Upon this Court's entry of the Interim DIP Financing Order, Garlock, Garrison

and DIP Lender entered into (a) that certain Post-Petition Loan and Security Agreement dated

June 8, 2010 (as at any time amended, modified, restated or supplemented, the "DIP Loan

Agreement"), and (b) that certain other DIP Loan Documents (as such term is defined in the DIP

Loan Agreement),[2] pursuant to which DIP Lender agreed to extend credit and make certain

financial accommodations available to Garlock and Garrison pursuant to the terms of the Interim

DIP Financing Order and the DIP Loan Documents.

8.    Also on June 8, 2010, the Court entered the Order (I) Authorizing (A) Continued

Use of Existing Cash Management System, (B) Maintenance of Existing Bank Accounts, (C)

Continued Use of Existing Business Forms and (D) Waiver of Deposit Guidelines and Continued

Use of Existing Investment Policies; and (II) (A) Granting Administrative Priority Status to Post-

Petition Intercompany Claims and (B) Authorizing Continued Performance Under Intercompany

Arrangements (Docket No. 46), which was subsequently clarified by order of this Court entered

on September 15, 2010 (Docket No. 506) (collectively and as amended, the "Cash Management

Order").

9.    On July 15, 2010, this Court entered the Order After Final Hearing (1)

Authorizing Debtors-In-Possession to Obtain Financing, Grant Security Interests and Accord

Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (2) Modifying Automatic Stay;

and (3) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363(c)(2) (the

---

[2]    Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the DIP
Loan Agreement (as defined herein)

"Final DIP Financing Order" and, together with the Interim DIP Financing Order, collectively the "Financing Orders") (Docket No. 226). Pursuant to the Final DIP Financing Order, this Court, among other things, granted the DIP Financing Motion and authorized DIP Lender to make advances and other financial accommodations available to Garlock and Garrison after the Interim Period secured by all or substantially all of their assets.

10.    Pursuant to the Financing Orders, the Debtors stipulated to the validity, perfection and scope of the security interests of the Pre-Petition Agent in and with respect to the Pre-Petition Collateral (as defined in the Final DIP Financing Order), the unavoidable nature of those security interests and the legality and enforceability of the Pre-Petition Loan Documents (as defined in the Final DIP Financing Order) and the legality and enforceability of the Pre-Petition Debt (as defined in the Final DIP Financing Order); and each Committee and other parties in interest were afforded a period of time within which to raise any issues regarding the Pre-Petition Liens (as defined in the Final DIP Financing Order), the Pre-Petition Loan Documents and the Pre-Petition Debt, failing which all of the stipulations made by the Debtors as provided in the Financing Orders would be binding on all interested parties. No challenge was made to any of the Pre-Petition Liens, the Pre-Petition Loan Documents and the Pre-Petition Debt, and therefore all of the foregoing are legal, valid, binding, perfected, enforceable and unavoidable as and to the extent provided in the Financing Orders.

## RELIEF REQUESTED

11.    Pursuant to the Interim DIP Financing Order, on an interim basis, and the Final DIP Financing Order, on a final basis, this Court authorized the Debtors to obtain credit and incur debt of up to $10,000,000 from BofA (the "DIP Facility"), pursuant to the DIP Loan Agreement.

12.     The DIP Facility permitted the Debtors to address potential concerns regarding the availability of liquidity at the beginning of these cases.  The DIP Facility gave the Debtors, their creditors, and other parties in interest confidence that the Debtors would have sufficient cash to purchase the goods and services that they needed to protect the value of their business operations, and pay the wages, salaries, rent, utilities and other expenses associated with protecting their businesses and the value of their assets.

13.     However, as these cases progressed, the Debtors have not needed the funds available to them under the DIP Facility, and they have not incurred any debt to BofA, with the exception of certain charges that may have accrued in connection with the Debtors' use of BofA banking products and outstanding undrawn Letters of Credit.  In fact, as of the filing of this Motion, Garlock holds cash reserves of over $100 million.

14.     The Debtors have determined, in their business judgment, that the DIP Facility is no longer beneficial to the Debtors' estates.  The Debtors seek entry of an order from this Court authorizing the release of the DIP Lender from any obligation to lend to the Debtors and further releasing the assets of the Debtors' estates from the liens of the DIP Lender, except as set forth herein.

15.     The Debtors request this Court enter an order authorizing Garlock and Garrison, in connection with the payment required under the Payoff Letter (as defined below) and termination of the Commitment (such transactions are collectively referred to herein as the "DIP Financing Termination"), to execute a payoff letter annexed to this Motion as Exhibit A (the "Payoff Letter") and the Cash Collateral Agreement (as defined below).

16.     Pursuant to Section 6.2.2 of the DIP Loan Agreement, upon not less than ten (10) business days' prior written notice to DIP Lender from Garlock, Garlock and Garrison may terminate the Commitment, provided that such termination is not effective until Full Payment of

the Obligations. Full Payment of the Obligations under the DIP Loan Agreement requires the full, final and indefeasible payment in full, in cash and in Dollars, of the Obligations by Garlock and Garrison, including, without limitation, all interest, fees and other charges payable in connection therewith under any of the DIP Loan Documents. With respect to the obligations of Garlock and Garrison for outstanding Letters of Credit, Full Payment of the Obligations under the DIP Loan Agreement requires that Garlock and Garrison deposit Cash Collateral with DIP Lender, as security for the payment of such Obligations, in an amount not to exceed 105% of the aggregate undrawn amount of such Letters of Credit.

17.    Following the consummation of the DIP Financing Termination, Garlock and Garrison desire to continue to maintain their depository accounts and other cash management relationships with DIP Lender, subject to all of the protections provided in the Cash Management Order.

18.    In order to effect Full Payment of the Obligations in conformity with the DIP Loan Agreement's requirements for terminating the Commitment, and to secure all charges that may accrue in connection the Debtors' use of DIP Lender's banking products (the "Banking Relationship Debt") that may arise after the DIP Financing Termination, Garlock and Garrison desire to execute in favor of DIP Lender a Cash Collateral Agreement Regarding Standby Letter of Credit and Bank Products (such agreement is referred to herein as the "Cash Collateral Agreement"), in the form annexed to the Motion as Exhibit B, pursuant to which Garlock and Garrison will grant to DIP Lender a lien upon and security interest in the Cash Collateral Account (as such term is defined in the Cash Collateral Agreement) and all balances therein and proceeds thereof (the "Cash Security"), to secure all Cash Collateralized Obligations (as such term is defined in the Cash Collateral Agreement).

## BASIS FOR RELIEF REQUESTED

19.     The Debtors in these cases are operating as debtors-in-possession and, as such, are empowered to carry out the day to day operations of their businesses pursuant to section 1107 and 1108 of the Bankruptcy Code.  Implicit in the Debtors' authority to maintain daily operations and profitable businesses is the power to make decisions based on reasonable business judgment. Bankruptcy courts routinely defer to a debtor's reasonable business judgment for a number of matters.  See, e.g., In re Abbotts Dairies of Pa., 788 F.2d 143 (3d Cir. 1986); Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303 (5th Cir. 1985).

20.     The Debtors submit that they should be authorized to consummate the DIP Financing Termination because the DIP Facility is no longer necessary or beneficial to the Debtors or their estates.  The Debtors submit that the continued costs associated with the DIP Facility cannot be justified when there is no foreseeable need for the incursion of debt during the pendency of these cases given the considerable cash accumulated since the Petition Date.

21.     In addition, the Debtors submit that they should be authorized to enter into the Cash Collateral Agreement.  Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  In addition, this Court has previously authorized Garlock and Garrison to grant liens on cash to DIP Lender pursuant to section 364(c).  Pursuant to this Motion, the Debtors seek authority for Garlock and Garrison to enter into transactions that effectuate the release of all liens on Garlock's and Garrison's assets except as set forth in the Cash Collateral Agreement with DIP Lender, which provides certain liens and other rights to DIP Lender as set forth therein.

22.     The Debtors submit that Garlock and Garrison negotiated the terms of the Cash Collateral Agreement with DIP Lender at arms' length and in good faith (as that term is defined

{00183061 v 2}                                    7

in Section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel. The Debtors further submit that the Cash Collateral Agreement is consistent with the terms and provisions of the Financing Orders and the DIP Loan Documents previously approved of by this Court. The Debtors submit that the terms and conditions of the Cash Collateral Agreement are fair and reasonable; and the DIP Financing Termination and the execution and delivery of the Cash Collateral Agreement by Garlock and Garrison are in the best interests of their businesses and operations as well as their respective creditors and Estates.

23.     The Debtors request that any order approving this Motion waive any stay that would otherwise apply under Rule 6004 of the Bankruptcy Rules.

**NOTICE**

24.     Notice of the hearing on this Motion has been given to the parties identified on the Updated Master Service List (Docket No. 1454), as well as any party that has filed a docketed request for notices under Bankruptcy Rule 2002 since the filing of the Updated Master Service List on August 9, 2011. Pursuant to the Order Establishing Notice Procedures, entered on June 8, 2010 (Docket No. 48), and in light of the nature of the relief requested, the Debtors submit that no further notice need be given. No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request the Court enter an order, substantially in the form attached hereto as Exhibit C:

(A)     Authorizing and directing Garlock and Garrison to execute the Payoff Letter to the benefit of DIP Lender and such other agreements, documents and instruments reasonably deemed necessary by DIP Lender to effectuate the termination of the Commitment and Full Payment of the Non-Contingent Obligations;

(B)      Upon execution of the Payoff Letter, terminating the Commitment of DIP Lender to make loans or otherwise extend credit to or for the benefit of the Debtors, whether pursuant to the DIP Loan Documents, the Financing Orders or otherwise;

(C)      Upon execution of the Payoff Letter, terminating the liens and security interests of DIP Lender and other rights of DIP Lender under the DIP Financing Orders, except as continued pursuant to the Cash Collateral Agreement;

(D)      Authorizing and directing Garlock and Garrison to enter into the Cash Collateral Agreement with DIP Lender and to provide liens and other rights to DIP Lender as set forth in the Cash Collateral Agreement;

(E)      Authorizing and directing Garlock and Garrison to deposit sufficient collateral in the Cash Collateral Account pursuant to the Cash Collateral Agreement; and

(F)      Granting the Debtors such other and further relief as the Court deems just and proper.

This the 30th day of August, 2011.

RAYBURN COOPER & DURHAM, P.A.

By:      /s/ Shelley K. Abel
         Albert F. Durham
         N.C. State Bar No. 6600
         Shelley K. Abel
         N.C. State Bar No. 34370
         1200 Carillion, 227 West Trade Street
         Charlotte, NC  28202
         (704) 334-0891

*Counsel to the Debtors and Debtors-in-Possession*

## EXHIBIT A

**Cash Collateral Agreement**

[See attached.]

Garlock Sealing Technologies LLC
Garrison Litigation Management Group, Ltd.
1666 Division Street
Palmyra, New York 14255-9383

_____, 2011

Bank of America, N.A.
600 Peachtree Street, N.E.
10th Floor
Mail Code: GA1-006-10-32
Atlanta, Georgia 30308
Attention: Ms. Connie Warfield

and

300 Galleria Parkway, Suite 800
Mail Code: GA7-293-08-01
Atlanta, Georgia 30339
Attention: Mr. Andrew Doherty

     Re:    Cash Collateral Agreement Regarding Standby Letter of Credit and Bank Products

Ladies and Gentlemen:

     As you know, Garlock Sealing Technologies LLC, a North Carolina limited liability company (the "Applicant"), has executed and delivered to you a letter of credit application (as amended and in effect from time to time, the "Application") with respect to the issuance by you for the Applicant's account of Letter of Credit No. 68031426, in the face amount of $2,687,548.10, for the benefit of Federal Insurance Company, with a mailing address of 15 Mountain View Road, P.O. Box 1615, Warren, New Jersey 07061-1615 (as amended and modified and in effect from time to time, the "Credit"). All of the Applicant's obligations owing from time to time by the Applicant to you hereunder or from time to time arising under or in respect of the Application or the Credit, as well as any debt or other obligations owing from time to time by the Applicant or by Garrison Litigation Management Group, Ltd., a North Carolina corporation ("Garrison"; the Applicant and Garrison are sometimes collectively referred to herein as "Obligors" and individually as an "Obligor") to you (or any your affiliates) arising out of or relating to Bank Products (as defined below), whether contingent or otherwise, are hereinafter referred to, collectively, as the "Cash Collateralized Obligations". As used herein, "Bank Products" shall mean any one or more of the following types of products, services or facilities extended to an Obligor by you or any of your affiliates: (i) commercial credit cards; (ii) merchant card services; (iii) products or services under cash management agreements; (iv) products under hedging agreements; (v) equipment leasing facilities; (vi) bank guarantees and other indemnity agreements, letters of credit, documentary collections and other similar services (excluding, however, the Credit); (vii) interstate depository network services; and (viii) such other banking products or services provided by you or any of your affiliates as may be requested by an Obligor.

     In connection with the Credit and the Cash Collateralized Obligations, each Obligor hereby agrees, and requests your agreement, as follows:

1748452_7

*The Cash Collateral Account.*  Obligors have furnished to you a cash sum in the amount of $6,500,000 to be deposited into an interest bearing account with you entitled "Garlock Sealing Technologies LLC FBO Bank of America, N.A., as Collateral Pledgee Cash Collateral Account," Account 4427138234 (the "Cash Collateral Account").  Each Obligor agrees that some or all of the funds from time to time in the Cash Collateral Account may be invested in time deposits, including, without limitation, certificates of deposit issued by you (such certificates of deposit or other time deposits being hereinafter referred to, collectively, as "Time Deposits"), which are satisfactory to you after consultation with and approval (which approval shall not by unreasonably withheld) by Obligors.  Interest (if any) earned on the Cash Collateral Account and on the Time Deposits, and the principal of the Time Deposits at maturity which is not invested in new Time Deposits, shall be deposited in the Cash Collateral Account.

*Withdrawal Rights Limited.*  Until the payment in full of the Cash Collateralized Obligations and the termination of this letter by you in writing, no Obligor shall have the right to withdraw any sums in the Cash Collateral Account or any Time Deposits or any proceeds of any thereof or to ask you to part with physical possession of any of the evidences of Time Deposits constituting instruments, provided that, so long as no default exists under the Application, the Credit or hereunder, and upon the written request by an Obligor to you, you shall remit to Obligors sums in the Cash Collateral Account in an amount equal to those amounts by which the Cash Collateralized Obligations have been permanently repaid or otherwise reduced by Obligors.

*Security Interest; Right of Set Off.*  In order to secure each Obligor's payment and performance in full of all of the Cash Collateralized Obligations, each Obligor hereby assigns to you and grants to you a security interest in and lien upon (i) the Cash Collateral Account, (ii) all of the sums from time to time in the Cash Collateral Account, (iii) the Time Deposits, if any, and (iv) any and all proceeds of any thereof, in each case whether now or hereafter existing or arising.  Upon the failure of any Obligor to pay any of the Cash Collateralized Obligations as and when due and payable, then, without any demand or notice of any kind, you shall have the rights and remedies of a secured party under the Uniform Commercial Code of the State of Georgia and, in addition, you shall be entitled to debit the Cash Collateral Account in the amount of such Cash Collateralized Obligations in default and, to the extent that the amount of such Cash Collateralized Obligations in default exceeds the balance of the Cash Collateral Account, you may collect or redeem any Time Deposits issued by you for application to such Cash Collateralized Obligations, with any withdrawal penalties on any Time Deposits being considered a collection expense to be added to such Cash Collateralized Obligations.

*Authorization to File Financing Statement.*  You are hereby authorized to file in any Uniform Commercial Code filing office a financing statement naming any Obligor as the debtor and indicating the collateral as the Cash Collateral Account, all of the sums from time to time in the Cash Collateral Account, the Time Deposits, if any, and in any and all proceeds of any thereof, whether now or hereafter existing or arising.  You may indicate some or all of the collateral on the financing statement, whether generally or specifically.

*No Commitment to Extend or Renew the Credit.*  Nothing contained in this letter shall constitute a commitment on your part to continue to provide any or all of the Bank Products or to extend, renew or increase the Credit or otherwise to grant any additional credit facilities to any Obligor or to any Obligor's subsidiaries or other affiliate.

*Expenses.*  Any fees and disbursements of your legal counsel in connection with the preparation, execution or enforcement of this letter shall be for Obligors' account and shall be payable by Obligors **on demand**.

*Governing Law.* This letter shall be governed by the law of the State of North Carolina and shall be construed as a sealed instrument under such law.

*Miscellaneous.*

(a)     Each Obligor represents and warrants to you, to induce you to enter into this letter, that (i) the execution, delivery and performance of this letter have been duly authorized by all requisite corporate or limited liability company action on the part of such Obligor, and (ii) this letter has been duly executed and delivered by such Obligor.

(b)     Each party hereto agrees that this letter (i) shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns and (ii) may be executed in any number of counterparts and by different parties to this letter amendment on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement.

(c)     Wherever possible, each provision of this letter shall be interpreted in such manner as to be valid under applicable law.  If any provision of this letter is found to be invalid, illegal or unenforceable under applicable law, such provision shall be ineffective only to the extent of such invalidity, and the remaining provisions of this letter shall remain in full force and effect.

(d)     This letter and any schedules, exhibits, annexes, and addendums hereto, and any instruments or documents delivered or to be delivered in connection herewith represents and embodies the entire agreement and understanding concerning the subject matter hereof between the parties hereto, and supersedes all other prior agreements, understandings, negotiations and discussions, representations, warranties, commitments, proposals, offers and contracts relating to or concerning the subject matter hereof, whether oral or written.  In the event of any conflict or inconsistency between the terms of this letter and any schedule, exhibit, annex, and addendum hereto, the terms of this letter shall govern (unless the terms of such schedule, exhibit, annex, and addendum hereto are necessary to comply with applicable law, in which case such terms shall govern to the extent necessary to comply therewith).

(e)     Section headings used herein are for convenience of reference only, are not part of this letter and shall not affect the construction of, or be taken into consideration in interpreting, this letter.

(f)     All notices, demands, requests, directions and other communications required or expressly authorized to be made by this letter shall, whether or not specified to be in writing but unless otherwise expressly specified to be given by any other means, be given in writing and addressed to each party at the address provided for such party on the signature pages to this letter or such other address as shall be notified in writing to the other parties hereto.  All communications described in the foregoing sentence and all other notices, demands, requests and other communications made in connection with this letter shall be effective and be deemed to have been received (i) if delivered by hand, upon personal delivery, (ii) if delivered by overnight courier service, one business day after delivery to such courier service, (iii) if delivered by mail, when deposited in the mails, and (iv) if delivered by facsimile, upon sender's receipt of confirmation of proper transmission; provided, however, that no communications to you shall be effective until received by you.

(g)     **To the fullest extent permitted by applicable law, the parties hereto each hereby waives the right to trial by jury in any action, suit, counterclaim or proceeding arising out of or related to this letter.**

[Remainder of page intentionally left blank.]

If you agree to and accept the foregoing, please so indicate by executing and returning to Obligors the enclosed duplicate of this letter.

Very truly yours,

**GARLOCK SEALING TECHNOLOGIES LLC**
("Obligor")

By:_____
Name:_____
Title:_____

> Mailing address:
> 1666 Division Street
> Palmyra, New York 14255-9383
> Attention: Don Pomeroy
>
> Type of organization; Jurisdiction of organization:
> Limited liability company, North Carolina
>
> Organizational identification number or statement that none exists:
> 1139037

**GARRISON LITIGATION MANAGEMENT GROUP, LTD.**
("Obligor")

By:_____
Name:_____
Title:_____

> Mailing address:
> c/o Garlock Sealing Technologies LLC
> 1666 Division Street
> Palmyra, New York 14255-9383
> Attention: Don Pomeroy
>
> Type of organization; Jurisdiction of organization:
> Corporation, North Carolina
>
> Organizational identification number or statement that none exists:
> 1139026

[Signatures continue on following page.]

ACCEPTED and AGREED as of
_____, 2011:

**BANK OF AMERICA, N.A.**

By:_____
Name:_____
Title:_____


Mailing address:
600 Peachtree Street, N.E.
10th Floor
Mail Code: GA1-006-10-32
Atlanta, Georgia 30308
Attention: Ms. Connie Warfield

and

300 Galleria Parkway, Suite 800
Mail Code: GA7-293-08-01
Atlanta, Georgia 30339
Attention: Mr. Andrew Doherty

## EXHIBIT B

**Payoff Confirmation Letter**

[See attached.]

## PAYOFF CONFIRMATION LETTER

_____ ___, 2011

Garlock Sealing Technologies LLC
1666 Division Street
Palmyra, New York 14255-9383
Attention: Donald Pomeroy

Garrison Litigation Management Group, Ltd.
Garlock International Inc.
Garlock Overseas Corporation
c/o Garlock Sealing Technologies LLC
1666 Division Street
Palmyra, New York 14255-9383
Attention: Donald Pomeroy

RE:     Termination of the Loan Agreement (as defined below)

Ladies and Gentlemen:

Bank of America, N.A., a national banking association (together with its successors and assigns, "Lender"), has been informed that Garlock Sealing Technologies LLC, a North Carolina limited liability company ("Garlock"), and Garrison Litigation Management Group, Ltd., a North Carolina corporation ("Garrison"; Garlock and Garrison are collectively referred to herein as "Borrowers" and individually as "Borrower"), intend to terminate that certain Post-Petition Loan and Security Agreement dated June 8, 2010 (as at any time amended, modified, restated or supplemented, the "Loan Agreement"), by and among Borrowers and Lender, and the other DIP Loan Documents (as defined in the Loan Agreement), on _____, 2011 (the "Termination Date"), and to satisfy in full all loans and other non-contingent obligations of Borrowers to Lender outstanding on the Termination Date, other than the Cash Collateralized Obligations (as such term is defined in the Cash Collateral Agreement (as such term is defined below)) (collectively, the "Absolute Obligations"), including, but not limited to, all principal, interest, legal fees and other charges outstanding or payable under the Loan Agreement. Capitalized terms used herein, unless otherwise defined herein, shall have the meanings ascribed to them in the Loan Agreement.

Borrowers have advised Lender that satisfaction of the Absolute Obligations will be effected by the wire transfer to Lender from Borrowers of immediately available funds in an amount sufficient to satisfy the full amount of the Absolute Obligations on the date of payment. To the end of facilitating Borrowers' wire transfer of funds to satisfy the Absolute Obligations, please be advised that the total Absolute Obligations on the date hereof consist of the following:

| | | |
|---|---|---|
| 1. | Principal Balance | $ |
| 2. | Accrued Interest | $ |
| 3. | Legal fees | $ |
| 4. | Accrued Unused Line Fee | $ |
| | TOTAL | $ |

Except as set forth below, Lender agrees that its liens and security interests in the assets of Borrowers and Guarantors, and all guarantees by the Guarantors, shall terminate if and when Lender

1777113_6

receives (a) confirmation that Lender has received a wire transfer from Borrowers of immediately available federal funds, for the account of Lender, to satisfy the full amount of the Absolute Obligations outstanding on the date of Lender's confirmation of receipt of such funds, and (b) a copy of this letter agreement fully executed by Borrowers and Guarantors. In furtherance of the foregoing release, Lender agrees, at Borrowers' expense, (a) promptly to file UCC financing statement amendments releasing all liens and security interests in the assets of Borrowers and Guarantors (except as set forth below) and (b) promptly to provide such additional release documentation, further assurances and other cooperation, in each case, reasonably requested by Borrowers to properly evidence and give effect to the release of the liens and security interests described herein.

Lender also agrees that the satisfaction of the conditions in the foregoing paragraph shall terminate the Commitment and constitute Full Payment of the Obligations for purposes of <u>Section 6.2.3</u> of the Loan Agreement. Lender hereby waives the ten Business Day prior written notice required by <u>Section 6.2.2</u> of the Loan Agreement to terminate the Commitment.

Borrowers acknowledge and agree that, on the date hereof, Borrowers shall enter into a cash collateral agreement regarding the standby letter of credit and bank products provided by Lender, in the form of <u>Exhibit A</u> attached hereto (the "<u>Cash Collateral Agreement</u>"), pursuant to which Borrowers shall grant to Lender a lien upon and security interest in the Cash Collateral Account (as such term is defined in the Cash Collateral Agreement) and the funds therein, which lien and security interest shall secure the Cash Collateralized Obligations.   Notwithstanding anything herein to the contrary, Borrowers acknowledge and agree that, upon Lender's receipt of the full amount of the Absolute Obligations, Lender's lien upon and security interest in the Cash Collateral Account shall (x) remain in full force and effect pursuant to the terms set forth in the Cash Collateral Agreement and (y) not be terminated.

No termination of Lender's liens and security interests in any Borrower's assets shall operate to terminate or impair such Borrower's indemnifications of Lender under the Loan Agreement, which shall survive such termination in accordance with <u>Section 6.2.3</u> of the Loan Agreement.

Effective as of the date hereof, each Borrower and each Guarantor (collectively, "<u>Obligors</u>", and individually, "<u>Obligor</u>") hereby acknowledges and agrees that Lender shall have no further obligation to make advances or extend other financial accommodations to or for the benefit of any Borrower under the Loan Agreement or the other DIP Loan Documents.

Instructions for the wire transfer of funds to Lender are as follows:

> Bank of America, N.A.
> New York, New York
> ABA # 026 009 593
> For Credit to: Bank of America - Southeast Collection Account
> A/C # 936 933 7552
> Reference: Garlock Sealing Technologies, LLC DIP credit facility

**Each Obligor, on behalf of itself and on behalf of all those entities claiming by, through, or under such Obligor, together with their respective successors, assigns, heirs, executors, trustees, and administrators (collectively, the "<u>Releasors</u>"), for good and valuable consideration, including, without limitation, the execution of this letter agreement by Lender, and Lender's release of its liens and security interests in the assets of Borrowers as set forth herein, does hereby unconditionally remise, release, acquit and forever discharge Lender, and each of Lender's past and present officers, directors, shareholders, employees, agents, attorneys, parent corporations, subsidiaries, affiliates, successors and assigns, and the heirs, executors, trustees, administrators, successors, and**

assigns of any such persons and entities (collectively referred to herein as the "Releasees"), of and from any and all manner of actions, causes of action, suits, claims, counterclaims, liabilities, obligations, defenses, and demands whatsoever (if any), at law or in equity, or disputed or undisputed, which any of the Releasors ever had, now has, or hereafter can, shall, or may claim to have against any of the Releasees for or by reason of any cause, matter, or thing whatsoever, arising under or in connection with the DIP Loan Documents at any time prior to the execution of this letter agreement.

[Remainder of page intentionally left blank.]

When accepted by Borrowers and acknowledged by Guarantors, the foregoing shall constitute an agreement made in, and governed by the internal laws of, the State of North Carolina. This letter agreement may be executed in any number of counterparts and by different parties to this letter agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same letter agreement. Any manually executed signature page to this letter agreement delivered by a party by facsimile or other electronic transmission shall be deemed to be an original signature hereto.

Very truly yours,

**BANK OF AMERICA, N.A.**
("Lender")

By: _____

Name:_____

Title:_____

[Signatures continue on following page.]

The above and foregoing is acknowledged, accepted and agreed to:

**GARLOCK SEALING TECHNOLOGIES LLC**
("Borrower")

By: _____
Name: _____
Title: _____

**GARRISON LITIGATION MANAGEMENT GROUP, LTD.**
("Borrower")

By: _____
Name: _____
Title: _____

**GARLOCK INTERNATIONAL INC.**
("Guarantor")

By: _____
Name: _____
Title: _____

**GARLOCK OVERSEAS CORPORATION**
("Guarantor")

By: _____
Name: _____
Title: _____

## EXHIBIT C

**Proposed Order**

[See attached.]

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| **In Re:** | ) | **Chapter 11** |
|  | ) |  |
| **GARLOCK SEALING TECHNOLOGIES** | ) | **Case No. 10-31607** |
| **LLC, et al.**[1] | ) |  |
|  | ) |  |
| **Debtors.** | ) | **Jointly Administered** |
|  | ) |  |

ORDER AUTHORIZING GARLOCK SEALING TECHNOLOGIES LLC
AND GARRISON LITIGATION MANAGEMENT GROUP, LTD. TO (A)
TERMINATE DEBTOR-IN-POSSESSION FINANCING ARRANGEMENT
WITH BANK OF AMERICA, N.A. AND (B) ENTER INTO CASH
COLLATERAL AGREEMENT WITH BANK OF AMERICA, N.A.

Pursuant to a Motion for Order Authorizing Debtors to (A) Terminate Debtor-in-

Possession Financing Arrangement with Bank of America, N.A., and (B) Enter Into Cash

Collateral Agreement with Bank of America, N.A. (the "*Motion*"), Garlock Sealing Technologies

LLC ("*Garlock*"), Garrison Litigation Management Group, Ltd ("*Garrison*") and The Anchor

Packing Company ("*Anchor*"), debtors and debtors-in-possession in the above- captioned cases

(collectively, the "*Debtors*"), have requested that this Court enter an order, pursuant to Sections

363 and 364 of title 11 of the U.S. Code (together with all amendments thereto, the "*Bankruptcy

Code*") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (together with all

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Garlock Sealing Technologies LLC (2339), Garrison Litigation Management Group, Ltd. (9178), and The Anchor Packing Company (0120).

{00204387 v 1}

amendments thereto, the "*Bankruptcy Rules*"), authorizing Garlock and Garrison to (a) terminate certain debtor-in-possession financing arrangements with Bank of America, N.A. (together with its successors and assigns, "*DIP Lender*") and (b) enter into the Cash Collateral Agreement (as such term is defined below).

## JURISDICTION AND VENUE

A.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.    Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. § 1408.

## BACKGROUND

C.    On June 5, 2010 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "*Chapter 11 Cases*").

D.    The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

E.    On June 5, 2010, the Debtors filed their Motion of Debtors-in-Possession for Interim and Final Orders (I) Authorizing the Debtors-in-Possession (A) To Enter into Post-Petition Loans with Bank of America, N.A. and (B) To Use Cash Collateral and (II) Granting Related Relief (Docket No. 20) (the "*DIP Financing Motion*").

F.    On June 8, 2010, after a hearing before this Court on the DIP Financing Motion, this Court entered the Order After Interim Hearing (1) Authorizing Debtors-in-Possession to Obtain Interim Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (2) Giving Notice of Final Hearing Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2); (3) Modifying Automatic Stay; and (4) Authorizing the Use of Cash

{00204387 v 1}-2-

Collateral Pursuant to 11 U.S.C. §§ 361 and 363(c)(2) (the "*Interim DIP Financing Order*")
(Docket No. 45), which, among other things, authorized Garlock and Garrison to enter into the
DIP Loan Agreement (as such term is defined below) and DIP Lender to make advances and
other financial accommodations available to Garlock and Garrison during the Interim Period (as
such term is defined in the Interim DIP Financing Order).

G.    Upon this Court's entry of the Interim DIP Financing Order, Garlock, Garrison
and DIP Lender entered into (a) that certain Post-Petition Loan and Security Agreement dated
June 8, 2010 (as at any time amended, modified, restated or supplemented, the "*DIP Loan
Agreement*"), and (b) that certain other DIP Loan Documents (as such term is defined in the DIP
Loan Agreement),[2] pursuant to which DIP Lender agreed to extend credit and make certain
financial accommodations available to Garlock and Garrison pursuant to the terms of the Interim
DIP Financing Order and the DIP Loan Documents.

H.    On July 15, 2010, this Court entered the Order After Final Hearing (1)
Authorizing Debtors-in-Possession to Obtain Financing, Grant Security Interests and Accord
Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (2) Modifying Automatic Stay;
and (3) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363(c)(2) (the
"*Final DIP Financing Order*"; the Interim DIP Financing Order and the Final DIP Financing
Order are collectively referred to herein as the "*Financing Orders*") (Docket No. 226).  Pursuant
to the Final DIP Financing Order, this Court, among other things, granted the DIP Financing
Motion and authorized DIP Lender to make advances and other financial accommodations
available to Garlock and Garrison after the Interim Period secured by all or substantially all of
their assets.

I.    Pursuant to the Financing Orders, the Debtors stipulated to the validity, perfection

---

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the DIP Loan
Agreement (as defined herein)

and scope of the security interests of the Pre-Petition Agent in and with respect to the Pre-Petition Collateral (as defined in the Final DIP Financing Order), the unavoidable nature of those security interests and the legality and enforceability of the Pre-Petition Loan Documents (as defined in the Final DIP Financing Order) and the legality and enforceability of the Pre-Petition Debt (as defined in the Final DIP Financing Order); and each Committee and other parties in interest were afforded a period of time within which to raise any issues regarding the Pre-Petition Liens (as defined in the Final DIP Financing Order), the Pre-Petition Loan Documents and the Pre-Petition Debt, failing which all of the stipulations made by the Debtors as provided in the Financing Orders would be binding on all interested parties. No challenge was made to any of the Pre-Petition Liens, the Pre-Petition Loan Documents and the Pre-Petition Debt, and therefore all of the foregoing are legal, valid, binding, perfected, enforceable and unavoidable as and to the extent provided in the Financing Orders.

## RELIEF REQUESTED

J.      Pursuant to the Motion, Garlock and Garrison request this Court to enter an order authorizing Garlock and Garrison, in connection with the payment required under the Payoff Letter (as defined below) and termination of the Commitment (such transactions are collectively referred to herein as the "*DIP Financing Termination*"), to execute a payoff letter annexed to the Motion as Exhibit A (the "*Payoff Letter*") and the Cash Collateral Agreement (as defined below). The Payoff Letter contains, among other things, a release of Bank of America, N.A., and associated parties for claims, actions, defenses, and similar demands upon the release by Bank of America, N.A., of its liens and security interests in the assets of Garlock and Garrison as set forth in the Payoff Letter.

K.      Pursuant to Section 6.2.2 of the DIP Loan Agreement, upon not less than ten (10) business days' prior written notice to DIP Lender from Garlock, Garlock and Garrison may

terminate the Commitment, provided that such termination is not effective until Full Payment of

the Obligations. Full Payment of the Obligations under the DIP Loan Agreement requires the

full, final and indefeasible payment in full, in cash and in Dollars, of the Obligations by Garlock

and Garrison, including, without limitation, all interest, fees and other charges payable in

connection therewith under any of the DIP Loan Documents. With respect to the obligations of

Garlock and Garrison for outstanding Letters of Credit, Full Payment of the Obligations under

the DIP Loan Agreement requires that Garlock and Garrison deposit Cash Collateral with DIP

Lender, as security for the payment of such Obligations, in an amount not to exceed 105% of the

aggregate undrawn amount of such Letters of Credit.

      L.     Garlock and Garrison have also informed the Court that, following the

consummation of the DIP Financing Termination, they desire to continue to maintain their

depository accounts and other cash management relationships with DIP Lender, subject to all of

the protections provided in this Court's Order (I) Authorizing (A) Continued Use of Existing

Cash Management System, (B) Maintenance of Existing Bank Accounts, (C) Continued Use of

Existing Business Forms and (D) Waiver of Deposit Guidelines and Continued Use of Existing

Investment Policies; and (II) (A) Granting Administrative Priority Status to Post-Petition

Intercompany Claims and (B) Authorizing Continued Performance Under Intercompany

Arrangements (Docket No. 46), which Order was subsequently clarified by order of this Court

entered on September 15, 2010 (Docket No. 506) (collectively and as amended, the *Cash

Management Order*").

      M.     In order to effect Full Payment of the Obligations in conformity with the DIP

Loan Agreement's requirements for terminating the Commitment, and to secure all Banking

Relationship Debt that may arise after the DIP Financing Termination, Garlock and Garrison

desire to execute in favor of DIP Lender a Cash Collateral Agreement Regarding Standby Letter

of Credit and Bank Products (such agreement is referred to herein as the *"Cash Collateral Agreement"*), in the form annexed to the Motion as <u>Exhibit B</u>, pursuant to which Garlock and Garrison will grant to DIP Lender a lien upon and security interest in the Cash Collateral Account (as such term is defined in the Cash Collateral Agreement) and all balances therein and proceeds thereof (the *"Cash Security"*), to secure all Cash Collateralized Obligations (as such term is defined in the Cash Collateral Agreement).

N.      The Court finds that Garlock and Garrison negotiated the terms of the Cash Collateral Agreement with DIP Lender at arms' length and in good faith (as that term is defined in Section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel; the Cash Collateral Agreement is consistent with the terms and provisions of the Financing Orders and the  DIP Loan Documents previously approved of by this Court; the terms and conditions of the Cash Collateral Agreement are fair and reasonable; and the DIP Financing Termination and the execution and delivery of the Cash Collateral Agreement by Garlock and Garrison are in the best interests of their businesses and operations as well as their respective creditors and Estates.

## NOTICE

O.      Garlock and Garrison have certified that they have served the Motion and Notice of the Hearing on the Motion on the parties identified on the Updated Master Service List (Docket No. 1454), as well as any party that has filed a docketed request for notices under Bankruptcy Rule 2002 since the filing of the Updated Master Service List on August 9, 2011. Pursuant to the Order Establishing Notice Procedures entered on June 8, 2010 (Docket No. 48), and in light of the nature of the relief requested, no further notice need be given.

## NO PRIOR REQUEST

P.      No prior motion for the relief requested in the Motion has been made to this Court

or any other court.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.   **Grant of Motion**.  The Motion is hereby GRANTED as hereinafter set forth. Any and all objections to the relief requested in the Motion, to the extent not withdrawn with prejudice, waived or resolved by consent, are hereby OVERRULED and DENIED.

2.   **Payment of Non-Contingent Obligations; Termination of Commitment; ull Payment of the Obligations**.  Upon entry of this Order, Garlock and Garrison may execute in favor of DIP Lender (i) the Payoff Letter, pursuant to which Garlock and Garrison shall cause the Full Payment of the Obligations that are not Contingent Obligations (such non-contingent Obligations are collectively referred to herein as the *"Non-Contingent Obligations"*), and (ii) such other agreements, documents and instruments reasonably deemed necessary by DIP Lender to effectuate the termination of the Commitment and Full Payment of the Non-Contingent Obligations.  Upon entry of this Order, the Commitment of DIP Lender to make loans or otherwise extend credit to or for the benefit of the Debtors, whether pursuant to the DIP Loan Documents, the Financing Orders or otherwise, shall be terminated.  Upon (i) entry of this Order, (ii) the payment of the Non-Contingent Obligations in accordance with the Payoff Letter, and (iii) the deposit in the Cash Collateral Account of the collateral required pursuant to the Cash Collateral Agreement, the Full Payment of the Obligations shall have occurred and the provisions of the DIP Loan Documents shall terminate, except for the indemnities and other provisions in the DIP Loan Documents that survive the Full Payment of the Obligations in accordance with Section 6.2.3 of the DIP Loan Agreement, which shall continue in full force and effect.

3.   **Cash Collateral Agreement**.

(a)     Upon entry of this Order, and in furtherance of their cash collateral obligations under the DIP Loan Agreement, Garlock and Garrison are hereby authorized to perform all of their obligations under the Cash Collateral Agreement and, among other things, to grant DIP Lender a first priority security interest in and lien upon the Cash Collateral Account to secure the Cash Collateralized Obligations.  In addition, Garlock and Garrison are hereby authorized to (i) execute or cause to be executed and deliver to DIP Lender such instruments, assignments, title certificates or other documents as are necessary under applicable law to perfect (or continue the perfection of) DIP Lender's security interest in and lien upon the Cash Collateral Account and shall take such other action as reasonably may be requested by DIP Lender to give effect to or carry out the intent and purposes of the Cash Collateral Agreement, and (ii) reimburse DIP Lender for all fees and disbursements of DIP Lender's legal counsel in connection with the preparation, execution, amendment, administration, or enforcement of the Payoff Letter and the Cash Collateral Agreement and implementation of the transactions contemplated thereby.  The security interest granted to DIP Lender pursuant to the Cash Collateral Agreement shall be a first priority security interest in the Cash Security and shall be deemed valid, binding, enforceable and automatically perfected with respect to the Cash Security retroactive to the date of entry of this Order.  DIP Lender shall not be required to file any UCC-1 financing statements, notices of lien or any similar document or take any other action in order to validate the perfection of its lien upon the Cash Security.  Notwithstanding the foregoing, DIP Lender is hereby authorized in its discretion to execute and file in any jurisdiction such instruments, financing statements, assignments and other documents as are deemed by DIP Lender to be necessary or appropriate to perfect (or continue the perfection of) DIP Lender's security interest in and lien upon the Cash Security, and Debtors and their respective officers are directed to execute any documents or instruments (including, without limitation, control agreements) as DIP Lender shall reasonably

request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

(b)     Upon the occurrence of an event of default under the Cash Collateral Agreement, DIP Lender shall be authorized, without further order of this Court, to take all actions and exercise all remedies set forth in the Cash Collateral Agreement that may be necessary or deemed appropriate by DIP Lender to collect any of the Cash Collateralized Obligations, enforce its liens upon the Cash Security and otherwise enforce its rights and remedies under the Cash Collateral Agreement, and this Order as if these Chapter 11 cases or any superseding Chapter 7 case were not pending.

(c)     All rights and remedies granted to DIP Lender under this Order and the Cash Collateral Agreement shall be in addition to and not in lieu of any rights and remedies granted to DIP Lender under any other existing or future agreement relating to Bank Products or any order of this Court, including, without limitation, the Cash Management Order.  Without limiting the generality of the foregoing, but only to the extent that the funds available in the Cash Collateral Account are insufficient to pay the Cash Collateral Obligations in full, DIP Lender may at any time offset balances in any deposit account of Garlock or Garrison with DIP Lender to satisfy all or any part of the Cash Collateralized Obligations left owing to DIP Lender after application of the funds in the Cash Collateral Account.

4.     **Effect upon Financing Orders**.

(a)     The entry of this Order terminating the Commitment, and the Full Payment of the Obligations pursuant to the terms of the Payoff Letter, shall cause this Order to supersede the Financing Orders other than with respect to all actions occurring prior to the entry of this Order, provided that DIP Lender shall continue to retain its rights and benefits conferred upon it under the Financing Orders, except as set forth in clause (b) of this paragraph 4.  In the event DIP

Lender honors any request for payment under the Letter of Credit, the obligation of Garlock to reimburse DIP Lender with respect to such payment (together with all interest, fees and other charges in connection therewith as provided under the Application and the Credit (as such terms are defined in the Cash Collateral Agreement) shall, to the extent that the funds available in the Cash Collateral Account are insufficient to pay such Cash Collateral Obligations in full, (i) constitute an allowed superpriority claim pursuant to Section 364(c)(1) of the Bankruptcy Code, and (ii) be reimbursed by Garlock to DIP Lender as and when provided for in the Application and the Credit. If Garlock fails to pay any such reimbursement obligations or other amounts as and when provided in the Application and the Credit, DIP Lender may (x) exercise any and all rights and remedies set forth in the Application and the Credit and the Cash Collateral Agreement, and (y) offset balances (A) in the Cash Collateral Account or (B) any other deposit account of Garlock or Garrison with DIP Lender only to the extent that the funds available in the Cash Collateral Account are insufficient to pay such Cash Collateral Obligations in full, to satisfy all or any part of such reimbursement obligations or other indebtedness owed to DIP Lender, all of which remedies shall be cumulative and none of which shall be exclusive. The provisions of the Application and the Credit relating to reimbursement obligations with respect to the Letter of Credit shall supersede those set forth in the DIP Loan Agreement.

(b)      All liens and other security interests granted to DIP Lender pursuant to the Financing Orders, including, without limitation, all DIP Liens and springing liens granted pursuant to the terms thereof, shall be deemed released and the DIP Facility terminated, effective on the date that is the latest to occur of (i) entry of this Order, (ii) execution and delivery by Garlock and Garrison of the Payoff Letter and the Cash Collateral Agreement, and (iii) Full Payment of all of the Non-Contingent Obligations to the extent set forth in the Payoff Letter. All priority claims granted under the Financing Orders pursuant to Section 364(c)(i) of the

Bankruptcy Code are terminated, except to the extent of any Cash Collateralized Obligations that may arise and in respect of which there is insufficient cash security or rights of offset to satisfy such Cash Collateralized Obligations. All provisions of the Financing Orders related to covenants under the DIP Loan Documents are modified to apply only to the covenants that survive Full Payment of the Obligations under Section 6.2.3 of the DIP Loan Agreement. After the latest to occur of the events set forth above in clauses (i) through (iii) of this Section 4(b), the Debtors' use of Cash Collateral shall be governed solely by this Order and the Cash Collateral Agreement. All provisions of the Financing Orders related to the right of DIP Lender to retain professionals at the Debtors' expense are modified to apply only to attorneys and other professionals to assist DIP Lender in the documentation, implementation, and enforcement of DIP Lender's rights pursuant to this Order and the Cash Collateral Agreement.

(c)     The liens and any priorities granted to DIP Lender pursuant to the Cash Collateral Agreement and this Order shall not be subject to the Carve-Out under (and as defined in) the Financing Orders, and the Carve-Out under the Financing Orders (and all obligations of DIP Lender with respect thereto) shall automatically terminate upon the effective date of release of the liens and security interests of DIP Lender that were granted to DIP Lender pursuant to the Financing Orders as provided in Section 4(b) of this Order.

5.     **Effectiveness**. This Order shall take effect and be enforceable immediately upon entry hereof notwithstanding Rule 6004(h) or any other contrary Bankruptcy Rule or Rule of Civil Procedure and there shall be no stay of execution or effectiveness of this Order.

6.     **Binding Effect; Successors and Assigns**. The provisions of this Order shall be binding upon all parties in interest in the Chapter 11 cases, including, without limitation, DIP Lender and the Debtors and their respective successors and assigns (including, without limitation, any Chapter 11 trustee hereafter appointed or elected for the estate of any Debtor or

any Chapter 7 trustee appointed in any superseding Chapter 7 case), and shall inure to the benefit

of DIP Lender and the Debtors and their respective successors and assigns.

_____

This Order was signed electronically.
The judge's signature and court's seal
appear at the top of the Order.