**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>              Debtors.[1] | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |

### DEBTORS' JOINT PLAN OF REORGANIZATION

**THIS PLAN PROVIDES, AMONG OTHER THINGS, FOR ISSUANCE OF INJUNCTIONS UNDER THE BANKRUPTCY CODE APPLICABLE TO GST ASBESTOS CLAIMS AND FOR THE CHANNELING OF FUTURE GST ASBESTOS CLAIMS AND INACTIVE GST ASBESTOS CLAIMS TO A POST-CONFIRMATION TRUST AS MORE FULLY DESCRIBED HEREIN.**

RAYBURN COOPER & DURHAM, P.A.

C. Richard Rayburn, Jr. (N.C. Bar No. 6357)
Albert F. Durham (N.C. Bar No. 6600)
John R. Miller, Jr. (N.C. Bar No. 28689)

1200 Carillion, 227 West Trade Street
Charlotte, NC  28202
Telephone: (704) 334-0891

*Counsel to the Debtors Garlock Sealing Technologies, LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*

ROBINSON, BRADSHAW & HINSON, P.A.

Garland S. Cassada (N.C. Bar No. 12352)
Jonathan C. Krisko (N.C. Bar No. 28625)
Richard C. Worf (N.C. Bar No. 37143)

101 North Tryon Street, Suite 1900
Charlotte, NC  28246
Telephone:  (704) 377-2536

*Special Corporate and Litigation Counsel to the Debtors Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*

- Co-Counsel for the Debtors and Debtors in Possession -

Dated:  November 28, 2011

---

[1]    The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company.

# TABLE OF CONTENTS

**Page**

## ARTICLE 1.

### DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND ANCILLARY DOCUMENTS

**1.1 DEFINED TERMS** ...................................................................................... 1
**1.2 OTHER TERMS/INTERPRETATION** ...................................................... 1
**1.3 THE PLAN DOCUMENTS** ...................................................................... 2
**1.4 ANCILLARY DOCUMENTS** .................................................................. 2

## ARTICLE 2.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**2.1 OVERVIEW** ............................................................................................. 3
**2.2 SUMMARY** ............................................................................................. 5
   2.2.1   Class 1. Priority Claims ...................................................... 5
   2.2.2   Class 2. Secured Claims....................................................... 6
   2.2.3   Class 3. GST Asbestos Convenience Class Claims .............. 7
   2.2.4   Class 4. Current GST Asbestos Claims ............................... 7
   2.2.5   Class 5. Future GST Asbestos Claims ................................. 8
   2.2.6   Class 6. Inactive GST Asbestos Claims............................... 9
   2.2.7   Class 7. Anchor Claims........................................................ 9
   2.2.8   Class 8. General Unsecured Claims.................................... 10
   2.2.9   Class 9. Intercompany Claims ............................................ 10
   2.2.10  Class 10. GST Equity Interests .......................................... 11
   2.2.11  Class 11. Garrison Equity Interests.................................... 11
   2.2.12  Class 12. Anchor Equity Interest ....................................... 11
**2.3 EFFECT OF GST ASBESTOS CLAIMANT ELECTING VARIOUS OPTIONS**................................................................................................ 12
   2.3.1   Settlement Option ............................................................... 12
   2.3.2   Litigation Option................................................................ 12
   2.3.3   Convenience Option............................................................ 13
   2.3.4   Medical Monitoring Option ................................................ 13

## ARTICLE 3.

### MODIFICATION OR WITHDRAWAL OF PLAN

**3.1 MODIFICATION OF PLAN; AMENDMENT OF PLAN DOCUMENTS**............. 13
   3.1.1   Modification of Plan ........................................................... 13
   3.1.2   Amendment of Plan Documents .......................................... 13
**3.2 WITHDRAWAL OF PLAN**.................................................................... 13

# TABLE OF CONTENTS
(continued)

**Page**

3.2.1  Right to Withdraw Plan ............................................................. 13
3.2.2  Effect of Withdrawal ............................................................... 14

## ARTICLE 4.

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**4.1  UNCLASSIFIED CLAIMS**..................................................................... **14**
**4.2  ALLOWED ADMINISTRATIVE EXPENSE CLAIMS** ........................... **14**
**4.3  ALLOWED PRIORITY TAX CLAIMS** ................................................... **15**

## ARTICLE 5.

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS AND GST ASBESTOS CLAIMS GENERALLY

**5.1  OBJECTIONS TO CLAIMS (OTHER THAN GST ASBESTOS CLAIMS); PROSECUTION OF DISPUTED CLAIMS** ................................................ **15**
5.1.1  Amendments to Claims............................................................. 16
**5.2  DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS** ................... **16**
**5.3  BAR DATES FOR ADMINISTRATIVE EXPENSE CLAIMS** ................ **16**
5.3.1  Administrative Expense Claims................................................ 16
5.3.2  Fee Claims ............................................................................. 16
**5.4  RESOLUTION OF DISPUTED GST ASBESTOS CLAIMS** .................. **17**
5.4.1  Making of an Election by Holders of GST Asbestos Claims ............ 17

## ARTICLE 6.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**6.1  IMPAIRED CLASSES TO VOTE** .......................................................... **18**
**6.2  ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS** ....................... **18**
**6.3  ACCEPTANCE PURSUANT TO BANKRUPTCY CODE § 524(g)** ........ **18**
**6.4  PRESUMED ACCEPTANCE OF THIS PLAN** ...................................... **18**
**6.5  NONCONSENSUAL CONFIRMATION**................................................. **18**
6.5.1  Cramdown ............................................................................ 18
6.5.2  General Reservation of Rights ................................................. 18
**6.6  OBJECTIONS**...................................................................................... **18**

## ARTICLE 7.

## IMPLEMENTATION OF THIS PLAN

# TABLE OF CONTENTS
### (continued)

**Page**

| | | |
|---|---|---|
| 7.1 | **VESTING OF ASSETS OF THE DEBTORS** | **19** |
| 7.2 | **CORPORATE GOVERNANCE OF DEBTORS** | **19** |
| | 7.2.1 Amendment of Certificates of Incorporation of the Debtors | 19 |
| | 7.2.2 D&O and Fiduciary Liability Tail Coverage Policies | 20 |
| 7.3 | **THE GST ASBESTOS TRUST** | **20** |
| | 7.3.1 Creation of the GST Asbestos Trust | 20 |
| | 7.3.2 Funding of GST Asbestos Trust | 21 |
| | 7.3.3 Transfer of Assets into the GST Asbestos Trust | 21 |
| | 7.3.4 Transfer of GST Asbestos Claims to the GST Asbestos Trust | 21 |
| | 7.3.5 Appointment and Termination of Trustees | 21 |
| | 7.3.6 Creation and Termination of the TAC | 22 |
| | 7.3.7 Cooperation Agreement | 22 |
| | 7.3.8 Institution and Maintenance of Legal and other Proceedings | 22 |
| 7.4 | **APPROVAL OF PARENT SETTLEMENT** | **23** |
| 7.5 | **DISSOLUTION OF ANCHOR** | **23** |
| | 7.5.1 Dissolution upon the Effective Date | 23 |
| 7.6 | **PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN** | **23** |
| | 7.6.1 GST Asbestos Trust Payments and Plan Distributions | 23 |
| | 7.6.2 Timing of Plan Distributions | 23 |
| | 7.6.3 Manner of Payments under Plan | 24 |
| | 7.6.4 Fractional Payments under this Plan | 24 |
| | 7.6.5 Allocation of Plan Distributions Between Principal and Interest | 24 |
| 7.7 | **DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS** | **24** |
| | 7.7.1 Delivery by the Reorganized Debtors of Distributions in General | 24 |
| | 7.7.2 Undeliverable Distributions by the Reorganized Debtors | 24 |
| 7.8 | **OCCURRENCE OF THE CONFIRMATION DATE** | **25** |
| | 7.8.1 Findings of Fact and/or Conclusions of Law | 25 |
| | 7.8.2 Orders of this Court | 27 |
| 7.9 | **CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE** | **28** |
| 7.10 | **MANAGEMENT OF THE REORGANIZED DEBTORS** | **29** |
| 7.11 | **CORPORATE ACTION** | **29** |
| 7.12 | **EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS** | **29** |
| 7.13 | **NO SUCCESSOR LIABILITY** | **29** |

# ARTICLE 8.

## INJUNCTIONS, RELEASES & DISCHARGE

| | | |
|---|---|---|
| 8.1 | **DISCHARGE** | **30** |
| | 8.1.1 Discharge of Debtors and Related Discharge Injunction | 30 |
| | 8.1.2 Discharge of Liabilities to Holders of Future GST Asbestos Claims | 30 |
| | 8.1.3 Disallowed Claims and Disallowed Equity Interests | 31 |

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---:|
| | 8.1.4 Reservation of Rights of the PBGC | 31 |
| **8.2** | **ASBESTOS CHANNELING INJUNCTION** | **31** |
| **8.3** | **TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY** | **33** |
| | 8.3.1 Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation | 33 |
| | 8.3.2 Injunctions Provided for in this Plan | 33 |
| **8.4** | **EXCULPATION** | **33** |
| **8.5** | **SETTLEMENT AND EXTINGUISHMENT OF CLASS 3 GST ASBESTOS CONVENIENCE CLASS CLAIMS** | **33** |

## ARTICLE 9.

### EXECUTORY CONTRACTS, UNEXPIRED LEASES, GUARANTIES, AND INDEMNITY AGREEMENTS

| | | |
|---|---|---:|
| **9.1** | **ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | **34** |
| **9.2** | **LETTERS OF CREDIT, SURETY BONDS, GUARANTIES, AND CERTAIN INDEMNITY AGREEMENTS** | **35** |
| **9.3** | **COMPENSATION AND BENEFITS PROGRAM** | **36** |

## ARTICLE 10.

### RETENTION OF JURISDICTION

| | | |
|---|---|---:|
| **10.1** | **GENERAL** | **37** |
| **10.2** | **SPECIFIC PURPOSES** | **37** |
| | 10.2.1 Plan Documents | 37 |
| | 10.2.2 Disputed Claims Allowance/Disallowance | 37 |
| | 10.2.3 Enforcement/Modification of this Plan | 37 |
| | 10.2.4 Compensation of Professionals | 38 |
| | 10.2.5 Settlements | 38 |
| | 10.2.6 Taxes | 38 |
| | 10.2.7 Specific Purposes | 38 |
| | 10.2.8 Insurance Matters | 39 |
| **10.3** | **ORDERS CLOSING CHAPTER 11 CASES** | **39** |
| **10.4** | **MATTERS WITHIN JURISDICTION OF THE DISTRICT COURT** | **39** |

## ARTICLE 11.

### MISCELLANEOUS PROVISIONS

| | | |
|---|---|---:|
| **11.1** | **AUTHORITY OF THE DEBTORS** | **39** |

# TABLE OF CONTENTS
### (continued)

**Page**

**11.2**    **PAYMENT OF STATUTORY FEES** ........................................................................... **39**
**11.3**    **RETAINED CAUSES OF ACTION** ......................................................................... **40**
      11.3.1  Maintenance of Causes of Action ...................................................... 40
      11.3.2  Preservation of Causes of Action ...................................................... 40
      11.3.3  Settled Causes of Action .................................................................... 41
**11.4**    **THIRD-PARTY AGREEMENTS** ............................................................................ **41**
**11.5**    **DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE,**
      **AND THE ASBESTOS COMMITTEE; CONTINUED RETENTION OF**
      **THE FUTURE CLAIMANTS' REPRESENTATIVE** ............................................ **42**
**11.6**    **TITLE TO ASSETS** ................................................................................................. **42**
**11.7**    **NOTICES** .................................................................................................................. **43**
**11.8**    **HEADINGS** ............................................................................................................... **44**
**11.9**    **GOVERNING LAW** ................................................................................................. **44**
**11.10**  **FILING OF ADDITIONAL DOCUMENTS** ............................................................ **44**
**11.11**  **COMPLIANCE WITH TAX REQUIREMENTS** .................................................... **44**
**11.12**  **EXEMPTION FROM TRANSFER TAXES** ............................................................ **45**
**11.13**  **FURTHER ASSURANCES** ...................................................................................... **45**
**11.14**  **FURTHER AUTHORIZATIONS** ............................................................................ **45**

**Exhibit A-1: Glossary of Terms Used in Plan Documents**
**Exhibit A-2: Claims Resolution Procedures**
**Exhibit A-3: GST Asbestos Trust Agreement**
**Exhibit A-4: Schedule of Non-Debtor Affiliates**

Garlock Sealing Technologies LLC and the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby propose the following Plan of Reorganization pursuant to the provisions of chapter 11 of title 11 of the United States Code. Reference is made to the Disclosure Statement distributed contemporaneously herewith for, among other things, a discussion of the history, businesses, properties, results of operations, projections for future operations of the Debtors, and risks associated with this Plan.

## ARTICLE 1.

### DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND ANCILLARY DOCUMENTS

### 1.1   DEFINED TERMS

All capitalized terms used herein shall have the respective meanings specified herein or in the Glossary for this Plan listed as Exhibit A-1 in the Exhibit Book or Exhibit Book Supplement, unless the context otherwise requires.

### 1.2   OTHER TERMS/INTERPRETATION

(a)   Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the other genders.

(b)   When used in this Plan, the term "Claim" shall be broadly construed to include all manner and type of Claim, whenever and wherever such Claim may arise, and shall include GST Asbestos Claims and Anchor Claims.

(c)   Any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions shall mean that such document shall be substantially in such form or substantially on such terms and conditions.

(d)   Any reference in this Plan to an existing document or exhibit in the Exhibit Book or Exhibit Book Supplement Filed or to be Filed shall mean the document or exhibit as it may have been or may be amended, modified or supplemented.

(e)   Any reference to an Entity as a Holder of a Claim shall include that Entity's successors, assigns and affiliates.

(f)   The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

(g)   The word "including" (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word; and the words "shall" and "will" are used interchangeably and have the same meaning.

(h)     Unless otherwise indicated herein, all references to dollars are to United States dollars.

(i)     An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

(j)     The descriptive headings contained in this Plan are included for convenience of reference only and are not intended to be a part of and shall not affect in any way the meaning or interpretation of this Plan.

(k)     All references in this Plan to sections, articles, and exhibits are references to sections, articles and exhibits of or to this Plan unless otherwise specified.

(l)     Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(m)     The rules of construction set forth in Bankruptcy Code § 102 shall apply.

## 1.3     THE PLAN DOCUMENTS

The Plan Documents, once Filed, shall also be available for review:

(a)     in the office of the clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court;

(b)     by   download   from   the   following   website: https://garlockclaims.com/ImportantDocuments.aspx ;

(c)     on Business Days from 9:00 a.m. through 5:00 p.m. (Eastern Standard Time) at the following addresses:

RAYBURN COOPER & DURHAM, P.A.        ROBINSON, BRADSHAW & HINSON, P.A.
1200 Carillion, 227 West Trade Street        101 North Tryon Street, Suite 1900
Charlotte, NC  28202                          Charlotte, NC  28246
Telephone: (704) 334-0891                     Telephone:  (704) 377-2536
Attn: John R. Miller, Jr.                     Attn: Susan M. Huber

Holders of Claims may also obtain a copy of the Plan Documents following their Filing with the clerk of the Bankruptcy Court by contacting counsel for the Debtors by a written request sent to the above address.

## 1.4     ANCILLARY DOCUMENTS

Each of the Plan Documents is an integral part of this Plan and is hereby incorporated by reference and made a part of this Plan.

## ARTICLE 2.

## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

### 2.1    OVERVIEW

GST and Garrison have property that substantially exceeds the costs necessary to resolve and pay in full all colorable GST Asbestos Claims, whether resolution occurs through settlement or litigation.   The Plan accordingly provides for (a) payment in full, in Cash of Allowed Amounts of all Claims and Demands against GST and Garrison and (b) retention by the Parent of equity in Reorganized GST and Reorganized Garrison.  Anchor, on the other hand, is a dormant Entity that has not had any property or paid any asbestos-related claims in over a decade.  The Plan accordingly provides for dissolution and liquidation of Anchor, with no distribution of property to creditors.

Responsibility for GST Asbestos Claims will be divided between Reorganized GST and a post-confirmation trust, the "GST Asbestos Trust."  Reorganized GST shall assume, liquidate, and pay Allowed Current GST Asbestos Claims and the GST Asbestos Trust shall assume, liquidate and pay Allowed Future GST Asbestos Claims.

Reorganized GST and the GST Asbestos Trust will employ the same procedures—set forth in the Claims Resolution Procedures (CRP) and Case Management Order (CMO)—for resolving GST Asbestos Claims.  Claimants may choose between the Settlement Option and the Litigation Option:

Under the <u>Settlement Option</u>, Claimants who suffer from pleural mesothelioma may submit their claims to the CRP Administrator for processing pursuant to the Claims Resolution Procedures, which provide for expeditious settlement and payment of Allowed GST Asbestos Claims. Settlement offers under the CRP are based on medical criteria and two alternative Settlement Matrices, one for Expedited Review (ER) and the other for Individual Review (IR). Each Settlement Matrix employs objective factors that determine the potential merit and value of GST Asbestos Claims under applicable law, including the nature, proximity, and frequency of GST Asbestos Claimants' work with GST's asbestos-containing products versus the nature, proximity, and frequency of GST Asbestos Claimants' work with asbestos-containing products produced by other manufacturers and the nature of other manufacturers' products.

Expedited Review requires less information and takes into account comparatively fewer variables than Individual Review, including contact with a GST product, medical diagnosis, demographic characteristics of the injured party, and the injured party's jurisdiction.  Pre-petition Current GST Claimants who submitted Mesothelioma Claim Questionnaires during the Chapter 11 Cases may rely upon such submissions in making claims under Expedited Review, although they must submit all verification and documentation required by the CRP.  GST Asbestos Claims submitted for Individual Review are subject to additional verification and documentation requirements. Individual Review may result in settlement offers up to two million five hundred dollars ($2,500,000).   Although some GST Asbestos Claimants will receive higher settlement

offers by selecting Individual Review, it is anticipated that most claimants will receive higher settlement offers by selecting Expedited Review.

Both Expedited and Individual Review guarantee each GST Asbestos Claimant substantially equivalent treatment because settlement offers will be based on consistent and objective settlement criteria. In addition, the Settlement Option will provide a simple, expeditious means for each claimant to resolve and obtain compensation for his GST Asbestos Claim. To assist GST Asbestos Claimants in deciding whether to select Expedited Review or Individual Review, or the Litigation Option described below, the CRP Administrator will establish an Internet website containing a calculator tool that GST Asbestos Claimants can use to determine the amount such Claimant would receive if the Claimant qualifies for an offer under each of the Expedited Review and Individual Review processes.

GST Asbestos Claimants selecting the <u>Litigation Option</u> may seek allowance of their Claims under the Bankruptcy Code pursuant to the Case Management Order that Debtors request by separate motion to govern the post-confirmation allowance or disallowance of such Claims. The CMO provides procedures under which the Allowed Amount of disputed GST Asbestos Claims under applicable law can be determined, on the merits, fairly and expeditiously. The CMO includes procedures designed to identify claims that are not colorable and can be disallowed as a matter of law with a minimum of expense. The CMO also provides a right to a jury trial for colorable claims, as well as payment in full of any jury award.

The Plan also has provisions designed to resolve expeditiously pending GST Asbestos Claims that have been abandoned, have become stale, or are otherwise inactive.  First, Holders of Current GST Asbestos Claims for mesothelioma, many of which have been pending for well over five years as of the Petition Date, may elect to become members of the GST Asbestos Convenience Class and receive administrative settlement payments in lieu of proceeding under the Claims Resolution Procedures or Case Management Order. Second, tens of thousands of Inactive GST Asbestos Claimants may elect to be channeled to the GST Asbestos Trust where they will receive Medical Monitoring Contributions and be eligible for the same treatment as Future GST Asbestos Claimants under the CRP and CMO when and if they obtain diagnoses of asbestos-caused cancers.  These options will ensure that Reorganized GST is not burdened with an administrative backlog that could result in delayed payments to GST Asbestos Claimants entitled to such payments.

To fund treatment for Current GST Asbestos Claims, Reorganized GST will use Cash available at the Effective Date, Cash from operations, proceeds of Available Shared Insurance and proceeds of certain promissory notes.  In addition, as described in Section 11.3.3, if necessary for Reorganized GST to satisfy Allowed Current GST Asbestos Claims, the Parent will provide Reorganized GST aggregate funding with a net present value as of the Effective Date of up to thirty million dollars ($30,000,000).

To ensure that the GST Asbestos Trust will have sufficient funding to meet its mandate, Reorganized GST shall, on the Effective Date, transfer Cash in the amount of sixty million dollars ($60,000,000) to the GST Asbestos Trust and commit, pursuant to the GST Deferred Payment Note, to future Cash payments with an aggregate, net present value of one hundred

forty million dollars ($140,000,000). The Parent shall guarantee the GST Asbestos Trust's collection of payments under the GST Deferred Payment Note and secure such guaranty by a pledge of fifty-one percent (51%) of the Parent's voting stock in Reorganized GST and Reorganized Garrison.

### 2.2    SUMMARY

Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1), as follows:

| CLASSIFICATION | | IMPAIRMENT AND VOTING |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 2 | Secured Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 3 | GST Asbestos Convenience Class Claims | Impaired – vote being solicited. |
| Class 4 | Current GST Asbestos Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 5 | Future GST Asbestos Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 6 | Inactive GST Asbestos Claims | Impaired – vote being solicited. |
| Class 7 | Anchor Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 8 | General Unsecured Claims | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |
| Class 9 | Intercompany Claims | Impaired – vote being solicited. |
| Class 10 | GST Equity Interests | Impaired – vote being solicited. |
| Class 11 | Garrison Equity Interests | Impaired – vote being solicited. |
| Class 12 | Anchor Equity Interests | Unimpaired – deemed to have voted to accept the Plan; no separate vote being solicited. |

### 2.2.1    Class 1.    Priority Claims

(a)    Classification

Class 1 consists of all Priority Claims.

(b)    Treatment

Each Holder of an Allowed Class 1 Claim shall be paid the Allowed Amount of its Allowed Priority Claim either (i) in full, in Cash, on the Distribution Date, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed Priority Claim and the Reorganized Debtors.

(c)    Impairment and Voting

Class 1 is unimpaired.  The Holders of Class 1 Priority Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.2    Class 2.    Secured Claims

(a)    Classification

Class 2 consists of all Secured Claims.

(b)    Treatment

(i)    <u>Non-Tax Secured Claim</u>.  Subject to the provisions of Bankruptcy Code §§ 502(b) and 506(d) and the terms herein, each Holder of an Allowed Class 2 Claim shall, at the option of the Reorganized Debtors, receive treatment according to the following alternatives:  (i) the Plan will leave unaltered the legal, equitable and contractual rights to which the Holder of such Claim is entitled, (ii) the Reorganized Debtors shall return the collateral securing such Claim, (iii) the Reorganized Debtors shall give the proceeds, net of any cost of sale or liquidation, of the Debtors' interest in the relevant collateral, up to the Allowed Amount of such Claim; (iv) the Reorganized Debtors shall pay Cash in the Allowed Amount of such Claim on the Distribution Date, in exchange for release of the lien securing such Claim, (v) the Reorganized Debtors shall reinstate, in accordance with the provisions of Bankruptcy Code § 1124(1) or 1124(2), payment in the ordinary course of business in accord with the terms and conditions of any agreement related thereto; (vi) the Reorganized Debtors shall provide such other treatment as is agreed to in writing between the Debtors or the Reorganized Debtors and the Holders of such Allowed Secured Claim; or (vii) the Reorganized Debtors shall provide such other treatment as is determined by Final Order of the Bankruptcy Court to provide the indubitable equivalent of such Allowed Secured Claim.  To the extent interest after the Petition Date is allowable and included in the Allowed Amount of any Secured Claim in Class 2, such interest shall accrue at the lower of a non-default contractual rate of interest provided for such Allowed Class 2 Claim or as otherwise provided by Final Order.

(ii)    <u>Secured Tax Claim</u>.    Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a different treatment, each Holder of an Allowed Secured Tax Claim shall receive 100% of the unpaid amount of such Allowed Secured Tax Claim in Cash by the Debtors or Reorganized Debtors on the Distribution Date.

(c)     Impairment and Voting

Class 2 is unimpaired.  The Holders of Class 2 Secured Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.3    Class 3.    GST Asbestos Convenience Class Claims

(a)     Classification

Class 3 consists of all GST Asbestos Convenience Class Claims.

(b)     Treatment

Each Holder of an Allowed Class 3 Claim shall, by reason of his election to be treated as a Class 3 Claimant, accept one thousand dollars ($1,000) in full satisfaction and extinguishment of such Holder's Claim and receive Cash equal to such amount, payable on the Distribution Date.  Allowed Class 3 Claimants shall not be entitled to pursue a GST Asbestos Claim against any Asbestos Protected Party.

(c)     Impairment and Voting

Class 3 is impaired. The Debtors are soliciting the votes of Holders of Class 3 GST Asbestos Convenience Class Claims to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 2.2.4    Class 4.    Current GST Asbestos Claims

(a)     Classification

Class 4 consists of all Current GST Asbestos Claims.  Class 4 excludes Class 3 GST Asbestos Convenience Class Claims and Class 6 Inactive GST Asbestos Claims.

(b)     Treatment

(i)     All Allowed Class 4 Claims shall be paid in full, in Cash.

(ii)     All Class 4 Claims shall be processed and paid in accordance with the terms, provisions, and procedures of the Claims Resolution Procedures or the Case Management Order, as applicable.

(iii)     All Allowed Class 4 Claims shall be paid by Reorganized GST.

(iv)     Each Holder of an Allowed Settled GST Asbestos Claim shall be paid the Allowed Amount of its Settled GST Asbestos Claim on the Distribution Date.  Such payment shall be in full, in Cash, plus post-petition interest.  Post-petition interest shall accrue from the latter of (a) the date all conditions precedent to payment are satisfied or (b) the Petition Date, and shall be at the applicable legal rate of interest.

(v)     Each Holder of a Current GST Asbestos Claim in Class 4 that is not an Allowed Settled GST Asbestos Claim shall have the option to select:  (a) the Litigation Option or (b) the Settlement Option.

(vi)     Notwithstanding the foregoing, nothing shall prevent the Holder of a Current GST Asbestos Claim that has not yet been Allowed from agreeing with the Entity against whom the Claim is asserted for such Claim to be liquidated and paid in an amount lower than if the Claim were to be Allowed in the amount asserted.

**(c)     Injunction**

**The sole recourse of the Holder of a Current GST Asbestos Claim against any Asbestos Protected Party on account of such Claim shall be against Reorganized GST pursuant to the provisions of Article 8 of the Plan, and the Claims Resolution Procedures or CMO, as applicable.**

(d)     Impairment and Voting

Class 4 is unimpaired.  The Holders of Class 4 Current GST Asbestos Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.5   Class 5.   Future GST Asbestos Claims

(a)     Classification

Class 5 consists of all Future GST Asbestos Claims.

(b)     Treatment

(i)     All Allowed Class 5 Claims shall be paid in full, in Cash.

(ii)     All Class 5 Claims shall be processed and paid in accordance with the terms, provisions, and procedures of the GST Asbestos Trust Agreement, the Claims Resolution Procedures, and the CMO (as applicable).

(iii)     All Allowed Class 5 Claims shall be paid by the GST Asbestos Trust, which shall be funded solely by the GST Contribution, subject to the Parent Guaranty and secured by the Reorganized GST/Garrison Equity Interest Pledge.

(iv)     Each Holder of a Future GST Asbestos Claim shall have the option to select:  (a) the Litigation Option or (b) the Settlement Option.

(v)     Notwithstanding the foregoing, nothing shall prevent the Holder of a Future GST Asbestos Claim that has not yet been Allowed from agreeing with the Entity against whom the Claim is asserted for such Claim to be liquidated and paid in an amount lower than if the Claim were to be Allowed in the amount asserted.

(c)      **Asbestos Channeling Injunction**

**The sole recourse of the Holder of a Future GST Asbestos Claim against any Asbestos Protected Party on account of such Claim shall be against the GST Asbestos Trust pursuant to the provisions of the Asbestos Channeling Injunction and the Claims Resolution Procedures or CMO, as applicable.**

(d)      Impairment and Voting

Class 5 is unimpaired.  The Holders of Class 5 Future GST Asbestos Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.6    Class 6.    Inactive GST Asbestos Claims

(a)      Classification

Class 6 consists of all Inactive GST Asbestos Claims.

(b)      Treatment

Each Holder of an Allowed Class 6 Claim shall (i) receive, from the GST Asbestos Trust, the Medical Monitoring Contribution, payable on the Distribution Date; and (ii) thereafter, should such Holder ever be diagnosed with an asbestos-caused cancer, such Holder shall have the same rights and be subject to the same treatment as a Holder of a Future GST Asbestos Claim, as described in Section 2.2.5(b).

(c)      **Asbestos Channeling Injunction**

**Once the Holder of an Inactive GST Asbestos Claim elects to receive the Medical Monitoring Contribution, the sole additional recourse of the Holder of such Inactive GST Asbestos Claim on account of such Claim shall be against the GST Asbestos Trust, should the Holder ever be diagnosed with an asbestos-caused cancer, where the Holder shall receive the same treatment as a Holder of a Future GST Asbestos Claim pursuant to the provisions of the Asbestos Channeling Injunction and the Claims Resolution Procedures or CMO, as applicable.**

(d)      Impairment and Voting

Class 6 is impaired.  The Debtors are soliciting the votes of Holders of Class 6 Inactive GST Asbestos Claims to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 2.2.7    Class 7.    Anchor Claims

(a)      Classification

Class 7 consists of all Anchor Claims.

9

(b)    Treatment

Each Holder of a Class 7 Claim shall be entitled to assert such Claim against Anchor in accordance with the provisions of Article 14 of Chapter 55 of the North Carolina Business Corporation Act.

(c)    Impairment and Voting

Class 7 is unimpaired. The Holders of Class 7 Anchor Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.8    Class 8.    General Unsecured Claims

(a)    Classification

Class 8 consists of all General Unsecured Claims.

(b)    Treatment

Each Holder of an Allowed Class 8 Claim shall be paid the Allowed Amount of its General Unsecured Claim on the Distribution Date.  Such payment shall be (i) in full, in Cash, plus post-petition interest, or (ii) upon such other less favorable terms as may be mutually agreed upon between the Holder of an Allowed General Unsecured Claim and the Reorganized Debtors.

Post-petition interest shall accrue from the Petition Date through the date of payment and shall be at the applicable legal rate of interest.

(c)    Impairment and Voting

Class 8 is unimpaired.  The Holders of Class 8 Allowed General Unsecured Claims are deemed to have voted to accept this Plan and, accordingly, their separate vote will not be solicited.

### 2.2.9    Class 9.    Intercompany Claims

(a)    Classification

Class 9 consists of all Intercompany Claims.

(b)    Treatment

On the Effective Date, all Intercompany Claims between and among the Debtors shall be deemed satisfied.  The legal, equitable, and contractual rights to which each Class 9 Claim entitles the Holder of such Claim shall be extinguished as of the Effective Date.

(c)    Impairment and Voting

Class 9 is impaired.  The Debtors are soliciting the votes of Holders of Class 9 Intercompany Claims to accept or reject this Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 2.2.10  Class 10.   GST Equity Interests

(a)    Classification

Class 10 consists of the GST Equity Interests, 100% of which are held by the Parent.

(b)    Treatment

On the Effective Date, the Parent shall retain the GST Equity Interests, subject to the Reorganized GST/Garrison Equity Interest Pledge.

(c)    Impairment and Voting

Class 10 is impaired.  The Debtors are soliciting the vote of the Parent to accept or reject the Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 2.2.11  Class 11.   Garrison Equity Interests

(a)    Classification

Class 11 consists of Garrison Equity Interests, 100% of which are held by the Parent.

(b)    Treatment

On the Effective Date, the Parent shall retain the Garrison Equity Interests, subject to the Reorganized GST/Garrison Equity Interest Pledge.

(c)    Impairment and Voting

Class 11 is impaired.  The Debtors are soliciting the vote of the Parent to accept or reject the Plan in the manner and to the extent provided in the Confirmation Procedures Order.

### 2.2.12  Class 12.   Anchor Equity Interest

(a)    Classification

Class 12 consists of the Anchor Equity Interest.

(b)    Treatment

On the Effective Date, Reorganized Garrison shall retain the Anchor Equity Interest.

(c)      Impairment and Voting

Class 12 is unimpaired.  The Holder of the Class 12 Anchor Equity Interest accepts the Plan.

## 2.3    EFFECT OF GST ASBESTOS CLAIMANT ELECTING VARIOUS OPTIONS

### 2.3.1   Settlement Option

If a GST Asbestos Claimant in Classes 4, 5, or 6 selects the Settlement Option, (i) his selection is irrevocable, (ii) his Claim will be processed under the terms of the Claims Resolution Procedures and (iii) he shall be precluded, pursuant to Article 8 of the Plan (including the Asbestos Channeling Injunction), from seeking any further recovery from any Asbestos Protected Party or any Entity released under any provision of this Plan on account of such Claim.

### 2.3.2   Litigation Option

If a GST Asbestos Claimant in Classes 4, 5, or 6 selects, or is deemed to select, the Litigation Option, (i) his Claim will be litigated against Reorganized GST (and, if Allowed, paid by Reorganized GST), if he holds a Current GST Asbestos Claim, and will be litigated against the GST Asbestos Trust (and, if Allowed, paid by the GST Asbestos Trust), if he holds a Future GST Asbestos Claim or an Inactive GST Asbestos Claim and (ii) he shall be precluded, pursuant to Article 8 of the Plan (including the Asbestos Channeling Injunction), from seeking any further recovery against any Asbestos Protected Party or any Entity released under any provision of this Plan on account of such Claim.

### 2.3.3   Convenience Option

If a Holder of a GST Asbestos Claim elects to be treated as a GST Asbestos Convenience Class Claimant, (i) his election is irrevocable, (ii) if his Claim is Allowed, he will receive one thousand dollars ($1,000) from Reorganized GST in full satisfaction and extinguishment of his GST Asbestos Claim, and (iii) he shall be precluded, pursuant to Article 8 of the Plan, from seeking any further recovery against any Asbestos Protected Party or any Entity released under any provision of this Plan on account of such Claim.

### 2.3.4   Medical Monitoring Option

If a Holder of a GST Asbestos Claim elects to be treated as an Inactive GST Asbestos Claimant: (i) his election is irrevocable; (ii) his GST Asbestos Claim will be channeled to the GST Asbestos Trust and he will be precluded, pursuant to the Asbestos Channeling Injunction, from seeking any further recovery from any Asbestos Protected Party or any Entity released under any provision of this Plan on account of such Claim; (iii) he will receive, on the Distribution Date, payment of the Medical Monitoring Contribution in the amount of one hundred dollars ($100); and (iv) should he thereafter obtain a diagnosis for an asbestos-caused cancer, he shall be treated in the same manner as a Holder of a Class 5 Future GST Asbestos Claim.

## ARTICLE 3.

## MODIFICATION OR WITHDRAWAL OF PLAN

### 3.1   MODIFICATION OF PLAN; AMENDMENT OF PLAN DOCUMENTS

#### 3.1.1   Modification of Plan

The Debtors may alter, amend, or modify this Plan, or any other Plan Document, under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123 or the Court has approved such modifications to the Plan.  After the Confirmation Date, and prior to the Effective Date, the Debtors may alter, amend, or modify this Plan in accordance with Bankruptcy Code § 1127(b).

#### 3.1.2   Amendment of Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents shall be as provided in this Plan or such documents.

### 3.2   WITHDRAWAL OF PLAN

#### 3.2.1   Right to Withdraw Plan

The Debtors reserve the right, in the exercise of their sole discretion, to withdraw the Plan at any time prior to the Confirmation Date.

13

### 3.2.2   Effect of Withdrawal

If this Plan is withdrawn prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein or in any of the Plan Documents shall be deemed to constitute a waiver or release of any claims or defenses of, or an admission or statement against interest by, the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

## ARTICLE 4.

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 4.1   UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified in Article 2.

### 4.2   ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

Subject to the terms herein and unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim (in which event such other agreement shall govern), Allowed Administrative Expense Claims shall be provided for as follows:

(a) if such Claim is for goods sold or services rendered representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases involving customers, suppliers, trade or vendor Claims, such Claim shall be paid by the Debtors or the Reorganized Debtors in the ordinary course in accordance with the terms and conditions of any agreements relating thereto;

(b) if such Claim is for amounts necessary to cure executory contracts and unexpired leases assumed by the Debtors in connection with the orderly operation of its business after the Effective Date, such Claim shall be paid by the Debtors or the Reorganized Debtors as soon as practicable after the Effective Date or as ordered by the Bankruptcy Court;

(c) amounts due Holders of other Allowed Administrative Expense Claims, including, without limitation, Fee Claims or Claims arising pursuant to Bankruptcy Code § 503(b)(9), shall be paid as agreed between the Debtors and such Holders, as soon as practicable after the Effective Date or as ordered by the Bankruptcy Court;

(d) Administrative Expense Claims of the Bankruptcy Administrator for fees pursuant to 28 U.S.C. § 1930(a)(6) and (7) shall be paid in accordance with the applicable schedule for payment of such fees by Debtors; and

(e) other Allowed Administrative Expense Claims shall be paid in full, in Cash on the Distribution Date.

14

### 4.3    ALLOWED PRIORITY TAX CLAIMS

Subject to the terms herein, each Holder of an Allowed Priority Tax Claim shall be paid 100% of the unpaid Allowed Amount of such Allowed Priority Tax Claim in Cash by the Reorganized Debtors on the Distribution Date.  Any claim or demand for penalty relating to any Priority Tax Claim (other than a penalty of the type specified in Bankruptcy Code § 507(a)(8)(G)) shall be Disallowed, and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, or their Estates or assets.

## ARTICLE 5.

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS
## AND GST ASBESTOS CLAIMS GENERALLY

### 5.1    OBJECTIONS TO CLAIMS (OTHER THAN GST ASBESTOS CLAIMS); PROSECUTION OF DISPUTED CLAIMS

The Debtors or Reorganized Debtors, as applicable, the Bankruptcy Administrator and any other party-in-interest may object to the allowance of any Administrative Expense Claim, Priority Tax Claim, Class 1 Priority Claim, Class 2 Secured Claim, and Class 8 General Unsecured Claim Filed with the Bankruptcy Court or to be otherwise resolved by the Debtors or Reorganized Debtors pursuant to any provisions of this Plan with respect to which they dispute liability, in whole or in part.  The Debtors' pending objections to any Claims not channeled to and assumed by the GST Asbestos Trust shall be transferred to the Reorganized Debtors for final resolution.

All objections that are Filed and prosecuted by the Reorganized Debtors as provided herein may be:  (i) compromised and settled in accordance with the business judgment of the Reorganized Debtors without approval of the Bankruptcy Court or (ii) litigated to Final Order by the Reorganized Debtors.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Claims shall be served and Filed no later than six (6) months after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court.  Such further order may be obtained by the Reorganized Debtors without a hearing or notice.  The Debtors reserve the right to designate, upon notice to the Holders of such Claim, any Claim as a Disputed Claim on or before the Confirmation Date.

To the extent that the Court enters an alternative dispute resolution order which contemplates that an order shall survive confirmation of this Plan, such order shall be controlling.

     **5.1.1   Amendments to Claims.**  After the Confirmation Date, no Claim (other than GST Asbestos Claims) may be filed or amended to increase the amount or a lien or priority demanded unless otherwise provided by the Bankruptcy Court.  Unless otherwise provided herein, any new or amended Claim filed after the Confirmation Date shall be disregarded and deemed Disallowed in full and expunged without need for objection, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization for the filing

## 5.2   DISTRIBUTION ON ACCOUNT OF DISPUTED CLAIMS

     Notwithstanding Section 5.1 hereof, a Distribution shall be made to the Holder of a Disputed Claim only when, and to the extent that, such Disputed Claim becomes Allowed and pursuant to the appropriate provisions of this Plan covering the Class of which such Disputed Claim is a part.  No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 5.1 hereof.

## 5.3   BAR DATES FOR ADMINISTRATIVE EXPENSE CLAIMS

### 5.3.1   Administrative Expense Claims

     All parties seeking payment of an Administrative Expense Claim that is not a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a request for payment of such Administrative Expense Claim prior to the applicable deadline set forth below; provided, however, that parties seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtors' postpetition business and amounts arising under agreements approved by the Bankruptcy Court or the Plan need not File such a request.

     **All Holders of Administrative Expense Claims must File with the Bankruptcy Court and serve on the Debtors a request for payment of such Claim so as to be received on or before 4:00 p.m. (Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date, unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by the Bankruptcy Court. Failure to comply with these deadlines shall forever bar the holder of an Administrative Expense Claim from seeking payment thereof.**

     **Any Holder of an Administrative Expense Claim that does not assert such Claim in accordance with this Section shall have its Claim deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets. Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.**

### 5.3.2   Fee Claims

     All parties seeking payment of a Fee Claim must File with the Bankruptcy Court and serve upon the Debtors a proof or application for payment of such Fee Claim in accordance with the Fee Order by the date that is the first Business Day after the date that is ninety (90) days after the Effective Date unless otherwise agreed to by the Debtors, without further approval by the

Bankruptcy Court.  Failure to comply with these deadlines shall forever bar the Holder of a Fee Claim from seeking payment thereof.

**Any Holder of a Fee Claim that does not assert such Claim in accordance with the Fee Order and this Section shall have its Claim deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Debtors, their Estates or their assets.  Any such Claim and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

### 5.4    RESOLUTION OF DISPUTED GST ASBESTOS CLAIMS

The Allowed Amount of GST Asbestos Claims shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Claims Resolution Procedures, and the CMO.  Allowed Current GST Asbestos Claims shall be satisfied by Reorganized GST in accordance with the Claims Resolution Procedures.  Allowed Future GST Asbestos Claims shall be satisfied by the GST Asbestos Trust from the GST Asbestos Trust Assets in accordance with the GST Asbestos Trust Agreement and the Claims Resolution Procedures.

Inactive GST Asbestos Claims and GST Asbestos Convenience Class Claims shall be deemed Allowed when the Holder of such a Claim submits a qualifying Ballot electing treatment under such a Class.  The Allowed Amount of a GST Asbestos Claim whose Holder selects the Settlement Option will be determined pursuant to the procedures set forth in the CRP.  The Allowed Amount of a GST Asbestos Claim whose Holder selects the Litigation Option will be determined pursuant to the procedures set forth in the CRP or the CMO, as applicable.

The GST Asbestos Trust shall have the sole right and authority to resolve all disputed Future GST Asbestos Claims.  Any Future GST Asbestos Claim whose Holder selects the Litigation Option shall be litigated by and at the expense of the GST Asbestos Trust in the name of the GST Asbestos Trust.

If the Holder of a Current GST Asbestos Claim selects the Litigation Option, Reorganized GST shall have the sole right and authority to resolve such Claim.  All Current GST Asbestos Claims whose Holders select the Litigation Option shall be litigated by and at the expense of Reorganized GST in the name of the Reorganized GST.

### 5.4.1    Making of an Election by Holders of GST Asbestos Claims

The Holders of GST Asbestos Claims shall make the election described in Section 2.3 of this Plan either, with respect to Holders of GST Asbestos Claims that do not elect treatment as GST Asbestos Convenience Class Claimants or Inactive GST Asbestos Claimants, pursuant to the CRP or, with respect to Holders of GST Asbestos Claims who do elect treatment as GST Asbestos Convenience Class Claimants or Inactive GST Asbestos Claimants, in the Ballot.

# ARTICLE 6.

## ACCEPTANCE OR REJECTION OF THIS PLAN

### 6.1    IMPAIRED CLASSES TO VOTE

Each Holder of a Claim or Equity Interest in an impaired Class is entitled to vote to accept or reject this Plan to the extent and in the manner provided herein or in the Confirmation Procedures Order.

### 6.2    ACCEPTANCE BY IMPAIRED CLASSES OF CLAIMS

Acceptance of this Plan by any impaired Class of Claims shall be determined in accordance with the Confirmation Procedures Order and the Bankruptcy Code.

### 6.3    ACCEPTANCE PURSUANT TO BANKRUPTCY CODE § 524(g)

The Plan shall be confirmed for purposes of Bankruptcy Code § 524(g) if and to the extent that at least 75% of those voting in Class 6 vote in favor of the Plan.

### 6.4    PRESUMED ACCEPTANCE OF THIS PLAN

Claims in Classes 1, 2, 4, 5, 7, 8 and 12 are unimpaired.  Under Bankruptcy Code § 1126(f), the Holders of Claims in such Classes are conclusively presumed to have voted to accept the Plan.

### 6.5    NONCONSENSUAL CONFIRMATION

#### 6.5.1   Cramdown

To the extent necessary, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code § 1129(b) with respect to any impaired Class of Claims, including Classes of Claims created pursuant to amendments to this Plan, that fail to accept this Plan in accordance with Bankruptcy Code §§ 1126 and 1129(a).  Subject to Bankruptcy Code § 1127, the Debtors reserve the right to modify the Plan to the extent that confirmation pursuant to Bankruptcy Code § 1129(b) requires modification, provided such modifications are consistent with Article 4 of the Plan.

#### 6.5.2   General Reservation of Rights

Should this Plan fail to be accepted by the requisite number and amount of the Holders of Claims and Equity Interests required to satisfy Bankruptcy Code §1129, then, notwithstanding any other provision of this Plan to the contrary, the Debtors reserve the right to amend this Plan.

### 6.6    OBJECTIONS

The Debtors may examine any Claim and object to the right of any Holder of such Claim to vote.  The failure by the Debtors to object to any Holder's right to vote shall not be deemed a

waiver of the right of the Debtors, the Reorganized Debtors, or the GST Asbestos Trust, as the case may be, to object to the allowance of such Holder's Claim in whole or part.

## ARTICLE 7.

## IMPLEMENTATION OF THIS PLAN

### 7.1    VESTING OF ASSETS OF THE DEBTORS

On the Effective Date pursuant to Bankruptcy Code § 1141(b), except as otherwise provided in the Plan, (i) the assets and property of the Debtors shall vest or revest in the appropriate Reorganized Debtors for use, sale and distribution in accordance with operation of the Reorganized Debtors' business and this Plan.

As of the Effective Date, all assets vested or revested, and all assets dealt with by the Plan, shall be free and clear of all Claims, liens, and interests except as otherwise specifically provided in the Plan and/or the Confirmation Order.

From and after the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, sell and otherwise dispose of property without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the guidelines and requirements of the Bankruptcy Administrator, other than those restrictions expressly imposed by the Plan or the Confirmation Order; provided, however, that nothing herein restricts the right of the Reorganized Debtors to seek Bankruptcy Court approval for the sale, assignment, transfer, or other disposal of certain of the Reorganized Debtors' assets after the Confirmation Date in the event that such Court approval is deemed to be beneficial or advisable.

### 7.2    CORPORATE GOVERNANCE OF DEBTORS

#### 7.2.1    Amendment of Certificates of Incorporation of the Debtors

The Certificates of Incorporation or By-Laws, as applicable, of each of the Debtors that is a corporation or limited liability company shall be amended as of the Effective Date as needed to effectuate the terms of the Plan and the requirements of the Bankruptcy Code. The amended Certificates of Incorporation or By-Laws, as applicable, of the Debtors shall, among other things: (i) prohibit the issuance of nonvoting equity securities as required by Bankruptcy Code § 1123(a)(6), and subject to further amendment as permitted by applicable law; (ii) as to any classes of securities possessing voting power, provide for an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in payment of such dividends; and (iii) effectuate any other provisions of this Plan. The amended Certificates of Incorporation or By-Laws, as applicable, shall be filed with the Secretary of State or equivalent official in their respective jurisdictions of incorporation on or prior to the Effective Date and be in full force and effect without any further amendment as of the Effective Date.

### 7.2.2   D&O and Fiduciary Liability Tail Coverage Policies

The Reorganized Debtors, with the assistance, if necessary, of the Parent and its Affiliates, shall maintain continuous directors and officers liability insurance coverage with regard to any liabilities, losses, damages, claims, costs and expenses they or any current or former officer or director of any of the Debtors may incur, including but not limited to attorneys' fees, arising out of or due to the actions or omissions of any of them or the consequences of such actions or omissions, including, without limitation, service as an officer or director or liquidating trustee of any subsidiary of a Debtor, other than as a result of their willful misconduct or fraud. Each such policy shall cover each current and former officer or director of any of the Debtors.

Except as otherwise specifically provided herein, any obligations of the Debtors to indemnify their present and former directors, officers, employees or professionals under its certificate of incorporation, by-laws, agreement, employee-indemnification policy, or under state law or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall be deemed assumed by the Reorganized Debtors on the Effective Date, and shall survive and be unaffected by this Plan's confirmation, and remain an obligation of the Reorganized Debtors, regardless of whether the right to indemnification arose before or after the Petition Date.

## 7.3   THE GST ASBESTOS TRUST

### 7.3.1   Creation of the GST Asbestos Trust

Upon entry of the Confirmation Order, effective as of the Effective Date, the GST Asbestos Trust shall be created in accordance with the Plan Documents. The GST Asbestos Trust shall be a "qualified settlement fund" for federal income tax purposes within the meaning of regulations issued pursuant to IRC § 468B.

The purpose of the GST Asbestos Trust shall be to, among other things: (i) assume the liabilities for all Future GST Asbestos Claims and Inactive GST Asbestos Claims; (ii) process, liquidate, pay, and satisfy all Future GST Asbestos Claims and Inactive GST Asbestos Claims in accordance with this Plan, the GST Asbestos Trust Agreement, the Claims Resolution Procedures, the CMO, and the Confirmation Order and in such a way that provides reasonable assurance that the GST Asbestos Trust will value and be in a position to pay Future GST Asbestos Claims and Inactive GST Asbestos Claims and to otherwise comply with Bankruptcy Code § 524(g)(2)(B)(i); (iii) preserve, hold, manage, and maximize the assets of the GST Asbestos Trust for use in paying and satisfying Allowed Future GST Asbestos Claims and Inactive GST Asbestos Claims; and (iv) otherwise carry out the provisions of the GST Asbestos Trust Agreement and any other agreements into which the Trustees have entered or will enter in connection with this Plan.

To the extent any GST Asbestos Trust Assets remain after the payment, in full, in Cash of all Allowed Future GST Asbestos Claims, all Allowed Inactive GST Asbestos Claims and all GST Asbestos Trust Expenses, such excess GST Asbestos Trust Assets shall be transferred, in accordance with the GST Asbestos Trust Agreement, to such charitable organizations as the Trustees, in their reasonable discretion, shall determine; provided, however, that (i) such

charitable organizations, if practicable, shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from mesothelioma, (ii) the charitable organization shall be exempt from federal income tax under IRC § 501(c)(3); and (iii) the charitable organization shall not bear any relationship to the Reorganized Debtors within the meaning of IRC § 468B(d)(3).

### 7.3.2    Funding of GST Asbestos Trust

On or before the Effective Date, (i) GST shall transfer or cause the transfer of the GST Contribution to the GST Asbestos Trust and (ii) the Parent shall transfer or cause the transfer of the Parent Contribution to Reorganized GST and the GST Asbestos Trust.

The GST Contribution shall be comprised of (i) a one-time Cash payment in the amount of sixty million dollars ($60,000,000) and (ii) the GST Deferred Payment Note, which shall provide for Cash payments by Reorganized GST to the GST Asbestos Trust with an aggregate net present value as of the Effective Date of one hundred forty million dollars ($140,000,000).

The Parent Contribution shall be comprised of the Parent Guaranty secured by the Reorganized GST/Garrison Equity Interest Pledge, which shall provide for the Parent's guaranty of collection of GST's obligations under the GST Deferred Payment Note secured by fifty-one percent (51%) of the voting stock in each of Reorganized GST and Reorganized Garrison.

### 7.3.3    Transfer of Assets into the GST Asbestos Trust

Upon the transfers of the GST Contribution and Parent Contribution to the GST Asbestos Trust except for the GST Asbestos Trust's obligations pursuant to Section 7.3.7, each such contribution shall be vested in the GST Asbestos Trust, free and clear of all Claims, Equity Interests, encumbrances and other claims or interests of any Entity.

### 7.3.4    Transfer of GST Asbestos Claims to the GST Asbestos Trust

On the Effective Date, without any further action of any Entity, all liabilities, obligations, and responsibilities for all Future GST Asbestos Claims and Inactive GST Claims shall be channeled to and assumed by the GST Asbestos Trust whether or not (i) a proof of claim form based on such Claim was Filed or deemed Filed under Bankruptcy Code § 501, (ii) such Claim is or was Allowed under Bankruptcy Code § 502, or (iii) such Claim was listed on the Schedules of a Debtor. This paragraph is intended to further effect the Asbestos Channeling Injunction and the Discharge described in Section 8.1 of this Plan. This paragraph is not intended to, and it shall not, serve as a waiver of any defense to any Claim the Debtors, the Affiliates or the GST Asbestos Trust would otherwise have.

### 7.3.5    Appointment and Termination of Trustees

On or before the Confirmation Date, GST and Garrison shall nominate the initial three (3) Trustees of the GST Asbestos Trust. The Bankruptcy Court, after notice and opportunity for hearing, shall be asked to appoint the three individuals named by GST and Garrison to serve as Trustees of the GST Asbestos Trust effective as of the Effective Date. Upon termination of the GST Asbestos Trust, the Trustees' employment shall be deemed terminated and the Trustees

21

shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.3.6   Creation and Termination of the TAC

Pursuant to the terms of the GST Asbestos Trust Agreement, the Debtors, after consulting with the FCR and the Asbestos Committee, shall nominate the three (3) initial members of the TAC.  On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall be asked to appoint the initial members of the TAC (and thereupon the TAC shall be formed) to serve as members of the TAC in accordance with the GST Asbestos Trust Agreement.  Upon termination of the GST Asbestos Trust, the TAC shall be deemed dissolved and the TAC shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases.

### 7.3.7   Cooperation Agreement

On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors and the GST Asbestos Trust shall enter into a cooperation agreement pursuant to which:  (i) the Reorganized Debtors shall provide to the GST Asbestos Trust access to the books and records of the Debtors and the Reorganized Debtors that pertain directly to GST Asbestos Claims and (ii) the GST Asbestos Trust shall provide to the Reorganized Debtors books and records of the GST Asbestos Trust that pertain to GST Asbestos Claims.  Execution of the cooperation agreement, in a form acceptable to the Debtors, is a condition precedent to the GST Contribution and Parent Contribution being delivered to the GST Asbestos Trust.

The Debtors shall File the draft of the cooperation agreement prior to the Effective Date and shall seek an order from the Court that the providing of books and records under such cooperation agreement shall not result in the destruction, impairment or waiver of any applicable privileges pertaining to such books and records.

### 7.3.8   Institution and Maintenance of Legal and other Proceedings

As of the Effective Date, without any further action of any Entity, the GST Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any liability or responsibility of the GST Asbestos Trust.

### 7.4    APPROVAL OF PARENT SETTLEMENT

The Confirmation Order shall include provisions approving the Parent Settlement and its implementation pursuant to the Plan.  On the Effective Date, the Parent shall deliver the Parent Settlement Consideration to Reorganized GST in full satisfaction and extinguishment of any potential cause of action by any Debtor against any Asbestos Protected Party as set forth in Section 11.3.3.  Approval of the Parent Settlement Agreement is a condition precedent to the Parent Settlement Consideration being delivered to Reorganized GST.

### 7.5    DISSOLUTION OF ANCHOR

#### 7.5.1    Dissolution upon the Effective Date

As of the Effective Date, Anchor shall be dissolved under North Carolina General Statues §§ 55-14-01 *et seq.*  Such dissolution shall occur as soon as reasonably practicable following the Effective Date.

Upon the Effective Date, Anchor, through its directors and officers, shall commence winding down its businesses and affairs, including, without limitation, marshaling its assets for the benefit of all constituencies.  All Holders of Class 7 Anchor Claims shall be permitted, after the Effective Date, to assert and pursue claims against Anchor, and such claims shall be fully reinstated to the *status quo ante* as of the Petition Date.

### 7.6    PAYMENTS AND DISTRIBUTIONS UNDER THIS PLAN

#### 7.6.1    GST Asbestos Trust Payments and Plan Distributions

Payments to Holders of Allowed Current GST Asbestos Claims shall be made by Reorganized GST in accordance with the Claims Resolution Procedures and the CMO, as applicable.  Payments to Holders of Allowed Future GST Asbestos Claims and Allowed Inactive GST Asbestos Claims shall be made by the GST Asbestos Trust in accordance with the Plan, GST Asbestos Trust Agreement, the Claims Resolution Procedures, and the CMO, as applicable. All other Distributions or payments required or permitted to be made under this Plan (other than to Professionals) shall be made by the Reorganized Debtors in accordance with the treatment for each such Holder as specified herein (unless otherwise ordered by the Bankruptcy Court). Distributions shall be deemed actually made on the Distribution Date if made either (i) on the Distribution Date or (ii) as soon as practicable thereafter.  Professionals shall be paid pursuant to orders of the Bankruptcy Court.

#### 7.6.2    Timing of Plan Distributions

Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any additional interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

### 7.6.3   Manner of Payments under Plan

Unless the Entity receiving a Distribution or payment agrees otherwise, any such Distribution or payment in Cash to be made by the Reorganized Debtors or the GST Asbestos Trust shall be made, at the election of the Reorganized Debtors or the GST Asbestos Trust, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank.

### 7.6.4   Fractional Payments under this Plan

Notwithstanding any other provision of this Plan, payments of fractions of dollars or of fractional shares shall not be made.  Whenever, under this Plan, any payment of a fraction of a dollar would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar, as applicable (up or down), with half dollars being rounded up.

### 7.6.5   Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated first to the principal amount of the Claim and then, to the extent the Distribution exceeds the principal amount of the Claim, to accrued but unpaid interest.

## 7.7   DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS.

### 7.7.1   Delivery by the Reorganized Debtors of Distributions in General

Payments by the GST Asbestos Trust to Holders of Allowed Future GST Asbestos Claims and Allowed Inactive GST Asbestos Claims shall be made in accordance with this Plan, the GST Asbestos Trust Agreement, the Claims Resolution Procedures, and the CMO, as applicable.  All other Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as set forth on the Schedules, or as set forth (i) in another writing Filed in the Chapter 11 Cases notifying the Reorganized Debtors of a change of address prior to the date of Distribution (including, without limitation, any timely proof of claim) or (ii) in a request for payment of an Administrative Expense Claim, as the case may be.

### 7.7.2   Undeliverable Distributions by the Reorganized Debtors

Any Cash, assets, and other properties to be distributed by the Reorganized Debtors under this Plan to Holders of Claims, other than GST Asbestos Claims, that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto after delivery to the address set forth in Section 7.6.1 of the Plan before one year after the Distribution Date, shall become vested in, and shall be transferred and delivered to, the Reorganized Debtors.  In such event, such Entity's Claim shall no longer be deemed to be Allowed, and such Entity shall be deemed to have waived its rights to such payments or Distributions under this Plan pursuant to Bankruptcy Code § 1143, shall have no further Claim in respect of such Distribution, and shall not participate in any further Distributions under this Plan with respect to such Claim.

### 7.8     OCCURRENCE OF THE CONFIRMATION DATE

The following shall constitute conditions precedent to confirmation of this Plan:

### 7.8.1   Findings of Fact and/or Conclusions of Law.

The Court shall have entered an order or orders providing for the Asbestos Channeling Injunction and CMO and, in connection therewith, made the following findings of fact and/or conclusions of law, among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)     The Plan complies with all applicable sections of the Bankruptcy Code;

(b)     Claimants in Classes 4, 5, 7, 8, and 12 shall be deemed to have voted for acceptance under the Plan in the requisite numbers and amounts required by Bankruptcy Code §§ 1126, 1129 & 524(g)(2)(B)(ii)(IV)(bb);

(c)     The Asbestos Channeling Injunction is to be implemented in connection with the GST Asbestos Trust;

(d)     As of the Petition Date, the Debtors have been named as defendants in personal injury and wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(e)     On the Effective Date, the GST Asbestos Trust shall assume the liabilities of the Debtors with respect to all Future GST Asbestos Claims and Inactive GST Asbestos Claims;

(f)     The GST Asbestos Trust is to be funded in part by securities of Reorganized GST and by the obligations of the Reorganized Debtors to make future payments;

(g)     On the Effective Date, the GST Asbestos Trust would be entitled to own (if specified contingencies occur), the majority of the voting shares of Reorganized GST and Reorganized Garrison, by exercise of rights granted under the Plan;

(h)     The GST Asbestos Trust is to use the GST Asbestos Trust assets to pay Future GST Asbestos Claims and Inactive GST Asbestos Claims;

(i)     GST and Garrison are likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims to be addressed by the Asbestos Channeling Injunction;

(j)     The actual amounts, numbers, and timing of such future demands cannot be determined;

(k)     Pursuit of such future demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with these claims and demands channeled to the GST Asbestos Trust;

(l)     The terms of the Asbestos Channeling Injunction, including any provisions barring actions against third parties, are set out in the Plan in accordance with the requirements of Bankruptcy Rule 3016(c) and are adequately described in the Disclosure Statement;

(m)     Pursuant to Court orders or otherwise, the GST Asbestos Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, matrices, or periodic review of estimates of the numbers and values of Future GST Asbestos Claims and Inactive GST Asbestos Claims, or other comparable mechanisms that provide reasonable assurance that the GST Asbestos Trust will value, and be in a position to pay, on any given date, Future GST Asbestos Claims and Inactive GST Asbestos Claims assumed by the GST Asbestos Trust that involve similar claims in substantially the same manner;

(n)     The FCR was appointed as part of the proceedings leading to the issuance of the Asbestos Channeling Injunction for the purpose of, among other things, representing Entities that might subsequently assert Future GST Asbestos Claims;

(o)     The FCR has provided adequate representation to Holders of Future GST Asbestos Claims;

(p)     In light of the benefits provided, or to be provided, to the GST Asbestos Trust by, or on behalf of, each Asbestos Protected Party, the Asbestos Channeling Injunction is fair and equitable with respect to the Entities that might subsequently assert Future GST Asbestos Claims against any Asbestos Protected Party;

(q)     The Asbestos Channeling Injunction is to be implemented in connection with the Plan and the Plan Documents;

(r)     The Plan otherwise complies with Bankruptcy Code § 524(g);

(s)     The Asbestos Channeling Injunction is essential to the Plan and the Debtors' reorganization efforts and may not be vacated, amended or modified after Confirmation;

(t)     The Parent Contribution, together with the GST Contribution, constitute both (i) substantial assets of the Plan and the reorganization, and (ii) a fair, reasonable, and equitable settlement of all Future GST Asbestos Claims asserted against any Asbestos Protected Party;

(u)     As of the Effective Date, the Reorganized Debtors have the ability to pay and satisfy in the ordinary course of business all of their respective obligations and liabilities;

(v)     The Court has entered the Confirmation Order granting the Asbestos Channeling Injunction to take effect as of the Effective Date;

(w)     All Future GST Asbestos Claims and all Inactive GST Asbestos Claims, shall be channeled to the GST Asbestos Trust;

(x)     All Future GST Asbestos Claims and Inactive GST Asbestos Claims whose Holders select the Litigation Option shall be litigated by, and at the expense of, the GST Asbestos Trust in the name of the GST Asbestos Trust;

(y)     All Allowed Future GST Asbestos Claims and Inactive GST Asbestos Claims shall be paid by the GST Asbestos Trust;

(z)     The litigation of Future GST Asbestos Claims and Inactive GST Asbestos Claims are or will be in the name of the GST Asbestos Trust, and the GST Asbestos Trust is the true party in interest in defending and/or objecting to Future GST Asbestos Claims and Inactive GST Asbestos Claims;

(aa)    The settlements to be consummated under the Plan, including without limitation the Parent Settlement, are fair and reasonable and should be approved pursuant to Bankruptcy Code § 1123(b)(3)(A) and Bankruptcy Rule 9019; and

(bb)    An Article III district court judge in the District Court shall hear any proceeding that involves the Asbestos Channeling Injunction, including without limitation, the enforcement, validity, application or construction of such injunction; any such proceeding may be commenced only in the District Court before an Article III district court judge; and the District Court shall have exclusive jurisdiction over any such proceeding without regard to amount in controversy.

This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by the Debtors.

### 7.8.2   Orders of this Court

(a)     The Confirmation Order shall be in form and substance acceptable to the Debtors.

(b)     The Court shall have entered the CMO in form and substance acceptable to the Debtors.

(c)     The Court shall have entered the Estimation Order in form and substance acceptable to the Debtors, including findings that, upon funding of the GST Asbestos Trust with the GST Contribution and the Parent Contribution, the GST Asbestos Trust shall have sufficient assets to pay all Allowed Future GST Asbestos Claims and Inactive GST Asbestos Claims.

This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to confirmation is either satisfied or waived by the Debtors.

### 7.9    CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

The "effective date of the plan," as used in Bankruptcy Code § 1129, shall not occur, and this Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)    The Confirmation Order shall have been issued or affirmed by the District Court and shall have become a Final Order; provided that, at the option of the Debtors, the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case, at the option of the Debtors, the Effective Date may be the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

(b)    The District Court shall have entered or affirmed an order(s) entering the Asbestos Channeling Injunction.

(c)    The District Court shall have entered or affirmed an order(s) approving this Plan and all the Plan Documents and such order(s) shall have become Final Orders.

(d)    The Asbestos Channeling Injunction shall be in full force and effect.

(e)    The Plan Documents necessary or appropriate to implement this Plan shall have been executed, in a form acceptable to the Debtors and, where applicable, filed with the appropriate governmental or supervisory authorities.

(f)    The Certificates of Incorporation and By-Laws, as applicable, of each of the Debtors, as amended in accordance with this Plan, shall be in full force and effect.

(g)    The Parent shall have transferred the Parent Contribution to the GST Asbestos Trust.

(h)    The Parent Settlement shall have been approved, the Parent Settlement Agreement executed, and the Parent Settlement Consideration delivered to Reorganized GST.

(i)    GST shall have transferred the GST Contribution to the GST Asbestos Trust.

(j)    The Court shall have entered a finding that the cooperation agreements entered into between the Reorganized Debtors and the GST Asbestos Trust do not result in the destruction, impairment, or waiver of any applicable privileges pertaining to the books and records subject thereto.

The Effective Date shall not occur unless and until each of the foregoing conditions is either satisfied or waived by the Debtors.  Notice of the occurrence of the Effective Date reflecting that the foregoing conditions have been satisfied or waived shall:  (i) be signed by the Debtor and each Entity whose consent is required pursuant to this Plan; (ii) state the date of the

Effective Date; and (iii) be Filed with the Bankruptcy Court by the Debtors' counsel. No waiver shall be effective unless it complies with the requirements of this provision.

### 7.10   MANAGEMENT OF THE REORGANIZED DEBTORS

On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by their respective Boards of Directors. Upon the Effective Date, the Board of Directors of each of the Reorganized Debtors shall be composed of at least one (1) director or manager, as applicable. Each Debtor shall specify the director(s) or manager(s) of such Reorganized Debtor upon the Effective Date in the Exhibit Book Supplement. The director(s) or manager(s) may be replaced by action of the shareholder or member, as applicable. In addition, as will be specified in the Exhibit Book Supplement, certain key members of current management are expected to continue to be employed by the Reorganized Debtors.

### 7.11   CORPORATE ACTION

On or prior to the Effective Date, the Boards of Directors of the respective Debtors that are corporations shall adopt an amendment to their respective By-Laws and Certificates of Incorporation, as applicable, and such corporate actions shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule. On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors shall file with the Secretary of State of the State of North Carolina, in accordance with the applicable North Carolina statutes, rules, and regulations, such amendment to their Certificate of Incorporation. On the Effective Date, the approval and effectiveness of matters provided under this Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors.

### 7.12   EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Each of the officers of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan, the transactions contemplated by this Plan, and any securities issued pursuant to this Plan.

### 7.13   NO SUCCESSOR LIABILITY

Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos Committee, the FCR, and the Asbestos Protected Parties will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Affiliates, as such liabilities or obligations may relate to or arise out of the operations or assets of the Debtors or any of the Debtors' past or present Affiliates or any of their respective successors, whether arising prior to, or resulting from actions, events, or

29

circumstances occurring or existing at any time prior to the Confirmation Date.  Neither the Asbestos Protected Parties, the Reorganized Debtors, nor the GST Asbestos Trust is, or shall be, a successor to the Debtors or any of the Debtors' past or present Affiliates by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtors and the GST Asbestos Trust shall assume the obligations specified in this Plan and the Confirmation Order.

## ARTICLE 8.

## INJUNCTIONS, RELEASES & DISCHARGE

### 8.1    DISCHARGE

#### 8.1.1    Discharge of Debtors and Related Discharge Injunction

The rights afforded in this Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims (including without limitation all GST Asbestos Claims) and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against the Debtors and the Debtors in Possession shall be satisfied, discharged, and released in full.  The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except those expressly assumed by the Reorganized Debtors pursuant to this Plan.  All Entities shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, or their assets, properties, or interests in property any other or further Claims or claims based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.

**With respect to any debts discharged by operation of law under Bankruptcy Code § 1141, the discharge of the Debtors operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the Debtor, whether or not the discharge of such debt is waived; provided, however, that the obligations of the Reorganized Debtors under this Plan are not so discharged.**

#### 8.1.2    Discharge of Liabilities to Holders of Future GST Asbestos Claims

To the fullest extent provided under the Bankruptcy Code and applicable non-bankruptcy law, the assumption by the GST Asbestos Trust of Future GST Asbestos Claims for resolution as provided for pursuant to this Plan and the transfer to, vesting in, and assumption by the GST Asbestos Trust of the GST Asbestos Trust Assets as contemplated by this Plan, among other things, shall (i) discharge the Debtors, the Reorganized Debtors and their Representatives for and in respect of all Future GST Asbestos Claims and (ii) discharge, release, and extinguish all obligations and liabilities of the Asbestos Protected Parties for and in respect of all Future GST Asbestos Claims.  On the Effective Date, the GST Asbestos Trust shall assume the liabilities of the Debtors with respect to all Future GST Asbestos Claims and shall pay Allowed Future GST

Asbestos Claims in accordance with the GST Asbestos Trust Agreement, the Claims Resolution Procedures and the CMO, as applicable.

### 8.1.3    Disallowed Claims and Disallowed Equity Interests

On and after the Effective Date, the Debtors, the Reorganized Debtors and their Representatives shall be fully and finally discharged of any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Bankruptcy Code § 502 or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

### 8.1.4    Reservation of Rights of the PBGC

Nothing contained in this Plan, Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases shall be construed to discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to the Pension Benefit Guaranty Corporation ("PBGC") with respect to any ongoing, defined benefit pension plans to which Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") applies (the "Pension Plans") under any law, governmental policy, or regulatory provision. The PBGC shall not be enjoined or precluded from enforcing such liability or responsibility, as a result of any of the provisions of this Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims), the Confirmation Order, the Bankruptcy Code (including Bankruptcy Code § 1141), or any other document Filed in the Chapter 11 Cases. Notwithstanding the foregoing, neither the PBGC nor any other Entity shall assert any liability or responsibility with respect to the Pension Plans under any law, governmental policy or regulatory provisions against, and such liability or responsibility shall not attach to, the GST Asbestos Trust or any of the GST Asbestos Trust Assets.

### 8.2    ASBESTOS CHANNELING INJUNCTION

In order to supplement, where necessary, the injunctive effect of the discharge provided by Bankruptcy Code §§ 1141 and 524(a) and as described in Article 8, and pursuant to the exercise of the legal and equitable jurisdiction and power set forth in Bankruptcy Code §§ 524(g) and 105(a), the Bankruptcy Court and, in the case of the Asbestos Channeling Injunction, the District Court, shall enter the Confirmation Order which shall provide for the issuance of the Asbestos Channeling Injunction to take effect as of the Effective Date.

**Pursuant to Bankruptcy Code §§ 105(a), 1124(b)(4) and 524(g), all Future GST Asbestos Claims and Inactive GST Asbestos Claims shall be channeled to the GST Asbestos Trust pursuant to the provisions of this Asbestos Channeling Injunction, the Claims Resolution Procedures and the CMO, where applicable. Except as expressly provided for under this Plan and Plan Documents, a Holder of a GST Asbestos Claim shall have no right whatsoever at any time to assert its GST Asbestos Claim against the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, any other Asbestos Protected Party, or**

any property or interest (including any Distributions made pursuant to this Plan) in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party.

Without limiting the foregoing, from and after the Effective Date, the Asbestos Channeling Injunction shall apply to all Future GST Asbestos Claims, Inactive GST Asbestos Claims and all future Holders of GST Asbestos Claims, and all such Holders permanently and forever shall be stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any GST Asbestos Claims other than from the GST Asbestos Trust in accordance with the Plan and the Asbestos Channeling Injunction and pursuant to the GST Asbestos Trust Agreement, the Claims Resolution Procedures and the Case Management Order, including, but not limited to:

(a)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party;

(d)     setting off, seeking reimbursement of, indemnification or contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, or any property or interest in property of any Asbestos Protected Party; and

(e)     proceeding in any other manner with regard to any matter that is subject to resolution pursuant to the GST Asbestos Trust Agreement, the Claims Resolution Procedures and the Case Management Order, except in conformity and compliance with such Plan Documents.

Notwithstanding anything to the contrary above, this Asbestos Channeling Injunction shall not enjoin the rights of Entities to the treatment accorded them under Article 2 of this Plan, as applicable, including the rights of Entities with GST Asbestos Claims to assert such GST Asbestos Claims in accordance with the CRP or CMO.

Except as otherwise expressly provided in this Plan, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Affiliates, the Reorganized Debtors, or the GST Asbestos Trust may have against any Entity in connection with or arising out of or related to any GST Asbestos Claim.

The Asbestos Channeling Injunction shall also apply to any Entities that might subsequently assert Demands to the same extent and effect that the Asbestos Channeling Injunction applies to Holders of GST Asbestos Claims.

### 8.3    TERM OF CERTAIN INJUNCTIONS AND AUTOMATIC STAY

#### 8.3.1    Injunctions and/or Automatic Stays in Existence Immediately prior to Confirmation

All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Bankruptcy Code §§ 105, 362 or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Reorganized Debtors may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

#### 8.3.2    Injunctions Provided for in this Plan

Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

### 8.4    EXCULPATION

None of the Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Trustees of the GST Asbestos Trust, the Trust Advisory Committee, the Asbestos Committee, the Unsecured Creditors' Committee, the FCR, or any of their respective Representatives are to have or incur any liability to any Entity for any pre- or post-Petition Date act or omission in connection with, related to, or arising out of the administration of these Chapter 11 Cases, the negotiation of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan so long as, in each case such action, or failure to act, did not constitute willful misconduct. In all respects, all such Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute willful misconduct. This section is not intended to preclude a governmental entity from enforcing its police and regulatory powers.

### 8.5    SETTLEMENT AND EXTINGUISHMENT OF CLASS 3 GST ASBESTOS CONVENIENCE CLASS CLAIMS

Without limiting any other provision of this Plan, each Holder of a Class 3 GST Asbestos Convenience Class Claim who votes or is deemed to vote in favor of this Plan and receives the Distribution to a Holder of an Allowed Class 3 Claim as set forth in this Plan shall be deemed unconditionally to have settled and extinguished any GST Asbestos Claim held by such Holder

against the Asbestos Protected Parties and the Asbestos Insurance Companies, as of the Effective Date.

## ARTICLE 9.

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, GUARANTIES, AND INDEMNITY AGREEMENTS

### 9.1    ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except for (i) executory contracts and unexpired leases that the Debtors reject prior to the Effective Date or designate (in the Exhibit Book or Exhibit Book Supplement) as being subject to rejection in connection with the Effective Date and (ii) agreements, to the extent executory, providing for indemnification of third parties for GST Asbestos Claims, all executory contracts and unexpired leases, including asbestos-related insurance from any Asbestos Insurance Company, not previously assumed by the Debtors pursuant to Bankruptcy Code § 365 shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and this Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date.

The Debtors reserve the right for thirty (30) days after the Confirmation Date to modify the list of rejected contracts to be included in the Exhibit Book Supplement to add executory contracts or leases or remove executory contracts or leases, provided that the Debtors shall File a notice with the Bankruptcy Court and serve each affected party with such notice. Notwithstanding the foregoing, such affected parties shall not be entitled to any Administrative Expense Claim for any executory contracts or leases added to the list of rejected contracts and will only be entitled to a Claim for rejection damages. Furthermore, with respect to certain unexpired leases which are to be rejected under the Plan, the Debtors may include specific provisions in the Exhibit Book or Exhibit Book Supplement setting forth a reasonable prospective date on which the rejection shall take effect, which date may occur after the Effective Date.

Pursuant to the terms of the Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of an executory contract or unexpired lease pursuant to this Plan or otherwise shall be Filed with the Bankruptcy Court within thirty (30) days of the later of: (i) the date of the entry of an order, prior to the Confirmation Date, approving such rejection, (ii) the Confirmation Date, or (iii) service of notice of rejection if such party is an affected party as described in the paragraph immediately above. Any Claims not Filed within such applicable time period shall be forever barred from assertion. All Allowed Claims for damages arising from the rejection of an executory contract or unexpired lease shall be included in Class 8 and shall be treated in accordance with Article 2 herein.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Bankruptcy Code § 365(a) and a finding by

the Court that each such assumption is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

With respect to each such executory contract or unexpired lease assumed by the Reorganized Debtors, unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, any defaults of the Debtors with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtors' business promptly after any such default becomes known to the Debtors and, if the cure amount is disputed, such cure amount shall be established pursuant to applicable law, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto, subject to any rights and defenses existing thereunder. Subject to the occurrence of the Effective Date, upon payment of such cure amount, all defaults of the Debtors existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

To the extent executory, all agreements providing for indemnification of third parties for GST Asbestos Claims shall be deemed rejected by operation of entry of the Confirmation Order unless expressly identified and assumed pursuant to an order of the Bankruptcy Court. The Asbestos Protected Parties expressly reserve all rights to indemnification.

Executory contracts and unexpired leases previously assumed by the Debtors during the case pursuant to Bankruptcy Code § 365 shall be governed by and subject to the provisions of the order of the Court authorizing the assumption thereof.

The Bankruptcy Court shall retain jurisdiction to hear and determine any and all motions or applications for the assumption and/or assignment or rejection of (i) executory contracts, (ii) unexpired leases, (iii) letters of credit, (iv) surety bonds, (v) guaranties (which for purposes of this Section 9.1 include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or (vi) written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date to which the Debtors are parties or with respect to which the Debtors may be liable that are:  (a) pending on the Confirmation Date or (b) within the 30-day reservation period described in Sections 9.1 and 9.2 of this Plan, and to review and determine all Claims resulting from the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date;

## 9.2 LETTERS OF CREDIT, SURETY BONDS, GUARANTIES, AND CERTAIN INDEMNITY AGREEMENTS

Unless otherwise designated by the Debtors in the Exhibit Book Supplement, agreed to in writing by the affected parties, or modified by order of the Court, the Debtors' obligations under letters of credit, surety bonds, guaranties (which for purposes of this Section 9.2 include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under this Plan. The Debtors' obligations under such letters of credit, surety bonds, guaranties, and indemnity agreements shall be deemed assumed pursuant to Bankruptcy Code § 365(a), survive entry of the Confirmation Order and

occurrence of the Effective Date, remain unaffected thereby (except as provided in this Section 9.2), and not be discharged in accordance with Bankruptcy Code § 1141.

The Debtors reserve the right for thirty (30) days after the Confirmation Date to modify the list to be included in the Exhibit Book Supplement to add or remove letters of credit, surety bonds, guaranties, or indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date, provided that the Debtors shall File a notice with the Bankruptcy Court and serve each affected party with such notice.

Pursuant to the terms of the Bar Date Order and Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Bankruptcy Court, a proof of claim for each Claim arising from the rejection of a:  (i) letter of credit, (ii) surety bond, (iii) guaranty, or (iv) written indemnity agreement with respect to a letter of credit, surety bond or guaranty existing as of the Effective Date shall be Filed with the Bankruptcy Court within thirty (30) days of the later of:  (a) the date of the entry of an order, prior to the Confirmation Date, approving such rejection, (b) the Confirmation Date, or (c) service of notice of rejection if such party is an affected party as described in the paragraph immediately above.  Any Claims not Filed within such applicable time period shall be forever barred from assertion.  All Allowed Claims for damages arising from the rejection of a letter of credit, surety bond, guaranty, or written indemnity agreement with respect to a letter of credit, surety bond or guaranty existing as of the Effective Date shall be included in Class 8 and shall be treated in accordance with Article 2 herein.

The Reorganized Debtors shall have the right to cure any defaults existing as of the Effective Date under any such letters of credit, surety bonds, guaranties, or written indemnity agreements with respect to letters of credit, surety bonds, or guaranties existing as of the Effective Date promptly after any such default becomes known to the Debtors or Reorganized Debtors and, if disputed, established pursuant to applicable law.  All letters of credit, surety bonds, guaranties, or written indemnity agreements with respect to letters of credit, surety bonds or guaranties existing as of the Effective Date shall be deemed reinstated on the Effective Date notwithstanding any default therein by the Debtors, any delay in the cure thereof by the Debtors, or the Filing or existence of the Chapter 11 Cases, or any action taken in connection therewith, and shall be binding upon, and enforceable against, all parties thereto, subject to any rights and defenses existing thereunder.  All undrawn or partially drawn letters of credit, including letters of credit outstanding under the Debtors' pre-petition credit facilities, will be replaced as soon as practicable with new or replacement letters of credit under a new facility.

Nothing in Article 9, however, shall constitute a reinstatement, continuation or assumption of any warranty provision, guaranty or any contractual or other obligation, Demand or Claim by the Reorganized Debtors to the extent that the Claim, Demand or obligation constitutes a GST Asbestos Claim.

### 9.3     COMPENSATION AND BENEFITS PROGRAM

Unless otherwise agreed to by the affected parties, or modified by order of the Court, all of the Debtors' obligations under employment and severance contracts and policies, and all compensation and benefit plans, policies, and programs shall be treated as though they are executory contracts that are deemed assumed under this Plan.

# ARTICLE 10.

## RETENTION OF JURISDICTION

### 10.1   GENERAL

The Bankruptcy Court (and, with respect to the Asbestos Channeling Injunction, the District Court) shall retain the fullest and most extensive jurisdiction permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out.  Moreover, the GST Asbestos Trust shall be subject to the continuing jurisdiction of the Bankruptcy Court in accordance with the requirements of IRC § 468B and regulations issued pursuant thereto.

### 10.2   SPECIFIC PURPOSES

In addition to the foregoing and except as provided in Article 10.3, the Bankruptcy Court (and the District Court to the extent the Bankruptcy Court is found not to have authority or jurisdiction) shall retain jurisdiction for the following specific purposes after the Confirmation Date:

#### 10.2.1  Plan Documents

To interpret, enforce, and administer the terms of the Plan Documents (and all annexes and exhibits thereto);

#### 10.2.2  Disputed Claims Allowance/Disallowance

To hear and determine any objections to:  (i) the allowance of Claims, including any objections to the classification of any Claim; (ii) to allow or disallow any Disputed Claim in whole or in part pursuant to 28 U.S.C. § 157(b)(2)(B); and (iii) to allow or disallow any disputed GST Asbestos Claim pursuant to the terms of the CMO;

#### 10.2.3  Enforcement/Modification of this Plan

(a)      To issue such orders in aid of execution of this Plan to the extent authorized or contemplated by Bankruptcy Code § 1142;

(b)      To consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(c)      To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation;

(d)      To hear and determine all objections to the termination of the GST Asbestos Trust;

(e)     To determine such other matters that may be set forth in, or that may arise in connection with, this Plan, the Confirmation Order, the Asbestos Channeling Injunction, or the GST Asbestos Trust Agreement;

(f)     To hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Channeling Injunction;

(g)     To enter an order or final decree closing the Chapter 11 Cases;

(h)     To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Court in the Chapter 11 Cases;

(i)     To enter such orders as are necessary to implement and enforce the injunctions described herein;

(j)     To enter orders authorizing immaterial modifications to this Plan which are necessary to comply with IRC § 4688;

### 10.2.4  Compensation of Professionals

To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 329, 330, 331 and 363 and any other fees and expenses authorized to be paid or reimbursed under this Plan;

### 10.2.5  Settlements

To the extent that Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtors, Reorganized Debtors or the GST Asbestos Trust;

### 10.2.6  Taxes

To hear and determine matters concerning state, local, and federal taxes (including the amount of net operating loss carryforwards), fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Bankruptcy Code §§ 346, 505, and 1146;

### 10.2.7  Specific Purposes

To hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order; and

### 10.2.8  Insurance Matters

To hear and determine matters concerning asbestos-related insurance from any Asbestos Insurance Company; provided that the Court shall have nonexclusive jurisdiction over such matters.

### 10.3    ORDERS CLOSING CHAPTER 11 CASES

Any order entered pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rule 3022 closing the Chapter 11 Cases shall provide that, notwithstanding the closure of the Chapter 11 Cases: (a) the Court expressly retains jurisdiction over the matters described in Sections 10.1 and 10.2, including without limitation, jurisdiction to (i) enforce any of its orders issued in the Chapter 11 Cases; (ii) resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or that resolves any claim objections or other disputes relating to the Debtors; (iii) hear any matters related to the allowance of GST Asbestos Claims by Holders who select the Litigation Option; (iv) resolve any other claim objections or other disputes relating to the Debtors; and (v) consider any proper requests to reopen the Chapter 11 Cases under Bankruptcy Code § 350(b); and (b) the clerk of the Court shall accept for filing on the docket of Case No. 10-BK-31607, without the requirement that any party in interest file a request to reopen the Chapter 11 Cases, the annual reports of the GST Asbestos Trust and any pleadings, motions, subpoenas, or other papers pursuant to which any party in interest seeks to invoke the exclusive jurisdiction that the Bankruptcy Court retains pursuant to Section 10.1 and Section 10.2 of this Plan.

### 10.4    MATTERS WITHIN JURISDICTION OF THE DISTRICT COURT.

The District Court shall, without regard to amount in controversy, retain exclusive jurisdiction after the Confirmation to hear and determine any proceeding relating to the Asbestos Channeling Injunction, including without limitation, the enforcement, validity, application or construction of the Asbestos Channeling Injunction.

## ARTICLE 11.

## MISCELLANEOUS PROVISIONS

### 11.1    AUTHORITY OF THE DEBTORS

On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively (i) the provisions of this Plan and (ii) the creation of the GST Asbestos Trust.

### 11.2    PAYMENT OF STATUTORY FEES

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

### 11.3   RETAINED CAUSES OF ACTION

#### 11.3.1  Maintenance of Causes of Action

Nothing in this Section 11.3 of this Plan shall be deemed to be a transfer by the Debtors or the Reorganized Debtors of any claims, causes of action, or defenses relating to assumed executory contracts, or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date.  Moreover, except as otherwise expressly contemplated by this Plan or other Plan Documents, from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights to commence and pursue any and all claims, causes of action, including the Retained Causes of Action, Unknown Causes of Action, or defenses against any parties, including Claimants and Holders of Equity Interests, whether such causes of action accrued before or after the Petition Date.

The Reorganized Debtors shall retain and may exclusively enforce any and all such Claims, rights or causes of action, including Retained Causes of Action and Unknown Causes of Action, and commence, pursue and settle the causes of action in accordance with this Plan.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action, including Retained Causes of Action and Unknown Causes of Action, without the consent or approval of any third party and without any further order of the Court.

#### 11.3.2  Preservation of Causes of Action

The Debtors are currently investigating whether to pursue potential causes of action against any Claimants or Entities.  The investigation has not been completed to date, and, under this Plan, the Reorganized Debtors retain the right on behalf of the Debtors to commence and pursue any and all Retained Causes of Action.  The potential causes of action currently being investigated by the Debtors, which may, but need not, be pursued by the Debtors before the Effective Date, or by the Reorganized Debtors after the Effective Date, are described more fully in the Disclosure Statement.  In addition, there may be numerous Unknown Causes of Action. The failure to list any such Unknown Causes of Action in the Disclosure Statement, or as an exhibit in the Exhibit Book or Exhibit Book Supplement, is not intended to limit the rights of the Reorganized Debtors to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action become fully known to the Debtors.

Unless a claim or cause of action against a Claimant or other Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order, the Debtors expressly reserve such claim, Retained Cause of Action or Unknown Cause of Action for later adjudication by the Debtors or Reorganized Debtors, as applicable.  Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, Retained Causes of Action or Unknown Causes of Action upon or after the Confirmation Date or Effective Date of this Plan based on the Plan Documents or the Confirmation Order, except where such claims or Retained Causes of Action have been released in this Plan or other Final Order.  In addition, the Debtors, the Reorganized Debtors, and the successor entities under this Plan expressly reserve the right to pursue or adopt any claim alleged in any lawsuit in which

the Debtors are defendants or an interested party, against any Entity, including the plaintiffs or codefendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Debtors or the Reorganized Debtors, and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has Filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) such Claimant's proof of claim has been objected to; (iii) such Claimant's Claim was included in the Debtors' Schedules; or (iv) such Claimant's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as a Disputed Claim, a Contingent Claim, or an Unliquidated Claim.

### 11.3.3  Settled Causes of Action

This Plan proposes the Parent Settlement, a settlement agreement between Reorganized GST and Reorganized Garrison, on one hand, and the Parent and certain Asbestos Protected Parties, on the other hand, of any causes of action held or potentially held by any one of more of the Debtors against any one or more Asbestos Protected Parties.   Specifically, the Parent Settlement Consideration  (*i.e.*, funding of up to a net present value of thirty million dollars ($30,000,000) for satisfaction of Current GST Asbestos Claims and release by the Parent and its non-Debtor insured subsidiaries of the Available Shared Insurance) shall be given in full satisfaction and extinguishment of (a) any and all claims that are or could have been asserted in these Chapter 11 Cases against any Asbestos Protected Party pursuant to Chapter 5 of the Bankruptcy Code, including, without limitation, any one or more of 11 U.S.C. 544, 545, 547, 548, 549, 550 or 553;  (b) any and all claims against any Asbestos Protected Party arising under any non-bankruptcy law relating to allegedly preferential or fraudulent transfers or relating to any allegedly unlawful payments or  transfers or distributions of property to such Asbestos Protected Party; and (c) any and all claims, regardless of the legal theory upon which such claim may be predicated, by which any Asbestos Protected Party is asserted to be or have been derivatively liable for any Claim, including without limitation, any GST Asbestos Claim or any Demand that may subsequently be presented against the GST Asbestos Trust.

### 11.4    THIRD-PARTY AGREEMENTS

The Distributions to the various classes of Claims hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto will remain in full force and effect.

**11.5    DISSOLUTION OF THE UNSECURED CREDITORS' COMMITTEE, AND THE ASBESTOS COMMITTEE; CONTINUED RETENTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE**

On the Effective Date, the Asbestos Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and that committee shall be deemed dissolved.

The Unsecured Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and that committee shall be deemed dissolved on the first date on which the Reorganized Debtors shall have made distributions on account of Class 8 Claims in the aggregate amount of one million dollars ($1,000,000) excluding post-petition interest (the "UCC Dissolution Date").

Notwithstanding the foregoing, if the Effective Date or the UCC Dissolution Date, as applicable, occurs prior to the entry of a Final Order with respect to final fee applications of Professionals retained by order of the Bankruptcy Court during the Chapter 11 Cases, the Unsecured Creditors' Committee and the Asbestos Committee may, at their option, continue to serve until a Final Order is entered with respect to such proceedings.

The FCR shall continue to serve through the termination of the GST Asbestos Trust in order to perform the functions required by the GST Asbestos Trust Agreement. Upon termination of the GST Asbestos Trust, the FCR's employment shall be deemed terminated and the FCR shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases.

All reasonable and necessary post-Effective Date fees and expenses of the Professionals retained by the Unsecured Creditors' Committee shall be paid by the Reorganized Debtors. If any dispute regarding the payment of such fees and expenses arises, the parties shall attempt to resolve such dispute in good faith. If they fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

**11.6    TITLE TO ASSETS**

Upon the transfer of the GST Contribution and Parent Contribution to the GST Asbestos Trust, each such transfer shall be vested in the GST Asbestos Trust free and clear of all Claims, Equity Interests, encumbrances, and other interests of any Entity. Except as otherwise provided in this Plan and in accordance with Bankruptcy Code § 1123(b)(3), on the Effective Date, title to all of the Debtors' assets and properties and interests in property, including the Retained Causes of Action and Unknown Causes of Action, shall vest in the Reorganized Debtors free and clear of all Claims, Equity Interests, encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.

## 11.7   NOTICES

Any notices, statements, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be:  (i) in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent, (b) if deposited with the United States Postal Service (but only when actually received), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, or (c) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid) (but only when actually received) and (ii) addressed to the appropriate Entity or Entities to whom such notice, statement, request or demand is directed (and, if required, its counsel), at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate from time to time by written notice to all other Entities listed below in accordance with this Section 11.7):

| If to the Debtors: | GARLOCK SEALING TECHNOLOGIES LLC<br>5605 Carnegie Boulevard, Suite 500<br>Charlotte, NC 28209<br>Telephone: (704) 731-1500<br>Attn: Daniel P. Grgurich |
|---|---|
| With a copy to: | RAYBURN COOPER & DURHAM, P.A.<br>1200 Carillion, 227 West Trade Street<br>Charlotte, NC  28202<br>Telephone: (704) 334-0891<br>Attn: John R. Miller, Jr.<br><br>and<br><br>ROBINSON, BRADSHAW & HINSON, P.A.<br>101 North Tryon Street, Suite 1900<br>Charlotte, NC  28246<br>Telephone:  (704) 377-2536<br>Attn: Garland S. Cassada |
| If to the Asbestos Committee: | CAPLIN & DRYSDALE, CHARTERED<br>One Thomas Circle N.W., Suite 1100<br>Washington, DC 20005<br>Telephone: (202) 862-5000<br>Attn: Trevor W. Swett |

| **If to the Future Claimants' Representative:** | GRIER FURR & CRISP, PA<br>101 North Tryon Street, Suite 1240<br>Charlotte, NC 28246<br>Telephone: (704) 375-3720<br>Attn: Joseph W. Grier, III |
|---|---|
| **With a copy to:** | ORRICK HERRINGTON & SUTCLIFF, LLP<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, DC 20005<br>Telephone: (202) 339-8400<br>Attn: Jonathan C. Guy |
| **If to the Unsecured Creditors' Committee:** | FSB FISHERBROYLES, LLP<br>6000 Fairview Road, Suite 1200<br>Charlotte, NC 28210<br>Telephone: (704) 464-6954<br>Attn: Deborah L. Fletcher |

### 11.8    HEADINGS

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

### 11.9    GOVERNING LAW

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

### 11.10    FILING OF ADDITIONAL DOCUMENTS

On or before the Effective Date, the Debtors, the Asbestos Committee, the Unsecured Creditors' Committee, and the Future Claimants' Representative shall File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 11.11    COMPLIANCE WITH TAX REQUIREMENTS

In connection with this Plan, the Debtors, the Reorganized Debtors, and the GST Asbestos Trust will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder or under any Plan Document shall be subject to such withholding and reporting requirements, if any.

Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan, or any other Plan Document, will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental entity, including income tax and other obligations, on account of that Distribution.

### 11.12   EXEMPTION FROM TRANSFER TAXES

Pursuant to Bankruptcy Code § 1146(c), the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in Bankruptcy Code § 1146(c).

### 11.13   FURTHER ASSURANCES

The Debtors, the Reorganized Debtors, the Non-Debtor Affiliates, the Asbestos Insurance Companies, the GST Asbestos Trust, and all Holders of Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred in connection therewith.

### 11.14   FURTHER AUTHORIZATIONS

The Debtors, and, after the Effective Date, the Reorganized Debtors or the GST Asbestos Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan, with each such Entity to bear its own costs in connection therewith.

Respectfully submitted,

**GARLOCK SEALING TECHNOLOGIES LLC**

By: _Daniel P. Grgurich_

Name: Daniel P. Grgurich

Title: Chief Restructuring Officer

**GARRISON LITIGATION MANAGEMENT GROUP, LTD.**

By: _____

Name: Paul L. Grant

Title: President

**THE ANCHOR PACKING COMPANY**

By: _____

Name: Paul L. Grant

Title: President

*[Signature Page to Debtors' Joint Plan of Reorganization]*

Respectfully submitted,

**GARLOCK SEALING TECHNOLOGIES LLC**

By: _____
Name: Daniel P. Grgurich
Title:   Chief Restructuring Officer

**GARRISON LITIGATION MANAGEMENT GROUP, LTD.**

By: _____
Name: Paul L. Grant
Title:   President

**THE ANCHOR PACKING COMPANY**

By: _____
Name: Paul L. Grant
Title:   President

[Signature Page to Debtors' Joint Plan of Reorganization]