FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 13 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 10-31607 |
| **GARLOCK SEALING TECHNOLOGIES, LLC., et al.,** | ) |
| **Debtors.**[1] | ) Chapter 11 |

**ORDER FOR ESTIMATION OF MESOTHELIOMA CLAIMS**

This matter is before the court on the debtors' "Motion For Estimation Of Asbestos Claims Under Section 502(c) And For Entry Of Case Management Order For Estimation Of Mesothelioma Claims" together with the objections of the Official Committee of

---

[1] The debtors include Garlock Sealing Technologies, LLC, Garrison Litigation Management Group, Ltd. and The Anchor Packing Company.

Asbestos Personal Injury Claimants and the Future Asbestos Claimants' Representative.[2]

The court also requested and the parties briefed the issue of the scope and purpose of the estimation proceeding. By this Order, the court has concluded (1) to order an estimation proceeding; (2) to estimate the total amount of allowed mesothelioma claims in order to determine plan feasibility; (3) to consider properly supported evidence based upon the "settlement" approach and the "legal liability" approach; (4) not to require filing of claims or establish a bar date at this time; and (5) to set a hearing for the estimation proceeding in December 2012.

**Background**

1. Garlock is subject to roughly 5,000 mesothelioma claims that were pending in state courts on the date it filed this Chapter 11 case. It is also potentially subject to many more similar claims in the future.

2. Garlock has proposed a Plan of Reorganization and seeks an estimate of aggregate asbestos claims based on mesothelioma in order to determine the feasibility of its Plan. The ACC and FCR have announced their intention to file a competing plan, and estimation would be necessary for

---

[2] This Order will refer to the parties as "Garlock," "ACC," "FCR" and the ACC and FCR together as "claimants."

2

consideration of it when appropriate. Further, the ACC and FCR have suggested that estimation would demonstrate that Garlock is insolvent.

**Estimation**

3. All parties agree that estimation is necessary. They disagree on the authority to conduct the estimation, its purpose and the method for determining the estimate. The court agrees that an estimation proceeding is necessary and will grant Garlock's motion in that regard.

**Authority and Purpose**

4. There appear to be a number of sources of authority for estimation. Foremost among them is section 502(c) of the Bankruptcy Code, which Garlock contends is the only true authority. It provides that:

> There shall be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case; ....

11 U.S.C. § 502(c).

5. That provision has not limited courts from using estimation in other contexts, such as post-petition administrative claims, In re Dennis Ponte, Inc., 61 B.R. 296 (B.A.P. 9th Cir. 1986); In re Adelphia Bus. Solutions, Inc., 296 B.R. 656 (Bankr. S.D.N.Y. 2003); In re MacDonald, 128 B.R. 161 (Bankr. W.D. Tex. 1991); post-petition claims, In re Pizza of

3

Hawaii, Inc., 761 F.2d 1374 (9th Cir. 1985); voting purposes, Bittner v. Borne Chem. Co., 691 F.2d 134 (3d Cir. 1982); and for feasibility only, In re Nova Real Estate Inv. Trust, 23 B.R. 62 (Bankr. E.D. Va. 1982).

6. Several courts have estimated asbestos liability for purposes other than allowance. In re Armstrong World Indus., Inc., 348 B.R. 111 (D. Del. 2006); Owens Corning v. Credit Suisse First Boston, 322 B.R. 719 (D. Del. 2005); In re Federal-Mogul Global, Inc., 330 B.R. 133 (D. Del. 2005). In each of these cases the debtor and personal injury claimants had reached an agreement on the asbestos liability and the dispute was with another creditor.

7. Section 105(a) authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Using estimation to further the provisions of sections 1129 and 524(g) appears consistent with that broad authority.

8. While section 502(c) requires that certain claims shall be estimated, it does not purport to be exclusive or to limit the circumstances in which claims may be estimated. A common attribute of all the "authorities" cited above is that the primary concern was the practical necessity of solving a valuation problem through estimation – without a great deal of concern over the source of the authority for the exercise. So,

4

it appears that estimation has been deemed appropriate "by main strength and awkwardness" in any circumstance where it promotes and expedites the purposes of the Code.

9. All that having been said, it appears proper here to estimate Garlock's mesothelioma asbestos liability for allowance purposes pursuant to section 502(c).

10. The court anticipates hearing appropriate evidence for the purpose of making a reliable and reasonable estimate of the aggregate amount of money that Garlock will require to satisfy present and future mesothelioma claims. Whether those claims are satisfied through Garlock's Plan or that anticipated by the ACC and FCR; whether they are satisfied through litigation, settlement or a 524(g) Trust; or whether some as yet unanticipated process is necessary – in all those events, an estimate of the aggregate liability is necessary in order to determine the feasibility of whatever plan emerges. It may be useful for other purposes as well.

11. The court does not anticipate considering or determining any individual claims or any group of claims (other than the entire group). The court does not expect to "allow" any individual or group of claims. Rather, it proposes to estimate the aggregate amount necessary to satisfy present and future claims that may be allowed at some later point in the case.

12. The ACC suggested in its briefs that estimation was necessary to determine whether the debtors are insolvent. The debtors' estimated mesothelioma liability may become the subtrahend of such a calculation at some point. But, for the purposes of this estimation proceeding, the court will not address the solvency issue.

**Method of Estimation**

13. The goal of an estimation hearing is to arrive at a reasonable and reliable estimate of the amount of Garlock's liability for present and future mesothelioma claims. The parties differ on how that should be accomplished.

14. The ACC and FCR propose to use a "settlement" approach to estimation by way of statistical extrapolation from Garlock's history of resolution of mesothelioma claims. Fundamental to this approach is an appraisal of what would have been a fair resolution of claims in the absence of bankruptcy. Owens Corning, 322 B.R. at 722; Federal-Mogul, 330 B.R. at 158. The focus of this approach is on Garlock's "historical claims-handling practices and expert testimony on trends in the asbestos tort system." Federal-Mogul, 330 B.R. at 155-56.

15. This methodology has been used by a number of courts in estimation of asbestos liability: In re Armstrong World Indus., Inc., 348 B.R. 111 (D. Del. 2006); Owens Corning v. Credit Suisse Boston, 322 B.R. 719 (D. Del. 2005); In re

6

Federal-Mogul, 330 B.R. 133 (D. Del. 2005); In re Eagle-Picher Indus., Inc., 189 B.R. 681 (Bankr. S.D. Ohio 1995). In each of these cases, however, the estimation was not contested by the debtor. Rather, the debtor and claimants had agreed on the estimate, and it was being challenged by other creditors.

16. Garlock contends that the settlement approach overstates its liability because it (a) includes settlements (even of invalid claims) motivated by defense costs; and (b) was inflated by the exit from the tort system of a number of large asbestos defendants.

17. Garlock proposes to offer instead a "legal liability" approach to estimation that focuses on the merits of claims. It forecasts an estimation calculated by projecting the number of claimants based upon occupation groups and predicting the likelihood of recovery for separate groups to reach an aggregate damage amount, and then reducing that by other sources of recovery. Cases supporting a merits-based approach include: In re USG Corp., 290 B.R. 223 (D. Del. 2003); In re W. R. Grace & Co., 355 B.R. 462 (Bankr. D. Del. 2006); In re G-I Holdings, 323 B.R. 583 (Bankr. D.N.J. 2005).

18. The claimants assert, inter alia, that Garlock's approach would involve a "virtual" trial of individual personal injury claims in violation of the claimants' constitutional

7

rights; that it would involve an inappropriate "science" determination; and that it is not supported by case law.

19. The court has concluded that the two approaches to estimation are not matters of law, but rather matters of evidence. The court will hear such evidence as is appropriate relating to each approach and will make its decision based upon which is the more persuasive.

**Rule 408**

20. Garlock has asserted that Rule 408 of the Federal Rules of Evidence prohibits the use of its historical settlement data for estimation. The court disagrees and will allow admission into evidence of such data and evidence properly based on it.

21. Rule 408 provides as follows:

> (a) **Prohibited Uses.** Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) Furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) Conduct or statement made during compromise negotiations about the claim ....

Fed. R. Evid. 408.

22. The claimants do not propose to use Garlock's settlement data to "prove or disprove the validity or amount of a disputed claim." They propose to use the data to project the aggregate amount of different sets of claims. So, by its terms, Rule 408 does not apply in this circumstance.

23. Further, in the context of a mass-tort case, the court in In re A.H. Robins Co. stated that Rule 408 applied to individual lawsuits between particular parties. 197 B.R. 568, 572 (E.D. Va. 1994). And, the Fourth Circuit has held that Rule 408 does not prohibit the use of a prior settlement when the party "does not seek to show the validity or invalidity of the compromised claim." Wyatt v. Sec. Inn Food & Beverage, Inc., 819 F.2d 69, 71 (4th Cir. 1987).

24. In the context of Chapter 11 asbestos cases, many courts have admitted evidence of the debtor's settlement history of resolving past claims for the purpose of estimating liability for unresolved pending and future claims. See Armstrong, 348 B.R. at 123-24; Owens Corning, 322 B.R. at 721-25; In re Babcock & Wilcox Co., 274 B.R. 230, 256-57 (Bankr. E.D. La. 2002); Federal-Mogul, 330 B.R. at 157; Eagle-Picher, 189 B.R. at 686. In fact, the court in Babcock & Wilcox rejected the argument made here by Garlock on the basis that Rule 408 applied only when evidence of settlement was offered respecting the claim

9

that was the subject of the compromise and not when it is part of another dispute. 274 B.R. at 256.

25. Consequently, the court will permit the use of Garlock's settlement history data in the estimation proceeding.

### Bar Date

26. Garlock has sought the establishment of a bar date for the filing of claims (or at least for the filing of questionnaire responses). Because the estimation envisioned by the court does not involve a determination of any individual claim, the court does not believe that a bar date is necessary at this point in the case – for claims or for questionnaire responses. Consequently, the court declines to establish a bar date.

### Hearing Schedule

27. The court will set the hearing to determine estimation of pending and future mesothelioma claims to begin December 3, 2012, and conclude December 14, 2012. The court will not attempt to dictate how each party presents its case, but will give each side five days to do it. Additional time will be granted only if necessary and if the first allotment has been efficiently utilized.

28. As movant, Garlock is entitled to proceed first on December 3 and conclude by December 7. The ACC and FCR will begin on December 10 and conclude by December 14.

29. The court has asked the parties to discuss intermediate deadlines that may need to be established. Once that is resolved, the court will issue a formal scheduling order.

It is, therefore, **ORDERED** that:

1. Garlock's Motion for Estimation is granted to the extent set forth above;

2. Garlock's Motion for Case Management Order and bar date are denied; and

3. A hearing for estimation of the aggregate amount of mesothelioma claims is set to begin December 3, 2012.

**This Order has been signed electronically.**     **United States Bankruptcy Court**
**The Judge's signature and Court's seal**
**appear at the top of the Order.**