**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

|  |  |
|---|---|
| In Re: ) | Chapter 11 |
| ) |  |
| GARLOCK SEALING TECHNOLOGIES ) | Case No. 10-31607 |
| LLC, et al.[1] ) |  |
| ) |  |
| Debtors. ) | Jointly Administered |
| ) |  |

**REPLY IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS TO RETAIN AND
EMPLOY MOTLEY RICE LLC AND WATERS & KRAUS LLP
AS SPECIAL LITIGATION COUNSEL**

The Official Committee of Asbestos Personal Injury Claimants (the "**Committee**" or "**ACC**"), by and through the undersigned, hereby submits this Reply brief in support of the application (the "**Application**") for entry of an order authorizing the retention and employment of Motley Rice LLC ("**Motley Rice**") and Waters & Kraus LLP ("**Waters & Kraus**") as special litigation counsel ("**Special Litigation Counsel**") [Dkt. No. 2294], and responds to the Objection (the "**Objection**") thereto filed by Debtors yesterday [Dkt. No. 2329]. In support of the Application, the ACC respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Debtors do not deny that the Committee's description of the differing approaches to estimation in this case as set forth in the Application is accurate. As the Application demonstrates in detail, the estimation approach taken by Debtors envisions attacking the underlying asbestos claims for supposed lack of product exposure evidence, as well as arguing that claimants who do presently have such evidence will never be able to show that Debtors'

---

[1] The Debtors include Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd. and The Anchor Packing Company.

695343

products account for sufficient emissions of dangerous asbestos fibers to make those products a substantial causative factor contributing to the claimants' injuries. Application at 3-5. In large measures, Debtors present these issues as ones of "science."

2. The Debtors thus envision turning the estimation proceeding into a "virtual" trial of the underlying asbestos claims featuring a long parade of expert witnesses versed in myriad technical and scientific fields. In this context, they cannot legitimately complain of the Committee's assembling certain asbestos trial lawyers, who have extensive experience litigating such matters in personal injury lawsuits in nonbankruptcy forums, to answer and refute Debtors' positions on scientific and technical issues.[2] Indeed, Debtors have sought to maximize the effectiveness and efficiency of their own efforts for the estimation trial by retaining as special counsel the Schachter Harris firm and its asbestos trial lawyers, while also retaining Debtors' entire asbestos defense network of nearly sixty law firms around the country. Application at 6.

3. The Application satisfies the legal standards for retention of special counsel, and should be granted, as demonstrated by Debtors' inability to distinguish the Application from their own prior similar applications for asbestos trial counsel, as well as their failure to rebut that the Application and the relief sought therein constitute an appropriate response to Debtors' approach to estimation.

---

[2]     As the Committee has noted previously, Debtors' approach to estimation here is largely unprecedented, and therefore its attempt to point to other asbestos cases where asbestos trial firms were not retained by committees is irrelevant. In no other case that we are aware of did the debtor engage special counsel to press "science" issues in estimating its asbestos liabilities.

- 2 -

**ARGUMENT**

I. **The Retention Application Complies with Bankruptcy Rule 2014 and No Actual Conflict of Interest Has Been Shown by Debtors or is Plausible**

4. Debtors assert that Bankruptcy Rule 2014 requires both Motley Rice and Waters & Kraus to list all of their clients who have asserted a claim, or who may assert a claim, against Debtors, and that such disclosure could reveal conflicts of interest. Objection at 3-4, 5-8.[3] Debtors' unsupported assertions are incorrect.

5. In their retention declarations, Motley Rice and Waters & Kraus state that they represent asbestos claimants against the Debtors and expect to represent more such persons in the future. In a mass tort bankruptcy, this satisfies Rule 2014 for the purposes of an application for the claimants' committee to retain special counsel. To require more would be superfluous. While, in a footnote, Debtors appear to suggest that proposed Special Litigation Counsel must provide their retention agreements under this Court's Revised Order Requiring Filing of 2019 Statements Pursuant to Fed. R. Bankr. P. 2019 (Mar. 16, 2012) [Dkt. No. 2037] ("**Revised Rule 2019 Order**"), Debtors fail to demonstrate that the Revised Rule 2019 Order even applies to those firms. It does not. That Order reflects and incorporates current Rule 2019, which makes clear that mere passive appearance in a case does not trigger any obligation to file or update Rule 2019 submissions. *See* Revised Rule 2019 Order at 2 (noting that the requirement to file or update a Rule 2019 Statement is limited to those "required to do so by Fed. R. Bankr. P. 2019

---

[3] And Debtors make clear that they are already fully aware of the pre-petition claims filed by Motley Rice and Waters & Kraus on behalf of their asbestos clients from Debtors' own claims database, Objection at 4 n.2, making the purely tactical nature of their Objection to the Application readily apparent. To the extent Debtors claim entitlement to the identity of subsequent clients of those firms, they have no such entitlement, and the informational vacuum created by the automatic stay, which prevents discovery from Debtors and the work-up of such potential additional claims, makes it impossible to conclusively determine which of those firms' additional clients have Garlock exposure at this stage in any event.

('**Rule 2019**') (as amended effective December 1, 2011),[4]" and that anyone "that filed a statement pursuant to the previous 2019 order need not file any statement or supplement except as required by Rule 2019"). *Id.*

6.     Rule 2019 now limits the filing requirement for an "entity" that "represents[] multiple creditors" by defining "represent" as "to take a position before the Court." Rule 2019(a)(2).

> The advisory committee also added a definition of 'represent' or 'represents' in subdivision (a)(2) that limits the application of the rule to groups, committees, and entities taking a position before the court or soliciting votes on a plan. This revision excludes from the rule those whose involvement in a case is merely passive. The revision addresses concerns expressed during the public comment period that the rule's disclosure requirements should not be triggered when, for example, a law firm represents more than one client with respect to a chapter 11 case but does not appear in court to seek or oppose relief on behalf of more than one of those clients.

Communication from the Chief Justice, Amendments to the Federal Rules of Bankruptcy Procedure, 2011 US ORDER 0018 (C.O. 0018) (U.S. Apr. 26, 2011). Neither Motley Rice nor Waters & Kraus has participated in this bankruptcy in any way that triggers Rule 2019, and therefore they have no current obligation to file or update Rule 2019 Statements. Debtors provide no analysis to the contrary. Rule 2019 simply does not apply.

7.     To the extent that Debtors mean to suggest that Special Litigation Counsel's proposed retention by the *Committee* triggers any such obligation under Rule 2019, the express language of the Rule forecloses the argument, as Rule 2019(c)(3), like the other disclosure subsections of Rule 2019, expressly applies only to representation of an entity or committee "other than a committee appointed under § 1102 or 1114 of the Code." The ACC, of course, is a statutory committee appointed under § 1102.

---

[4]     As used hereinafter, all references to Rule 2019 are to the amended rule now in force.

8.    Nor have Debtors suggested a plausible conflict of interest. The fact that certain asbestos claimants have different disease types and levels of exposure does not mean that they do not have identical interests as to the limited purpose of the estimation proceeding and the related retention of Special Litigation Counsel. Indeed, the estimation proceeding will not finally determine any individual asbestos claimant's right to relief, only estimate the Debtors' liabilities, an issue as to which the interests of all asbestos claimants are fully allied. The firms' contingency fee arrangements are irrelevant for the same reason.

9.    In Debtors' Application to Employ Rayburn Cooper & Durham, P.A. as Bankruptcy for Debtors and Debtors-in-Possession as of the Petition Date (June 18, 2010) [Dkt. No. 122] ("**Rayburn Application**"), Debtors stated that they "have advised RC&D that they do not believe that their [Debtors'] relationship to each other poses any conflict of interest because of the general unity of interests among the Debtors." Rayburn Application at 5-6. The same "unity of interests" logic applies to demonstrate that Special Litigation Counsel likewise have no conceivable conflict of interest, as all asbestos claimants have a unity of interest in resisting Debtors' approach to estimation, which is designed to limit their financial responsibility to *all* asbestos claimants.

10.    Debtors cite Section 1103(b) as requiring that Special Litigation Counsel may not "represent any other entity having an adverse interest in connection with the case," Objection at 5, but they omit the next sentence of that section, which states that "[r]epresentation of one or more creditors *of the same class* as represented by the committee shall *not* per se constitute the representation of an adverse interest."). 11 U.S.C. § 1103(b) (emphasis added). In that section,

> Congress implicitly determined that the inherent tension between a committee and one of its creditors, standing alone, was immaterial and any conflict too theoretical to warrant being classified as an adverse interest. That is, merely the remote potential for dispute, strife, discord, or difference between a committee

- 5 -

> and one of its creditors does not give rise to any conflict of interest or appearance of impropriety that would bar an attorney from representing both parties.

*In re Nat'l Liquidators, Inc.*, 182 B.R. 186, 192 (S.D. Ohio 1995).

11. Thus, case law makes clear that counsel for a creditors' committee may also represent members of that committee's constituency, including members of the committee itself. *See, e.g.*, *In re Walnut Equip. Leasing Co.*, 213 B.R. 285, 290 (Bankr. E.D. Pa. 1997) (approving the appointment of creditors' committee counsel who also represented a creditor that was the chair of the committee); *In re Nat'l Century Fin. Enters., Inc.*, 298 B.R. 112, 118 (Bankr. S.D. Ohio 2003) (finding firm not disqualified from representing committee although it concurrently represented two members of the committee). Thus Debtors are forced to rely on a case where proposed creditors' committee counsel sought to simultaneously represent a committee of unsecured creditors and also represent administrative priority claimants hostile to the interests of such general unsecured creditors, which is completely inapposite. *See* Objection at 6, citing *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 655, 663 (Bankr. E.D. Pa. 1987).

12. Moreover, Special Litigation Counsel are being retained solely as special counsel as under Section 327(e), not as general counsel for the Committee, which limits and narrows the circumstances that could constitute a potential conflict of interest. Courts interpret § 1103(b) to mean that

> the attorney may not represent an adverse interest with respect to the particular services to be performed for the committee by that attorney. Thus, circumstances that might operate to prohibit a firm from serving as general counsel to the committee would not necessarily disqualify the firm from performing a more limited, circumscribed function not entailing a conflict of interest.

*In re Tech. for Energy Corp.*, 53 B.R. 32, 34 (Bankr. E.D. Tenn. 1985) (permitting the retention of a firm representing two stockholders of the debtor as special counsel to a creditors' committee).

13. The Committee, which has the statutory authority and responsibility to protect the interests of *all* asbestos claimants, has selected Special Litigation Counsel to represent it as to the technical issues set forth in the Application. No allegation that such representation is against the interests of asbestos claimants is credible coming from Debtors, who are *adverse* and manifestly hostile to all such asbestos claimants. Motions to disqualify an opposing party's counsel "are frequently viewed with a certain amount of skepticism, as they can be utilized for solely tactical reasons." *In re Best Craft General Contractor and Design Cabinet, Inc.*, 239 B.R. 462, 471 (Bankr. E.D.N.Y. 1999). *See also In re Burghoff*, No. 05-10947, 2006 WL 4013729, at *9 (Bankr. S.D. Iowa Dec. 11, 2006) (same). Likewise, Debtors' attempt to argue that the proposed retention sought by their litigation adversaries would somehow be unfair to those same adversaries is a transparent tactical ploy.

## II.     The Objection Fails to Support any Concern Regarding "Waste"

14. Debtors argue that the Committee has not demonstrated that "the firms they seek to retain as special counsel do not have potential, disabling conflicts of interest due to their representation of a multitude of asbestos claimants to whom they owe a separate, potentially conflicting duty of vigorous advocacy." Objection at 8. Apart from Debtors' inability to demonstrate any potential, much less actual, conflict of interest, it bears emphasis that their stated position, if credited, would prevent the Committee from retaining *any* experienced plaintiffs' asbestos firm to participate in the estimation proceeding, as all such firms represent multiple asbestos claimants. Debtors' own Application for Entry of Order Authorizing Retention and Employment of Schachter Harris LLP as Special Asbestos Defense Counsel (June 25, 2010) [Dkt. No. 158] (the "**Schachter Harris Application**"), which this Court approved, demonstrates the unfairness of such a result.

15. The Schachter Harris Application stated as its basis that "Schachter Harris has *tried substantial cases involving Asbestos Claims* against the Debtors, and represented the Debtors in the resolution of hundreds of other cases," and represented to this Court that Schachter Harris's resulting "knowledge and experience is essential to the Debtors' position in the anticipated proceedings in the Cases concerning Asbestos Claims." Schachter Harris Application at 3 (emphasis added). Debtors went on to state that "[t]he Debtors believe that the services Schachter will provide, particularly those arising from its unique *experience as trial counsel for the Debtors concerning Asbestos Claims*, will be complementary rather than duplicative of the services to be performed by other counsel retained by the Debtors," Schachter Harris Application at 4 (emphasis added), and that failure to retain Schachter Harris would prejudice the estates because of "the time and expense required for substitute counsel to gain knowledge commensurate with that held by Schachter Harris concerning the legal and factual defenses of Asbestos Claims . . . ." Schachter Harris Application at 6.

16. Debtors took the position before this Court that the way they intended to litigate the estimation proceeding required the retention of experienced asbestos trial counsel, and that retaining Schachter Harris would be the most efficient way forward, without in any way impugning the capabilities of the many other firms it had already retained, including the Robinson, Bradshaw and Rayburn, Cooper firms.

17. For the same reasons, the Committee should be entitled to retain as Special Litigation Counsel its chosen firms with substantial plaintiffs' asbestos trial experience while avoiding duplication of effort, as Debtors represented they would do in retaining Schachter Harris. *See* Schachter Harris Application at 4. The Committee selected the lawyers it viewed as possessing the relevant expertise to handle the technical issues, and the fact that those lawyers

selected are from different firms is of no moment as long as the respective lawyers are efficient, as they will be.  It also ill behooves Debtors, who have retained in excess of sixty asbestos defense firms to assist them, to complain of the Committee's selection of two.

18. The Committee has set forth the discrete role of Special Litigation Counsel in exacting detail in the Application, and done so much more thoroughly than the Debtors did in their equivalent Schachter Harris Application.  *Compare* Application at 1-6 *with* Schachter Harris Application at 3-4.  The Debtors concede the clarity with which the Committee has defined the role of Special Litigation Counsel in relation to that of its previously retained counsel.

## CONCLUSION

WHEREFORE, the ACC respectfully requests that the Court grant the Application, deny the Objection, and grant it such other and further relief as the Court deems just and equitable.

Dated:  June 26, 2012                                   **CAPLIN & DRYSDALE, CHARTERED**

By:  */s/ Trevor W. Swett III*
Trevor W. Swett III
(tswett@capdale.com)
Kevin C. Maclay
(kmaclay@capdale.com)
One Thomas Circle, N.W.
Washington, DC  20005
Telephone:  (202) 862-5000

Elihu Inselbuch
(einselbuch@capdale.com)
375 Park Avenue, 35th Floor
New York, NY  10152-3500

**MOON WRIGHT & HOUSTON, PLLC**

Travis W. Moon
(tmoon@mwhattorneys.com)
227 West Trade Street, Suite 1800
Charlotte, NC  28202
Telephone: (704) 944-6560

*Attorneys for the Official Committee of Asbestos Personal Injury Claimants*