IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>Debtors.[1] | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |

**DEBTORS' MOTION TO EXCLUDE OR STRIKE
COMMITTEE MEDICAL EXPERT WITNESS OPINIONS**

Debtors move to exclude the testimony of Dr. Welch, Dr. Brody, and Dr. Brodkin ("Committee medical experts"). As demonstrated in their reports and depositions, their opinions fail to pass muster under Rule 702, *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and case law following *Daubert*. The grounds for this motion are the following:

1.  The Committee, as sponsor of these experts, cannot meet its burden to prove by a preponderance of the evidence that these witnesses are qualified on certain issues, and that their testimony satisfies the "sufficient facts," "helpfulness," and reliability requirements of Rule 702.

2.  The Committee medical experts purposely ignore the extensive evidence about likely claimants that was gathered through the PIQs and discovery in this case.

3.  The Committee medical experts employ methods specifically rejected by case law, including the following:

    - The key issue in this case is specific causation: was the alleged exposure typical to any expected claimants sufficient to be a substantial cause in the context of their total lifetime exposure to asbestos. *Moeller v. Garlock*

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC ("Garlock"); Garrison Litigation Management Group, Ltd. ("Garrison"); and The Anchor Packing Company (hereinafter, collectively, "Debtors"). The Official Committee of Asbestos Personal Injury Creditors is referred to as the "Committee." The Future Asbestos Claimants Representative is referred to as the "FCR."

1

*Sealing Techs.,* LLC, 660 F.3d 950, 955 (6th Cir. 2011) (no liability if contact with Garlock products was like a "bucket of water into the ocean."). Their case-specific opinions fail to address other exposures and cumulative lifetime exposure from all sources.

- Committee experts' assessing the contribution of Garlock's chrysotile products, Committee medical experts assume the "risk from chrysotile is similar to the risk from amosite." (Welch Report, p. 38). This is a scientifically insupportable opinion. Even Committee expert Dr. Brody testified in a 2006 jury trial that it was his opinion amosite fibers are 500 times more potent for causing mesothelioma on a fiber per fiber basis than chrysotile. (Brody Dep., pp. 73-77).

- Committee medical experts support their opinions with what science calls "case reports" and other kinds of studies that lack controls and thus cannot test a causal hypothesis. Yet the law is clear: "Case reports . . . fail to test a causal hypothesis and therefore cannot support a causation opinion . . . courts have found case reports to be merely anecdotal accounts of observations in particular individuals which are not controlled tests, frequently lack analyses and often make little attempt to screen out alternative causes for a patient's condition." *Dellinger v. Pfizer, Inc.*, 2006 U.S. Dist. LEXIS 96355, *29-30 (W.D.N.C. July 19, 2006).

- Committee medical experts rely heavily on public health agency statements and no-threshold extrapolation methods employed in risk assessment. Yet, "scientific validity for one purpose is not necessarily scientific validity for other unrelated purposes." *Daubert*, 509 U.S. at 591. Accordingly, the law is clear that these sources cannot support causality analysis, and opinions from experts who rely on public health agency risk analysis approach, rather than a courtroom causation analysis. *See Dellinger,* 2006 U.S. Dist. LEXIS 96355, *29-31 ("Regulatory reports fail to test a causal hypothesis and therefore cannot support a causation opinion.").

- Committee medical experts rest their causation opinions on a misapplication of an epidemiology tool called the Bradford Hill criteria, which is used to assess whether a statistically significant association demonstrates causality. Committee medical experts admit that they apply Bradford Hill criteria without first having epidemiological studies demonstrating a statistically significant associate. (Welch Dep. pp. 53-54). This misuse of Bradford Hill criteria is unscientific. Federal Judicial Center, Reference Manual on

2

      Scientific Evidence, 599, n.141 (3d. ed. 2011) ("Federal Judicial Center Reference Manual") and contrary to case law. *Dunn v. Sandoz Pharms.*, 275 F. Supp. 2d 672, 678 (M.D.N.C. 2003) (if expert purports to use epidemiology, she cannot employ Bradford Hill criteria without first establishing a statistically significant association).

- Committee medical experts rely heavily on animal and test tube studies. Even if their reliance were not characterized by the misleading and selective presentation of the results of these studies, both the law and science is clear that such studies cannot establish causality, especially as in this case where even the Committee medical experts have to admit the analytic gap that prevents extrapolation of these studies to humans. *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

The Committee medical experts' reliance on these and other impermissible methods establishes that their reports lack the "indicia" of reliability required to pass muster under *Daubert*.

    4.    The Committee medical experts' reports are riddled with inaccurate and misleading statements, misstatements and misapplications of scientific methodology, and subjective and insupportable opinions that lack the indicia of scientific rigor demanded by *Daubert* and its progeny.

    5.    The Committee medical experts display bias and lack of candor that goes far beyond merely impacting the weight to be given their opinions. *Daubert* requires exclusion of experts who have made up their mind and are merely marshaling evidence to support their views, rather than conducting an objective scientific evaluation and disclosing evidence both favorable to and adverse to the opinions they have reached. The history of lack of candor is particularly egregious for Dr. Welch, a veteran of asbestos screenings, who provided deceptive and misleading testimony most recently in the Bondex bankruptcy. When challenged about that testimony during her deposition in this case, she justified her lack of candor by claiming she was simply not asked the right questions in Bondex (a case in which a vigorous liability defense was not asserted).

6. For all of these reasons these experts should be excluded as witnesses.

7. Alternatively, the following opinions, if proffered, should be should be excluded:

- "Specific causation" opinions for any group of likely claimants. The key issue in this case is whether, for any likely claimants, asbestos from Garlock's products was a substantial cause in the context of total lifetime exposure to all products or whether it was a mere "bucket of water into the ocean." *Moeller v. Garlock Sealing Techs., LLC*, 660 F.3d 950, 955 (6th Cir. 2011). No Committee medical expert has purported to analyze the totality of exposure for any individual or any group of likely claimants, and no such opinion has been disclosed.

- The insupportable opinion that in some hypothetical case Garlock gasket or packing exposure is a substantial cause of mesothelioma. To the extent these witnesses have formulated specific causation opinions based on hypothetical questions, they have not disclosed either the questions or the answers in their reports. Moreover, no reliable methodology based on reliable data supports any such opinion.

- The insupportable opinion that use of end products in which commercial chrysotile is the only asbestos type used in manufacturing the product causes mesothelioma in humans. No reliable data assessed with reliable methodology appropriate for litigation causality determinations supports any such opinion.

- The insupportable "general causation" opinion that "chrysotile fibers" cause mesothelioma in humans in real world exposure. No reliable data assessed with reliable methodology appropriate for litigation causality determinations (as distinguished from public health analysis) supports any such opinion.

    i. The challenge to this opinion is as it relates to "chrysotile fibers," as distinguished from "chrysotile," which is sometimes used imprecisely to include dust in mining situations that in some locations may have high levels of other minerals such as the mesothelioma-causing mineral tremolite.

    ii. The challenge is also specific to litigation opinions on this question, not to opinions or analysis formed pursuant to standards for public health assessments. "Scientific validity for one purpose is not necessarily scientific validity for other unrelated purposes." *Daubert*, 509 U.S. at 591. Nowhere is this truer than in considering the impact of public health statements.

- The insupportable opinion that every exposure to asbestos from products is a substantial cause of mesothelioma. No reliable data assessed with reliable methodology appropriate for litigation causality determinations supports any such opinion.

- The insupportable opinion that levels of alleged amphibole contamination of chrysotile gaskets and packing are high enough to cause mesothelioma. No reliable data assessed with reliable methodology appropriate for litigation causality determinations supports any such opinion.

- The insupportable opinion that a medical hazard from gaskets exists based on the Committee medical experts' assessment of levels of asbestos exposure from gaskets or packing occurring in normal workplace activities. Among other flaws in the foundation for the opinions of Dr. Welch and Dr. Brodkin on these issues is their reliance on data from Dr. Longo that is inadmissible (see Debtors' Motion to Exclude or Strike Committee Industrial Hygiene Expert Witness Opinions and brief in support).

- Testimony that reliable tissue fiber burden studies of tumor or pleural tissue support Committee medical experts' chrysotile causation opinions. They are simply not qualified to assess these studies in a very specialized field for which they lack expertise, and the studies they cite are not a reliable foundation for the conclusions they draw from them.

- Committee medical experts' testimony that chrysotile has similar potency for mesothelioma to amphiboles on a fiber for fiber basis.

- Committee medical experts' theories that attempt to establish specific causation by comparison to background levels of asbestos.

- Committee medical experts' specific causation opinions that fail to use benchmarks tied to the known data where exposure to the substance in question (chrysotile) has been demonstrated in a series of reliable studies to create a statistically significant increased risk of mesothelioma.

- Committee medical experts' specific causation opinions built on data from German, French, or other registry studies of populations known to use amosite or crocidolite products.

5

8. So that the Court possesses a comprehensive record, the reports of the experts challenged are submitted in Appendix A, the reports of Debtors' experts are submitted in Appendix B, deposition transcripts are submitted in Appendix C, and all reference material cited in the experts reports are being submitted electronically in Appendix D.

This 3rd day of July, 2013.

    Respectfully submitted,

    */s/ Raymond P. Harris, Jr.*
    Cary Schachter
    Raymond P. Harris, Jr.

    SCHACHTER HARRIS, LLP
    400 E. Las Colinas Blvd., Suite 220
    Irving, Texas 75039
    Telephone: (214) 999-5700
    Facsimile: (214) 999-5747

    cschachter@schachterharris.com
    rharris@schachterharris.com

    *Special Litigation Counsel to the Debtors Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*

    Garland S. Cassada
    N.C. Bar No. 12352
    Jonathan C. Krisko
    N.C. Bar No. 28625
    Richard C. Worf, Jr.
    N.C. Bar No. 37143
    Robinson Bradshaw & Hinson, P.A.
    101 North Tryon Street, Suite 1900
    Charlotte, North Carolina 28246
    Telephone: (704) 377-2536
    Facsimile: (704) 378-4000

    gcassada@rbh.com
    jkrisko@rbh.com
    rworf@rbh.com

    *Special Corporate and Litigation Counsel to the Debtors Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*