# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-31607 |
| | ) | |
| GARLOCK SEALING TECHNOLOGIES, LLC, *et al.* | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | Jointly Administered |
| | ) | |

### MEMORANDUM IN SUPPORT OF FORD MOTOR COMPANY'S MOTION FOR ACCESS TO RULE 2019 FILINGS AND TO UNSEAL THE EVIDENCE OF "DEMONSTRABLE MISREPRESENTATION"

This Court's January 10, 2014 Order Estimating Aggregate Liability publishing the Court's findings of widespread and demonstrable misconduct by asbestos claimants or their attorneys in litigation against Garlock Sealing Technologies, LLC ("Garlock"). Having reviewed the scant information presently available, it appears that Ford may have been induced into inflated settlements in some of the same cases examined by this court. This Honorable Court having found that "[i]t appears certain that more extensive discovery would show more extensive abuse," Ford must be granted access to the information currently under seal. (Dkt. No. 3296 at 35, ¶ 66.) Indeed, this pattern of misrepresentations may have affected Ford in circumstances not yet ascertainable. (Dkt. No. 3296 at 35, ¶ 66.) For that reason, Ford seeks an order authorizing access both to the Rule 2019 Statements and Exhibits filed on behalf of asbestos claimants by various law firms (Rule 2019 Filings),[1] and to the sealed testimony and exhibits found pertinent to this Court's finding of "widespread" "demonstrable misrepresentation" by asbestos claimants and their attorneys (the Sealed Evidence). (Dkt. No. 3296 at 7, 34-35, ¶¶ 8, 66.)

---

[1] These include all materials, in whatever form, provided the Court in accordance with its October 25, 2010 and March 16, 2012 orders. (Dkt. Nos. 631, 2037.)

# 3845656_2.Docx

## JURISDICTION AND VENUE

1. As Ford seeks access to documents before the Bankruptcy Courts of the United States concerning the administration of a bankruptcy estate,[2] 28 U.S.C. Sections 157(b)(2)(A) and 1334 afford this Court jurisdiction. And venue is properly lodged in this Court. *See* 28 U.S.C. § 1409. Finally, this Court's authority to restrict access to papers filed in this proceeding is statutorily governed by 11 U.S.C. § 107 and Fed. R. Bankr. P. 9018.

## RELEVANT FACTS

2. Ford Motor Company is an automobile manufacturer with its principal place of business in Dearborn, Michigan. Established in 1903, Ford manufactures millions of automobiles for personal and commercial use annually.

3. Although medical and epidemiological research conducted over the past three decades has consistently found no increased risk of asbestos-related disease among professional auto mechanics, Ford has nonetheless found itself named as a defendant in asbestos cases where plaintiffs claimed to have worked with or around chrysotile-containing brake pads.

4. Ford has been a co-defendant with Garlock to claims of asbestos-related injuries on numerous occasions.

5. This Court's January 10 Order demonstrated that no fewer than 15 asbestos claimants, and every one about which the Court permitted full discovery, were not disclosing alternative sources of asbestos exposure, their other asbestos bankruptcy trust claims, and other compensation in order to increase their total recovery and extract larger payouts from solvent defendants such as Garlock and Ford. On information and belief, Ford suspects that by reason of

---

[2] Although the asbestos claimants are exclusively creditors of Garlock, Garrison Litigation Management Group, Ltd., and the Anchor Packing Company are also debtors in these jointly administered case.

these misrepresentations, it and other defendants may have been misled into paying inflated settlements.

6.   The Order Estimating Aggregate Liability specifically referenced, without identifying them, "fifteen plaintiffs represented by five major firms" as having filed and settled cases against Garlock for asbestos exposure, obtaining "large sums," without disclosing to Garlock many, and in some cases any, of their other asbestos exposures. (Dkt. No. 3296 at 31, 34-35, ¶¶ 58, 65-66.) On average, these claimants disclosed to Garlock only two other sources of asbestos exposure and withheld approximately nineteen other sources, all bankruptcy trusts, which they promptly filed claims against post-settlement. (Dkt. No. 3296 at 31, 34, ¶¶ 58(c), 65.)

7.   On information and belief, Ford, like Garlock, resolved a number of those same asbestos claims and did so in reliance upon similar misrepresentations of asbestos exposures and asbestos trust claims. However, the evidence upon which this Court found systematic misrepresentations remains under seal. (Dkt. Nos. 1225, 1390, 1829, 2337, 2338, 2430, 2704, 2807.) The Court's continued seal is preventing Ford access to information it needs to adequately investigate the nature of potential frauds.

8.   The Court's Order also referenced, without further development, "205 additional cases where the plaintiff's discovery responses conflicted with one of the Trust claim processing facilities or balloting in bankruptcy cases," and approximately 80 cases in which asbestos claimants had misrepresented their exposure evidence and "Garlock paid recoveries of $250,000 or more" to settle those claims. (Dkt. No. 3296 at 35, ¶ 66.)

9.   On information and belief, among those cases, and the thousands of asbestos claimants who are listed as creditors of Garlock in the Rule 2019 Statements and Exhibits filed in

3

this proceeding, are still more claimants who may have sought and obtained settlements from Ford 1) without disclosing other asbestos exposures, 2) the existence of claims premised upon that exposure against other entities, or 3) their receipt of compensation for those injuries from other sources.

10. By order of this Court, those 2019 Statements and Exhibits must identify the law firm representing the claimants and list, inter alia, the name, personal address, partial social security number, the amount of the claim, and the type of disease giving rise to the claim. (Dkt. No. 2307 at 3, ¶ 2.) Accordingly, were Ford permitted to compare those lists with information within its control, it would be better able to determine whether those claimants had brought claims against Ford and disclosed, or withheld, relevant information in pursuit of settlements.

11. Certain "that more extensive discovery would show more extensive abuse," Ford thus seeks access both to the Sealed Evidence upon which the pattern of misrepresentation finding by this Court is premised, (Dkt. No. 3296 at 7, 30-35, ¶¶ 8, 58, 60-66 ), and to all Rule 2019 Statements and Exhibits filed, at the Court's direction, (Dkt. Nos. 631, 2037), by asbestos claimants in this proceeding,[3] to aid Ford's efforts in protecting shareholder interests by investigating potential fraud against the company.

12. In view of the statutes of limitation applicable to Ford's rights of action, the running of which may be argued to have been triggered by this Court's Order, Ford must now

---

[3] Ford specifically seeks those exhibits filed by the law firms representing asbestos claimants against Garlock. (Dkt. Nos. 776, 1226, 1719, 2038, 1236, 1604, 911, 949, 1257, 920, 872, 973, 906, 1105, 2245, 1101, 883, 940, 958, 912, 946, 1140, 1643, 1645, 903, 988, 764, 2776, 3086, 915, 942, 952, 955, 1213, 2029, 2559, 1022, 673, 1222, 867, 1269, 2763, 890, 887, 899, 893, 1215, 927, 895, 1621, 904, 797, 930, 908, 910, 927, 888, 808, 824, 835, 865, 877, 879, 901, 914, 932, 937, 938, 943, 945, 960, 962, 963, 966, 969, 974, 983, 1387, 1505, 1570, 2142, 2653, 3181, 3234, 3332.) The requested filings include all materials submitted by more than forty law firms to the Court to discharge their Rule 2019 obligations, whether or not subsequently amended.

move expeditiously with this Court's cooperation to investigate potential fraud committed in the pursuit of asbestos settlements.

## ARGUMENT

Ford, like everyone else, enjoys a presumptive right to inspect judicial records, or documents filed in the Nation's courts to adjudicate rights, *see United States v. Appelbaum*, 707 F.3d 283, 290 (4th Cir. 2013), including those filed in bankruptcy courts. "This policy of open inspection[ is] codified generally in § 107(a) of the Bankruptcy Code, evi[ncing] congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (9th Cir. 1994); *In re Nunn*, 49 B.R. 963, 964 (Bankr. E.D. Va. 1985) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) and applying the common law right of access doctrine to a bankruptcy proceeding). As public access to judicial records is presumed, the party opposing access bears the burden to demonstrate with particularity the need for confidentiality, *Virginia Dep't of State Police v. Washington Post*, 396 F.3d 567, 575 (4th Cir. 2004), or, to put it inversely, "[t]he party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Anthracite Capital, Inc.*, 492 B.R. 162, 179 (Bankr. S.D.N.Y. 2013).

"To substantively overcome the common law presumption of access to [judicial records], a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *Appelbaum*, 707 F.3d at 293 (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003)). This presumption ensures that "the right of access . . . may be abrogated only in unusual circumstances." *Virginia Department*, 396 F.3d

5

at 576 (internal quotation marks omitted).  Though no good cause showing need be made, Ford notes that the present motion furthers the primary purpose of the doctrine—to prevent abuse of the tort system and thereby "safeguard the integrity, quality, and respect in our judicial system.'" *In re Orion Pictures Corp.*, 21 F.3d at 26, 28 (quoting *In re Analytical Sys.*, 83 B.R. 833, 835 (Bankr. N.D. Ga. 1987)); *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281, 301 (D. Del. 2013) (recognizing that "the issues involved here — going to liabilities arising from a mass tort — are important to the public").  And because none of the statutory exceptions apply to the 2019 Filings or the Sealed Evidence that Ford seeks, those documents must be disclosed. *See In re Motions for Access of Garlock*, 488 B.R. at 302 & n.19 (holding that the exceptions of 11 U.S.C. § 107(b)(1) were not violated by disclosing Rule 2019 Exhibits, subject to certain limitations).

> **I.    Ford's Common Law and Statutory Rights of Access Require Disclosure of the Rule 2019 Filings and the Sealed Evidence.**
>
> > *A.    Both Rule 2019 Filings and the Sealed Evidence Are Judicial Records under the Common Law and the Bankruptcy Code.*

A document constitutes a judicial record, and thus is subject to the common law right of access, if it is 1) "filed with the court" and 2) "play[s] a role in the adjudicative process, or adjudicate[s] substantive rights." *Appelbaum*, 707 F.3d at 290.  The Rule 2019 Exhibits requested by Ford afford the debtors and the public knowledge regarding the identity of claimants on the estate and the extent of those claims, are "available to the parties and c[an] be used to monitor the propriety of the plan confirmation voting process," *In re Motions for Access of Garlock*, 488 B.R. at 297, and were filed with the Court subject to an express right of access. (Doc. 2067 at 2) (requiring statement that "[e]xhibits," which list the information sought by

6

Ford, "may be accessed by parties who obtain a Court order authorizing access"). Those documents are thus subject to Ford's common law right of access.

The same analysis applies with even greater clarity to the sealed testimony and exhibits relied upon by this Court in finding a widespread pattern of misrepresentation by asbestos claimants. (Dkt. Nos. 1225, 1390, 1829, 2337, 2338, 2430, 2704, 2807.) Evidence put before the Court to aid its determination of the rights of creditors to an estate, which this sealed evidence was taken to do, and was relied upon by this court to adjudicate those rights, lies at the heart of the common law understanding of judicial records subject to public disclosures. *See Appelbaum*, 707 F.3d at 290. It is those records that permit evaluation of the correctness of the Order Estimating Aggregate Liability, clearly a decision that "plays a role in adjudicating rights," access to which is thereby essential to the purposes of the right. *See Virginia Department*, 386 F.3d at 575 ("'Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case.'" (quoting *Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000))).

Ford's statutory entitlement to both sets of documents, the 2019 Filings and the Sealed Evidence, is even more undeniable under the Bankruptcy Code. *See In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 429-30 (9th Cir. 2011). For it deems that "paper[s] filed in a case under this title and the dockets of a bankruptcy court *are public records* and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). There can be no doubt that the 2019 Filings are included among those papers, *see In re Motions for Access of Garlock*, 488 B.R. at 298 (holding that Rule 2019 Exhibits are judicial records subject to a common law right of access), or that Ford constitutes an "entity." *See* 11 U.S.C. § 101(15) (defining "entity" to "include[ a] person"); *id.* § 101(41) (defining "person" to include a

7

"corporation"); *see also Gitto v. Worcester Telegram & Gazette Corp.*, 422 F.3d 1, 7 (1st Cir. 2005) (holding that 11 U.S.C. § 107 "establishes a broad right of public access, subject only to limited exceptions set forth in the statute, to *all papers* filed in a bankruptcy case" (emphasis added)).

For the same reasons, Section 107 plainly compels disclosure of the Sealed Evidence. As the Ninth Circuit has held, 11 U.S.C. § 107 "[c]overs all papers filed in a bankruptcy case" without regard to whether they were "(1) subject to a protective order issued by a court pursuant to a finding of good cause, and (2) attached to non-dispositive motions." *In re Roman Catholic Archbishop*, 661 F.3d at 429-30; *accord In re Anthracite Capital*, 492 B.R. at 180-81 ("the fact that there is a confidentiality order in place does not displace this Court's duty" to afford appropriate access to judicial records).

        B.    *Neither the Statutory Exceptions in Section 107(b) nor Any Countervailing Interests Preclude Ford from Accessing these Judicial Records to Uncover Fraud Against It and Abuse of the Courts by Asbestos Claimants.*

The Court may quickly dispense with any objections as to Ford's entitlement to these records under the common law right of access. It is plain that Ford, and the public, have an interest of the highest order in obtaining the Sealed Evidence documenting a pattern of widespread misrepresentation by asbestos claimants to the immediate detriment of defendants such as Ford, and in reviewing the 2019 Filings to discover whether it has been defrauded by asbestos claimants operating at the direction of enterprising plaintiffs' firms. And Ford has no intention or interest other than to appropriately investigate and remedy frauds that may have been committed against it. Ford stands ready to preserve confidentiality within the limits of the law.

Any interest harbored by the asbestos claimants and their lawyers in "avoiding embarrassment" or legal responsibility for their misdeeds plainly cannot trump that of the public

8

in preventing abuse of the court system or of Ford in recovering monies fraudulently paid. *See In re Motions for Access of Garlock*, 488 B.R. at 298-301; *see also In re Anthracite Capital*, 492 B.R. at 175 ("[M]ere embarrassment or harm caused to the party is insufficient to grant protection under § 107(b)(2).'" (quoting *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007))). As to more serious objections, asbestos claimants' and their lawyers' legitimate interests in privacy, avoiding identify theft, or protecting lawful business activities may be preserved by more reasonable, less restrictive measures. *See In re Motions for Access of Garlock*, 488 B.R. at 302.

With regard to the right of access under the Bankruptcy Code, it is the burden of the party seeking to claim an exception from public disclosure to demonstrate the applicability of Subsection (b)(1) or (2). *See* 11 U.S.C. § 107(b) ("On request of a party in interest, the bankruptcy court shall . . . (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."); *In re Roman Catholic Archbishop*, 661 F.3d at 432 ("We therefore hold that the party seeking non-disclosure must establish" the exception's applicability.); *In re Anthracite Capital*, 492 B.R. at 174 ("It is the movant's burden to demonstrate that grounds for an exception exist . . . ."). And these exceptions are "construed narrowly" to protect the public interest in access. *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999).

Surely the lists of asbestos claimants and the identity of the firms representing them in this proceeding involve no "scandalous or defamatory matter," or confidential business information of any type, however those terms may be defined. *Cf. In re Catholic Archbishop*, 661 F.3d at 431-33 (surveying the case law from the courts of appeals on the terms "scandalous"

9

and "defamatory" in Section 107(b)(2)); *In re Georgetown Steel Co., LLC*, 306 B.R. 542 (Bankr. D.S.C. 2004) ("Commercial information is . . . 'information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.' The purpose behind § 107 . . . is to protect 'business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.'" (quoting *In re Orion Pictures Corp.*, 21 F.3d at 27 and *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003), respectively)); *In re Whitener*, 57 B.R. 707, 709 (Bankr. E.D. Va. 1986) (holding that "[t]he dissemination of truthful matter cannot be enjoined merely because the matter is prejudicial; section 107(b)(2) requires that the matter be scandalous or defamatory"). Information regarding what solvent businesses and bankruptcy trusts an individual asbestos claimant has filed claims for compensation against and what exposures they have disclosed in those filings, sought for the purpose of uncovering litigation misconduct, are not naturally embraced by the words or logic those exceptions. *See In re Motions for Access of Garlock*, 488 B.R. at 301 (noting that the privacy interests of asbestos claimants were diminished by the fact that all those who would be identified had "first contact[ed] and retain[ed] counsel" and so "each individual authorized an attorney to represent him or her in connection with a potential asbestos-related claim" and because "the same type of information . . . would have to be disclosed in asbestos-related litigation, such as in a complaint in a tort action").

Even if prejudicial to the interests of claimants and their lawyers, disclosure of this truthful information is not embraced by any of the exceptions, including the exception for information that creates an "undue risk of identity theft or other unlawful injury to the individual." 11 U.S.C. § 107(c); *see In re Creighton*, 490 B.R. 240, 246 (Bankr. N.D. Ohio 2013) ("If the 'ridicule' Mrs. Creighton suffers deals only with the true fact that she filed for

bankruptcy protection, that speech . . . cannot result in unlawful injury."). And legitimate concerns about the disclosure of other information shown to fall within an exception can and should be addressed by redacting information, where necessary, or placing limits on subsequent disclosure. *See In re Anthracite Capital*, 492 B.R. at 180 ("Redacting documents to remove only protectable information is preferable to wholesale sealing. The policy favoring public access supports making public as much information as possible while still preserving confidentiality of protectable information." (internal quotation marks omitted)); *see, e.g.*, *In re Motions for Access of Garlock*, 488 B.R. at 302 & n.19 (limiting subsequent disclosure, requiring protective orders going forward, and withholding retention agreements between lawyers and clients). But a blanket refusal to disclose this information — to enable asbestos claimants and their attorneys to sweep this information back under the rug — will ensure that any "unlawful injur[ies]" to Ford remain unredressed.

## CONCLUSION

Wherefore, for the foregoing reasons, Ford's Motion for Access to the Rule 2019 Filings and to the Sealed Evidence relied upon in this Court's January 10, 2014 order, (Doc. 3296), demonstrating widespread misrepresentation by asbestos claimants should be granted.

Date: March 14, 2014                                       Respectfully submitted,

                                                           FORD MOTOR COMPANY

                                                           By: ___/s/ Amos U. Priester, IV_____
                                                               Kirk G. Warner
                                                               North Carolina State Bar No. 16238
                                                               Amos U. Priester, IV
                                                               North Carolina State Bar No. 10481
                                                               Christopher R. Kiger
                                                               North Carolina State Bar No. 28618
                                                               Smith, Anderson, Blount, Dorsett,
                                                               Mitchell & Jernigan, L.L.P.
                                                               Post Office Box 2611
                                                               Raleigh, North Carolina 27602-2611
                                                               Telephone: (919) 821-1220
                                                               Facsimile: (919) 821-6800
                                                               E-Mail: kwarner@smithlaw.com
                                                                       apriester@smithlaw.com
                                                                       ckiger@smithlaw.com

Samuel L. Tarry, Jr.
Michael H. Brady
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
E-Mail: starry@mcguirewoods.com
             mbrady@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, a copy of the foregoing MEMORANDUM IN SUPPORT OF FORD MOTOR COMPANY'S MOTION FOR ACCESS TO RULE 2019 FILINGS AND TO UNSEAL THE EVIDENCE OF "DEMONSTRABLE MISREPRESENTATION" was served on the parties named below in the manner indicated; in addition, the filing of the foregoing document caused a copy to be served by electronic notification on all counsel of record.

### VIA CM/ECF

Garlock Sealing Technologies LLC, Debtor
1666 Division Street
Palmyra, NY 14522

Shelley Koon Abel
Rayburn Cooper & Durham
227 W. Trade St., Suite 1200
Charlotte, NC 28202

Louis Adam Bledsoe, III
Robinson Bradshaw Hinson P.A.
101 N. Tryon Street Suite 1900
Charlotte, NC 28246

Garland S. Cassada
Robinson Bradshaw & Hinson
101 N. Tryon St.
Suite 1900
Charlotte, NC 28246

Albert F. Durham
Rayburn, Cooper & Durham, P.A.
1200 Carillon
227 W. Trade Street
Charlotte, NC 28202

Ross Robert Fulton
Rayburn Cooper & Durham, P.A.
227 West Trade Street
Suite 1200
Charlotte, NC 28202

Jonathan P. Guy
Orrick Herrington Sutcliffe LLP
Columbia Center
1152 15th Street N.W.
Washington, DC 20005

Jonathan C. Krisko
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon Street
Suite 1900
Charlotte, NC 28246

John R. Miller, Jr.
Rayburn Cooper & Durham, P.A.
1200 The Carillon
227 West Trade Street
Charlotte, NC 28202

Ashley K. Neal
Rayburn Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte, NC 28202

Rayburn Cooper & Durham, P.A.
1200 Carillon
227 W. Trade Street
Charlotte, NC 28202

William Samuel Smoak, Jr.
Rayburn Cooper Durham P.A.
227 West Trade Street
Suite 1200
Charlotte, NC 28202

Official Committee of Asbestos Personal
Injury Claimants
Caplin & Drysdale
Attn: Elihu Inselbuch, Esq.
600 Lexington Ave 21st Floor
New York, NY 10022-6000

Leslie M. Kelleher
Caplin Drysdale Chartered
One Thomas Circle NW
Suite 1100
Washington, D. 20005

Jeanna Rickards Koski
Caplin & Drysdale, Chartered
One Thomas Circle, NW
Suite 1100
Washington, DC 20005

Kevin C. Maclay
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

Todd E. Phillips
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

James P. Wehner
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

Cary Ira Schachter
Schachter Harris LLP
220 Canal Centre
400 E. Las Colinas Blvd.
Irving, TX 75039

Richard C Worf
Robinson Bradshaw Hinson P.A.
101 N. Tryon Street Suite 1900
Charlotte, NC 28246

Andrew T. Houston
Moon Wright & Houston, PLLC
227 West Trade Street
Suite 1800
Charlotte, NC 28202

Jeffrey A. Liesemer
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005

Travis W. Moon
Motley Rice
Moon Wright & Houston, PLLC
227 West Trade Street, Suite 1800
Charlotte, NC 28202

Trevor W. Swett
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suie 1100
Washington, DC 20005

Richard S. Wright
Moon Wright & Houston, PLLC
227 W. Trade Street, Suite 1800
Charlotte, NC 28202

Linda W. Simpson
U.S. Bankruptcy Administrator Office
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669

Official Committee of Unsecured Creditors
Deborah L. Fletcher
FisherBroyles LLP
6000 Fairview Rd , Suite 1200
Charlotte, NC 28210

Dated:  March 14, 2014

          By: ____/s/ Amos U. Priester, IV_____
          Amos U. Priester, IV
          North Carolina State Bar No. 10481
          Smith, Anderson, Blount, Dorsett,
          Mitchell & Jernigan, L.L.P.
          Post Office Box 2611
          Raleigh, North Carolina 27602-2611
          Telephone: (919) 821-1220
          Facsimile: (919) 821-6800
          E-Mail: apriester@smithlaw.com
                kwarner@smithlaw.com
                ckiger@smithlaw.com