**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| In Re: | Chapter 11 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al.[1] | Case No. 10-31607 |
| Debtors. | Jointly Administered |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF**
**ASBESTOS PERSONAL INJURY CLAIMANTS TO MOTION**
**FOR ACCESS TO RULE 2019 STATEMENTS AND EXHIBITS**

The Official Committee of Asbestos Personal Injury Claimants (the "**Committee**"), by

and through the undersigned, hereby submits this Opposition to the Motion for Access to Rule

2019 Statements and Exhibits, dated February 19, 2014 [Dkt. No. 3350] (the "**Motion**") filed by

Aetna, Inc. and the Rawlings Company LLC.  The Committee respectfully represents as follows:

**BACKGROUND AND PRELIMINARY STATEMENT**

1.      For the ostensible benefit of an insurance company ("**Aetna**") and a vendor to

insurers ("**Rawlings**" and, together with Aetna, "**Movants**"), the Motion seeks exhibits to

statements submitted by various law firms pursuant to Bankruptcy Rule 2019 ("**Rule 2019**

**Statements**") and an Order entered by this Court pursuant to that rule.  As provided by that

Order, the exhibits ("**Rule 2019 Exhibits**") were submitted to the clerk but held off the docket.

2.      The Motion recognizes that the Order limits access to the Rule 2019 Exhibits to

"those who obtain a Court order authorizing access."  Motion at 1.  Yet, Movants take the stark

---

[1]     Debtors consist of Garlock Sealing Technologies LLC ("**Garlock**"), Garrison Litigation
Management Group, Ltd., and The Anchor Packing Company.

position that the materials thus protected are theirs for the asking – in effect, that the protection

prescribed by the Court is meaningless.  *See* Motion at 1.  Perhaps recognizing, however, that

this position tends to make nonsense of the Order, they are also careful to state a purpose for

their request to gain access to the materials.   Their stated purpose does not square, logically or

practically, with the requested relief, which may suggest that their real motivation is unstated.

3.      Aetna says that it provides healthcare insurance to millions of persons throughout

the country.  Motion ¶ 2.  Rawlings describes itself as a provider of cost-containment services to

health plans, including Aetna, but also including other similar large plans.  *Id*. ¶ 3.  Together,

they allege generally that health plans have paid "millions of dollars of medical benefits to tens

of thousands of plan members to treat their asbestos-related diseases," and that their relationships

with such members endow the plans with "subrogation rights" against asbestos tortfeasors and

"reimbursement rights" against plan members.  *Id.* ¶¶ 4-5.

4.       As their stated purpose for seeking Rule 2019 Exhibits in Garlock's case,

Movants claim that they "want to determine the full extent of their subrogation and

reimbursement rights as to asbestos-related personal-injury claims brought against the Debtor."

*Id.* ¶ 6.

5.      Rawlings is not an insurer.  The Motion appears to cast it in the dubious position

of asserting the hypothetical rights of third persons, namely, Aetna and other unnamed

customers.  It lacks standing to do so under the familiar doctrine of *jus tertii*.

6.      The Rule 2019 Statements filed on the docket identify the name and address of

the filing law firm.  The Rule 2019 Exhibits, maintained off the docket, provide certain

information regarding clients in whose interest the law firm appeared in this Chapter 11 case

before 2012, *i.e.* : (1) the names and addresses of the clients, (2) exemplars or actual copies of

the relevant retention agreements, (3) identification of the clients' asbestos-related diseases, and

(4) claim amounts if liquidated.

7.      Aetna and Rawlings know who the Aetna health plan's members are, and they

know which ones have received benefits under the plan for the medical treatment of asbestos-

related illnesses.  They have not explained why Aetna cannot efficiently develop the basis for

reimbursement or subrogation claims, if any, through direct communications with its members,

rather than by sifting through undifferentiated collections of 2019 Exhibits that undoubtedly

sweep in many asbestos victims who have nothing to do with Aetna's plan.  They disdain to use

the information that is already in public view with respect to asbestos claimants who sued

Garlock before the bankruptcy, namely Schedule F of the Debtors' schedules, complaining that

the disclosed information does not include "identifying information," such as the claimants'

addresses and does not extend to individuals whose claims arose after the petition date.  *See*

Motion at 3 n.3.  Yet the 2019 Exhibits themselves are subject to similar limitations.

8.      For example, Rule 2019 Exhibits are not meant to include the social security

numbers of listed clients,[2] and very few Rule 2019 Exhibits have been submitted or updated

since December 2011,[3] when Rule 2019 was narrowed by amendment.  In view of the inherent

---

[2]    The template prescribed by this Court for Rule 2019 Exhibits includes a field for the possible
addition of social security numbers.  Order Requiring Filing of Statements Pursuant to Fed. R.
Bankr. P. 2019 ¶ 2(c), dated October 25, 2010 [Dkt. No. 631] (exhibits shall contain "reserved
space for the social security number or other identifier as may be required by a further order of
the Court").  Neither Rule 2019 nor any order of this Court has ever required the inclusion of
social security numbers in Rule 2019 Exhibits.  Some law firms may have included social
security numbers in the mistaken belief that the template called for that information.

[3]    This is borne out by the Rule 2019 Statements listed in the Motion (at 4 n.9).  All but one of
those predate December 2011, as indicated by their respective docket numbers.

limitations of the Rule 2019 Exhibits, it is significant that Movants do not explain how access to

2019 Exhibits will advance their stated purpose to any material degree.

9.      The Rule 2019 Exhibits do include, however, the identification of the listed

persons' asbestos-related diseases as well as copies or exemplars of law firms' retention

agreements.  These items constitute protectible information in which Movants have no legitimate

interest.

10.      The premises of Movants' request are both speculative and premature in relation

to their stated purpose and in relation to this case.  Movants style themselves as holders of

potential subrogation claims against the Debtors and reimbursement rights against asbestos

claimants who collect from the bankruptcy estates, but state law is to the contrary in many

places.  *See* Point II of the Argument below.  In any event, the estates have paid nothing to any

asbestos victims, so it is inconceivable that Aetna has any reimbursement rights connected with

this case.  There is no chance that the estates will respond to subrogation claims, or that any such

claims will lapse, before a Plan is consummated or the case dismissed.

11.      In short, Movants have no genuine need relevant to this case for pressing their

Motion at this stage.  On the other hand, the law firms who submitted Rule 2019 Exhibits and

their clients have legitimate interests in the continued confidentiality of those materials.

12.      Although Movants know the names and addresses of the law firms that have

submitted Rule 2109 Statements, their Certificate of Service does not indicate that they have

given notice of their Motion to all of those firms or their potentially affected clients.   This is

evident by, among other things, comparing the Certificate of Service attached to the Motion to

the list of docketed Rule 2019 Statements that is set forth in the Motion itself.  *See* Motion at 4

n.9.

13.     If the Court fails to protect those materials in the face of Movants' glib rationale, it will likely face many similar applications by other strangers to this case, all distracting from the necessary work of reorganization that remains to be accomplished here.    The piling on has already begun. *See* Ford Motor Company's Motion for Access to Rule 2019 Filings and to Unseal the Evidence of "Demonstrable Misrepresentation," dated March 14, 2014 [Dkt. No. 3377].

## ARGUMENT

14.     Rawlings relies on both the common law and on Section 107 of the Bankruptcy Code to support its demand for the Rule 2019 Exhibits.  But both the common law and statute require the consideration of countervailing interests.  Such interests, as set forth below, demonstrate that the Motion should be denied.

15.     Courts analyzing requests for access to documents alleged to be judicial records look to all of the relevant facts and circumstances, and the ultimate decision rests within the sound discretion of the court.  "The few cases that have recognized such a right [of access] do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978).  "If the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion" and "requires the Court to examine the relevant facts and circumstances and then to balance the

- 5 -

[respective] interests . . . ." *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr.

N.D.N.Y. 1998).[4]

16.     The Bankruptcy Court, like "[e]very court" has "supervisory power over its own

records and files," and can use that power to protect its records and files from the risk of misuse.

*Nixon*, 435 U.S. at 598.  The Court's power over its own records includes the authority to shield

third parties' private information from public disclosure.  *See, e.g.*, *In re Peregrine Sys., Inc.*, 311

B.R. 679, 690 (D. Del. 2004) ("The bankruptcy court was appropriately concerned with the

privacy interests of third parties who were not before the court, and it is well established that a

court has the power and discretion to strike a document in order to protect legitimate interests.").

17.     In cases applying Section 107, then, courts must also "balance the strong common

law presumption of access 'against the factors militating against access.'"  *Peregrine*, 311 B.R.

at 689.  *See also In re Pittsburgh Corning Corp.*, 2005 WL 6128987, at *10 (W.D. Pa. Sept. 27,

2005) (ruling that, in response to a request for Rule 2019 Exhibits, the Bankruptcy Court was

free to hold that "countervailing concerns justify the continued protection of the information"),

*aff'd*, 260 F. App'x 463 (3d. Cir. 2008); *In re Orion Pictures Corp.*, 21 F.3d 24, 26-27 (2d Cir.

1994).

18.     Rawlings relies heavily on *In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001), a

common-law non-bankruptcy case from the Third Circuit, as setting forth the appropriate

framework for its motion to obtain the Rule 2019 Exhibits.  *See, e.g.*, Motion at 1.  But *Cendant*

was not a case regarding Rule 2019 submissions, nor did it involve the various factors at play in

asbestos bankruptcies that are incorporated in this Court's revised Rule 2019 Order.  Indeed,

---

[4]     *See also LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 219-20 (3d Cir. 2011) (denials of
requests to permit access to judicial records reviewed for abuse of discretion).

*Cendant* itself acknowledged that "the test for overriding the right of access" was being applied "with particular strictness" in that case, because it was a class action case where information sought related to the selection of lead counsel, which the court viewed as critically important. *Id.* at 194.

19.    In any event, the Motion implicates "compelling countervailing interests" of the sort that *Cendant* itself recognized. *Id.* These include confidentiality and privacy concerns, the mandatory protection of confidential commercial information, potentially improper purposes, and the harms threatened to asbestos victims and their lawyers.

## I.    THE MOTION IS PROCEDURALLY DEFECTIVE FOR LACK OF FAIR NOTICE

20.    Appended to the Motion is a Certificate of Service stating what persons Movants served with notice via the ECF system or by regular mail. Comparing its contents to the list of Rule 2019 Statement set forth in the Motion (at 4 n.9), and more broadly, to the docket itself, it is apparent that Movants have not certified that they have served all of the law firms that have submitted 2019 Statements and Exhibits. If they have in fact served all such firms, Movants should file a corrected Certificate of Service demonstrating such service. If they have not, this Court will need to fashion appropriate relief. "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Hanover*, 339 U.S. 306, 314 (1950).

## II.   THE RULE 2019 EXHIBITS WARRANT CONTINUED PROTECTION

### A.   <u>The Rule 2019 Exhibits Include Confidential Commercial Information</u>

21.   Section 107 codifies the common law regarding public access to judicial records, including the principle that the public's right of access is not absolute. *In re Joyce*, 399 B.R. 382, 386 n.2 (Bankr. D. Del. 2009) (citing, *inter alia*, *Nixon*, 435 U.S. at 597-98). *See also In re Georgetown Steel Co., LLC*, 306 B.R. 542, 546 (Bankr. D.S.C. 2004) ("the Bankruptcy Code . . . recognizes that the public right to access is not absolute"). "While the exception ought, as the cases indicate, be sparingly applied, the very existence of the exception demonstrates Congress' anticipation that the administration of bankruptcy cases might, by their very nature, require special intervention to protect some kinds of information from dissemination to the world." *In re 50-Off Stores, Inc*., 213 B.R. 646, 654 (Bankr. W.D. Tex. 1997). The statute provides several explicit exceptions to the public right of access, and Section 107(b)(1) mandates the protection of certain types of information, including "confidential . . . commercial information." It provides that upon the "request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information."[5] Determinations as to whether information falls within the ambit of Section 107(b)(1) are made on a case-by-case

---

[5]   Rule 9018 of the Federal Rules of Bankruptcy Procedure makes clear that there are no procedural impediments to a court's invocation of Section 107(b). In relevant part, Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . contained in any paper filed in a case under the Code.

Fed. R. Bankr. P. 9018.

basis.  "The court determines whether the subject documents fall within the provisions of §

107(b) and the appropriate protective remedy if they do."  *In re Barney's, Inc.*, 201 B.R. 703,

707 (Bankr. S.D.N.Y. 1996).

22.     Confidential commercial information has been defined as "information which

would cause an unfair advantage to competitors by providing them information as to the

commercial operations" of the entity seeking the order, *In re Orion Pictures Corp.*, 21 F.3d 24,

27 (2d Cir. 1994) (internal quotation marks omitted).  The Rule 2019 Exhibits contain

confidential commercial information.  This includes the identity of the submitting law firms'

clients, their addresses, and information regarding their potential claims, which are protectable

under Section 107(b)(1).  *See, e.g.*, *Georgetown Steel Co., LLC*, 306 B.R. at 548 (protecting the

identification of key employees and the specific amounts proposed to be paid to retain them as

employees of the debtor under Section 107(b)(1)); *In re Borders Group, Inc.*, 2011 WL 6057993,

at *4 (Bankr. S.D.N.Y. Dec. 7, 2011) (protecting the identities of key employees, vendors and

certain confidential financial information of the parties to a purchase agreement under Section

107(b)(1)); *In re Frontier Grp., LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000)

(importance of physician list to the debtor's business was sufficient grounds for the list to

constitute confidential commercial information entitled to protection under Section 107(b)(1)).

23.     The Rule 2019 Exhibits also contain exemplars, and in some instances actual

copies, of the submitting law firms' retention agreements and the confidential terms therein.  *See*

Rule 2019 Orders.  Such confidential contractual terms also constitute confidential commercial

information.  *See, e.g.*, *In re Nortel Networks Inc.*, 2011 WL 1661524, at *1-3 (Bankr. D. Del.

May 2, 2011) (sealing entire "Side Agreement" related to "Stalking Horse" asset sale agreement

under Section 107(b)(1)); *In re Visteon Corp.*, 2010 Bankr. LEXIS 5461, at *1-3 (Bankr. D. Del.

Apr. 9, 2010) (sealing purchase agreement under Section 107(b)(1)).

**B.**   **The Rule 2019 Exhibits Are Protected From Disclosure as Presenting an Undue Risk of Identity Theft and Other Unlawful Injury**

24.   Section 107(c)(1) provides that a bankruptcy court may, for cause, "protect an

individual, with respect to the following types of information to the extent the court finds that

disclosure of such information would create undue risk of identity theft or other unlawful injury

to the individual or the individual's property: (A) Any means of identification (as defined in

section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title" or

"(B) Other information contained in a paper described in subparagraph (A)."  11 U.S.C. §

107(c)(1).  "[T]he term 'means of identification' means any name or number that may be used,

alone or in conjunction with any other information, to identify a specific individual, including

any-- (A) name, social security number, date of birth, official State or government issued driver's

license or identification number, [etc.] . . . ."  18 U.S.C. § 1028(d)(7).

25.   Privacy interests thus figure prominently among countervailing factors weighing

against public access.  *See, e.g.*, *Peregrine*, 311 B.R. at 690 ("The bankruptcy court was

appropriately concerned with the privacy interests of third parties who were not before the

court").  And privacy interests are certainly at stake here.  *See Kaiser*, 327 B.R. at 560 (affirming

similar Rule 2019 Orders where "the Bankruptcy Court is regulating access to the information

because of privacy concerns related to the electronic case filing system," and holding that "Judge

Fitzgerald's Rule 2019 Orders strike the appropriate balance").

26.   Indeed, courts have long recognized that protecting private information against

public disclosure is a legitimate reason for regulating access to judicial records.  *See, e.g.*, *LEAP*

*Sys.*, 638 F.3d at 222 (holding that a significant "privacy interest" in maintaining the confidentiality of a settlement agreement outweighed any public right of access to the agreement); *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation") (alteration in original) (internal quotation marks omitted); *United States v. Smith*, 776 F.2d 1104, 1111-12 (3d Cir. 1985) (holding that an individual's privacy or reputational interests defeated a media organization's constitutional right of access as well as the public's common law right of access to charging documents in a criminal proceeding).

27.    The Rule 2019 Exhibits include the clients' names and, in some instances (albeit by mistake) social security numbers;[6] these are identifying details that Section 107(c) expressly recognizes as worthy of protection.  They may also include clients' addresses, a type of information that "alone or in conjunction with any other information" may permit the identification of "a specific individual" within the meaning of 18 U.S.C. § 1028(d)(7) and thus may be protected under Section 107(c) of the Bankruptcy Code.

28.    The form ordered for Rule 2019 Exhibits requires identification of the asbestos-related disease suffered by each listed person.  The Rule 2019 Exhibits thus undoubtedly include medical information that is clearly sensitive, vulnerable to abuse and protectable under Section 107(c), as under the common law.  *See Fulmore v. United Parcel Serv., Inc.*, 2012 WL 6016731, at *1 (E.D.N.C. Dec. 3, 2012) (finding the common law right of access overcome because "plaintiff has demonstrated that the documents in question contain personal and confidential information, including information relating to his medical records and medical condition,

---

[6] *See* note 2 *supra*.

information which is of utmost importance to him but not generally available to the public or

bearing importance to any public matters").

29.     That an individual has been diagnosed with an asbestos disease is a highly

personal matter.  It is information that should not be released to Movants or anyone else unless

there is good reason to do so.  As shown below, Movants have not cleared that commonsensical

hurdle.

## III.    MOVANTS' EFFORT TO STATE A VALID PURPOSE FOR OBTAINING RULE 2019 EXHIBITS FALLS SHORT

30.     Movants rest on a generalized public right of access.  They must do so, because

they are admittedly unable to specify any more specific relationship linking them to the persons

whose information they demand.  The Motion thus implies that asbestos victims' identifying

details must be made available for the asking to any and all comers, whether they cite as

justification some transparently illogical speculative purpose or no justification at all.  Their

argument thus proves too much.  It cannot be distinguished from an assertion that the public right

of access is absolute, when, as shown above, the law requires a weighing of countervailing

interests.

31.     The public's interest in disclosure of Rule 2019 Exhibits is minimal.  The Rule

2019 Exhibits submitted in this case have never been used for any adjudicative purpose, and

thus, are not judicial records under Fourth Circuit precedent.  "Judicial records" are "documents

filed with the court [ that] play a role in the adjudicative process, or adjudicate substantive

rights."  *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*,

707 F.3d 283, 290 (4th Cir. 2013).  In that case, the Fourth Circuit held that motions to obtain

records of stored electronic communications were judicial records "because they were filed with

the objective of obtaining judicial action or relief pertaining to § 2703(d) orders," while

reaffirming its prior decision wherein it ruled that documents filed with a motion to dismiss but not considered by the court were not judicial records as they "do not play any role in the adjudicative process." *Id.* (citing *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (table case)).  Under the Fourth Circuit's test, the Rule 2019 Exhibits do not qualify as judicial records.  They were not submitted to obtain judicial action or relief, and they have not played any role in the adjudicative process.  Garlock itself did not even use the Rule 2019 Exhibits submitted in its own case when quantifying current claims in the estimation proceeding.  That the amended Rule 2019 and this Court's conforming revised implementing Order have essentially eliminated the need for any law firm to file Rule 2019 Statements or Exhibits underscores just how attenuated any public interest in the contents of the Rule 2019 Exhibits filed before those changes has become, as well as confirms their irrelevance to the adjudicative process.

A.     **Rawlings Has Not Established any Proper Basis for Demanding the Rule 2019 Exhibits.**

32.     Two assumptions lie at the root of the Motion:  First, the Motion takes for granted that Aetna and other similar insurers possess reimbursement or subrogation claims against anyone who has an asbestos personal injury claim.  Second, it equates the client lists submitted as Rule 2019 Exhibits with the population of individuals who hold current asbestos claims against Garlock.  Neither assumption is reasonable.

33.     Limited research suggests that, contrary to Movants' *ipse dixit*, the subrogation and reimbursement rights they claim do not exist under applicable state law in many jurisdictions.  In North Carolina, for example, the law prohibits insurers, such as Aetna and

Rawlings' other customers, from writing subrogation language into their insurance policies.[7]  In

New York, the state where Garlock's manufacturing facilities are located, state law effectively

bars health insurers from pursuing subrogation or reimbursement claims against plaintiffs and

defendants who settle personal injury claims.[8]  Other states follow similar rules.[9]  Movants can

hardly claim a legitimate interest in ferreting out private information relating to persons

---

[7]   11 N.C. Admin. Code 12.0319 ("Life or accident and health insurance forms shall not
contain a provision allowing subrogation of benefits.").

[8]   N.Y. Gen. Obligation Law § 5-335 (emphasis added) provides:

> When a person settles a claim, whether in litigation or otherwise,
> against one or more other persons for personal injuries, medical,
> dental, or podiatric malpractice, or wrongful death, *it shall be
> conclusively presumed that the settlement does not include any
> compensation for the cost of health care services, loss of earnings
> or other economic loss to the extent those losses or expenses have
> been or are obligated to be paid or reimbursed by an insurer.*
>
> By entering into any such settlement, a person shall not be deemed
> to have taken an action in derogation of any right of any insurer
> that paid or is obligated to pay those losses or expenses; nor shall a
> person's entry into such settlement constitute a violation of any
> contract between the person and such insurer.  *No person entering
> into such a settlement shall be subject to a subrogation claim or
> claim for reimbursement by an insurer and an insurer shall have
> no lien or right of subrogation or reimbursement against any such
> settling person or any other party to such a settlement, with respect
> to those losses or expenses that have been or are obligated to be
> paid or reimbursed by said insurer.*

[9]   *See, e.g.*, *Allstate Ins. Co v. Druke*, 576 P.2d 489, 492 (Ariz. 1978) (noting that Arizona does
not recognize an insurer's right to subrogate claims); *Harleysville Mut. Ins. Co. v. Lea*, 410 P.2d
495 (Ariz. Ct. App. 1966) (same); *Lee v. State Farm Mut. Auto. Ins. Co.*, 129 Cal. Rptr. 271 (Ct.
App. 1976) (noting a prohibition on subrogation, but allowing for reimbursement); Conn. Gen.
Stat. Ann. § 52-225c; Ga. Code Ann. § 33-24-56.1(e) (prohibiting subrogation but allowing for
reimbursement under certain circumstances); Kan. Admin. Regs. 40-120; *Travelers Indem. Co.
v. Chumbley*, 394 S.W.2d 418 (Mo. Ct. App. 1965) (refusing to enforce subrogation provision
for medical expenses); N.J. Stat. Ann. § 2A:15-97; Va. Code Ann. § 38.2-3405(a).

- 14 -

protected by such laws, but granting wholesale access to Rule 2019 Exhibits would expose many such persons to that intrusion.

34.     For several reasons, furthermore, it is simply not accurate to assume that all persons listed in Rule 2019 Exhibits are claimants against the estate.  As Judge Fitzgerald recognized,[10] a law firm's listing of a client on a Rule 2019 Exhibit does not constitute the assertion of a claim, nor does it amount to a representation that a claim has been or will be asserted for that client.  No wonder Garlock did not use Rule 2019 Exhibits submitted in its own case when it set out to count claims in the estimation proceeding.  Prudent law firms have an incentive to be over-inclusive in listing clients in Rule 2019 Exhibits because failing to list a client who does later turn out to be a creditor of the debtor can lead to sanctions.  *See* Rule 2019(e).  Finally, as a result of the amendment of Rule 2019, and a correlative revision of this Court's relevant Order, the filing of 2019 Statements and Exhibits all but came to an end after December 2011, so that very few persons with claims arising after that date will be listed in any of the Rule 2109 Exhibits held by the clerk.

35.     These facts indicate that granting Movants wholesale access to Rule 2019 Exhibits submitted in this case would be of little use for their stated purpose of ascertaining supposed rights of reimbursement or subrogation.  They make no real effort to show the contrary, or to demonstrate that they have made diligent use of information already available.  Instead, they ask the Court to accept the existence of such rights on faith and on that account to

---

[10]   Judge Fitzgerald authored the form of order that this Court itself adopted for implementing Rule 2019 in Garlock's case.  She later ruled that "the fact that somebody has listed an individual as a client on a 2019 statement is not evidence that they are going to submit a claim against the trust in the future."  Hearing Transcript at 44, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 13, 2010).

grant them complete access to Rule 2019 Exhibits containing the confidential information of

persons unknown, many of whom are likely to have no connection to Movants whatsoever.

36.      Movants' lackadaisical approach underscores another basic flaw in their Motion:

it is premature.  Movants claim to hold derivative asbestos claims for reimbursement and

subrogation.  Yet, no asbestos-related claims of any kind have been submitted in this Court, and

there is no order or process that requires such submissions now or in the future.  If, as expected,

this bankruptcy is resolved with the creation of a trust and the issuance of a channeling

injunction under section 524(g) of the Bankruptcy Code, it will be the trust, not this Court, that

eventually receives and processes the claims.  And that stage, unfortunately, is still far in the

future.  The estates have paid nothing to any asbestos victim, so it is inconceivable that Aetna

has any reimbursement rights connected with this case, nor is there the slightest chance that any

subrogation rights will lapse during the pendency of the case.

**B.      This Court May Deny Access to the Rule 2019 Exhibits to Prevent Them From Being Used for Improper Purposes**

37.      Movants' own authorities make clear that courts may deny access to potentially

available documents if the requester's purpose in seeking access is improper.  *See In re Cendant*

*Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) ("'access has been denied where court files might have

become a vehicle for improper purposes'") (quoting *Nixon*, 435 U.S. at 590); *Littlejohn v. BIC*

*Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (same).  Other cases confirm this rule,[11] including cases

applying Section 107.  "Although Section 107(a) evidences a strong desire by Congress to

preserve the public's right to access judicial records, that right is not absolute.  Courts have

---

[11]   *Leap Systems, Inc. v. Moneytrax, Inc.*, also shows that "improper purpose" is an appropriate
basis for denying access.  638 F.3d 216, 221 (3d Cir. 2011) (affirming district court's denial of
motion to unseal).

supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose." *Kaiser*, 327 B.R. at 554 (citations omitted); *Orion Pictures*, 21 F.3d at 27 (2d Cir. 1994) ("In limited circumstances, courts must deny access to judicial documents--generally where open inspection may be used as a vehicle for improper purposes") (citations omitted).

38.     As Movants fail to state a sensible rationale for seeking the Rule 2019 Exhibits, it is reasonable to question whether their actual purpose has been revealed and is a proper one. Notably, Rawlings suggests that it is acting here as a "provider of cost-containment services" for its co-Movant Aetna, and also for other unnamed "Health Plans" with whom it has contracted. *See* Motion ¶ 3.  Indeed, Rawlings seeks information not only about asbestos victims who are members of Aetna's health plan, but also about *all* asbestos victims on the theory that some other unidentified health insurer might assert rights derived from the medical injuries of some such persons.  *See* Motion ¶¶ 3-5.

39.     To the extent that Rawlings purports to act here in Aetna's interest, or that of other unnamed insurers, it lacks standing to so do.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[a] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214-15 (4th Cir. 2002) (rejecting a doctor's standing to bring ADA claim for his patients and noting that "[f]aced, then, with no evidence that Dr. Freilich's dialysis patients are hindered from presenting their own claims, we adhere to the longstanding principle that 'third parties themselves usually will be the best proponents of their own rights.'") (quoting *Singleton v. Wulff*, 428 U.S. 106, 114 (1976)).

40.     Aetna and other insurers can of course speak for themselves, and the appropriate judicial response to Rawlings' attempt to press the supposed rights of third persons is to recognize that *jus tertii* is not available.  "A third party . . . can claim *jus tertii* standing only when (1) the *jus tertii* plaintiff and the party whose rights it is asserting have a close relationship; (2) the *jus tertii* plaintiff has suffered an injury in fact; and (3) there is some hindrance to the first party filing its own claim."  *Rack Room Shoes v. United States*, 718 F.3d 1370, 1375 (Fed. Cir. 2013) (internal quotation marks omitted).  As the Fourth Circuit likewise makes clear, "[t]o overcome the prudential limitation on third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests."  *Freilich*, 313 F.3d at 215 (citing *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991)).  Rawlings fails to demonstrate that it has standing to assert the rights of absent insurers.

41.     In any event, the open-endedness and expansiveness of Rawlings' intended use of the Rule 2019 Exhibits render its purpose improper as a basis for gaining access to those materials, as shown by *In re Motions for Access*, 488 B.R. 281 (Bankr. D. Del. 2013).  In that case, upon which Movants place weighty reliance, the Delaware district court imposed severe constraints on the use of those portions of the Rule 2019 Exhibits that it directed be produced. Its order "authorizes Garlock to use such 2019 Exhibits *solely* in connection with the estimation proceedings in Garlock's chapter 11 bankruptcy cases pending in the North Carolina Bankruptcy Court, and *neither the 2019 Exhibits nor the information contained therein may be used for any other purpose*."  Order Implementing Opinion and Order Reversing Bankruptcy Court Orders and Granting Garlock Sealing Technologies LLC Access to 2019 Exhibits ¶ 2, *In re Motions for Access of Garlock Sealing Technologies LLC*, No. 11-1130 (D. Del. Mar. 14, 2013) (emphasis

added).  This Court itself reaffirmed those restrictions in the protective order that it entered in the

wake of the Delaware decision.[12]

42.     By the same protective order, this Court directed that "[n]either 2019 Exhibits nor

any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom may be . . .

(c) incorporated into or merged with any preexisting database that is to be used or maintained for

any purpose other than the Estimation Proceeding."  Order Governing Use and Confidentiality of

Certain Exhibits to Rule 2019 Statements from Other Bankruptcy Cases ¶ 14, dated Mar. 28,

2013 [Dkt. No. 2807].  It also ruled that the Rule 2019 Exhibits must be destroyed within one

year of substantial consummation of a Plan in this case.  *Id.* ¶ 19.

43.     Bowing to no such restrictions, Rawlings evidently means to sell access to

information extracted from Rule 2019 Exhibits to insurance companies for comparison to their

membership databases.  *See* Motion at ¶ 16 (stating that, if provided with Rule 2019 Exhibits,

Rawlings will use that information "to match the claimant's information to the Health Plans'

existing databases to identify any covered members who are seeking recovery for an asbestos-

related injury.").  Movants cannot demonstrate that they stand in any relationship to any specific

individuals among those listed on Rule 2019 Exhibits that endows them with any legitimate

interest in the identifying details and medical information they seek, yet the Motion demands that

those materials be turned over for Rawlings' commercial exploitation.  When Rawlings' declared

interest is to disseminate the information for its own commercial advantage, the Court can hardly

be confident in bland assurances that Rawlings will safeguard the information.

---

[12]    "Neither 2019 Exhibits, nor any analyses, conclusions, summaries, excerpts, redacted copies
derived therefrom, nor any knowledge obtained therefrom, shall be used for any purpose other
than the Estimation Proceeding."  Order Governing Use and Confidentiality of Certain Exhibits
to Rule 2019 Statements from Other Bankruptcy Cases ¶ 13, dated Mar. 28, 2013 [Dkt. No.
2807].

44.     Under this Court's protective order and the prior order of the Delaware district court referenced above, this Court should reject Rawlings' intended commercialization of the Rule 2019 Exhibits as not a proper purpose for seeking access to those confidential materials. The Court should deny the Motion accordingly.  *See In re 50-Off Stores, Inc.*, 213 B.R. 646, 659-60 (Bankr. W.D. Tex. 1997) ("under the facts of this particular case, this Court believes that a litigant's seeking to obtain information from a retention hearing involving the litigant's opposing counsel is an 'improper purpose' within the meaning of that term as used in *Nixon*, so that access should be denied") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)); *In re Am. Bus. Fin. Servs., Inc.*, 2008 WL 3906894, at *5 (Bankr. D. Del. Aug. 20, 2008) ("The Stipulated Protective Order allows the Trustee to use all of the confidential documents in defending himself in this adversary proceeding.  His efforts to use them in any other manner is not a legitimate purpose and therefore militates against disclosure.").

## JOINDER

45.     The law firms with clients on the Committee have authorized the Committee to state that they join in this Opposition, both in their individual capacities and on behalf of all their affected clients.

## CONCLUSION

The Court should deny the Motion and grant such other and further relief as justice may

require.

Dated: March 20, 2014                                Respectfully submitted,

                                                     **CAPLIN & DRYSDALE, CHARTERED**

                                                     By: /s/ Trevor W. Swett III
                                                     Trevor W. Swett III
                                                     Kevin C. Maclay
                                                     One Thomas Circle, NW
                                                     Suite 1100
                                                     Washington, DC  20005
                                                     Telephone:  (202) 862-5000
                                                     Facsimile:  (202) 429-3301
                                                     E-mail: tswett@capdale.com;
                                                     kmaclay@capdale.com


                                                     Elihu Inselbuch
                                                     600 Lexington Avenue, 21st Floor
                                                     New York, NY  10022
                                                     Telephone:  (212) 379-6000
                                                     E-mail: einselbuch@capdale.com


                                                     **MOON WRIGHT & HOUSTON, PLLC**
                                                     Travis W. Moon (Bar No. 1067)
                                                     227 West Trade Street
                                                     Suite 1800
                                                     Charlotte, NC 28202
                                                     Telephone: (704) 944-6560
                                                     Email: tmoon@mwhattorneys.com


                                                     *Co-Counsel for the Official Committee of
                                                     Asbestos Personal Injury Claimants*