**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| In re: | Case No. 10-BK-31607 |
| GARLOCK SEALING TECHNOLOGIES, LLC, *et al.*, | Chapter 11 |
| | Jointly Administered |
| Debtors.[1] | |

**MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS TO REOPEN THE RECORD OF
THE ESTIMATION PROCEEDING**

The Official Committee of Asbestos Personal Injury Claimants (the "**Committee**"), by and through the undersigned, hereby moves this honorable Court, pursuant to Federal Rules of Bankruptcy Procedure 9014(c), 7037 and 7054 and Federal Rules of Civil Procedure 37 and 54(b), to reopen the record of the estimation proceeding to permit the presentation of supplemental evidence after certain additional discovery (the "**Motion to Reopen**"). The Committee respectfully represents as follows:

1.  This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157 and 1334. This dispute concerns the evidentiary record presented at the estimation hearing of the Debtors' aggregate asbestos liability and discovery in connection therewith. The estimation hearing is a core proceeding within the adjudicatory authority of this Court. *See* 28 U.S.C. §

---

[1] The Debtors are Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company. As used herein, "**Garlock**" refers to Garlock Sealing Technologies LLC and Garrison Litigation Management Group, Ltd.

1048074

157(b)(2)(B) (core proceedings include "estimation of claims * * * for the purposes of confirming a plan under chapter 11"). Venue of this Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The grounds for this Motion to Reopen are fully set forth in the accompanying memorandum (the "**Memorandum in Support**"), but may be summarized as follows.

3. The Committee has discovered through its own outside efforts that Garlock has violated this Court's orders to produce documents to the Committee, and that Garlock's violations permitted Garlock to present false testimony to the Court at the estimation hearing—false testimony the Court incorporated into its findings.

4. The Court conceived of the estimation as a contest between two different approaches: the Committee's standard estimation methodology based on actual claims resolution history (the approach taken in every asbestos estimation ever completed) and Garlock's novel, highly theoretical, and assumption laden economic "model." Garlock persuaded the Court to depart from precedent and conclude that Garlock's real claims resolution experience was "useless" for estimation. It did so by purporting to show that a few plaintiffs' law firms drove up settlement values by suppressing evidence of their clients' exposures to asbestos from insulation products made by bankrupt manufacturers. Garlock featured just fifteen resolved cases (out of more than 10,000 from the decade of the 2000s) as illustrations of this supposed phenomenon, plus a tabulation of trust claims and bankruptcy ballots filed on behalf of approximately 190 additional resolved claims on the premise that each trust claim and ballot constituted the plaintiffs' "admissions" of product exposures not disclosed in the tort system.

5. But, it turns out that Garlock itself failed to produce in the estimation discovery materials that the Court ordered it to produce and that demonstrate in key cases that Garlock had

- 2 -

in abundance the evidence it claimed to lack. Garlock also persuaded the Court to treat trust claims as claimants' admissions of exposures to the products of the trusts' predecessors, when reports given elsewhere by Bates White, Garlock's chief expert and co-strategist for estimation, show that Garlock's assertion was knowingly false. Finally, the Committee has learned that Garlock and David Glaspy, one of its key witnesses, flouted an unequivocal obligation to produce correspondence between Mr. Glaspy and a particular plaintiffs' law firm bearing on the negotiation and settlement of asbestos personal injury claims. The emails they failed to produce put the lie to testimony Garlock elicited from Mr. Glaspy. Those emails show that the subject of claimants' exposures to third-parties' asbestos products did not enter into the negotiations and that his testimony holding up a particular settlement as illustrating the impact of supposed withholding of evidence by plaintiffs' counsel was simply false.

6. In short, the Court has been subjected to a misleading account of Garlock's litigation and settlement history, distorted by Garlock's sharp practice. The impact has been material, leaving a deep stain on the estimation record on which this Court based its estimation order. In view of new evidence and to prevent manifest injustice, the Court should reopen that record and receive supplemental proofs from the Committee.

7. Further discovery is necessary to reveal the full scope of the information that Garlock should have produced in estimation discovery but withheld from the Committee. That information may have a substantial impact on a proper aggregate estimate of mesothelioma claims, present and future, against Garlock.

8. Accordingly, this Court should allow the Committee certain additional discovery. The discovery needed is set forth in the Memorandum in Support and in the accompanying proposed order. It focuses on (i) information available to Garlock concerning the work sites and

ships that pertain to those relatively few settled claims that Garlock maintained at the estimation hearing were inflated by the supposed suppression of exposure evidence by plaintiffs or their counsel, (ii) communications between Garlock or its counsel and plaintiffs' counsel concerning those questioned claims, and (iii) Garlock and its counsel's internal evaluations of those claims. This discovery should not be restricted by privilege claims.  At the hearing, this Court found that Garlock has impliedly waived privileges by testimony it elicited at the estimation hearing.  Hr'g Tr. 1418:2-5 (July 26, 2013).  The Court should enforce that waiver to the full extent contemplated by the Federal Rules of Evidence, and thereby prevent unfair distortion of the record, by directing Garlock to produce all otherwise privileged communications that "ought in fairness to be considered together" with Garlock's self-serving account of its actual claims resolution history.  Fed. R. Evid. 502(a)(3).

9.   After the foregoing supplemental discovery had been rendered by Garlock, the Court should convene a status conference to determine how and when to receive supplemental evidence into the estimation record.

Dated: June 4, 2014

        Respectfully submitted,

**CAPLIN & DRYSDALE, CHARTERED**

By: */s/ Trevor W. Swett*
Trevor W. Swett III
(tswett@capdale.com)
Leslie M. Kelleher
(lkelleher@capdale.com)
James P. Wehner
(jwehner@capdale.com)
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

Elihu Inselbuch
(einselbuch@capdale.com)
600 Lexington Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 379-0005

**MOON WRIGHT & HOUSTON, PLLC**

By: */s/ Travis W. Moon*
Travis W. Moon
(tmoon@mwhattorneys.com)
227 West Trade Street
Suite 1800
Charlotte, NC 28202
Telephone: (704) 944-6560

*Co-Counsel for the Official Committee of Asbestos Personal Injury Claimants*