**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>                  Debtors.[1] | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING
SOLICITATION AND CONFIRMATION PROCEDURES AND SCHEDULE**

Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd. and

The Anchor Packing Company (the "Debtors"), by their undersigned counsel, file this motion

(the "Confirmation Procedures Motion" or "Motion") seeking entry of an order (i) establishing

procedures for solicitation and tabulation of votes to accept or reject the Debtors' First Amended

Plan of Reorganization, dated May 29, 2014 (the "Plan"); (ii) approving forms of Ballots; (iii)

approving the form and content of notice, and the manner of giving notice; and (iv) establishing

dates and deadlines in connection with confirmation of the Plan.[2]

In support of this Confirmation Procedures Motion, Debtors respectfully show the Court

as follows:

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company.

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

1

**Background**

1.    On January 10, 2014, the Court entered its Order Estimating Aggregate Liability,
*In re Garlock Sealing Technologies LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) (the "Estimation
Opinion"), finding "$25 million to be a reasonable and reliable estimate of Garlock's aggregate
liability to pending [mesothelioma] claimants" and finding that "$100 million is a reasonable and
reliable estimate of Garlock's liability to future mesothelioma claimants." *Id.* at 96-97. The Court
noted that "[b]ecause of the relative overwhelming magnitude of mesothelioma claims in
comparison to claims based on other diseases, the parties have agreed and the court has ordered
that this proceeding does not include any liability for non-mesothelioma claims or any claims
against Anchor." *Id.* at 75.

2.    On May 29, 2014—shortly before the fourth anniversary of the filing of these
cases—Debtors filed their Plan. The Plan relies on the provisions of the Bankruptcy Code
typically employed in confirmation of non-asbestos plans, not on section 524(g). It will set aside
$275 million for disputed and contingent present and future asbestos claims—more than double
the Court's $125 million estimate. Separate and apart from this $275 million fund, Debtors will
pay all settled asbestos claims in full on the Distribution Date. Finally, Debtors have also
committed to make $100 payments to unsecured claimants who elect Convenience Class
treatment, and have committed not to object to paying $100 to all asbestos claimants listed as
having "pending" claims in the Debtors' asbestos claims database. These Convenience Class
payments will help mitigate the possibility of a backlog in processing claims against the $275
million funds post-confirmation.

2

3.     The level of funding Debtors have committed in the Plan will ensure that all asbestos claimants ("GST Asbestos Claimants" in the Plan) are paid in full. Debtors will so prove at the confirmation hearing.

4.     In addition, the Plan's method of paying claimants preserves each claimant's right under the Bankruptcy Code to have his or her claim allowed through jury trial in the district court, if the claimant is entitled to such a trial and so elects. GST Asbestos Claimants holding disputed and contingent claims will have the opportunity to elect the Settlement Option or the Litigation Option. Claimants electing the Settlement Option will present their claims to a Settlement Facility funded with $245 million. Their claims will be evaluated under objective criteria that the Court in its Estimation Opinion found are relevant to the value of claims, including claimants' exposures to Garlock's former asbestos-containing products, their exposures to other asbestos-containing products, and demographic characteristics that bear on claimants' potential damages. Claimants with the most colorable claims against Garlock would have the potential to receive substantial sums from the Settlement Facility, up to a maximum value of $2.5 million. All claimants choosing the Settlement Option would obtain payments without the cost and burden of litigation, to the benefit of the Court, the claimants, and the Reorganized Debtors.

5.     Claimants not satisfied with the Settlement Option will retain the opportunity to litigate their claims before juries post-confirmation. They will assert their claims by filing proofs of claim in the Bankruptcy Court, and then litigating their claims against Reorganized Garrison pursuant to a Case Management Order ("CMO"). The CMO preserves claimants' rights to trial by jury in the district court (for claimants who are entitled to trial), and thus preserves asbestos claimants' rights in allowance litigation under 28 U.S.C. §§ 157(b)(5) and 1411. The CMO also

3

contains state-of-the-art procedures, already adopted by some courts around the country, to prevent the "manipulation of exposure evidence by plaintiffs and their lawyers" that the Court found had occurred in asbestos litigation against Garlock, resulting in inflated recoveries before the Petition Date. Estimation Opinion at 82. Any claimants who obtain judgments under the Litigation Option will be paid in full from two sources: a $30 million Litigation Fund dedicated wholly to litigated claims, plus (from the Settlement Facility) whatever payment the claimant would have been entitled to receive under the Settlement Option. These sums will also be used to fund litigation expenses incurred by Reorganized Garrison.

6.      The Plan thus provides an economical and common-sense approach to resolving these bankruptcy cases, by providing funds well in excess of the Court's Estimation Opinion; preserving each claimant's procedural rights in allowance litigation; but offering a Settlement Option that will permit generous payments based on objective criteria without the delay and cost of litigation. Claimants will be paid in full, and the Reorganized Debtors will be discharged, enabling them to benefit from the fresh start provided under the Bankruptcy Code.

7.      Moreover, the several classes of asbestos claimants are not impaired by the Plan. These claimants retain their full legal rights under existing law. They have the option to have their claims considered through the allowance process of the Bankruptcy Code and, if allowed, paid in full plus legal interest when allowed. Claims treated in this way are not impaired. *See, e.g.*, *In re Ltd. Gaming of Am., Inc.*, 228 B.R. 275, 290 (Bankr. N.D. Okla. 1998) ("The Court does not believe that the claims of creditors are impaired by a plan which provides for full payment of those claims after their final determination by a court of competent jurisdiction."); *In re Smith*, 123 B.R. 863, 867 (Bankr. C.D. Cal. 1991) ("[A] plan may limit payment of claims to

4

'the extent allowed,' without impairing them; for until claims are allowed, or deemed allowed, the holders thereof are not entitled to distribution from the bankruptcy estate.").

8.      Because asbestos claimants are not impaired, and no other classes of claimants are impaired under the Plan, Debtors do not need to obtain acceptance of the Plan by any class of claimants in order to confirm the Plan. *See* 11 U.S.C. § 1129(8), (10). All claimants will be deemed to have voted in favor of the Plan pursuant to Sections 1124 and 1126(f) of the Bankruptcy Code.

9.      Claimants will, of course, have the opportunity to object to confirmation of the Plan and have their objections heard at the Confirmation Hearing. And as described below, because Debtors have both known and unknown claimants, including known and unknown GST Asbestos Claimants, Debtors will have to give extensive publication notice of this opportunity to object in order to provide claimants with due process. Debtors' notice expert currently estimates this publication notice will cost in the range of $3 million to $4 million.[3] Moreover, because of the need to place notices in a wide variety of media, and give claimants the opportunity to receive and act on such notices, the notice period could take up to four months.

10.      If the Plan proceeded to confirmation without votes by any classes of claimants, and the Court determined at confirmation that a class of claimants is impaired, or that the votes of any class of claimants are otherwise relevant to confirmation of the Plan, Debtors would have to solicit votes on the Plan. This would likely require another $3 million to $4 million in publication notice costs and would also cause considerable delay in the confirmation process (likely more than six months).

---

[3] The Court has authorized Debtors to retain Kinsella Media, LLC as Notice Agent. *See* Docket No. 3761.

11.     To avoid this potential duplicative cost and delay caused by a second noticing process, Debtors are proposing to solicit the various classes of GST Asbestos Claimants (and certain other classes of claimants) at the same time as they give notice of the Plan, Confirmation Hearing, and opportunity to object to the Plan, notwithstanding Debtors' belief that no classes of claims are impaired under the Plan, and subject to the Debtors' right to assert that votes solicited are not relevant to confirmation of the Plan. Then, the result of this balloting will be available to use at confirmation if the Court determines that any class of claimants is impaired or that their votes are otherwise relevant to confirmation of the Plan. This manner of proceeding will preserve any rights that claimants may have, while saving costs for the estate and eliminating delay in the confirmation process.

12.     For these reasons, Debtors respectfully request the following relief.

## **Relief Requested**

13.     Debtors move the Court for an order substantially in the form attached as **Exhibit A** (the "Confirmation Procedures Order"), which approves the Voting Procedures (attached as **Exhibit B**), approves the form of Ballots (attached to the Voting Procedures), approves the form and manner of notice, and sets a schedule for confirmation of the Plan.

## **A. Contingent, Disputed, and Unliquidated Claims Must Be Temporarily Allowed for Voting Purposes Before They May Vote**

14.     Bankruptcy Code section 1126(a) provides that only "[t]he holder of a claim or interest **allowed** under section 502 of this title may accept or reject a plan" (emphasis added). Moreover, to be allowed in any sense (whether for voting purposes or any other purpose), a creditor "whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule;

6

any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2). Section 502(a) then provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."

15.     These provisions mean that no claimant in a bankruptcy case who holds a disputed and contingent claim may vote without filing a claim and having its claim allowed, at least for voting purposes. The Fourth Circuit has made clear that if a party in interest objects to a claim, the claimant is not permitted to vote. "These provisions [sections 1126 and 502] allow **only holders of claims to which no party has objected to vote on Chapter 11 plans.**" *Jacksonville Airport, Inc. v. Michkeldel, Inc*, 434 F.3d 729, 731 (4th Cir. 2006) (holding that judgment creditor who had filed a proof of claim that had been objected to was not entitled to vote on Chapter 11 plan) (emphasis added). "As long as a party in interest objects to a claim—regardless of the objection's validity or merit—the claim cannot be deemed allowed." *Id.* at 732.

16.     In a disputed-claim situation, section 502 instructs the court to "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and . . . allow such claim in such amount," and to disallow a claim to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b).

17.     The Bankruptcy Code and Rules do not, however, require final adjudication of disputed and contingent claims before they can vote on a plan. The Bankruptcy Code permits a court to temporarily allow claims for voting purposes, and to use estimation (for voting purposes only) as a quick way to accomplish such temporary allowance. "Federal R. Bankr. P. 3018(a)

allows a court to 'temporarily allow [a] claim or interest in an amount the court deems proper for the purpose of accepting or rejecting a plan.' The statutory predicate to Rule 3018(a) is section 502(c) of the Code, which allows for the estimation of 'any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the estate.'" *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). Pursuant to these provisions, courts routinely estimate contingent and disputed claims to allow them temporarily for voting purposes. *See, e.g.*, *id.*; *In re Hydrox Chem. Co.*, 194 B.R. 617, 622 (Bankr. N.D. Ill. 1996). Such estimation for voting purposes "will not have any preclusive effect upon the ultimate disposition" of any claim so estimated. *Ralph Lauren Womenswear*, 197 B.R. at 775.

18.     As in the aggregate estimation this Court has already conducted, estimation for voting purposes "must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all." *Id.* (quoting *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994)); *see also Hydrox Chem.*, 194 B.R. at 624 (estimating for voting purposes based on "the probability that Claimants can successfully recover under the RICO statute").

## B. Debtors Propose Criteria for Temporary Allowance That Are Already Embodied in the Estimation Opinion

19.     Debtors do not seek a bar date for GST Asbestos Claims other than Settled GST Asbestos Claims. Such a bar date is unnecessary in the context of the Plan, given that no GST Asbestos Claims (other than Settled GST Asbestos Claims) will be barred during the bankruptcy case under the Plan, but will instead have the opportunity to assert claims under the Settlement Option or Litigation Option post-confirmation.

8

20.     Instead, to comply with the Bankruptcy Code and the Fourth Circuit's instructions about the voting process in bankruptcy cases, Debtors propose that claimants who wish to vote file ballots that will serve as both their proofs of claim and ballots. Claimants will make certifications and attach documents to their ballots that will provide a minimal showing that their claims have potential merit. These criteria are already embodied in the Court's Estimation Opinion, as described in more detail below. Claimants who do not meet these minimum criteria would not be temporarily allowed. Debtors would object to temporary allowance of their claims for voting purposes (and allowance for any other purpose), and notice a hearing no later than forty-five (45) days prior to the Confirmation Hearing. The claimant would have the opportunity to file a response to such objection to temporary allowance.

21.     This process will not initiate mass adjudication of contingent and disputed GST Asbestos Claims. Instead, it will permit temporary allowance of GST Asbestos Claims (and other claims) for voting purposes only, enabling a vote on the Plan in the event the Court determines that any class of claims is impaired or that the vote is otherwise relevant to confirmation.[4] For the avoidance of doubt, the relief requested in this Motion relates to allowance of claims for voting purposes only, and Debtors reserve all rights to object to the allowance of any claim for any purpose other than for voting, even if such claim were temporarily allowed for voting purposes under the procedures set forth in this Motion.

---

[4] Debtors will also file objections to all contingent and disputed GST Asbestos Claims to preserve their rights (and the rights of the entities charged by the Plan with dealing with allowance of the claims), but such objections will not be prosecuted, and will instead be stayed pending resolution of the claim by the Settlement Facility or through allowance proceedings after the claimant filed a new proof of claim, as required by the CMO, which would supersede the ballot.

22.     The specific criteria that Debtors propose for temporary allowance of claims for voting purposes are set forth in paragraphs 23 through 48 below. Debtors request that the Court approve the forms of Ballots attached to the Voting Procedures, embodying these criteria.

**1. Current GST Asbestos Claims (Class 4)**

23.     The bulk of the GST Asbestos Claims are in Classes 4 and 5: Current GST Asbestos Claims (Class 4) and Future GST Asbestos Claims (Class 5). Current GST Asbestos Claims consist of GST Asbestos Claims that are not settled or the subject of a judgment, and where alleged disease has been manifested as of the date of the Confirmation Order. Current GST Asbestos Claimants have been classified separately from Future GST Asbestos Claims because of the conflicting interests current and future claimants have with respect to distribution of the funds provided by the Plan. *See, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

24.     The Court recognized in its Estimation Opinion that a GST Asbestos Claim cannot be allowed if the claimant has no evidence of exposure to asbestos from a Garlock product. "Such exposure is a requirement to recovery, so it is appropriate to value at zero the claims of those 'claimants' who asserted no exposure to Garlock products." Estimation Opinion at 96.

25.     The requirement of exposure to a Garlock product is of course only one issue on which a claimant must carry the burden of proof in order to recover. For example, the claimant must also prove causation. In mesothelioma cases against Garlock, this leads to a very low likelihood of success for any claimant entitled to a trial. *See* Estimation Opinion at 96. Debtors will prove at the Confirmation Hearing that claimants alleging other diseases are even less likely to succeed.

10

26.     Yet it is clear that any claimant who cannot show exposure to asbestos from a Garlock product—or who does not contend that such exposure contributed to causing his or her disease—does not have any chance of success and thus cannot have a presently allowed claim. Such a claimant has no more right to cast a vote on a Chapter 11 plan than a person off the street; both have no connection to these Debtors. *See* Estimation Opinion at 96 ("[I]t is appropriate to value at zero the claims of those 'claimants' who asserted no exposure to Garlock products.").

27.     For this reason, to be temporarily allowed for voting purposes, any Class 4 Current GST Asbestos Claimant should have to certify exposure to asbestos from a Garlock product; contend that such exposure contributed to causing his or her asbestos-related disease; and provide some evidence of such exposure.

28.     Debtors' form of ballot (based on Official Form No. 14 but modified to embody these requirements) requires these certifications, and provides that a claimant may substantiate his or her exposure to asbestos from a Garlock product by submitting an affidavit or other sworn statement or a deposition or other testimony demonstrating personal knowledge of such exposure.

29.     The Ballot also requires a certification of disease. It then provides different voting amounts for different diseases. For pleural mesothelioma claimants, the voting amount is $10,000, which is the approximate average share (in nominal dollars) of the Court's aggregate estimate of mesothelioma claims for each claimant alleging exposure to asbestos from Garlock products.

30.     For claimants alleging peritoneal mesothelioma (a rarer kind of mesothelioma that does not originate in the pleura around the lung), asbestos-related lung cancer, asbestos-related laryngeal cancer, and asbestosis, Debtors propose using $1 as the voting amount. This will give

such claimants weight in the "number" vote under Bankruptcy Code section 1126, without permitting them to swamp the pleural mesothelioma claims in the "amount" vote, which is appropriate given "the relative overwhelming magnitude of mesothelioma claims in comparison to claims based on other diseases." Estimation Opinion at 75. Also, temporary allowance of these claims will be for voting purposes only, to avoid the delay that would be caused by having an aggregate estimate of these claims prior to soliciting the vote. Debtors reserve all rights to dispute these claims and to establish that these claims should be estimated in the aggregate at zero because they have no arguable merit against the Debtors.

**2. Future GST Asbestos Claims (Class 5)**

31.    Class 5 consists of Future GST Asbestos Claims, which are those GST Asbestos Claims whose alleged disease will manifest after the Confirmation Date. These claimants are represented by the FCR, Mr. Joseph W. Grier, III.

32.    In the Fourth Circuit, Future GST Asbestos Claimants hold "claims" under the Code. *Grady v. A.H. Robins Co.,* 839 F.2d 198, 200-03 (4th Cir.1988). Therefore, to the extent Current GST Asbestos Claimants have a right to vote, Future GST Asbestos Claimants have a right to vote as well. *See* 11 U.S.C. § 1126(a) ("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan.").

33.    However, because the identities of Future GST Asbestos Claimants will not be known before confirmation, the FCR who represents them must cast their Ballots. This is within the scope of the FCR's authority under the Court's order appointing him. *See* Order Granting Debtors' Motion for Appointment of Joseph W. Grier, III as Future Asbestos Claimants' Representative (Docket No. 512) (appointing Mr. Grier to "protect the rights of persons who may, subsequent to confirmation of the Debtors' plans of reorganization, hold Future Asbestos

Claims . . . . The Future Asbestos Claimants' Representative shall represent the interests of, appear on behalf of, and be a fiduciary to the holders of Future Asbestos Claims.").

34.    Debtors propose temporary allowance for voting purposes of Future GST Asbestos Claims that will allege asbestos-related disease and allege that exposure to asbestos from a Garlock product contributed to causing it—just as Current GST Asbestos Claims meeting such criteria will be temporarily allowed. There is no need to determine the number or individual amount of such Future GST Asbestos Claims for voting purposes because they have been separately classified, and the FCR will cast all their votes.

35.    Similarly, there is no need for certifications from the FCR. There will concededly be future claimants allegedly exposed to asbestos from Garlock products. Thus, the FCR has a constituency of future claimants that should be temporarily allowed for voting purposes, giving him the right to cast a Ballot on the Plan on behalf of his Class.

## 3. Pre-Petition Judgment GST Asbestos Claims (Class 6)

36.    Pre-Petition Judgment GST Asbestos Claims consist of GST Asbestos Claims that were the subject of a pre-petition judgment that is currently on appeal. Debtors believe there is one such judgment.

37.    Debtors propose that this claim or claims be temporarily allowed for voting purposes only, in the amount of the judgment. This is of course without prejudice to Debtors' rights in the appeal.

## 4. Settled GST Asbestos Claims (Class 3)

38.    Under the Plan, Reorganized Garlock will pay all Allowed Settled GST Asbestos Claims in full, relieving the Settlement Facility from paying these claims or having any risk that

they exceed estimated amounts (about which there is also a dispute). For this reason, Debtors have moved for a bar date for Settled GST Asbestos Claims, which will permit the allowance process and the fixing of Reorganized Garlock's responsibility for these claims to commence promptly. By contrast, under the procedures outlined in the Plan, all other GST Asbestos Claims will proceed to the allowance process after confirmation.

39.     Debtors propose that Settled GST Asbestos Claims be temporarily allowed, for voting purposes only, in the amount claimed in their proofs of claim, unless an objection is filed to the claim and such objection is pending at the time of the vote, in which case the claim should not be temporarily allowed for voting purposes or permitted to vote in Class 3. Because these claimants will be filing proofs of claim pursuant to the bar date prior to the Voting Deadline, their Ballots need not serve as proofs of claim, but need only indicate how they vote on the Plan in a form similar to Official Form No. 14.

40.     Debtors also propose that if any Settled GST Asbestos Claim is allowed for all purposes before confirmation, its vote should be counted in the amount at which it is ultimately allowed. Any Settled GST Asbestos Claim that is disallowed as not being settled prior to the Voting Deadline would retain the opportunity to vote as a Class 4 Current GST Asbestos Claim, upon submitting the appropriate form of Ballot.

**5. General Unsecured Claims (Class 7)**

41.     Like Settled GST Asbestos Claims, Allowed General Unsecured Claims will be paid in full by Reorganized Garlock. A bar date for these claims has already passed and thus any claimant in this Class entitled to vote has already filed a proof of claim. Debtors retain the right to object to General Unsecured Claims.

14

42.      Also like Settled GST Asbestos Claims, Debtors propose that these claims be temporarily allowed for voting purposes in the amount claimed in their proofs of claim or set forth in the Debtors' schedules if no proof of claim has been filed and the Debtors did not schedule such claim as contingent, unliquidated, or disputed, unless an objection is filed to the claim and such objection is pending at the time of the vote, in which case the claim should not be temporarily allowed for voting purposes or permitted to vote in Class 7. Because these claimants have filed proofs of claim, their Ballots need not serve as proofs of claim, but need only indicate how they vote on the Plan in a form similar to Official Form No. 14.

**6. Convenience Class Claims (Class 8)**

43.      Class 8 is a Bankruptcy Code section 1122(b) convenience class. Any unsecured claimant against Debtors Garlock or Garrison may elect Convenience Class treatment in the Ballot and receive $100 from Reorganized Garlock in full satisfaction of his or her claim.

44.      Any such claimant must, like any claimant, file a proof of claim and be allowed before being entitled to receive $100. For Convenience Class claimants who have not filed a proof of claim, the Ballot will serve as the Holder's proof of claim. All Convenience Class claimants will elect Convenience Class treatment in the ballot.

45.      For the purpose of protecting the Settlement Facility from an influx of claims that could present an administrative burden, Debtors have agreed in the Plan not to object to allowance as a Convenience Class claim of any GST Asbestos Claim listed as "pending" in the May 2011 version of the Garrison asbestos claims database. Any such claim will, upon verification that the claim is indeed "pending" in the Garrison database, be allowed for all purposes as a Convenience Class claim in the amount of $100, to be paid on the Effective Date. Debtors will make available on their publicly available website a list of the claimants falling into

15

this category. Then, claimants electing Convenience Class treatment may certify that they are on

the list. Upon verification of basic identifying information, their claims would be allowed for

voting and all other purposes in the amount of $100. Attorneys representing claimants of this

kind will have the opportunity to cast a single ballot for all such claimants (a "master ballot") for

administrative convenience.

46.    Unsecured claimants who do not have claims listed as "pending" in the Garrison

database may also elect Convenience Class treatment, and based on the number of such

claimants, Debtors may or may not object to their allowance as Convenience Class Claims in the

amount of $100. Pending Debtors' decision on whether the claims should be allowed for all

purposes, these claims should be temporarily allowed, for voting purposes only, in the amount of

$100 if they provide the following certifications and documentation providing a minimum

showing that they in fact have a claim against Garlock or Garrison:

(i)    The claimant certifies that (a) he filed a complaint based on asbestos-related personal injury after June 5, 2010, (b) the claimant would have named Garlock or Garrison but for the automatic stay, and (c) the claimant experienced exposure to asbestos from a Garlock product. The claimant attaches a copy of the complaint and a document satisfying the requirements for demonstrating exposure to asbestos from a Garlock product in the Class 4 Ballot.

(ii)    The claimant certifies that (a) he settled an asbestos personal injury claim against Garlock or Garrison before June 5, 2010, and (b) the claim has not been paid. The claimant attaches a copy of the agreement evidencing the settlement.

(iii)    The claimant certifies that (a) he holds an unsecured claim not based on asbestos personal injury, and (b) the claim has not been paid.

16

**7. GST and Garrison Equity Interests (Classes 11 and 12)**

47.      Under the Plan, the GST Equity Interests and Garrison Equity Interests, all held

by the Parent, are impaired. Debtors propose to solicit the vote of the Parent, the interest holder

in each of these classes.

**8. Other Classes**

48.      Debtors do not anticipate any argument that Classes 1 (Priority Claims), 2

(Secured Claims), 9 (Anchor Claims), 10 (Intercompany Claims), and 13 (Anchor Equity

Interest) are impaired. Debtors therefore propose not soliciting votes from these classes. If any

party in interest believes these classes should be solicited, they should raise this objection in a

response to the Disclosure Statement or this Motion, and Debtors will solicit them in order to

avoid the delay and expense of a second solicitation.

**C. Debtors Propose a Comprehensive Notice Program That Will Afford Due Process to All
Claimants**

49.      Debtors will give notice of the Plan, the solicitation, and claimants' opportunity to

object to confirmation of the Plan. Due process requires "notice reasonably calculated under all

the circumstances to apprise [creditors] of the pendency of the action and afford them an

opportunity to present their objections." *State of Maryland v. Antonelli Creditors' Liquidating

Trust*, 123 F.3d 777, 783 (4th Cir. 1997) (quoting *Mullane v. Central Hanover Bank and Trust,*

339 U.S. 306 (1950)). Whether a particular notice program is reasonably calculated to apprise

interested parties of the solicitation and Plan depends upon the particular facts and

circumstances. *See Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 484 (1988).

Generally, known creditors are entitled to actual notice, while unknown creditors are entitled to

constructive notice of a bar date. *See In re J.A. Jones, Inc.*, 492 F.3d 242, 249 (4th Cir. 2007). In

17

addition, Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all creditors and interest holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan.

50.    The Court has authorized Debtors to retain Kinsella Media, LLC ("Kinsella") as Notice Agent. *See* Docket No. 3761. Kinsella is a nationally recognized firm specializing in legal notice, particularly in the areas of class action and mass tort litigation, including bankruptcy cases involving large numbers of tort claims. Kinsella has devised numerous notice programs in asbestos bankruptcy cases, beginning with the *Johns-Manville* case in the 1980s.

51.    Kinsella has devised the Notice Program attached as **Exhibit C** to this Motion. The Notice Program provides for direct notice to known GST Asbestos Claimants (and other classes of claimants), and publication notice to unknown GST Asbestos Claimants.

52.    Direct notice will be provided (in the form of a Solicitation Package) to each creditor by mailing to each attorney for a GST Asbestos Claimant identifiable from the May 2011 Garrison asbestos claims database, the Personal Injury Questionnaires ("PIQs"), or statements filed pursuant to Bankruptcy Rule 2019 (or to the claimant's address if no attorney has appeared on the creditor's behalf), for each creditor represented by that attorney, (a) a CD-ROM containing a copy of (i) the order approving the Disclosure Statement (the "Disclosure Statement Order"), (ii) the Disclosure Statement as approved by the Bankruptcy Court, (iii) the Disclosure Statement exhibits with an attached copy of the Plan, (iv) the Voting Procedures, and (v) forms of Ballots and instructions; and (b) a paper copy of the court-approved Confirmation Hearing Notice. Debtors will also serve a Solicitation Package on the FCR, as representative for future claimants, and on General Unsecured Claimants.

53.     The Debtors propose to prepare and file a certificate of service listing all GST Asbestos Claimants that, based on the May 2011 Garrison asbestos claims database, the PIQs, or statements filed pursuant to Bankruptcy Rule 2019, they believe are be associated with each law firm, and after service, to provide proof of service on those GST Asbestos Claimants by proof of service on the law firm representing each such claimant.

54.     For claimants who are not being solicited, and for all parties on the Updated Master Service List (Docket No. 3633), Debtors will instead provide (a) a CD-ROM containing a copy of (i) the order approving the Disclosure Statement (the "Disclosure Statement Order"), (ii) the Disclosure Statement as approved by the Bankruptcy Court, (iii) the Disclosure Statement exhibits with an attached copy of the Plan, (iv) the Voting Procedures, and (v) notification of non-solicitation and non-voting status, including instructions on how to obtain copies of the Solicitation Package, if so desired ("Notification of Non-Solicitation and Non-Voting Status"); and (b) a paper copy of the court-approved Confirmation Hearing Notice. A copy of the proposed Notification of Non-Solicitation and Non-Voting Status is attached as **Exhibit D**.

55.     Debtors will provide notice by publication to unknown GST Asbestos Claimants. Kinsella has devised a publication notice program based on the history of Garlock's asbestos-containing products, the demographic characteristics of GST Asbestos Claimants, and other facts. The core of the program will be paid media, focusing on television, national newspaper supplements, national consumer magazines, local newspapers, and online media. Kinsella estimates that this program will reach 95.5% of men 65 and older, on average 4.2 times each; 94.9% of adults 65 and older, an average 4.2 times each; 90.7% of adults 45 and older, on average 3.3 times each; and 88% of adults 35 and older, on average 3.1 times each. The program will cost between $3 million and $4 million.

56.    In addition to paid publication notice, Kinsella will distribute a notice to trade unions in which many GST Asbestos Claimants would have been members, encouraging the unions to include the notice in their newsletters or other publications. Kinsella will also issue press releases to media encouraging them to run stories about the solicitation and Plan process. Notice provided by these means would be in addition to the reach and frequency described in the preceding paragraph.

57.    Debtors have attached as **Exhibit E** to this Motion their proposed Confirmation Hearing Notice, and also attached as Exhibit B to the Notice Program (**Exhibit C**) their proposed Publication Notice. Kinsella has designed the Publication Notice to alert GST Asbestos Claimants that their rights may be affected, using plain language that will be understood by such claimants. The Publication Notice will direct claimants to the Debtors' website and a toll-free number where they may obtain further information about the solicitation and the opportunity to support or object to the Plan. Kinsella will develop and make available the television notice, Internet notice, and any other notices in advance of the hearing on this Motion.

**D. Debtors Propose a Schedule That Would Result in a Confirmation Hearing in July 2015**

58.    Finally, Debtors propose in the Confirmation Procedures Order a schedule that would result in a Confirmation Hearing in July 2015 if the Disclosure Statement is approved by the end of August 2014.

59.    Debtors propose that the Balloting Agent distribute Solicitation Packages in the manner required by the Notice Program on or before the date that is 30 calendar days after the date on which this Court enters an order approving the adequacy of the Disclosure Statement (the "Disclosure Statement Order").

60.     Debtors request that the Court set the deadline for ballots to be received by the Balloting Agent (the "Voting Deadline") for 150 days after entry of the Disclosure Statement Order. This period would give sufficient time for Kinsella to place the media called for by the Notice Program; have the media run for three months; and give any unknown claimant who may receive notice at the end of the publication notice period one month to obtain a ballot and submit it before the Voting Deadline. Known claimants would have even more time, as they would receive their Solicitation Packages months before the Voting Deadline.

61.     Prior to the Confirmation Hearing, Debtors would have the opportunity to file objections to the temporary allowance for voting purposes of any claim, as not meeting the criteria for temporary allowance in the Voting Procedures, and notice a hearing no later than forty-five (45) days prior to the Confirmation Hearing. Claimants would have the opportunity to respond.

62.     Debtors propose that the Court, pursuant to Bankruptcy Rule 3020(b)(1), set the deadline for filing objections to the Plan (the "Objection Deadline") for the same day as the Voting Deadline. Debtors request that the Court direct that objections to confirmation of the Plan (or proposed modifications) (i) be in writing, (ii) state the name and address of the objecting party and the nature of any objection or proposed modification, and (iii) be filed, together with proof of service, with the Bankruptcy Court and served so that they are received by (a) the Clerk of the Court, (b) counsel for the Debtors, (c) counsel to all official committees, and (d) the Bankruptcy Administrator, at the addresses set forth in the Confirmation Hearing Notice, no later than the Objection Deadline at 5:00 p.m., prevailing Eastern time.

63.     Finally, Debtors request that the Court set the Confirmation Hearing for July 15, 2015. If the Disclosure Statement Order is entered by September 1, 2014, this would leave over

five months between the Voting/Objection Deadline and the start of the Confirmation Hearing for responses to objections; fact discovery pertaining to objections; deadlines for service of expert reports from experts who may testify at the Confirmation Hearing; and expert depositions. Debtors request that a status conference concerning these pretrial deadlines take place as soon as possible after the Voting/Objection Deadline.

## Notice

64.     Notice of this Confirmation Procedures Motion has been given to the parties identified on the Updated Master Service List (Docket No. 3633), as well as any party that has filed a docketed request for notices under Bankruptcy Rule 2002 since the filing of the Updated Master Service List. Pursuant to the Order Establishing Notice Procedures, entered on June 8, 2010 (Docket No. 48), and in light of the nature of the relief requested, Debtors submit that such notice constitutes good and sufficient notice of this Motion, and that no other or further notice is necessary or required.

## No Prior Request

65.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, Debtors respectfully request that the Court enter an order substantially in the form attached hereto (i) approving the Voting Procedures; (ii) approving the forms and distribution of the Ballots; (iii) approving the Notice Program and Notices; and (iv) establishing dates and deadlines in connection with confirmation of the Plan.

*[signature appears on following page]*

[*signature page to Debtors' Motion for Entry of an Order Approving Solicitation and Confirmation Procedures and Schedule*]

This 24th day of June, 2014.

Respectfully submitted,

/s/ Garland S. Cassada
_____
Garland S. Cassada
N.C. Bar No. 12352
Jonathan C. Krisko
N.C. Bar No. 28625
Richard C. Worf, Jr.
N.C. Bar No. 37143
Ty E. Shaffer
N.C. Bar No. 38495

ROBINSON BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:     (704) 377-2536
Facsimile:     (704) 378-4000

gcassada@rbh.com
jkrisko@rbh.com
rworf@rbh.com
tshaffer@rbh.com

*Special Corporate and Litigation Counsel to the Debtors Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company*