IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
**Charlotte Division**

| | |
|---|---|
| In Re:  ) | |
| ) | Chapter 11 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al.  ) | Case No. 10-31607 |
| ) | (Jointly Administered) |
| Debtors.[1]  ) | |

**MOTION BY COLTEC INDUSTRIES, INC. FOR THE APPOINTMENT OF
AN INDEPENDENT FEE EXAMINER AND OFFICER OF THE COURT
PURSUANT TO 11 U.S.C. § 105(a) AND F.R.Ev. 706(a) AND FOR
MODIFICATION OF INTERIM COMPENSATION PROCEDURES
FOR CERTAIN PROFESSIONALS EMPLOYED PURSUANT TO 11 U.S.C. § 327**

Coltec Industries, Inc. ("Coltec"), a party in interest in these Chapter 11 cases, hereby respectfully moves, by and through counsel, for (i) the appointment of an independent fee examiner as an officer of the Court pursuant to 11 U.S.C. § 105(a) and F.R.Ev. 706(a), and (ii) for related modifications to the Administrative Order Under 11 U.S.C. 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 233] (the "Interim Compensation Order").

**I.
JURISDICTION AND AUTHORITY**

This Court has jurisdiction to hear this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The statutory predicate for the relief sought herein is 11 U.SC. §§ 105, 330 and F.R.Ev. 706(a) and is discussed in more detail later in this motion. Supplementary authority for this motion may also be found in F.R.Ev. 706(a).

---

[1] The Debtors in these jointly administered cases are Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and The Anchor Packing Company (collectively, the "Debtors").

1

## II.
## STATEMENT OF THE BASIS FOR THE MOTION

In its Order Estimating Aggregate Liability entered on January 10, 2014 [Docket No. 3296](the "Estimation Order"), this Court concluded that the Debtors' historical claims settlement expenditures were significantly driven by the avoidance of costs the Debtors would otherwise have incurred to defend against those claims in the tort system. Costs of defense, in other words, rendered the Debtors' historical claims settlement values unreliable proxies when making an aggregate estimate of the Debtors' actual liabilities to claimants under Section 502(c) of the Bankruptcy Code. It is the goal of this Motion to ensure that the "costs of bankruptcy" – specifically, the costs incurred by the Debtors to compensate professionals employed to represent and advise the various constituencies in these chapter 11 cases – do not similarly distort and inflate the ultimate amounts that will be required to resolve the Debtors' liabilities to present and future asbestos personal injury claimants.

The Debtors' bankruptcy cases are large and complex with multiple professionals and consultants, all of them zealously acting on behalf of their clients. On June 5, 2010, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code"). On June 16, 2010, the Court entered an order, later amended, appointing an Official Committee of Asbestos Personal Injury Claimants (the "ACC") [Docket Nos. 101 and 260]. On June 17, 2010, the Court entered an order appointing an Official Committee of Unsecured Creditors (the "UCC") [Docket No. 104]. Finally, on September 16, 2010, Joseph W. Grier, III was appointed as Future Asbestos Claimants' Representative (the "FCR") [Docket No. 512].

The Debtors, the ACC, the UCC and the FCR have each been authorized to engage multiple professional firms to assist and advocate for them in this case. There are currently over twenty professional firms engaged by these parties, each of which regularly submit fee applications under

2

the Interim Compensation Order. For reference, a listing of those firms, grouped by their associated party, is provided in **Exhibit A** attached hereto.[2]

By April 13, 2012, the date on which the Court set a schedule and a process for conducting an aggregate estimation of mesothelioma claims, professional fees and expenses submitted for payment from the Debtors' estates had already reached over $17.8 million. At that time, Coltec was already considering this motion. In its April, 2012, Order for Estimation of Mesothelioma Claims [Docket No. 2102], the Court signaled its intent to permit the contending parties wide latitude to explore and develop, to conduct discovery relative to, and to present at trial their respective theories of aggregate estimation. In deference to that intention, Coltec elected to postpone this motion, knowing that the process and schedule set for the estimation would necessarily involve extensive efforts by the various professionals representing or advising the contending parties.

Since the entry of the Court's January 10, 2014, Estimation Order, the activity level has scarcely abated, and incessant litigation over subsidiary and collateral issues unrelated to the formulation and presentation of plans of reorganizations for the Debtors have given new impetus to the need for an independent evaluation of the professional fees and expenses being incurred in these cases. Strikingly, in the first five months of 2014, $7.1 million in fees and expenses have been generated; almost all after the Estimation Order was entered on January 10, 2014.[3] Based on interim fee applications filed and monthly fee statements submitted covering periods through June 30, 2014, over $105.2 million in professional fees and expenses have been generated by various

---

[2] This listing does not include professionals engaged to provide services to the Debtors in the ordinary course of the Debtors' regular business activities, and such professionals are also not subject to the Interim Compensation Order. Coltec is not requesting that the Interim Compensation Order be extended to such "ordinary course" professionals nor does it ask that a fee examiner be appointed to review invoices submitted by them to the Debtors.

[3] While this total is almost equally divided between "Debtors' side" professionals and "Claimants' side" professionals, a substantial portion of the fees submitted by the "Debtors' side" professionals during the first five months of 2014 have been attributable to the preparation, revision, and filing of the Debtors' plan, disclosure statement, and supporting documents.

3

professionals in the four years of these cases.[4]

A comparison of the professional fees in these cases to the fees incurred in other Chapter 11 cases dominated by asbestos personal injury claims demonstrates the degree to which the professional fees in these Debtors' cases are atypical and call for the heightened scrutiny provided by an independent examiner. To take only one illustration, counsel for the ACC in these cases also represented the asbestos personal injury claimants' committee in *In re W.R. Grace & Co., et al.,* Case No. 01-01139 before the United States Bankruptcy Court for the District of Delaware, a highly contentious asbestos chapter 11 case that has been pending for some thirteen years. The W.R. Grace case involved assets and alleged asbestos-related liabilities that are multiples of these Debtors' assets and their alleged liabilities. Indeed, counsel for the ACC has stated to the Court that the stakes in these cases are "a fraction of the value that was at stake in Grace." [Transcript, Dec. 15, 2011, at 68:17-18, as shown on the attached **Exhibit B**.] Significantly, the W.R. Grace case included both a contested estimation trial and a contested confirmation trial that lasted several weeks and was followed by extended appeals in the United States District Court for the District of Delaware and the Third Circuit Court of Appeals. Fee applications filed by counsel to the asbestos personal injury claimants' committee in the W.R. Grace case for the thirteen-year period through December 31, 2013 totaled $21,394,103.00 in fees alone. By comparison, as of June 30, 2014, the same firm's fee applications as counsel for the ACC had already reached $26.9 million in fees (excluding expenses), and these Debtors' cases are far from being concluded.

The Debtors have been reviewing professional fee applications and objecting to applications that they determine do not meet the standards of 11 U.S.C. § 330 and this Court's fee guidelines. The Court has reviewed and granted some of the objections, but on an interim basis has denied most

---

[4] See the summary of accrued fees and expenses from June 5, 2010 through June 30, 2014 attached as **Exhibit C**. This summary is a compilation of both approved fee applications and monthly statements.

4

of them.  In response to these fee objections, ACC counsel has alleged that the Debtors are using fee objections to exert undue leverage over the Committee or that such objections are "nakedly intended to chill and demoralize the opposition."[5]  Conversely, the Debtors fervently believe that the claimants' representatives are using exorbitant professional fees as a hammer to force the Debtors to offer them a "richer" settlement to be embodied in a plan of reorganization.[6]  Whether none, some, or all of these accusations and counteraccusations are credited, based on the aggregate claims' liability estimated in this Court's Estimation Order, the one thing that is clear is that Coltec's equity in these Debtors is being squandered.

Meanwhile, the fees accrue and Debtors' counsel spends hours each month reviewing the fee applications and preparing fee objections, to which the affected professionals then respond.  It is now time for the Debtors, the ACC and the FCR to focus on plan negotiations and plan confirmation and permit an independent third party to review and address fee objections for *all professionals* in these cases.  To the extent an independent fee examiner may raise objections to one professional's fees or another, the Court can be assured that such objections are not a litigation tactic or part of any pre-game, mid-game, or endgame strategy by any of the contending parties.

Due to the extraordinary professional fees already applied for and allowed on an interim basis and the large amount yet to be billed in this case, Coltec requests this Court appoint an independent fee examiner to help ensure that the professional fees charged to the estate were and are reasonable, necessary and cost-effective as required by the Bankruptcy Code. All conclusions relative to the reasonableness and the necessity of the fees and expenses paid will, of course,

---

[5] Transcript, May 24, 2012, at 44:9-11 attached as **Exhibit B.**

[6] "The Debtors believe that, would respectfully submit that it's much more likely, based on the massive amount of overbilling that the debtors believe has occurred in this case by, by Caplin and the ACC, that's it really the ACC who's attempting to use overbilling as a litigation strategy…" [Transcript, May 8, 2014, at  25:24-25, 26:1-3 attached as **Exhibit B.**]

ultimately lie with the Court. But an examiner will provide the Court with a sound and objective resource for determining whether the voluminous fee applications and underlying timesheet transcripts and expense statements that form the basis for the enormous administrative fees and expenses requested in these cases were and are reasonable and for the actual and necessary benefit of the estate and its creditors.

Before filing this motion Coltec has conferred with the Bankruptcy Administrator about the motion and believes that the Bankruptcy Administrator does not object to the appointment of a fee examiner to assist the Court and the parties. In addition, Coltec has identified and has approached a possible fee examiner who has indicated a willingness to serve in that capacity if so approved by the Court. He is someone of impeccable credentials with respect to the matter at hand – Mr. W. Clarkson McDow, Jr., of Rock Hill, South Carolina, the former United States Trustee for Region Four (South Carolina, Virginia, West Virginia, Maryland, and the District of Columbia). Coltec believes that Mr. McDow is likely already well known to the Court, however, a copy of his complete biography is provided as **Exhibit D** hereto.

### III.
### AUTHORITY FOR THE APPOINTMENT OF A FEE EXAMINER

The Bankruptcy Code authorizes payment to professionals employed in the case of "reasonable compensation for actual, necessary services rendered," 11 U.S.C. § 330, and it is the Court's responsibility to review professionals' fees pursuant to Sections 330 and 331 of the Bankruptcy Code. *See In re Watson Seafood & Poultry Co.,* 40 B.R. 436, 438 (Bankr. E.D.N.C. 1984). To fulfill that responsibility, a bankruptcy court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors" including the time the attorneys spent on rendering such services and the rates that they charged. 11 U.S.C. § 330(3). *See also In re Collins & Aikman Corp.,* 368 B.R. 623, 625 (Bankr. E.D. Mich. 2007); *In re Kline*, Case No. 98-40827

(Bankr. W.D.N.C., July 22, 2003). Furthermore, a court must also consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title [.]" 11 U.S.C. § 330(a)(3). A court shall not allow compensation for "unnecessary duplication of services," those services that were not "reasonably likely to benefit the debtor's estate" or services that were not "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

Sections 327, 328 and 330 of the Bankruptcy Code require a detailed review of fee applications. *See In re Bank of New England Corp.*, 134 B.R. 450, 453 (Bankr. E.D. Mass. 1991), *aff'd,* 142 B.R. 584 (D. Mass. 1992); *In re Drexel Burnham Lambert Group, Inc*., 133 B.R. 13, 15 (Bankr. S.D.N.Y. 1991)("The review of professional fees by a Court...is distasteful to the Court and demeaning to the professional. Unfortunately, however, it is mandated by the Bankruptcy Code, § 330."); *In re Pettibone Corp*., 74 B.R. 293, 300 (Bankr. N.D. Ill. 1987) ("The bankruptcy judge can and must apply his own expertise *sua sponte,* if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system.").

In large or particularly complex cases many bankruptcy courts have appointed fee examiners pursuant to Section 105 of the Bankruptcy Code or Federal Rule of Evidence 706(a) [7] to assist the Court and the U.S. Trustee or Bankruptcy Administrator in carrying out their duties to evaluate and pass upon fee applications under Sections 330 and 331 of the Code. *See e.g., In re Maruko Inc.,* 160 B.R. 633 (Bankr. C.D. Cal. 1993); *In re Continental Airlines, Inc.,* 138 B.R. 439 (Bankr. D. Del. 1992), *rev'd on other grounds,* 150 B.R. 334 (D. Del. 1993); *In re Owens Corning*, Case No. 00-

---

[7] Federal Rule of Evidence 706(a) provides: "On a party's own motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act..."

3837 (Bankr. D. Del. 2000); *In re Collins & Aikman Corp.*, 368 B.R. 623, 625 (Bankr. E.D. Mich. 2007); *In re AMR Corporation.*, Case No. 11-15463-shl, Docket No. 2897 (Bankr. S.D.N.Y. May 24, 2012).

One of the earliest uses of a fee examiner occurred in Delaware in *In re Continental Airlines, Inc.*, Case No. 92-262-SLR[8]. In that case the bankruptcy court explained that the role of the fee examiner was different than that of an examiner or trustee appointed pursuant to 11 U.S.C. § 1104. The fee examiner is the entity "responsible for initially reviewing fee applications" for conformity with the Bankruptcy Code. *In re Continental Airlines, Inc.,* 138 B.R. at 440. In *In re Maruko, Inc.*, 160 B.R. 633 (Bankr. S.D. Cal. 1993), a case which the bankruptcy court described as a "mega-case", the court found authority for the appointment of a fee examiner in Section 105(a) of the Bankruptcy Code and Federal Rule of Evidence 706(a). *Id.* at 637. The court also found the assistance of the fee examiner "invaluable" in: "prepar[ing] special reports analyzing time entries spent on 'analysis', 'review, 'inside conferences' and 'research', to assist the Court in determining the reasonableness of fees requested. Additionally, the fee examiner's report highlighted certain entries by attorneys and para-professionals which could arguably be considered 'administrative tasks', clerical in nature and, therefore, non-compensable." *Id.* at 637.

Fee examiners or fee review committees have been appointed in numerous large, recent bankruptcy cases, such as those involving Bethlehem Steel, Bradlees, Enron, Worldcom, Adelphia, Lehman Brothers, Collins & Aikman Corp., Exide, General Motors, Spansion, and the City of

---

[8] *See In re Continental Airlines,* 150 B.R. 334, 338 (Bankr. D. Del.1992) (acknowledging that the "section 330(a) fee review process alone presented the [bankruptcy] court with a daunting task"). The Delaware Bankruptcy Court has now codified the practice of appointing fee examiners in Local Rule 2016-2(j), which provides that the "Court may, in its discretion or on motion of any party, appoint a fee examiner to review fee applications and make recommendations for approval."

Detroit.[9] Fee examiners have likewise been appointed in a number of asbestos chapter 11 cases, including those involving Owens Corning, Kaiser Aluminum Corporation and Federal Mogul Corp. Ample precedent exists for this Court to appoint a fee examiner to review all pending and subsequent fee applications filed by all the professionals in this case.

## IV.
## APPOINTMENT OF MR. W. CLARKSON MCDOW, JR. AS FEE EXAMINER

Coltec submits that Mr. McDow's extensive experience makes him an excellent choice to serve as fee examiner. Attached as **Exhibit F** is the Verified Statement of Mr. McDow in Certification of No Conflict Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Statement in Support"). Mr. McDow has advised that he is willing to accept the proposed engagement at a compensated hourly rate of $450.00.

Coltec requests that Mr. McDow be retained to review and report his recommendations on (i) the fee applications of all professionals employed pursuant to §§ 327, 328 or 1103 of the Bankruptcy Code whose fees and expenses have not already been approved by final order of this Court approving a final fee application; (ii) claims for reimbursement of professional fees and expenses under § 503(b) of the Bankruptcy Code; and (iii) requests for reimbursement of expenses by a member of any official committee. More specifically, the fee examiner should be given authority and charged with the responsibility for the following tasks:

> A. to review such applications for interim compensation previously awarded by the Court prior to his appointment as in his discretion he deems advisable and to make any recommendations to the Court concerning adjustments to such interim awards at the time of application for final allowance as the fee examiner deems necessary;
>
> B. to review and comment on future applications for interim compensation;

---

[9] Attached in **Exhibit E** are examples of Orders appointing the fee examiner in *In re Exide Technologies,* Case No. 13-11482-KJC, Docket No. 2383 (Bankr. D. Del. January 28, 2014), *In re Collins & Aikman Corp.,* 368 B.R. 623 (Bankr. E.D. Mich. 2007) and *In re City of Detroit, Michigan,* Case No. 13-53846-SWR, Docket No. 383 (Bankr. E.D. Mich. August 19, 2013).

9

  C.  to review and comment on final fee applications;

  D.  to prepare summaries and reports for the Court to aid in the review and approval of interim and final fee applications, which may include such matters as the efficiency and reasonableness of staffing, reports on deviations from standard expenses and extraordinary expenses that are not or were not otherwise customary, approved expenses, as well as the review of annual increases in hourly rates;

  E.  to review and manage the process of objections to and payment of monthly fee statements under the terms of the Interim Compensation Order, as modified in the manner hereafter set forth;

  F.  to require applicants for compensation to provide him such supplemental information as he may require in order to evaluate the reasonableness of any particular fee item;

  G.  to appear, file and litigate such objections to interim and final applications as he may deem appropriate;

  H.  to conduct such discovery as may be pertinent and necessary to the performance of his other duties and responsibilities;

  I.  to take, defend or appear in any appeal regarding final fee applications; and

  J.  to engage, subject to Bankruptcy Court approval, his own consultants and counsel if necessary to represent or assist the fee examiner in connection with any of the foregoing.

If W. Clarkson McDow, Jr. is appointed as the fee examiner, Coltec requests that he be admitted pursuant to Local Bankruptcy Rule 2090-2(b)(1) for the admission *pro hac vice* to this Court for the purposes of being an officer of this Court and fulfilling the tasks as an independent fee examiner. As set forth in the Statement in Support, W. Clarkson McDow, Jr. is a member in good standing of the bar of South Carolina and the District Court of South Carolina. He is familiar with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Western District of North Carolina, the Federal Rules of Evidence, and the Rules of Professional Conduct, and understands that he will be subject to the disciplinary jurisdiction of this Court. Mr.

McDow has never been disbarred, suspended or denied admission to practice.

In addition, Coltec requests that the local rule requiring Mr. McDow to associate local counsel be waived under Local Rule 2090-2(b)(2) in these extraordinary and special circumstances. If appointed, Mr. McDow would be an officer of the Court and will be complying with the specific guidelines of his appointment as set forth in any Order appointing him as fee examiner.

## V.
## PROPOSED MODIFICATIONS TO THE INTERIM COMPENSATION ORDER

To aid the fee examiner in the performance of his duties, Coltec further requests that there be corresponding amendments to the Interim Compensation Order [Docket No. 233] as follows:[10]

  A. Revise Paragraph 2(a)(i) to require the Monthly Statement to be served on the fee examiner and on Coltec, as Notice Parties thereunder and further revising Paragraph 3 to provide that interim and final fee applications are to be served on the fee examiner and Coltec.

  B. Require that each Monthly Statement include detail containing the time entries and the expense detail in Adobe Acrobat (pdf) format and also in searchable electronic format (such as Excel or Microsoft Word, but not Adobe Acrobat).

  C. Revise Paragraph 2(b) to allow each Notice Party fourteen (14) days to review Monthly Statements and provide their objections to the fee examiner.

  D. Revise Paragraph 2(c) and (d) to provide that Notice Parties shall serve any objections to a Monthly Statement on the fee examiner, instead of the professional applicant, who shall then consider such objections and shall submit such of those objections as he finds have merit, along with any objections of his own, to the submitting professional applicant within twenty-one (21) days after the mailing of such Monthly Statement. Under the revised procedure, all Notice Parties will retain the right to file and prosecute objections to interim and final fee applications, but all objections to Monthly Statements shall be submitted to the fee examiner for determination by him as to whether they should be asserted against the Monthly Statement.

A proposed form of the amended Interim Compensation Order and a redline comparison

---

[10] Terms not defined herein are defined in the Interim Compensation Order.

against the prior Interim Compensation Order are provided as **Exhibit G** hereto.

# VI.
# CONCLUSION

For the reasons set forth above, Coltec asks that the Court (i) authorize the appointment of Mr. W. Clarkson McDow, Jr., or such other person or firm as the Court deems appropriate, as an independent fee examiner and an officer of the Court pursuant to 11 U.S.C. § 105(a) and Federal Rule of Evidence 706(a) to aid the Court in its statutory duty to review fee applications and to control the rising administrative expenses generated by the professionals in the case, (ii) amend the Interim Compensation Order to aid and implement the appointment of Mr. McDow as fee examiner, (iii) enter the form of Order implementing the above, the form of which is attached as **Exhibit H**, and (iv) grant such further relief as the Court finds just.

Respectfully submitted, this 22nd day of August, 2014.

By: /s/   Hillary B. Crabtree
Mark A. Nebrig
N. C. Bar ID No. 28710
marknebrig@mvalaw.com
Hillary B. Crabtree
N.C. Bar ID No. 26500
hillarycrabtree@mvalaw.com
E. Taylor Stukes
N.C. Bar ID No. 37077
taylorstukes@mvalaw.com
MOORE & VAN ALLEN PLLC
100 N. Tryon St., Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1059

Daniel G. Clodfelter
N.C. Bar ID No. 7661
danclodfelter@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN, LLP
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 335-9054
Facsimile: (704) 335-9762

*Attorneys for Coltec Industries Inc*.