# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| IN RE:<br><br>GARLOCK SEALING TECHNOLOGIES LLC, et al.,<br><br>Debtors.[1] | Case No. 10-BK-31607<br><br>Chapter 11<br><br>Jointly Administered |

## DEBTORS' SUMMARY OF EVIDENCE REGARDING CERTAIN VOTING PROCEDURES AND BALLOT CERTIFICATIONS

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company (hereinafter "Garlock" or "Debtors").

**Trial Exhibit**
**GST-8010**

**TABLE OF CONTENTS**

Page

A.    *IN RE ABB LUMMUS GLOBAL, INC.*, CASE NO. 06-10401-JKF (BANKR. D. DEL.) .............................................................................................................................. 2

    1.    Individual Ballots.......................................................................................................... 2
    2.    Master Ballots .............................................................................................................. 2

B.    *IN RE ACANDS, INC.*, CASE NO. 02-12687 (BANKR. D. DEL.) ................................. 3

    1.    2003 Solicitation ......................................................................................................... 3
    2.    2008 Solicitation ......................................................................................................... 4

C.    *IN RE ARTRA GROUP, INC.*, CASE NO. 02-21522 (BANKR. N.D. ILL.) ................... 6

    1.    Individual Ballots.......................................................................................................... 6
    2.    Master Ballots .............................................................................................................. 6

D.    *IN RE ASARCO LLC, ET AL.*, CASE NO. 05-21207 (BANKR. S.D. TEX.) ................... 7

    1.    Individual Ballots.......................................................................................................... 7
    2.    Master Ballots .............................................................................................................. 7

E.    *IN RE BABCOCK & WILCOX COMPANY*, CASE NO. 00-10992 (JOINTLY ADMINISTERED) (BANKR. E.D. LA.)..................................................................................... 8

    1.    Individual Ballots.......................................................................................................... 8
    2.    Master Ballots .............................................................................................................. 9

F.    *IN RE BURNS AND ROE ENTERPRISES, INC., ET AL.*, CASE NOS. 2:00-BK-41610 (BREI) AND 2:05-BK-47946 (BRCGI) (JOINTLY ADMINISTERED) (BANKR. D.N.J.).................................................................................................................. 10

    1.    Individual Ballots........................................................................................................ 10
    2.    Master Ballots ............................................................................................................ 10

G.    *IN RE COMBUSTION ENGINEERING, INC.*, CASE NO. 03-10495 (BANKR. D. DEL.) ............................................................................................................................ 11

    1.    Individual Ballots........................................................................................................ 11
    2.    Master Ballots ............................................................................................................ 11

H.    *IN RE CONGOLEUM CORP.*, CASE NO. 03-51524 (BANKR. D.N.J.)...................... 13

    1.    2003 Prepackaged Plan ("Vote 1").......................................................................... 13
    2.    Fourth Plan, February 2005 ("Vote 2") .................................................................. 13
    3.    Sixth Plan, December 2005 ("Vote 3")..................................................................... 14
    4.    2008 Plan ("Vote 4") ................................................................................................. 14
    5.    2010 Plan ("Vote 5") ................................................................................................. 15

**TABLE OF CONTENTS**
(continued)

Page

I.   *IN RE FEDERAL-MOGUL GLOBAL INC.*, T&N LIMITED, *ET AL.*, CASE NO. 01-10578 (JOINTLY ADMINISTERED) (BANKR. D. DEL.).....................................16
    1.   2004 Ballots ..............................................................................................16
    2.   2007 Ballots ..............................................................................................17

J.   *IN RE THE FLINTKOTE COMPANY AND FLINTKOTE MINES LIMITED*, CASE NO. 04-11300 (JOINTLY ADMINISTERED) (BANKR. D. DEL.)...................19
    1.   Individual Ballots.......................................................................................19
    2.   Master Ballots ...........................................................................................20

K.   *IN RE G-I HOLDINGS INC. ET AL. (F/K/A GAF CORPORATION)*, CASE NOS. 01-301135 AND 01-38790 (JOINTLY ADMINISTERED) (BANKR. D.N.J.)............21
    1.   Individual Ballots.......................................................................................21
    2.   Master Ballots ...........................................................................................21

L.   *IN RE GLOBAL INDUSTRIAL TECHNOLOGIES, INC., ET AL.*, CASE NO. 02-20198-JKF (JOINTLY ADMINISTERED) (BANKR. W.D. PA.)...............................23
    1.   Individual Ballots.......................................................................................23
    2.   Master Ballots ...........................................................................................23

M.   *IN RE KAISER ALUMINUM CORP., ET AL.*, CASE NO. 02–10429 (BANKR. D. DEL.) .........................................................................................................................24
    1.   Individual Ballots.......................................................................................24
    2.   Master Ballots ...........................................................................................24

N.   *IN RE LESLIE CONTROLS, INC.*, CASE. NO. 10-12199 (BANKR. D. DEL.).............26
    1.   Individual Ballots.......................................................................................26
    2.   Master Ballots ...........................................................................................26

O.   *IN RE NORTH AMERICAN REFRACTORIES COMPANY, ET. AL.*, CASE NO. 02-20198-JKF (JOINTLY ADMINISTERED) (BANKR. W.D. PA.)...........................28
    1.   Individual Ballots.......................................................................................28
    2.   Master Ballots ...........................................................................................28

P.   *IN RE OWENS CORNING, ET AL.*, CASE NO. 00-03837-JKF (JOINTLY ADMINISTERED) (BANKR. D. DEL.)...............................................................................30
    1.   Individual Ballots.......................................................................................30
    2.   Master Ballots ...........................................................................................30
    3.   Fibreboard Ballots......................................................................................31

**TABLE OF CONTENTS**
(continued)

Page

Q.   *IN RE PITTSBURGH CORNING CORP.*, CASE NO. 2:00-BK-22876 (JOINTLY
     ADMINISTERED) (BANKR. W.D. PA.)......................................................................... 32

     1.   2003 Solicitation ......................................................................................... 32
     2.   2009 Solicitation ......................................................................................... 32

R.   *IN RE QUIGLEY COMPANY, INC.*, CASE NO. 04-15739 (BANKR. S.D.N.Y.).......... 34

     1.   Individual Ballots......................................................................................... 34
     2.   Master Ballots ............................................................................................. 34

S.   *IN RE T H AGRICULTURE & NUTRITION, L.L.C.*, CASE NO. 08-14692
     (BANKR. S.D.N.Y.).............................................................................................. 36

     1.   Individual Ballots......................................................................................... 36
     2.   Master Ballots ............................................................................................. 36

T.   *IN RE UNITED STATES MINERAL PRODUCTS COMPANY, D/B/A ISOLATEK
     INTERNATIONAL*, CASE NO. 01-2471 (BANKR. D. DEL.)...................................... 37

     1.   Special Ballots for Individual Claimants ..................................................... 37
     2.   Special Ballots for Multiple Claimants........................................................ 37

U.   *IN RE USG CORPORATION*, CASE NO. 01-2094 (BANKR. D. DEL.)....................... 39

     1.   Individual Ballots......................................................................................... 39
     2.   Master Ballots ............................................................................................. 39

V.   *IN RE W.R. GRACE & CO., ET AL.*, CASE NO. 01-BK-01139 (JOINTLY
     ADMINISTERED) (BANKR. D. DEL.)...................................................................... 41

     1.   Individual Ballots......................................................................................... 41
     2.   Master Ballots ............................................................................................. 41

## INTRODUCTION

This document summarizes the certifications to exposure that claimants or their authorized representatives would make when submitting a ballot to an asbestos personal injury trust,[2] as illustrated by the analysis included herein of the voting procedures in twenty-two previous bankruptcy cases where Garlock obtained ballots during discovery.[3] This document is originally drawn from a memorandum provided by Robinson Bradshaw & Hinson to Professor Lester Brickman, which was previously disclosed to the Committee and FCR.

---

[2] As the Honorable Judith K. Fitzgerald has made clear, ballots (as well as Trust claims) provide evidence that the individuals listed therein claim exposure to asbestos-containing products for which the debtor is responsible. Judge Fitzgerald has presided over numerous asbestos bankruptcy cases, including twelve of the cases included in the summary. *See, e.g.,* 1/20/10 Tr. at 43, *In re Pittsburgh Corning Corp.,* No. 00-22876 (Bankr. W.D. Pa.) ("They're taking a position [in the ballot] that says they have a legitimate claim, they've sworn to that fact under penalty of perjury, and the ballot is what determines that."); *see also* 2/14/11 Tr. at 14, *In re Kaiser Alum. Corp., et al.,* No. 02-10429 (Bankr. D. Del.) ("[I]t's the vote in the case . . . that substantiates whether the creditor thinks it has a claim"); 3/28/11 Tr. at 64, *In re ACandS, et al.,* No. 02-12687 (Bankr. D. Del.) ("The ballots . . . or the claims against the trust [identify claims]"); *id.* at 118 (claimants casting ballots "have voted and asserted a claim").

[3] The only trust for which Garlock obtained ballots which is not summarized is the *In re Shook & Fletcher* bankruptcy case because the ballots were not available electronically.

### A. *In re ABB Lummus Global, Inc.*, Case No. 06-10401-JKF (Bankr. D. Del.)

#### 1. Individual Ballots

Votes in ABB Lummus could only be cast on behalf of individuals who were each "the holder of a Class 5 Lummus Asbestos PI Trust Claim."[4] To qualify as a holder of a Class 5 Lummus Asbestos PI Trust Claim, one had to have a claim based on exposure to or the presence of asbestos for which ABB Lummus had liability, including derivative liability.[5] Individual voters had to provide identifying information (name, partial Social Security Number ("SSN"), address, telephone number), sign and date the ballot, and return it to the solicitation agent.

#### 2. Master Ballots

Master Ballots required similar certifications. More specifically, the attorney had to certify to being authorized to vote "on behalf of such holder(s) of Lummus Asbestos PI Trust Claim(s)" as were identified on the ballot or any schedules thereto.[6] The attorney likewise had to certify that "each such holder holds a Claim in the Class Indicated" and provide a list of claimants, their partial SSNs, and their vote on the plan.[7] If the attorney was "voting on behalf of more than one holder of a Lummus Asbestos PI Trust Claim" and needed additional space to list all such claimants, the attorney was to attach schedules with the relevant information to the Master Ballot.[8] The attorney had to provide his contact information, sign and date the ballot, and return it and any schedules to the solicitation agent.[9] The ballots were signed under penalty of perjury.[10]

---

[4] Individual Ballots at 2 (GST-1483); *see* Master Ballot at 2 (GST-1484).

[5] *See* Glossary at 90-91 (GST-1489) (defining "Lummus Asbestos PI Trust Claim"); Plan at 104 (GST-1514) (stating that "Class 5 consists of all Lummus Asbestos PI Trust Claims other than Settled Asbestos Claims").

[6] Master Ballot at 2 (GST-1484).

[7] Master Ballot at 2 (GST-1484).

[8] Master Ballot at 1 (GST-1484).

[9] Master Ballot at 3 (GST-1484).

[10] *See* Disclosure Statement at 15 (GST-1488).

**B.** *In re ACandS, Inc.*, **Case No. 02-12687 (Bankr. D. Del.)**

Two solicitations were conducted in the ACandS, Inc. ("AC&S" or "ACandS") bankruptcy. Each solicitation involved five categories of Asbestos Personal Injury Claimants, classified according to their participation (or non-participation) in various prepetition settlements with AC&S.[11] Categories $B^x$, $B^y$, C were Secured Asbestos Personal Injury Claims, while Category D was bifurcated, with a secured component and an unsecured component.[12] Categories $B^x$, $B^y$, C, and D were limited to individuals who (i) had "asserted asbestos-related bodily injury claims against ACandS . . . alleging injury from exposure to asbestos-containing materials for which ACandS may bear legal responsibility" and (ii) had settled such claims through specific prepetition settlement agreements.[13]

1. 2003 Solicitation

For the 2003 solicitation, an Asbestos Claim was a claim for bodily harm caused by asbestos-containing products for which AC&S may be liable or by AC&S's conduct in connection with asbestos-containing products.[14] There were Individual Ballots and Master Ballots.

The Individual Ballots were effectively identical for all five Asbestos Personal Injury Classes (Classes 4, 5, 6, 7, and 12), as were the Master Ballots. The Individual Ballots required the claimant to vote, as a holder of a claim in the pertinent Class of claims, on the plan.[15] By signing an Individual Ballot, the person certified that he was authorized to vote on the plan on behalf of the relevant claimant.[16] Item 2 of each Master Ballot required the attorney to compile an exhibit listing the holders of claims in the pertinent Class of claims represented by the attorney, identifying such claimant's names, SSNs, and votes.[17] Item 1 of each Master Ballot instructed the attorney to specify how the "claimants listed on the exhibit accompanying this Ballot" vote on the plan.[18] According to the Master Ballot instructions, "Item 1 also requires you to complete the summary of votes by disease category set forth therein;" however, there was no reference to disease category in Item 1 on the Master Ballots.[19] The attorney also had to certify

---

[11] *See* 2003 Voting Procedures at 3, 9 & n.1 (GST-1437) (explaining classifications); 2003 Disclosure Statement at 7-15 (GST-1469) (describing Classes); 2003 Plan at 6-13, 19-20 (GST-1469) (defining and describing Classes); 2008 Plan at 5-6, 12, 20-21 (GST-1468) (defining and describing Classes).

[12] *See* 2003 Voting Procedures at 9 n. 1 (GST-1437); *see also* Appendix B Proposed Plan Term Sheet at 1-5 (describing Classes) (GST-1469).

[13] *See* Claimant Agreement at 1-13 (GST-1469); Appendix B Proposed Plan Term Sheet at 1-5 (GST-1469) (describing Classes).

[14] 2003 Voting Procedures at 1-2 (GST-1437).

[15] *See, e.g.*, 4-I Ballot (GST-1433) ("The undersigned, a holder of a Category $B^x$ Asbestos Secured Claim against ACandS, votes" to accept or reject the plan.); 12-I Ballot (GST-1433) ("The undersigned, a holder of an Asbestos Unsecured Claim against ACandS, votes [to accept or reject the plan.]").

[16] *See* 4-I Ballot at 2 (GST-1433) ("I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed on the reverse side.").

[17] *See, e.g.*, 4-M Ballot at 2, 5-6 (GST-1433) (instructing the attorney to compile the exhibit listing "all holders of Class 4 Category $B^x$ Asbestos Secured Claims on whose behalf you are voting by name and social security number, with a separate box next to each entry to note, if necessary, whether such individual holder of a Class 4 Category $B^x$ Asbestos Secured Claim accepts or rejects the Plan").

[18] *See* 4-M Ballot at 2 (GST-1433).

[19] *Compare* 4-M Ballot at 6 (GST-1433) (instructions), *with* 4-M Ballot at 2 (Item 1) (GST-1433).

3

to having authority to vote on the plan on behalf of each of the holders of claims in the pertinent Class of claims identified on the exhibit.[20]

### 2. 2008 Solicitation

For the 2008 solicitation, an Asbestos Personal Injury Claim was, in relevant part, a claim against AC&S for personal injuries related to asbestos exposure (or against certain other parties for derivative liability arising from asbestos exposure for which AC&S was responsible).[21] An Asbestos Unsecured Personal Injury Claim was any Asbestos Personal Injury Claim other than the Asbestos Personal Injury Claims of Category $B^x$, $B^y$, C Claimants and, to the extent of their secured claim, Category D Claimants.[22] The Asbestos Personal Injury Claims were Classes 3a, 3b, 3c, 3d, and 3e. Holders of Asbestos Unsecured Personal Injury Claims voted in Class 3e. The Individual Ballots for Classes 3a through 3d, which were the secured Classes, were effectively identical, as were the Master Ballots for those Classes. The Individual and Master Ballots for Class 3e differed slightly from the other Classes. The Individual Ballots required the claimant to vote, as a holder of a claim in the pertinent Class of claims, on the plan.[23] The Individual Ballot also required the claimant to state the voting amount of his claim.[24] In signing the Individual Ballot, the person certified under penalty of perjury to being authorized to vote on the plan on behalf of the specified claimant.[25] He also certified to holding a pertinent claim against AC&S in the voting amount identified on the ballot.[26]

The 3e-I Ballot differentiated between Class 3e claimants, having individuals with both Class 3d and Class 3e claims specify the value of their 3e claim separately from claimants who did not also have a Class 3d claim (*i.e.*, individuals who were not also Category D claimants).[27] For the latter group, the voting amount of their claim was based upon the disease level they were required to select, under penalty of perjury; these diseases each required "ACandS Exposure," which necessitated "meaningful and credible exposure . . . to asbestos or asbestos-containing products for which ACandS has legal responsibility."[28] For mesothelioma, "credible evidence of ACandS Exposure" was necessary.[29] In completing the 3e-I Ballot, the individual had to certify to having the pertinent claim against AC&S in the voting amount specified, with those who did

---

[20] *See* 4-M Ballot at 2 (GST-1433) ("I have the full power and authority to vote to accept or reject the Plan on behalf of each of the holders of Class 4 Category $B^x$ Asbestos Secured Claims on the list provided with this Master Ballot."); 12-M Ballot at 2 (GST-1433) ("I have the full power and authority to vote to accept or reject the Plan on behalf of each of the holders of Class 12 Asbestos Unsecured Claims on the list provided with this Master Ballot.").

[21] 2008 Plan at 3-4 (GST-1468).

[22] *See* 2008 Plan at 4 (GST-1468).

[23] *See, e.g.*, 3a-I Ballot (GST-1457) ("The undersigned, a holder of a Class 3a, Category $B^x$ Asbestos Personal Injury against the Debtor, votes" to accept or reject the plan.); 3e-I Ballot (GST-1457) ("The undersigned, a holder of an Asbestos Unsecured Claim against the Debtor, votes" to accept or reject the plan.).

[24] 3a-I Ballot at 1 (GST-1457).

[25] *See, e.g.*, 3a-I Ballot at 2 (GST-1457) ("I have the full power and authority to vote to accept or reject the Plan on behalf of the claimant listed on the reverse side.").

[26] 3a-I Ballot at 2 (GST-1457) ("For purposes of voting to accept or reject the Plan, the undersigned holds a Class 3a Category $B^x$ Asbestos Personal Injury Claim against the Debtor in the voting amount set forth on the first page of this Ballot.").

[27] *See* 3e-I Ballot at 2 (GST-1457) ("For those Claimants Who Held Both A Class 3d And Class 3e Claim. Amount of Your Class 3e Claim . . ." "For All Other Unsecured Asbestos Claims: Amount of Your Claim . . .").

[28] 3e-I Ballot at 1-2 & Glossary at 1 (GST-1457).

[29] 3e-I Ballot at 1 (GST-1457).

4

not hold Class 3d claims having to select and certify to their disease level. Thus, "[f]or those claimants who hold both a Class 3d and Class 3e Claim[,]" the required certification was that "the undersigned holds a Class 3e Claim against the Debtor in the amount set forth on the first page of this Ballot."[30] "For All Other Class 3e Asbestos Unsecured Personal Injury Claims[,]" the pertinent certification was that "the undersigned holds an Asbestos Unsecured Claim against the Debtor based on one of the following eight types of disease. Please check the appropriate basis for your claim."[31] All Class 3e signatories had to certify to having authority to vote on the plan on behalf of claimant specified on the ballot.[32]

Item 2 of each of the Master Ballots required the attorney to compile an exhibit listing the holders of claims in the pertinent Class of claims represented by the attorney, identifying such claimants' names, SSNs, claim voting amount, and votes.[33] Pursuant to Item 1, the attorney had to identify how many Claimants voted to accept and to reject the plan.[34] For the Unsecured Asbestos Personal Injury Claims, the attorney had to provide the same information for those holding both Class 3d and Class 3e Claims.[35] For the remaining Class 3e Claimants, the attorney had to specify the number (and claim voting amounts) of claimants in each disease level who voted to accept and to reject the plan.[36] All Master Ballots required the attorney to certify to having authority to vote on the plan on behalf of each of the individuals listed on the exhibit.[37] The Class 3e Master Ballot also required the attorney to certify that the listed diseases were "true and correct" and that the attorney was authorized to represent such disease categories for the claimants.[38]

---

[30] 3e-I Ballot at 1 (GST-1457).

[31] 3e-I Ballot at 1 (GST-1457).

[32] 3e-I Ballot at 2 (GST-1457).

[33] See, e.g., 3a-M Ballot at 2 (GST-1457); 3a-M Ballot Instructions at 2 (GST-1457) (instructing the attorney to compile the exhibit listing "all holders of Class 3a Category B^x Asbestos Personal Injury Claims on whose behalf you are voting by name, social security number and individual claim amount, with a separate box next to each entry to note, if necessary, whether such individual holder of a Class 3a Category B^x Asbestos Personal Injury Claim accepts or rejects the Plan").

[34] 3a-M Ballot at 2 (GST-1457).

[35] See 3e-M Ballot at 2 (GST-1457).

[36] 3e-M Ballot at 2 (GST-1457).

[37] See 3a-M Ballot at 2 (GST-1457) ("I have been authorized . . . by each of the holders of Asbestos Personal Injury Claims set forth on the Schedule accompanying this Master Ballot to vote his or her claim to accept or reject the Plan as indicated on the Schedule.").

[38] 3e-M Ballot at 3 (GST-1457) ("Each disease category indicated with respect to each holder of a Class 3e Asbestos Unsecured Personal Injury Claim set forth on the Schedule accompanying this Master Ballot is true and correct, and I am authorized by each holder of such claim listed on the Schedule to represent the disease category for each such claimant.").

5

### C. *In re ARTRA GROUP, Inc.,* Case No. 02-21522 (Bankr. N.D. Ill.)

#### 1. Individual Ballots

The Individual Ballots had three components. In the first segment, which identified the "Amount of Claim," the person "hold[ing] a Class 1 Asbestos Personal Injury Claim against the Debtor based on one of the following six types of disease" had to select "the appropriate basis for your claim."[39] Each of the specified disease levels required "credible evidence of" exposure to asbestos products distributed or manufactured by ARTRA or its predecessors.[40] In the second segment, the individual had to vote on the plan.[41] In the final segment, the person had to certify to holding the identified claim and to having authority to vote on the plan.[42]

#### 2. Master Ballots

The Master Ballot also required identification of disease categories for each claimant, which required ARTRA asbestos exposure. More specifically, the first segment of the Master Ballot required that the attorney indicate whether the claimants identified on the exhibit to the ballot accepted or rejected the plan, specifying the breakdown in votes "for each disease category of claimants for whom you are voting.[43] The same disease categories were used as in the Individual Ballot, and each likewise required exposure to an ARTRA asbestos product.[44] The attorney was required to submit an exhibit specifying the name of each "holder of an Asbestos Personal Injury Claim" and that person's disease category and vote on the plan.[45] In addition, the attorney was required to certify to having authority to vote "on behalf of each of the holders of the Asbestos Personal Injury Claims listed on the exhibit accompanying this Master Ballot."[46]

---

[39] Individual Ballot at 2 (GST-1526).

[40] Individual Ballot at 2 & n.1 (GST-1526) ("'Exposure' means evidence of exposure to a specific asbestos-containing product manufactured or distributed by the Debtor or its predecessors.").

[41] Individual Ballot at 3 (GST-1526) ("The undersigned holder of a Class 1 Asbestos Personal Injury Claim in the amount set forth in Item 1 above hereby votes to" accept or reject the plan.).

[42] Individual Ballot at 3 (GST-1526) ("The undersigned certifies that (i) it is the holder of the Class 1 Asbestos Personal Injury Claim identified in Item 1 above and (ii) it has full power and authority to vote to accept or reject the Plan.").

[43] Master Ballot at 2 (GST-1508); *see, e.g., id.* at 2 ("Of the claimants listed in the mesothelioma disease category on the exhibit accompanying this Ballot, ___ number of claimants vote to accept the Plan, and ___ number of claimants vote to reject the Plan.").

[44] Master Ballot at 2 (GST-1508); Master Ballot at 4 (GST-1508) (defining diseases and exposure requirements).

[45] Master Ballot at 2-3 (GST-1508).

[46] Master Ballot at 3 (GST-1508).

6

### D. *In re ASARCO LLC, et al.*, Case No. 05-21207 (Bankr. S.D. Tex.)

#### 1. Individual Ballots

An individual submitting the Individual Ballot had to first identify the debtor(s) against which such person had asserted a claim.[47] If the person's Asbestos Personal Injury Claim was settled before the bankruptcy case commenced, he had to specify the voting amount of the settled claim.[48] If the person was instead the "holder of an unsettled Asbestos Personal Injury Claim," he had to identify "the appropriate basis for your claim" from eight specified disease categories.[49] The disease categories were defined in the Debtors' Asbestos Trust Distribution Procedures[50] and each required "ASARCO exposure."[51] "ASARCO exposure" encompassed exposure to asbestos products for which ASARCO and its named affiliates had liability.[52] All voters had to specify whether they voted to accept or reject each of the three offered plans and had to indicate their preference among the plans.[53] Finally, the individual certified under penalty of perjury that the information specified on the ballot was "true and correct" and that the person was authorized to cast the ballot.[54] The person provided his contact information and signed and dated the ballot.[55]

#### 2. Master Ballots

Attorneys submitting Master Ballots had to include an exhibit "listing each holder of an Asbestos Personal Injury Claim [the attorneys] represent with each of the following[,]" *inter alia*, (i) the name of the debtors against which the claim is asserted; (ii) the disease category for each "holder of an unsettled Claim" and the "settled claim amount" for each "holder of a settled Claim[;]" and (iii) each claimant's vote and preference among the plans.[56] The attorney had to summarize the aggregate amount of settled Asbestos Personal Injury Claims voting to accept and to reject each of the three plans as well as identify the aggregate preferences per plan among those claimants.[57] For holders of unsettled Asbestos Personal Injury Claims, the attorney had to provide a summary by disease category of the number of claimants who accepted and rejected each plan as well as their preferences among the plans.[58] These disease categories were the same as for the Individual Ballots.[59] The attorney also had to certify "under penalty of perjury, as an officer of the court and on behalf of the law firm listed below," *inter alia*, that the information on

---

[47] Individual Ballot at 2 (GST-1510).
[48] Individual Ballot at 2 (GST-1510).
[49] Individual Ballot at 3 (GST-1510).
[50] Individual Ballot at 5 (GST-1510).
[51] Trust Dist. Proc. at 26-29 (GST-1524) (defining diseases).
[52] *See* Trust Dist. Proc. at 46-49 (GST-1524); Glossary at 6-7 (GST-1512) (noting that an Asbestos Personal Injury Claim was a claim against any of the debtors relating to asbestos).
[53] Individual Ballot at 3 (GST-1510).
[54] Individual Ballot at 3 (GST-1510).
[55] Individual Ballot at 3 (GST-1510).
[56] Master Ballot at 1-2 (GST-1511).
[57] Master Ballot at 2-3 (GST-1511).
[58] Master Ballot at 3-4 (GST-1511).
[59] *See* Master Ballot at 7 (GST-1511).

the claimant exhibit list "is true and correct" and that the attorney had authority "to vote each Claim voted through this Ballot."[60]

---

[60] Master Ballot at 5 (GST-1511).

**E.** *In re Babcock & Wilcox Company,* **Case No. 00-10992 (Jointly Administered) (Bankr. E.D. La.)**

There were two solicitations in Babcock & Wilcox ("B&W"), one in 2003 and the other in 2005. In each solicitation, Class 6 encompassed all Asbestos PI Trust Claims,[61] which were voted through Class 6 Master Ballots and Individual Ballots. Asbestos PI Trust Claims were composed of Asbestos Personal Injury Claims and Indirect Asbestos PI Claims.[62] An Asbestos Personal Injury Claim was any claim against or liability of a Debtor for personal injuries caused by exposure to asbestos products and arising from any Debtor's acts or omissions.[63] Asbestos Personal Injury Claims could include settled claims,[64] and to the extent that such Settled Asbestos Claims had been allowed by the court or stipulated to by the Debtors, the holders of such claims could vote in Class 6.[65] An Indirect Asbestos PI Claim was essentially either an action for contribution, indemnification, etcetera arising from an Asbestos Personal Injury Claim or an action brought in connection with an Insurer Misconduct Action, which were claims based on legal theories espoused in certain enumerated lawsuits (the Wise/Cashman cases).[66] Master Ballots could not be cast on behalf of holders of Indirect Asbestos PI Claims.[67]

1.  Individual Ballots

The 2003 and 2005 Individual Ballots (collectively, "Individual Ballot") were substantially identical, except as noted below. In Item 1, the claimant voted on the plan.[68] In Item 2, the individual had to select an applicable disease category.[69] A definitional element of each disease category was "B&W Exposure," which required "meaningful and credible exposure" to an asbestos-containing product for which B&W had legal responsibility.[70] Mesothelioma required "credible evidence of" such exposure.[71] Individuals had to indicate if they held an Allowed Settled Claim in Item 3,[72] and if they were asserting an Indirect Asbestos Personal Injury Claim in Item 4.[73] By checking the Item 4 box, an individual certified under penalty of perjury to having filed an Allowance Motion with the Court;[74] additionally, for the 2005 Ballot, the certification specified that the filed Allowance Motion had been granted by the

---

[61]  *See* 2003 Plan at 36 (GST-1434); 2005 Plan at 25 (GST-1444).

[62]  2003 Plan at 15 (GST-1434); 2005 Plan at 8 (GST-1444).

[63]  2003 Plan at 13-14 (GST-1434); 2005 Plan at 6-7 (GST-1444); *see also* 2003 Plan at 19 (GST-1434) (noting that the Babcock & Wilcox Company, Diamond Power International, Inc., Babcock & Wilcox Construction Co., Inc., and Americon, Inc. were the Debtors).

[64]  *See, e.g.,* 2003 Plan at 13 (GST-1434).

[65]  2003 Individual Ballot at 1 (GST-1435) (explaining that "Settled Asbestos Claims ... should be thought of and treated as Asbestos Personal Injury Claims"); 2003 Master Ballot at 1 (GST-1436) (same).

[66]  2003 Plan at 24-25 (GST-1434); 2005 Plan at 15-16 (GST-1444).

[67]  *See* 2003 Master Ballot at 1 (GST-1436); 2005 Master Ballot at 1 (GST-1447).

[68]  Individual Ballot at 2 (GST-1435 & GST-1446) ("The undersigned Class 6 Claimant" accepts or rejects the plan.).

[69]  *Id.* at 2 ("The undersigned holds an Asbestos PI Trust Claim involving an Asbestos Personal Injury Claim as defined by the Plan, in the following disease category[.]").

[70]  2003 Trust Dist. Proc. at 23-26, 38 (GST-1434); 2005 Trust Dist. Proc. at 25-28, 43 (GST-1070).

[71]  2003 Trust Dist. Proc. at 23 (GST-1434); 2005 Trust Dist. Proc. at 25 (GST-1070).

[72]  2003 Individual Ballot at 2 (GST-1435) ("[] I am a holder of an Allowed Settled Asbestos Claim in the amount of $_____.").

[73]  *Id.* ("[] I am a holder of an Indirect Asbestos Personal Injury Claim.")

[74]  *Id.*

9

Court.[75] In Item 5 and 4, for 2003 and 2005 respectively, the individual certified under penalty of perjury, *inter alia*, (i) to holding a Class 6 Asbestos Personal Injury Claim, (ii) to being "exposed to an asbestos-containing product attributable to one or more of the Debtors," and (iii) that the specified disease category "is true and correct."[76] Additionally, holders of Settled Asbestos Claims certified that such claims were allowed by the court or stipulated to by the debtors.[77]

### 2. Master Ballots

The 2003 and 2005 Master Ballots were substantially identical, except as noted below. In Item 1, the attorney indicated how the "holders of Asbestos PI Trust Claims listed on the Client List(s)" voted on the plan.[78] Pursuant to Item 2, the attorney had to compile a Client List that indicated for each of his clients, *inter alia*, (i) whether he was authorized to vote on behalf of such Claimant; (ii) whether the Claimant voted to reject or accept the plan; (iii) "whether such Claimants were exposed to the Debtors' asbestos-containing products such that they are holders of 'Asbestos Personal Injury Claims' as defined under the Plan"; (iv) the applicable disease category for each claimant; and, for any holder of a Settled Asbestos Claim, (v) that such claim was allowed and the voting amount of such claim.[79] For the 2005 Master Ballot, the attorney also had to provide a summary of votes by disease category, including whether the Claimants were "[e]xposed to a B&W asbestos-containing product."[80] The disease levels were the same as for the Individual Ballots.[81] Pursuant to Item 3, the attorney certified under penalty of perjury whether he had authority to vote on the plan for all Claimants or only specific Claimants listed on the Client List.[82]

---

[75] 2005 Individual Ballot at 3 (GST-1446).
[76] 2003 Individual Ballot at 2 (GST-1435); 2005 Individual Ballot at 3 (GST-1446).
[77] 2003 Individual Ballot at 2 (GST-1435); 2005 Individual Ballot at 3 (GST-1446).
[78] 2003 Master Ballot at 1 (GST-1436); 2005 Master Ballot at 2 (GST-1447).
[79] *See* 2003 Master Ballot at 1, 3 (GST-1436); 2005 Master Ballot at 2, 4-5 (GST-1447).
[80] 2005 Master Ballot at 2-3 (GST-1447).
[81] *See* 2003 Master Ballot at 3 (GST-1436) (instructing attorney to cross-reference Trust Distribution Procedures for disease categories); 2005 Master Ballot at 4-5 (GST-1447) (same).
[82] 2003 Master Ballot at 2 (GST-1436); 2005 Master Ballot at 3 (GST-1447).

10

**F.** *In re Burns and Roe Enterprises, Inc., et al.,* **Case Nos. 2:00-bk-41610 (BREI) and 2:05-bk-47946 (BRCGI) (Jointly Administered) (Bankr. D.N.J.)**

1. Individual Ballots

The Individual Class 5 Ballots for Burns & Roe Enterprises, Inc. ("BREI") and Burns & Roe Construction Group, Inc. ("BRCGI") were in relevant part identical.  In submitting an Individual Ballot, a person certified under penalty of perjury that (i) he or she "hold[s] an Asbestos-Related Personal Injury Claim or an Indirect Asbestos Personal Injury Claim against the Debtor and to the best of my knowledge [he or she] ha[s] suffered injury caused by the Debtor," (ii) that he or she has authority to vote on "the Plan on behalf of the Claimant listed on this Ballot," and (iii) that the information on the Ballot is correct and true.[83]  Under the Plan, an "Asbestos Personal Injury Claim" was based on exposure to an asbestos product for which BREI or BRCGI were allegedly liable.[84]  An "Indirect Asbestos Personal Injury Claim" was a claim against BREI or BRCGI for contribution, indemnity, reimbursement, or subrogation by entities involved in or potentially involved in litigation related to Asbestos Personal Injury Claims.[85]

2. Master Ballots

An attorney submitting a Master Ballot certified under penalty of perjury that he or she was authorized by the relevant Asbestos Personal Injury Claimant (which is merely defined as one who holds an Asbestos Personal Injury Claim) to cast the vote of such claimant for or against the Plan and that, to the best of the attorney's knowledge, such Claimant had a "valid, compensable claim against Burns and Roe Enterprises, Inc. for injury caused by Burns and Roe Enterprises, Inc."[86]  The attorney also had to certify that he or she "ha[d] such information as may be necessary to support the assertion of a Claim against Burns and Roe Enterprises, Inc., and the nature of the injury asserted."[87]

---

[83]  BREI Individual Ballot Instructions at 1 (GST-1522); BRCGI Individual Ballot Instructions at 1 (GST-1522).

[84]  *See* Plan at 3 (GST-7150) (stating that claim is based on harm caused or allegedly caused "by the presence of, or exposure to, asbestos or asbestos-containing materials manufactured, sold, supplied, produced, distributed, specified, installed, handled or in any other way used and arising or allegedly arising, directly or indirectly from acts or omissions of the Debtors (or any other person, firm, corporation or other Entity for or with which the Debtors are or may be liable)").

[85]  Plan at 9 (GST-7150).

[86]  BREI Master Ballot Instructions at 2 (GST-1522).

[87]  BREI Master Ballot Instructions at 2 (GST-1522).

11

**G. *In re Combustion Engineering, Inc.*, Case No. 03-10495 (Bankr. D. Del.)**

### 1. Individual Ballots

Individuals voted in either Class 5 or Class 6 depending upon whether they participated in a 2002 Master Settlement Agreement: Class 5 were the nonparticipants and Class 6 were the participants.[88] To qualify as a Class 5 Asbestos PI Trust Claimant, one had to have a claim based on exposure to or the presence of asbestos for which Combustion Engineering had liability, including derivative liability.[89] Class 6 claimants were individuals who settled their asbestos personal injury claims through the Master Settlement Agreement.[90] Submission of a Class 5 or Class 6 ballot was only required if an individual wished to change his previous vote or if his previous vote was not counted for failure to comply with the voting instructions.[91] For the Individual Ballots, the voter had to indicate whether he accepted or rejected the plan and specify the unpaid voting amount of his claim.[92] Individual voters had to provide identifying information (name, partial SSN, address, telephone number), sign and date the ballot, and return it to the solicitation agent.[93]

### 2. Master Ballots

Only claimants who had previously voted on the plan were eligible to vote on the Modified Plan.[94] Master Ballots required similar certification as the Individual Ballots. The Class 5 Master Ballots required the attorney to certify to being authorized to vote "on behalf of such holder(s) of the Asbestos PI Trust Claim(s)" as were identified on the ballot or any schedules thereto.[95] Likewise, the Class 6 Master Ballot required the attorney to certify to being authorized to vote "on behalf of such holder(s) of the Participating Claim(s)" as were identified on the ballot or any schedules thereto.[96] The attorney had to further certify that "each such holder holds a Claim in the Class indicated" and either (i) provide a list of claimants, their partial SSNs, the amount of their claim, and their vote on the plan, or (ii) certify that the list submitted with the previous Master Ballot needed no amendments.[97] If the attorney was "voting on behalf of more than one holder of an Asbestos PI Trust Claim" or Participating Claim, as relevant, and needed additional space to list all such claimants, the attorney was to attach schedules with the

---

[88] *See* Voting Procedure Order at 4, 8 (GST-1527); Exhibit D to Voting Procedure Order at 1 (GST-1507).

[89] *See* Glossary Blackline at 4 (GST-1445) (defining "Asbestos PI Trust Claimant").

[90] Disclosure Statement at 24-26 (GST-1460) (explaining, *inter alia*, that the Master Settlement Agreement was "with counsel for the holders of asbestos-related personal injury claims" in judicial or administrative proceedings commenced "against Combustion Engineering prior to November 14, 2002").

[91] *See, e.g.*, Class 5 Individual Ballot at 1 (GST-1478).

[92] *See* Class 5 Individual Ballots at 2 (GST-1478) ("The undersigned, the holder of a Class 5 Asbestos PI Trust Claim against Combustion Engineering, Inc., in the unpaid amount of ____ Dollars: ____ ACCEPTS the Modified Plan ____ REJECTS the Modified Plan[.]"); Class 6 Individual Ballots at 2 (GST-1478) ("The undersigned, the holder of a Class 6 Participating Claim against Combustion Engineering, Inc., in the unpaid amount of ____ Dollars: ____ ACCEPTS the Modified Plan ____ REJECTS the Modified Plan[.]").

[93] Class 5 Individual Ballots at 2-3 (GST-1478); Class 6 Individual Ballots at 3 (GST-1478).

[94] *See* Class 5 Master Ballot at 2 (GST-1478); Class 6 Master Ballot at 2 (GST-1478).

[95] Class 5 Master Ballot at 3 (GST-1478).

[96] Class 6 Master Ballot at 3 (GST-1478).

[97] Class 5 Master Ballot at 3 (GST-1478); Class 6 Master Ballot at 3 (GST-1478).

12

required information to the Master Ballot.[98] The attorney had to provide his contact information, sign and date the ballot, and return it and any schedules to the solicitation agent.[99]

---

[98] Class 5 Master Ballot at 2 (GST-1478); Class 6 Master Ballot at 2 (GST-1478).
[99] Class 5 Master Ballot at 4 (GST-1478); Class 6 Master Ballot at 4 (GST-1478).

### H. *In re Congoleum Corp.*, Case No. 03-51524 (Bankr. D.N.J.)

In this bankruptcy case, Congoleum Corporation, Congoleum Sales, Inc., and Congoleum Fiscal, Inc. were the Debtors, and there were no affiliates.

1. 2003 Prepackaged Plan ("Vote 1")

The first round of Congoleum voting was in 2003 on the Prepackaged Bankruptcy Plan. There were three Classes of asbestos personal injury plaintiffs. Class 2 consisted of asbestos personal injury claimants who settled claims against Congoleum pre-petition. Class 3 consisted of claimants under the "Claimant Agreement," a pre-petition global asbestos personal injury settlement that was part of the prepackaged bankruptcy. The Claimant Agreement required claimants to submit (i) "a verified statement that the Asbestos Claimant was exposed to an asbestos-containing product manufactured, sold, or distributed by Congoleum or for which Congoleum has legal liability" and (ii) a release stating under penalty of perjury that the "Claimant was exposed to an asbestos-containing product manufactured, sold, or distributed by Congoleum or for which Congoleum has legal liability."[100] Claimants under the Claimant Agreement had partially secured claims, making them members of both Class 3 (secured portion) and Class 10 (unsecured portion).[101]

Class 2, Class 3, and Class 10 are defined by reference to "Asbestos Personal Injury Claims," which are claims "caused or allegedly caused, in whole or part, directly or indirectly: (i) by exposure to asbestos or asbestos-containing products manufactured, supplied, distributed, handled, fabricated, stored, sold, installed, or removed by any Debtor and/or any of its Affiliates; (ii) by services, actions, or operations provided, completed or taken by any Debtor."[102] Classes 2 and 3 refer to "Asbestos Personal Injury Claims" via the definition of "Secured Asbestos Claims."[103] Classes 2 and 3 also use other terms defined by reference to "Asbestos Personal Injury Claims."[104] Class 10 is defined as "Unsecured Asbestos Personal Injury Claims,"[105] which is also defined by reference to "Asbestos Personal Injury Claims."[106]

The Individual and Master Ballots for Class 3 and Class 10 contain a certification under penalty of perjury that the claimant was "exposed to an asbestos-containing product manufactured or distributed by Congoleum or with respect to which Congoleum has legal liability."[107]

2. Fourth Plan, February 2005 ("Vote 2")

---

[100] Claimant Agreement at 3-4, 24-25 (GST-1379).

[101] Class 10 consisted of all unsecured asbestos personal injury claims. 2003 Disclosure Statement at 11 (GST-1374).

[102] Prepackaged Plan at 5-6 (GST-1375).

[103] *See id.* at 21 (listing Classes 2 and 3 as covering "Secured Asbestos Claims"); *Id.* at 18 (defining that term by reference to "Asbestos Personal Injury Claim").

[104] *See id.* at 14, 16-17, 20 (definitions of "Qualified Pre-Petition Settlement Claimants," "Qualified Participating Claimant," and "Participating Claimant").

[105] *Id.* at 22.

[106] *Id.* at 20.

[107] Class 3 Individual Ballots at 1 (GST-1481); Class 10 Individual Ballots at 1 (GST-1486); Class 3 Master Ballots at 2 (GST-1482); Class 10 Master Ballots at 2 (GST-1485).

14

The Classes for Vote 2 were the same as for Vote 1.[108] Members of Class 10 who were not also members of Class 3 ("Class 10 Holders Not Previously Determined") were required to certify under penalty of perjury that they had been "exposed to an asbestos-containing product manufactured or distributed by Congoleum or with respect to which Congoleum has legal liability."[109]

### 3. Sixth Plan, December 2005 ("Vote 3")

Classes 2 and 3 use the same definitions as in Vote 2. Members of what had been Class 10 were split into two different Classes. Unsecured asbestos personal injury claims not covered by the Claimant Agreement remained in Class 10.[110] Unsecured asbestos personal injury claims resulting from the Claimant Agreement were covered by a new Class 11.[111] Members of Class 3 were also members of Class 11.[112] Classes 2, 3, 10, and 11 are all defined by reference to "Asbestos Personal Injury Claim," an injury "caused or allegedly caused, in whole or part, directly or indirectly: (i) by exposure to asbestos or asbestos-containing products manufactured, supplied, distributed, handled, fabricated, stored, sold, installed, or removed by any Debtor."[113]

As in Vote 2, Class 10 required certification under penalty of perjury that the claimant had "been exposed to an asbestos-containing product manufactured or distributed by Congoleum or with respect to which Congoleum has legal liability."[114]

### 4. 2008 Plan ("Vote 4")

The 2008 Plan consolidated all asbestos personal injury claims into a single Class, Class 7, which was defined by reference to "Asbestos Personal Injury Claims."[115] Members of former Classes 2 and 3 had to make an election regarding their pre-petition settlements. They could elect (a) to have their claim treated as if they had not entered a pre-petition settlement or (b) choose to be a "Settled Claimant with Litigation Rights" and pursue a declaratory judgment that the pre-petition settlement should be recognized. Class 7A was for members of former Class 10 and any members of former Classes 2 and 3 who elected to forego a pre-petition settlement.

---

[108] See Fourth Plan at 26 (GST-1357); (listing Classes); Id. at 5-6 (defining "Asbestos Personal Injury Claim"); Id. at 14, 16-21 (definitions of Classes 2, 3, and 10 incorporating that term).

[109] See Amended Voting Procedures at 10-11 (GST-1367) (voting procedure stating that votes will not be counted without this certification); Fourth Plan Class 10 Individual Ballot at 1-2 (GST-1368) (certification and instructions); Fourth Plan Class 10 Master Ballot at 2 (GST-1368) (certification).

[110] See Sixth Plan at 22 (GST-1380) (listing Classes); Id. at 17 (defining "Not Previously Determined Unsecured Asbestos Personal Injury Claim").

[111] See id. at 22 (listing Classes); id. at 17 (defining "Previously Determined Unsecured Asbestos Personal Injury Claim" by reference to the Claimant Agreement).

[112] See Sixth Plan Voting Procedures at 12 (GST-1390) (explaining calculation of Class 11 votes).

[113] Sixth Plan at 5-6 (GST-1380); see id. at 14-20 (defining relevant terms).

[114] See Sixth Plan Voting Procedures at 12 (GST-1390) (warning that votes not counted without certification); Sept. 2005 Class 10 Individual Ballot at 1-2 (GST-1390) (certification on ballot and ballot instructions); Sept. 2005 Class 10 Master Ballot at 1-2 (GST-1390) (certification on ballot).

[115] See 2008 Plan at 24 (GST-1403) (listing Classes); id. at 5-6 (referring to injuries "caused or allegedly caused . . . by exposure to asbestos or asbestos-containing products manufactured, supplied, distributed, handled, fabricated, stored, sold, installed, or removed by any Debtor and/or its predecessors").

15

Class 7B was for members of former Classes 2 and 3 who attempted to retain rights under a pre-petition settlement.[116]

There were no master ballots under the 2008 Plan, which barred counsel from casting votes on behalf of clients.[117] As in Vote 3, a Class 7 claimant's vote (regardless of subclass) was not counted without certification of exposure to Congoleum products under penalty of perjury.[118]

Certification of disease level was also required on Class 7 ballots.[119] "Congoleum Exposure" is defined in the Trust Distribution Procedures as "meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or asbestos-containing products in a Congoleum facility, or to asbestos or asbestos-containing products supplied, specified, manufactured, produced, distributed, installed, maintained, or repaired by Congoleum and/or any entity, including a Congoleum contracting unit, for which Congoleum has legal responsibility."[120] The selection of disease level was made under penalty of perjury.[121]

### 5. 2010 Plan ("Vote 5")

The District Court handled voting under the 2010 Plan after the reference to the bankruptcy court was withdrawn. In Vote 5, all the asbestos personal injury claims are covered by a single Class, Class 7, without any subclasses. Class 7 is defined by reference to "Asbestos Personal Injury Claims," defined substantially the same as in Vote 4.[122]

All Vote 5 ballots contain a certification of exposure under penalty of perjury.[123] This certification was also listed on the ballot instructions.[124] As with Vote 4, the definitions of the disease levels included "Congoleum Exposure," defined in the Trust Distribution Procedures as "meaningful and credible exposure, which occurred prior to December 31, 1982, to asbestos or asbestos-containing products in a Congoleum facility, or to asbestos or asbestos-containing products supplied, specified, manufactured, produced, distributed, installed, maintained, or repaired by Congoleum and/or any entity, including a Congoleum contracting unit, for which Congoleum has legal responsibility."[125]

---

[116] See 2008 Disclosure Statement at 10-11 (GST-1402); 2008 Plan at 24 (GST-1403).

[117] 2008 Voting Procedures at 6 (GST-1408).

[118] See id. at 10-11 (requiring certification that the claimant "has been exposed to an asbestos containing product manufactured or distributed by Congoleum or with respect to which Congoleum has legal liability"); 2008 Ballots (Exhibits C-3 to C-5) at 18, 20, 23, 25, 28, 30 (GST-1410) (ballots and instruction with certification).

[119] See, e.g., 2008 Ballot at 20 (GST-1410) (defining mesothelioma as "diagnosis of mesothelioma and Congoleum Exposure prior to December 31, 1982").

[120] 2008 Trust Dist. Proc. at 24-25 (GST-1455).

[121] See 2008 Ballots at 18, 23, 28 (GST-1410).

[122] See 2010 Plan at 21 (GST-1414) (definition of Class 7); id. at 4 (definition of "Asbestos Personal Injury Claim").

[123] See 2010 Ballots at 48, 54 (GST-1428) ("I have been exposed to an asbestos-containing product manufactured or distributed by Congoleum Corporation or with respect to which Congoleum has legal liability and I have the Disease Level indicated on the Ballot.").

[124] 2010 Ballots at 50, 56 (GST-1428).

[125] 2010 Trust Dist. Proc. at 24 (GST-1426).

I. ***In re Federal-Mogul Global Inc., T&N LIMITED, et al.,* Case No. 01-10578 (Jointly Administered) (Bankr. D. Del.)**

There were two solicitations in Federal Mogul, one in 2004 and one in 2007. Individuals with Asbestos Personal Injury Claims against the Debtors were entitled to vote in Class J, through Individual Ballots or Master Ballots. A claimant only needed to vote in 2007 if he wanted to change his vote from 2004: "Unless changed, all votes that holders of Asbestos Personal Injury Claims cast on the Third Amended Plan will be counted for purposes of determining acceptance or rejection of the Fourth Amended Plan."[126] An Asbestos Personal Injury Claim was any claim against or liability of a Debtor for personal injuries caused by exposure to asbestos products and arising from any Debtor's acts or omissions.[127] In 2007, holders of Pneumo Asbestos Claims, a specific category of Asbestos Personal Injury Claims, also voted on the plan.[128] More specifically, Pneumo Asbestos Claims were claims for personal injury from exposure to asbestos-containing products for which Federal-Mogul Products, Inc. is liable and arising from the acts, business, omissions, or operation of any of the Debtors or entities for which the Debtors have liability.[129]

1. 2004 Ballots

In 2004, "holders of Asbestos Personal Injury Claims asserted against the Debtors" voted through Ballot Code J (Individual Ballot) and Ballot Code J-M (Master Ballots).[130] Those holding Indirect Asbestos Personal Injury Claims voted separately through Ballot Code J-I.

In completing the Individual Ballot, a person had to first vote on the plan.[131] He also had to indicate the disease level that formed the basis for his claim.[132] The criteria for severe asbestosis explicitly required "six months Federal Mogul Exposure prior to December 31, 1982."[133] In addition, the claimant had to indicate the companies against which he was asserting his claim.[134] Finally, he certified under penalty of perjury[135] that, *inter alia*, (i) he/the claimant was the holder of the specified Asbestos Personal Injury Claim; (ii) he had authority to vote on the plan on behalf of such claimant; and (iii) the claimant had the asserted disease level based on documentation in the possession of the signatory or the claimant's attorney or doctor.[136] He also

---

[126] 2007 Individual Ballot at 2 (GST-1451); 2007 Master Ballot at 2 (GST-1451).

[127] Plan at 5-6 (GST-1497); *see also* Plan Cover Sheet at 1 (GST-1497) (listing Debtors).

[128] *See* 2007 Plan Addendum at 3, 11-12 (GST-1450).

[129] *Id.* at 6, 11-12; *see also* Supplemental Disclosure Statement at 12-16 (GST-1498) (discussing settlements and Pneumo Asbestos Claims).

[130] Through these ballots, claimants with claims against the U.K. Debtors also voted on granting a proxy and making a demand vis-à-vis those Debtors. *See, e.g.,* 2004 Individual Ballot at 2, 11 (GST-1441).

[131] 2004 Individual Ballot at 11 (GST-1441) ("The undersigned, as holder of (or representative of a holder of) an Asbestos Personal Injury Claim against one or more of the Debtors . . . votes to" accept or reject the plan).

[132] *Id.* at 5-6, 12 (explaining that "[i]n order to vote to accept or reject the Plan . . . a claimant must hold a claim against one of the Debtors based on one of the following eight (8) Disease Levels") (emphasis in original).

[133] *Id.* at 5.

[134] *Id.* at 6, 11.

[135] Rather than under penalty of perjury pursuant to 28 U.S.C. § 1746, United Kingdom Claimants made similar certifications pursuant to the Statutory Declarations Act 1835.

[136] *Id.* at 12.

17

certified to exposure to an asbestos-containing product for which Federal-Mogul and/or its affiliates have legal liability.[137]

In completing the Master Ballot, an attorney had to tabulate how the "claimants listed on the exhibit accompanying this Master Ballot and Proxy Form" voted on the plan.[138] He also had to summarize the votes by disease category.[139] Each attorney was required to prepare an exhibit identifying "each holder of an Asbestos Personal Injury Claim who you represent," the company or companies against which each holder's claim was asserted, the pertinent disease level for each claimant, and the person's vote on the plan.[140] The attorney also certified, under penalty of perjury, that he was authorized by each of the claimants on the exhibit "to vote his or her claim" on the plan.[141] He further certified that each person listed on the exhibit had the pertinent disease category and had been exposed to an asbestos-containing product for which Federal-Mogul or its affiliates have legal liability.[142]

### 2. 2007 Ballots

In completing an individual ballot in 2007, an individual likewise had to vote on the plan, identify the debtors against which his claim was asserted, and specify the disease level upon which his claim was based.[143] Each disease level required "Federal-Mogul Exposure," which mandated "meaningful and credible exposure" to an asbestos-containing product for which Federal-Mogul had legal responsibility.[144] The person also had to indicate whether he granted certain releases set forth in the plan.[145] The 2007 certifications were identical to the 2004 certifications outlined above.[146] The 2007 Master Ballot mirrored the 2004 Ballot, except that the attorney also had to indicate on the exhibit whether each claimant granted the releases.[147]

The ballots for holders of Pneumo Asbestos Claims similarly mirrored the 2004 ballots, except that items were defined in relation to Pneumo Asbestos Claims. Thus, the claimant voted on the plan "as a holder of (or representative of a holder of) a Pneumo Asbestos Claim against

---

[137] *Id.* at 12 ("I have/The Claimant has been exposed to an asbestos-containing product or material with the result that the Claimant has an Asbestos Personal Injury Claim (as defined in the Plan) for which Federal-Mogul Corporation and/or one or more of its affiliates has/have legal liability.").

[138] 2004 Master Ballot at 6, 12 (GST-1441).

[139] *Id.* at 7-8, 12.

[140] *Id.* at 8, 12.

[141] *Id.* at 9, 12.

[142] *Id.* at 9, 12 ("Each holder of an Asbestos Personal Injury Claim listed on the exhibit accompanying this Master Joint Ballot and Proxy Form (a) has been exposed to an asbestos-containing product or material with the result that the claimant has an Asbestos Personal Injury Claim (as defined in the Plan) for which Federal-Mogul Corporation and/or one or more of its affiliates has/have legal liability and (b) has the Disease Level asserted on such exhibit based on medical records or similar documentation in my possession or in the possession of the claimant's attorney or medical practitioner.").

[143] 2007 Individual Ballot at 3-4, 10-11 (GST-1451).

[144] 2010 Trust Dist. Proc. at 38-40, 60 (GST-1075).

[145] 2007 Individual Ballot at 10 (GST-1451).

[146] *Id.* at 11.

[147] *See* Master Ballot at 4-6 (GST-1452).

18

one or more of the Debtors."[148]   Moreover, each disease level required "Pneumo Abex Exposure," which mandated "meaningful and credible exposure to asbestos or asbestos-containing friction products which were manufactured, sold or distributed by Pneumo Abex or Abex Corporation ('Pneumo Abex Products'), for which Pneumo Abex has legal responsibility."[149]   Finally, the Individual ballot required the person to certify, under penalty of perjury, that (i) he has authority to vote on the plan "on behalf of, or in my capacity as, the Claimant[;]" and (ii) the Claimant has been exposed to asbestos-containing products so that he has a Pneumo Asbestos Claim; and (iii) the asserted disease level is based on available documentation.[150]   The Pneumo Master Ballot required certification under penalty of perjury (i) that the signatory was authorized "by each of the holders of the Pneumo Asbestos Claims listed on the exhibit accompanying this Master Ballot, to vote his or her claim to accept or reject the Plan[;]" (ii) that such holder has been exposed to an asbestos-containing product such that each claimant has a Pneumo Asbestos Claim; and (iii) that the asserted disease level is based on available records.[151]

---

[148]   Pneumo Individual Ballot at 8 (GST-1453); *see also* Pneumo Master Ballot at 4-5 (GST-1454) (explaining that exhibit must identify "each holder of a Pneumo Asbestos Claim who" the attorney represents and, as pertinent, their votes).

[149]   Pneumo Trust Dist. Proc. at 23-26, 42 (GST-1450).

[150]   Pneumo Individual Ballot at 8 (GST-1453).

[151]   Pneumo Master Ballot at 5-6 (GST-1454).

19

**J.** *In re The Flintkote Company and Flintkote Mines Limited,* **Case No. 04-11300 (Jointly Administered) (Bankr. D. Del.)**

1. Individual Ballots

An individual with an "Asbestos Personal Injury Claim" against The Flintkote Company ("Flintkote") and/or Flintkote Mines Limited ("Mines") was the "only" individual on whose behalf a Class 7 (Flintkote) and/or Class 8 (Mines) ballot could be cast.[152] The 2008 and 2009 ballots were in relevant part identical. The Class 7 Individual Ballots and Class 8 Individual Ballots were effectively identical, except that Class 7 defined everything by reference to Flintkote while Class 8 linked everything to Mines. Thus, for instance, to cast a Class 7 Ballot, "a claimant must hold a claim against The Flintkote Company based on one of the following seven (7) Disease Levels,"[153] whereas to cast a Class 8 Ballot, "a claimant must hold a claim against Flintkote Mines Limited based on one of the following seven (7) Disease Levels."[154]

The Individual Ballots had five sections. In Item 1, identifying information regarding the claimant had to be provided. In Item 2, the individual had to vote on the plan as either the claimant or a representative of a claimant who had an Asbestos Personal Injury Claim against the relevant debtor.[155] An Asbestos Personal Injury Claim was defined as "a Flintkote Asbestos Personal Injury Claim or a Mines Asbestos Personal Injury Claim."[156] A "Flintkote Asbestos Personal Injury Claim" was a claim based upon exposure to an asbestos-containing product for which Flintkote had responsibility,[157] and a "Mines Asbestos Personal Injury Claim" was a claim for exposure to an asbestos-containing product for which Mines had responsibility.[158] Each of the specified Disease Levels required "meaningful and credible exposure" to an asbestos-containing product or material[159] or mine[160] for which Flintkote had legal liability. For mesothelioma, "credible evidence" of such exposure was required.[161]

---

[152] *See, e.g.,* 2008 Flintkote Ballot at 3 (GST-1456) ("This Ballot is to be used to tabulate votes only from holders of Asbestos Personal Injury Claims asserted against Flintkote"); 2008 Mines Ballot at 3 (GST-1456) ("This Ballot is to be used to tabulate votes only from holders of Asbestos Personal Injury Claims asserted against Mines"); 2008 Master Ballot at 2 (GST-1456) ("This Master Ballot is to be used to tabulate votes only from holders of Asbestos Personal Injury Claims asserted against one or both of the Debtors.") (emphasis in original).

[153] 2008 Class 7 Ballot at 4 (GST-1456); 2009 Class 7 Ballot at 4 (GST-1459).

[154] 2008 Class 8 Ballot at 4 (GST-1456); 2009 Class 8 Ballot at 4 (GST-1459).

[155] 2008 Class 7 Ballot at 7 (GST-1456); 2009 Class 7 Ballot at 7 (GST-1459) ("The undersigned, as holder of (or representative of a holder of) an Asbestos Personal Injury Claim against The Flintkote Company, votes to" accept or reject the plan.); 2008 Class 8 Ballot at 7 (GST-1456); 2009 Class 8 Ballot at 7 (GST-1459) ("The undersigned, as holder of (or representative of a holder of) an Asbestos Personal Injury Claim against Flintkote Mines Limited, votes to" accept or reject the plan.).

[156] Amended Plan at 5 (GST-1472).

[157] *Id.* at 7.

[158] *Id.* at 9-10. In Item 3, the individual had to select an applicable Disease Level. 2008 Class 7 Ballot at 7 (GST-1456); 2009 Class 7 Ballot at 7 (GST-1459); 2008 Class 8 Ballot at 7 (GST-1456); 2009 Class 8 Ballot at 7 (GST-1459).

[159] 2008 Class 7 Ballot at 4-5 (GST-1456) (product or material); 2009 Class 7 Ballot at 4-5 (GST-1459) (same); *see also* 2008 Master Ballot at 9-10 (GST-1456); 2009 Master Ballot at 9-10 (GST-1459).

[160] 2008 Class 8 Ballot at 4-5 (GST-1456) (mines); 2009 Class 8 Ballot at 4-5 (GST-1459) (same).

[161] 2008 Class 7 Ballot at 4 (GST-1456); 2009 Class 7 Ballot at 4 (GST-1459); 2008 Class 8 Ballot at 4 (GST-1456); 2009 Class 8 Ballot at 4 (GST-1459); 2008 Master Ballot at 9 (GST-1456) ; 2009 Master Ballot at 9 (GST-1459).

20

The individual had to sign and date the ballot in Item 4.[162]  In the final section, the individual had to certify under penalty of perjury, *inter alia*, that the claimant (i) had the Asbestos Personal Injury Claim identified in Item 3; (ii) had the specified disease level based upon documentation in the signatory's possession or possession of the claimant's attorney or doctor; and (iii) had been exposed to an asbestos-containing product such that the claimant had an Asbestos Personal Injury Claim for which the relevant debtor has legal liability.[163]

### 2.  Master Ballots

The Master Ballot required similar information and certifications.  In Item 1, counsel had to first indicate whether the claimants listed on the accompanying exhibit accepted or rejected the plan and then summarize by Disease Level the relevant votes.[164]  Pursuant to Item 2, counsel had to provide an exhibit list specifying for "each holder of an Asbestos Personal Injury Claim who you represent," the person's name, partial SSN, disease level, debtor(s) against which the claim is being asserted, and vote on the plan.[165]  The attorney had to certify under penalty of perjury that each of the identified claimants had been exposed to an asbestos-containing product such that the claimant had an Asbestos Personal Injury Claim for which Flintkote and/or Mines had legal liability.[166]  The attorney also had to certify to being authorized (i) to vote on the plan on behalf of the claimants and (ii) to represent the specified disease level, which was supported by documentation in the possession of the attorney or the claimant's doctor or attorney.[167]  Finally, the attorney had to provide his contact information and sign and date the ballot.[168]

---

[162]  2008 Class 7 Ballot at 8 (GST-1456); 2009 Class 7 Ballot at 8 (GST-1459); 2008 Class 8 Ballot at 8 (GST-1456); 2009 Class 8 Ballot at 8 (GST-1459).

[163]  2008 Class 7 Ballot at 8 (GST-1456); 2009 Class 7 Ballot at 8 (GST-1459) ("I have/the Claimant has been exposed to an asbestos-containing product or material with the result that the Claimant has an Asbestos Personal Injury Claim (as defined in the Plan) for which The Flintkote Company has legal liability."); 2008 Class 8 Ballot at 8 (GST-1456); 2009 Class 8 Ballot at 8 (GST-1459) ("I have/the Claimant has been exposed to an asbestos-containing product or material with the result that the Claimant has an Asbestos Personal Injury Claim (as defined in the Plan) for which Flintkote Mines Limited has legal liability.").

[164]  *See* 2008 Master Ballot at 3-4 (GST-1456); 2009 Master Ballots at 4-5 (GST-1459).

[165]  2008 Master Ballot at 4 (GST-1456); 2009 Master Ballots at 5 (GST-1459).

[166]  2008 Master Ballot at 4-5 (GST-1456); 2009 Master Ballots at 6-7 (GST-1459).

[167]  2008 Master Ballot at 5 (GST-1456); 2009 Master Ballots at 6 (GST-1459).

[168]  2008 Master Ballot at 5 (GST-1456); 2009 Master Ballots at 6-7 (GST-1459).

21

**K. *In re G-1 Holdings Inc., et al. (f/k/a GAF Corporation)*, Case Nos. 01-301135 and 01-38790 (Jointly Administered) (Bankr. D.N.J.)**

Class 6 Individual and Master Ballots were for holders of Asbestos Personal Injury Claims.  Asbestos Personal Injury Claims were claims against G-I Holdings Inc. ("G-I") for harms arising from asbestos products for which G-I had liability.[169]

### 1. Individual Ballots

The Individual Ballot had three components.  The individual first had to vote on the plan.[170]  Thereafter, the individual had to "designate **only one** of the following disease categories as the basis for your Asbestos Personal Injury Claim."[171]  Each disease category required "G-I Exposure,"[172] which was "meaningful and credible exposure" to an asbestos product for which GI or ACS Inc. had legal responsibility.[173]  If an individual asserted an Asbestos Personal Injury Claim but was unable to meet the requisite exposure criteria for the disease levels, the individual was not required to select a disease category.[174]

### 2. Master Ballots

The same disease categories and instructions regarding a claimant who could not meet the exposure criteria applied to the Master Ballots.[175]  Finally, the individual was required to certify under penalty of perjury that, *inter alia*, he was a holder of an Asbestos Personal Injury Claim or was authorized to vote on behalf of such holder.[176]  He also certified that "[t]he holder of such Asbestos Personal Injury Claim has been exposed to an asbestos-containing product such that the claimant holds an Asbestos Personal Injury Claim, as defined in the Plan and described in the Disclosure Statement."[177]  In addition, he verified that "[i]f a disease category is selected [on the ballot], the holder of such Asbestos Personal Injury Claim has the disease category indicated above and meets the criteria for that disease category . . . based on medical records or similar documentation."[178]  The Master Ballot required similar information and certifications. First, the attorney had to certify how "the individuals listed on the Exhibit required in Item 3, each of whom is a holder of an Asbestos Personal Injury Claim in Class 6 under the Plan" voted

---

[169] Plan at 4 (GST-1501).  This encompasses claims by defendants for contribution from G-I. *See id.* at 4, 13 (defining Indirect Trust Claims).

[170] Individual Ballot at 2 (GST-1500) ("The undersigned, a holder of an Asbestos Personal Injury Claim, votes to [accept or reject the plan.]").

[171] *Id.* at 2 (emphasis in original).

[172] *Id.* at 2-3.

[173] Individual Voting Instructions at 2 (GST-1500); Plan at 10 (GST-1501) (defining Debtors).

[174] Individual Ballot at 2 (GST-1500) ("If you believe that you hold an Asbestos Personal Injury Claim as defined in the Plan, but do not meet the exposure criteria for any of the disease categories, your Asbestos Personal Injury Claim will be counted for voting purposes only in the amount of $1.00 and you are not required to select a disease category below.").

[175] *See* Master Ballot at 2 (GST-1500); Master Ballot Instructions at 1-3 (GST-1500).

[176] Individual Ballot at 4 (GST-1500).

[177] *Id.* at 4.

[178] *Id.* at 4; *see also* Individual Ballot Instructions at 3 (GST-1500) (explaining that required certifications included that holder of the Asbestos Personal Injury Claim "has the disease category indicated and meets the medical and exposure criteria for that disease category based on medical records or similar documentation in such holder's file").

22

on the Plan.[179]   Next, the attorney had to "summarize the votes of the holders of Asbestos Personal Injury Claims for whom you are voting, according to disease category."[180]   As aforementioned, these were the same disease categories, with the same exposure requirements, as in the Individual Ballot.[181]  Third, the attorney had to provide as an Exhibit to the Ballot a list of such holders with pertinent identifying information as well as each claimant's disease category and vote on the Plan.[182]  Finally, the attorney had to certify under penalty of perjury, *inter alia*, that "[e]ach of the individuals set forth on the Exhibit holds an Asbestos Personal Injury Claim in Class 6 under the Plan" and that the attorney represents and is authorized to vote on behalf of all such individuals.[183]  The attorney further certified that "[t]he disease category indicated for each individual set forth on the Exhibit is true and correct and based on medical records or similar documentation" and that the attorney is authorized "to represent such individual's disease category."[184]

---

[179] Master Ballot at 2 (GST-1500).
[180] *Id.* at 2.
[181] *See id.* at 2 (GST-1500); Master Ballot Instructions at 2-3 (GST-1500).
[182] Master Ballot at 2-3 (GST-1500).
[183] *Id.* at 3.
[184] *Id.* at 3.

23

**L.** *In re Global Industrial Technologies, Inc., et al.,* **Case No. 02-20198-JKF (Jointly Administered) (Bankr. W.D. Pa.)**

### 1. Individual Ballots

GIT Class 4-A was for APG Asbestos Trust Claims,[185] which are a subcategory of PI Trust Claims.[186]   APG Asbestos Trust Claims were claims based on exposure to asbestos-containing products for which A.P. Greene (or its subsidiaries and/or predecessors) were allegedly liable.[187] The Individual Ballot required the claimant to first vote on the plan.[188]  The claimant then had to identify which disease forms the basis for his APG Asbestos Trust Claim according to the specified medical criteria.[189]  Finally, the claimant had to certify under penalty of perjury that he was the holder of an APG Asbestos Trust Claim or an attorney authorized to vote for such holder and that the holder of the claim has been exposed to an asbestos containing product that meets the definition of an APG Asbestos Trust Claim.[190]

### 2. Master Ballots

The Master Ballot mandated that the submission of a Master Ballot Exhibit specifying the name, SSN, "and disease category for each individual holder of a PI Trust Claim whose vote is included in the Master Ballot."[191]  To the extent that the voting was not unanimous, the Master Ballot also had to indicate the vote of each claimant.[192]  In Master Ballot Item 1, the attorney had to specify whether all or some of the "GIT Class 4-A APG Asbestos Trust Claims listed on the Master Ballot Exhibit" accept or reject the plan.[193]  In Item 2, the attorney had to summarize the number of APG Asbestos Trust Claims in each disease category that voted to accept or to reject the plan.[194]  In Item 3, the attorney had to certify under penalty of perjury that, *inter alia,* the individuals listed on the Master Ballot Exhibit were holders of APG Asbestos Trust Claims and that they had authorized the attorney to vote on the Plan in the manner indicated.[195]  The attorney also had to certify (i) that each individual listed on the Master Ballot Exhibit had been exposed to

---

[185]  *See* Individual Ballot at 1 (GST-1502); Master Ballot at 1 (GST-1502).

[186]  Definition at 18 (GST-1503).

[187]  Definitions at 1-2 (GST-1503). Although the APG Asbestos Trust Claim definition encompassed claims for contribution and indemnification for asbestos personal injury claims arising from such exposure (*i.e.,* Indirect Asbestos Claims), *id.* at 6, 14, only holders of Asbestos Personal Injury Claims could vote on the GIT 4-A Ballot, *see* Individual Ballot at 3 (GST-1502) (specifying that the ballot was solely for Asbestos Personal Injury Claims and that holders of Indirect Asbestos Claims were to use a different ballot).

[188]  Individual Ballot at 2 (GST-1502) ("For Claimants holding a Claim in GIT Class 4-A (APG Asbestos Trust Claim), please mark one of the boxes below: The undersigned GIT Class 4-A (APG Asbestos Trust Claim) Claimant ACCEPTS the Plan [or] The undersigned GIT Class 4-A (APG Asbestos Trust Claim) Claimant REJECTS the Plan[.]").

[189]  *See* Individual Ballot at 2-3(GST-1502).

[190]  Individual Ballot at 3, 5 (GST-1502).

[191]  Master Ballot at 2 (GST-1502).

[192]  *Id.* at 7.

[193]  *Id.* at 2.

[194]  *Id.* at 2.

[195]  *Id.* at 3.

24

asbestos such that the individual had an APG Asbestos Trust Claim and (ii) that the attorney was authorized "to represent the required exposure for each such Claimant."[196]

---

[196] *Id.* at 4.

25

M. *In re Kaiser Aluminum Corp., et al.*, Case No. 02–10429 (Bankr. D. Del.)

Ballots 3A and 4A were the Class 5 Individual and Master Ballots for holders of Asbestos Personal Injury Claims. Asbestos Personal Injury Claims were claims for harms arising from asbestos products for which Kaiser Aluminum or any other of its affiliated Debtors had liability.[197]

### 1. Individual Ballots

The Individual Ballot had three components. The individual first had to vote on the plan.[198] Thereafter, the individual had to "designate **only one** of the following disease categories as the basis for your Asbestos Personal Injury Claim in Class 5 under the Plan."[199] Each disease category required "Kaiser Exposure,"[200] which was "meaningful and credible exposure" to an asbestos product for which Kaiser Aluminum had legal responsibility.[201] Mesothelioma required "credible evidence" of such Kaiser Exposure.[202] Finally, the individual was required to certify under penalty of perjury that, *inter alia*, he was a holder of a Class 5 Asbestos Personal Injury Claim or was authorized to vote on behalf of such holder.[203] He also certified that "[t]he holder of such Asbestos Personal Injury Claim has been exposed to an asbestos-containing product such that the claimant holds an Asbestos Personal Injury Claim, as defined in the Plan and described in the Disclosure Statement."[204] In addition, he verified that "the holder of such Asbestos Personal Injury Claim has the disease category indicated above and meets the criteria for that disease category . . . based on medical records or similar documentation."[205]

### 2. Master Ballots

The Master Ballot required similar information and certifications. First, the attorney had to certify how "the individuals listed on the Exhibit required in Item 3, all of whom are holders of Asbestos Personal Injury Claims in Class 5 under the Plan" voted on the plan.[206] Next, the attorney had to "summarize the votes of the holders of Asbestos Personal Injury Claims for whom you are voting, according to disease category."[207] These were the same disease categories, with the same exposure requirements, as for the Individual Ballot.[208] Third, the attorney had to provide as an Exhibit to the Ballot a list of such holders with pertinent identifying

---

[197] Plan at 4 (GST-1505); *see also id.* at 1, 8 (defining Debtors). This encompasses claims for contribution, indemnification, etcetera, related to asbestos. *See id.* at 4, 11 (defining Indirect Channeled Personal Injury Claims).
[198] Individual Ballot at 2 (GST-1470) ("The undersigned, a holder of an Asbestos Personal Injury Claim in Class 5 under the Plan, votes to" accept or reject the plan.).
[199] Individual Ballot at 2 (GST-1470) (emphasis in original).
[200] *Id.* at 2-3.
[201] *Id.* at 3.
[202] *Id.* at 3.
[203] *Id.* at 4.
[204] *Id.* at 4.
[205] *Id.* at 4; *see also* Individual Ballot Instructions at 3 (GST-1470) (explaining that required certifications included that holder of the Asbestos Personal Injury Claim "has the disease category indicated and meets the medical and exposure criteria for that disease category based on medical records or similar documentation in such holder's file").
[206] Master Ballot at 2 (GST-1470).
[207] *Id.* at 2.
[208] *See id.* at 2; Master Ballot Instructions at 2-3 (GST-1470).

26

information as well as the claimant's disease category and vote on the plan.[209]   Finally, the attorney had to certify under penalty of perjury, *inter alia*, that "[e]ach of the individuals set forth on the Exhibit are holders an Asbestos Personal Injury Claim in Class 5 under the Plan" and that the attorney represents and is authorized to vote on behalf of all such individuals.[210]   The attorney further certified that "[t]he disease category indicated for each individual set forth on the Exhibit is true and correct and based on medical records or similar documentation" and that the attorney is authorized "to represent such individual's disease category."[211]   The attorney also had to certify that each individual listed on the Master Ballot Exhibit (i) had been exposed to asbestos such that the individual had an Asbestos Personal Injury Claim and (ii) had authorized the attorney "to represent the required exposure for such individual."[212]

---

[209] Master Ballot at 2 (GST-1470).
[210] *Id.* at 3.
[211] *Id.* at 3.
[212] *Id.* at 4.

27

### N. *In re Leslie Controls, Inc.*, Case. No. 10-12199 (Bankr. D. Del.)

Holders of Asbestos PI Claims voted on the plan through Class 4 Individual and Master Ballots. An Asbestos PI Claim is a claim for injury arising from exposure to asbestos for which Leslie Controls, Inc. ("Leslie") has liability.[213] For any holder of a Class 4 Asbestos PI Claim who had not formally asserted the claim in court by a specified date, the submitted Ballot "must contain both medical and exposure evidence sufficient . . . to provide *prima facie* evidence of the merits of such claim."[214]

#### 1. Individual Ballots

In completing the Individual Ballot, a person had to first select the disease level that forms the "basis for the claim."[215]  Each disease level required "meaningful and credible exposure" to an asbestos-containing product for which Leslie has legal responsibility or to conduct for which Leslie is legally responsible that exposed the claimant to an asbestos-containing product.[216]  Thereafter, the person had to vote on the plan.[217]  The individual then had to certify under penalty of perjury that, *inter alia*, "she or he holds an Asbestos PI Claim against Leslie Controls, Inc. based on the disease identified in this Ballot," which disease has been "correctly identified," and that any "medical and exposure evidence submitted to support my [Asbestos PI Claim] . . . that had not been formally asserted in state or federal court by the Voting Record Date is accurate."[218]

#### 2. Master Ballots

Pursuant to Item 1 of the Master Ballot, the attorney had to provide an exhibit (i) "listing each holder of an Asbestos PI Claim that you represent" and (ii) specifying such person's identifying information (name, SSN, birth date, death date), disease, and vote on the plan.[219] Under Item 2, the attorney had to indicate how the "claimants listed on the Exhibit to this Ballot" vote on the plan and summarize the votes "for each disease category of claimants" on the Exhibit.[220]  Thereafter, the attorney certified under penalty of perjury that, *inter alia*, "[e]ach of the claimants identified on the Exhibit to this Master Ballot holds a Class 4 Asbestos PI Claim against Leslie based on the disease identified in such Exhibit" and the identified disease category for each claimant is correct.[221]  The attorney also certified to being authorized to vote "on behalf

---

[213]  Plan at 3-4, 9, 12-14 (GST-1429). This encompasses claims against certain entities for their derivative liability for such products as well as indemnification and contribution claims against Leslie for such asbestos injuries. *Id.* at 9, 12-13 (defining Derivative Liability Asbestos PI Claim and Indirect Asbestos PI Claim).

[214]  Individual Ballot at 1 (GST-1496); Master Ballot at 1 (GST-1496) (same); *see also* Individual Ballot at 5 (GST-1496) (warning that Ballots submitted by any holder of a Class 4 Asbestos Claim that was not formally asserted in court would not be counted unless medical and exposure evidence sufficient to provide *prima facie* evidence of the claim's merits was submitted); Master Ballot at 2 (GST-1496) (same).

[215]  Individual Ballot at 2 (GST-1496) (directing that one "indicate whether the undersigned holds a Class 4 Asbestos PI Claim against Leslie Controls, Inc. that is based on one of the following diseases").

[216]  Trust Dist. Proc. at 24-28; 45-46 (GST-1494).

[217]  Individual Ballot at 2 (GST-1496) ("The undersigned holder of a Class 4 Asbestos PI Claim hereby votes to" accept or reject the plan).

[218]  Individual Ballot at 3 (GST-1496).

[219]  Master Ballot at 1, 6 (GST-1496).

[220]  *Id.* at 2-3.

[221]  *Id.* at 3.

28

of each of the holders of Class 4 Asbestos PI Claims listed on the Exhibit."[222]   Finally, the
attorney certified that any "medical and exposure evidence submitted for each holder of a Class 4
Asbestos PI Claim that had not formally asserted [such Claim] . . . in state or federal court by the
Voting Record Date is accurate."[223]

---

[222] *Id.* at 3.
[223] *Id.* at 4.

29

**O.** *In re North American Refractories Company, et. al.,* **Case No. 02-20198-JKF (Jointly Administered) (Bankr. W.D. Pa.)**

NARCO Class 4-A was for NARCO Asbestos Trust Claims,[224] which are a subcategory of PI Trust Claims.[225] NARCO Asbestos Trust Claims were claims based on exposure to asbestos-containing products for which North American Refractories Company ("NARCO"), its affiliated debtors, and its subsidiaries and/or predecessors were allegedly liable.[226]

### 1. Individual Ballots

The Individual Ballot required the claimant to first vote on the plan.[227] The claimant then had to identify which disease forms the basis for his NARCO Asbestos Trust Claim according to the specified medical criteria.[228] Finally, the claimant had to certify under penalty of perjury that he was the holder of a NARCO Asbestos Trust Claim or an attorney authorized to vote for such holder and that the holder of the claim had been exposed to an asbestos-containing product within the definition of a NARCO Asbestos Trust Claim.[229]

### 2. Master Ballots

The Master Ballot mandated provision of a Master Ballot Exhibit specifying the name, SSN, "and disease category for each individual holder of a PI Trust Claim whose vote is included in the Master Ballot."[230] To the extent that the voting was not unanimous, the Master Ballot also had to indicate the vote of each claimant.[231] In Master Ballot Item 1, the attorney had to specify whether all or some of the "NARCO Class 4-A NARCO Asbestos Trust Claims listed on the Master Ballot Exhibit" accept or reject the plan.[232] In Item 2, the attorney had to summarize the number of NARCO Asbestos Trust Claims in each disease category that voted to accept or to reject the plan.[233] In Item 3, the attorney had to certify under penalty of perjury that, *inter alia*, the individuals listed on the Master Ballot Exhibit were holders of NARCO Asbestos Trust Claims and that they had authorized the attorney to vote on the plan in the manner indicated.[234] The attorney also had to certify (i) that each individual listed on the Master Ballot Exhibit had been exposed to asbestos such that the individual had an NARCO Asbestos Trust

---

[224] *See* Individual Ballot at 1 (GST-1449); Master Ballot at 1 (GST-1449).

[225] Definition at 18 (GST-1503).

[226] Definitions at 15-16 (GST-1503). Although the NARCO Asbestos Trust Claim definition encompassed claims for contribution and indemnification for asbestos personal injury claims arising from such exposure (*i.e.*, Indirect Asbestos Claims), Definitions at 6, 14 (GST-1503), only holders of Asbestos Personal Injury Claims could vote on the NARCO 4-A Ballot, Individual Ballot at 3 (GST-1449) (specifying that the ballot was solely for Asbestos Personal Injury Claims and that holders of Indirect Asbestos Claims were to use a different ballot).

[227] Individual Ballot at 2 (GST-1449) ("For Claimants holding a Claim in in NARCO Class 4-A (NARCO Asbestos Trust Claim), please mark one of the boxes below: The undersigned NARCO Class 4-A (NARCO Asbestos Trust Claim) Claimant ACCEPTS the Plan [or] The undersigned NARCO Class 4-A (NARCO Asbestos Trust Claim) Claimant REJECTS the Plan[.]").

[228] *See id.* at 2-3 (GST-1449).

[229] *Id.* at 3, 6.

[230] *Id.* at 2.

[231] *Id.* at 6.

[232] *Id.* at 2.

[233] *Id.* at 2.

[234] *Id.* at 2-3.

30

Claim and (ii) that the attorney was authorized "to represent the required exposure for each such Claimant."[235]

---

[235] *Id.* at 4.

**P.** *In re Owens Corning, et al.,* **Case No. 00-03837-JKF (Jointly Administered) (Bankr. D. Del.)**

### 1. Individual Ballots

The versions of the ballots for holders of OC Asbestos Personal Injury Claims were effectively the same in 2003 (Class 7-I and Class 7-M) and 2006 (Class A7-I and Class A7-M).[236] An "OC Asbestos Personal Injury Claim" was any claim for exposure to an asbestos-containing product for which Owens Corning (or certain of its subsidiaries and/or predecessors) may be legally liable.[237] To be entitled to vote on the plan, "the Claimant must hold a Class 7 OC Asbestos Personal Injury/PI Trust Claim, based on one of the [specified] eight Disease Levels."[238] One was required to first vote on the plan,[239] and then specify the pertinent disease level.[240] Each disease category required "Owens Corning Exposure," which was "meaningful and credible exposure" to an asbestos product for which Owens Corning had legal responsibility.[241] Mesothelioma required "credible evidence" of this Owens Corning Exposure.[242] Thereafter, the signatory had to certify under penalty of perjury that, *inter alia*, the Claimant was the holder of the Asbestos Personal Injury Claim identified in Item 2 and had full authority to vote on the plan.[243] In addition, he verified that such "Claimant has experienced Owens Corning Exposure with respect to which Owens Corning has legal liability" and has the asserted disease level based on documentation in the signatory's possession or possession of the Claimant's attorney or doctor.[244]

### 2. Master Ballots

In completing the Master Ballot, an attorney first had to certify how the claimants listed on the required exhibit (discussed below) voted on the plan and then summarize the votes "for each Disease Level of the Claimant for whom you are voting."[245] These were the same disease categories, with the same exposure requirements, as for the Individual Ballot.[246] Pursuant to

---

[236] Aside from the treatment of the 2019 statements in the Master Ballots discussed *infra*, the only appreciable differences between the 2003 and 2006 ballots were that (1) full SSN were required in 2003, *see, e.g.*, Class 7-I Ballot (GST-1438), but only the last four digits were required in 2006, *see, e.g.*, Class A7-I Ballot (GST-1448), and (2) that, unlike in 2003, the attorney did not have to certify that the supporting documentation for the asserted disease was "in my possession," Class 7-M Ballot (GST-1438 & GST-1440), *see* Class A7-M Ballot (GST-1448).

[237] OC Plan at 34, 35 (GST-1509); *see also* OC Plan at 30, 34-35, 37-39, 49-50 (GST-1509) (defining, respectively, Integrex Asbestos Personal Injury Claims, OC Indirect Asbestos PI Trust Claims, OC Person, and Unpaid OC Resolved Asbestos Personal Injury Claim).

[238] 2003 Class 7-I Ballot Instructions at 2 (GST-1438); 2006 Class A7-I Ballot Instructions at 2 (GST-1448). The quoted language comes from the 2003 ballots.

[239] *See* 2003 Class 7-I Ballot Item 1 (GST-1438) ("The undersigned, a holder of a Class 7 OC Asbestos Personal Injury/PI Trust Claim, votes to" accept or reject the plan.); 2006 Class A7-I Ballot Item 1 (accord) (GST-1448).

[240] 2003 Class 7-I Ballot Item 2 (GST-1438) ("The undersigned, a holder of a Class A7 OC Asbestos Personal Injury/PI Claim, votes to" accept or reject the plan.); 2006 Class A7-I Ballot Item 2 (GST-1448) (accord).

[241] 2003 Class 7-I Ballot Instructions at 2-4 (GST-1438); 2006 Class A7-I Ballot Instructions at 2-4 (GST-1448).

[242] 2003 Class 7-I Ballot at 3 (GST-1438); 2006 Class A7-I Ballot at 3 (GST-1448).

[243] 2003 Class 7-I Ballot Item 6 (GST-1438); 2006 Class A7-I Ballot Item 6 (GST-1448).

[244] 2003 Class 7-I Ballot Item 6 (GST-1438); 2006 Class A7-I Ballot Item 6 (GST-1448).

[245] 2003 Class 7-M Ballot Item 1 (GST-1438 & GST-1440); 2006 Class A7-M Ballot Item 1 (GST-1448).

[246] *See* 2003 Class 7-M Ballot Item 1 (GST-1438 & GST-1440); 2006 Class A7-M Ballot Item 1 (GST-1448); 2003 Class 7-M Ballot Instructions at 3-5 (GST-1438 & GST-1440); 2006 Class A7-M Ballot Instructions at 3-5 (GST-1448).

32

Item 2, the attorney had to provide an exhibit to the Master Ballot identifying the "holders of Class 7 OC Asbestos Personal Injury/PI Trust Claims" whom the attorney represented by name, SSN, disease level, and vote.[247] Item 3 required the attorney to certify under penalty of perjury, *inter alia*, that each individual listed on the ballot exhibit "(a) has experienced Owens Corning Exposure . . . with respect to which Owens Corning has legal liability and (b) has the Disease Level asserted based on medical records or similar documentation."[248] Additionally, for the 2003 Master Ballots, there was a Rule 2019 verified statement requirement, in which the attorney verified, *inter alia*, that he represented the individuals listed on the Exhibit.[249] For the 2006 Master Ballot, one of the required certifications in Item 3 was that the attorney had complied with the 2019 orders in the case.[250]

### 3. Fibreboard Ballots

The Class 8 (2003) and Class B8 (2006) ballots for holders of FB Asbestos Personal Injury Claims mirrored the Class 7 and Class A7 ballots for holders of OC Asbestos Personal Injury Claim, except that everything was defined in relation to Fibreboard rather than Owens Corning. An "FB Asbestos Personal Injury Claim" was any claim for exposure to an asbestos-containing product for which Fibreboard Corporation (or certain of its subsidiaries and/or predecessors) may be legally liable.[251] Similarly, each Disease Level required "Fibreboard Exposure," which was "meaningful and credible exposure" to asbestos-containing products for which Fibreboard has legal responsibility.[252] Finally, the pertinent Item 3 certification was that each identified holder of an FB Asbestos Personal Injury Claim "has experienced Fibreboard Exposure . . . with respect to which Fibreboard Corporation has legal liability."[253]

---

[247] 2003 Class 7-M Ballot Item 2 (GST-1438 & GST-1440); 2006 Class A7-M Ballot Item 2(GST-1448).

[248] 2003 Class 7-M Ballot Item 3(GST-1438 & GST-1440); 2006 Class A7-M Ballot Item 3 (GST-1448).

[249] 2003 Class 7-M Ballot Item 4 (GST-1438 & GST-1440).

[250] 2006 Class A7-M Ballot Item 3 (GST-1448).

[251] OC Plan at 21, 25 (GST-1509); *see also* OC Plan at 23, 24, 49 (GST-1509) (defining, respectively, FB Indirect Asbestos PI Trust Claims, FB Person, and Unpaid FB Resolved Asbestos Personal Injury Claims).

[252] *See, e.g.,* 2003 Class 8 Master Ballot Instructions at 3-5 (GST-1440); 2006 Master Ballot Instructions at 3-5 (GST-1448).

[253] *See, e.g.,* 2003 Class 8 Master Ballot Item 3 (GST-1440); 2006 Class B8 Ballot Item 3 (GST-1448).

33

**Q.** *In re Pittsburgh Corning Corp.,* **Case No. 2:00-bk-22876 (Jointly Administered) (Bankr. W.D. Pa.)**

1. 2003 Solicitation

Exposure to an asbestos product manufactured, marketed, sold, or distributed by Pittsburgh Corning ("PCC"), PPG Industries, Inc. ("PPG") and its affiliates, or Corning Incorporated ("Corning") and its affiliates was a definitional requirement for submitting an Individual or Master Ballot for Class 5A, Class 5B, or Class 5C Claims (*i.e.,* the Asbestos Personal Injury Claims).[254] Class 5A Claims (PCC Fund Claims) were based on exposure to Unibestos or another PCC product.[255] Class 5B Claims (PPG Fund Claims) were claims against PPG and its affiliates for exposure to asbestos products that did not qualify as PCC Fund Claims (*i.e.,* excluding Unibestos and other PCC products).[256] Class 5C Claims (Corning Fund Claims) were claims against Corning and its affiliates for exposure to asbestos products excluded from the PCC Fund Claims definition.[257] Individuals had one vote for each Class 5A, Class 5B, or Class 5C claim they possessed.[258] To submit a ballot, an individual had to certify (i) to having (or being authorized to submit the ballot on behalf of one having) an Asbestos Personal Injury Claim, (ii) to having exposure to an asbestos-containing product such that the Asbestos Personal Injury Claim qualified as a PCC Fund Claim, PPG Fund Claim, or Corning Fund Claim, and (iii) to having the relevant disease, as supported by medical records or similar documentation.[259] Attorneys submitting Master Ballots made similar certifications as to disease category, to holding an Asbestos Personal Injury Claim in Class 5A, 5B, or 5C, and to exposure to asbestos-containing products within the definition of a PCC Fund Claim, a PPG Fund Claim, or a Corning Fund Claim.[260] In addition, the attorney had to certify to his authorization (i) to vote on the plan and (ii) "to represent the required exposure for each such Claimant."[261]

2. 2009 Solicitation

Each 2009 ballot required certification that the claimant had exposure to a PCC asbestos product. For each claimant, an applicable disease level had to be selected.[262] A definitional requirement of each disease level was exposure to Unibestos or another asbestos-containing product distributed, manufactured, marketed, or sold by PCC.[263] The exposure requirement was heighten for mesothelioma, for which "credible evidence of exposure to Unibestos" or other PCC

---

[254] *See* 2003 Individual Ballot at 1-3 (GST-1439).

[255] 2003 Individual Ballot at 2 (GST-1439); 2003 Master Ballot at 2 (GST-1439); *see also* PCC 2003 Plan at 15 (GST-1520).

[256] 2003 Individual Ballot at 2(GST-1439); 2003 Master Ballot at 2(GST-1439).

[257] 2003 Individual Ballot at 2 (GST-1439); 2003 Master Ballot at 3 (GST-1439); *see also* PCC 2003 Plan at 9 (GST-1520) (defining Corning Fund Claims).

[258] *See, e.g.,* 2003 Individual Ballot at 2 (GST-1439).

[259] 2003 Individual Ballot at 2 (GST-1439).

[260] 2003 Master Ballot at 5-6 (GST-1439).

[261] 2003 Master Ballot at 5-6 (GST-1439).

[262] *See* 2009 Individual Ballot at 1 (GST-1465); 2009 Master Ballot at 2 (GST-1465).

[263] *See* 2009 Individual Ballot at 2-3 (GST-1465) (defining disease levels); 2009 Master Ballot at 6-8 (GST-1465) (defining disease levels).

34

product rather than just "exposure to Unibestos" or other PCC product was required.[264]  In submitting an Individual Ballot, one had to certify under penalty of perjury that the person on whose behalf the ballot was being cast "has the disease level asserted on this Ballot."[265]  In submitting a Master Ballot, an attorney had to certify under penalty of perjury, *inter alia*, that the attorney was authorized "to represent the required exposure for each" claimant listed on the Master Ballot Exhibit.[266]

---

[264] *See* 2009 Individual Ballot at 2-3 (GST-1465) (defining disease levels); 2009 Master Ballot at 6-8 (GST-1465) (defining disease levels).
[265] 2009 Individual Ballot at 1 (GST-1465).
[266] 2009 Master Ballot at 4 (GST-1465).

35

**R.** *In re Quigley Company, Inc.*, **Case No. 04-15739 (Bankr. S.D.N.Y.)**

Holders of Asbestos PI Claims voted through Class 4 Master Ballots or Individual Ballots (collectively "Ballots"). An "Asbestos PI Claim" was any claim seeking recompense for bodily injury caused by exposure to, or the presence of, asbestos.[267]

### 1. Individual Ballots

The Class 4 Ballots required the identification of the disease that formed the basis of each holder's claim.[268] Each disease required "Quigley Exposure," which necessitated "meaningful and credible exposure" to asbestos or asbestos-containing products for which Quigley Company, Inc. ("Quigley") has legal responsibility.[269] The Ballots also mandated that claimants indicate whether they were participants in the Pfizer Claimant Settlement Agreement.[270] The Pfizer Claimant Settlement Agreement was a prepetition settlement agreement between Pfizer, Inc. and various holders of asbestos personal injury claims that had been asserted against Pfizer and Quigley.[271] Pursuant to the payment terms of the Pfizer Claimant Settlement Agreement, claimants were required to submit evidence of exposure to asbestos-containing products for which Pfizer or its affiliates is legally responsible; this evidence had to be sufficient to survive a motion for summary judgment in the jurisdiction where the claimant's asbestos action was pending.[272]

In completing the Individual Ballot, a person had to first select the disease level that forms the "basis for the claim."[273] Thereafter, the person had to vote on the plan.[274] The individual then had to certify under penalty of perjury, *inter alia*, that "she or he holds an Asbestos PI Claim against Quigley based on the disease identified in this ballot," which disease has been "correctly identified," and that the signatory had authority to vote on the plan for the identified Asbestos PI Claim.[275]

### 2. Master Ballots

Pursuant to Item 1 of the Master Ballot, the attorney had to provide an exhibit "listing each holder of an Asbestos PI Claim you represent" and specifying such person's identifying information (name, SSN, birth date, death date), disease, status as a participant in the Pfizer Claimant Settlement Agreement, and vote on the plan.[276] Under Item 2, the attorney had to indicate how the "claimants listed on the exhibit accompanying this Ballot" vote on the plan and

---

[267] Quigley Disclosure Statement at 58 (GST-1430).

[268] *See* Individual Ballot at 2 (GST-1474); Master Ballot at 3 (GST-1474).

[269] Quigley Trust Dist. Proc. 12-16, 23 (GST-1513).

[270] *See* Individual Ballot at 3 (GST-1474); Master Ballot Instructions at 2 (GST-1474).

[271] *See* Quigley Disclosure Statement at 35-40 (GST-1430).

[272] Quigley Disclosure Statement at 36, 39 (GST-1430).

[273] Individual Ballot at 2 (GST-1474) (directing that one "indicate whether the undersigned holds a Class 4 Asbestos PI Claim against Quigley that is based on one of the following diseases").

[274] Individual Ballot at 3 (GST-1474) ("The undersigned holder of a Class 4 Asbestos PI Claim hereby votes to [accept or reject the plan.]").

[275] Individual Ballot at 3 (GST-1474).

[276] Master Ballot at 3 (GST-1474); Master Ballot Instructions at 2-3, 5 (GST-1474).

summarize the votes "for each disease category of claimants for whom you are voting."[277] Thereafter, the attorney certified under penalty of perjury that, *inter alia*, "[e]ach of the claimants identified on the Exhibit to this Master Ballot holds an Asbestos PI Claim against Quigley based on the disease identified in this Exhibit" and that "[t]he disease category identified with respect to each claimant . . . is correct."[278] The attorney also certified to being authorized to vote "on behalf of each of the holders of Asbestos PI Claims listed on the Exhibit."[279]

---

[277] Master Ballot at 3-4 (GST-1474).
[278] Master Ballot at 5 (GST-1474).
[279] Master Ballot at 5 (GST-1474).

37

**S.** *In re T H Agriculture & Nutrition, L.L.C.*, **Case No. 08-14692 (Bankr. S.D.N.Y.)**

Holders of Asbestos PI Claims voted through Class 4 Individual Ballots and Master Ballots (collectively, "Ballots"). In relevant part, an "Asbestos PI Claim" was a claim seeking compensation related to asbestos or asbestos-containing products, or conduct causing exposure to asbestos, for which T H Agriculture & Nutrition, L.L.C. ("THAN") has liability.[280]

1. Individual Ballots

The Class 4 Ballots required the identification of the disease that formed the basis of each holder's claim.[281] Each disease required "THAN Exposure," which necessitated "meaningful and credible exposure" to asbestos or asbestos-containing products, or conduct causing exposure to asbestos, for which THAN has legal responsibility.[282]

More specifically, in completing the Individual Ballot, a person had to first select the disease level that forms "[t]he basis for the claim."[283] Thereafter, the person had to vote on the plan.[284] The individual then had to certify under penalty of perjury, *inter alia*, that "she or he holds an Asbestos PI Claim against THAN based on the disease identified in this Ballot," which disease has been "correctly identified," and that the signatory has authority to vote on the plan for the identified Asbestos PI Claim.[285]

2. Master Ballots

Pursuant to Item 1 of the Master Ballot, the attorney had to provide an exhibit "listing each holder of an Asbestos PI Claim that you represent" and specifying such person's identifying information (name, SSN, birth date, death date), disease, and vote on the plan.[286] Under Item 2, the attorney had to (i) indicate how the "claimants listed on the Exhibit to this Ballot" vote on the plan and (ii) summarize the votes "for each disease category of claimants for whom you are voting."[287] Thereafter, the attorney certified under penalty of perjury, *inter alia*, that "[e]ach of the claimants identified on the Exhibit to this Master Ballot holds an Asbestos PI Claim against THAN based on the disease identified in such Exhibit" and that "[t]he disease category identified with respect to each claimant . . . is correct."[288] The attorney also certified to being authorized to vote "on behalf of each of the holders of Asbestos PI Claims listed on the Exhibit."[289]

---

[280] Plan at 3 (GST-1529) (defining "Asbestos PI Claim"); *see id.* at 3-5, 7-9, 11-13, 15, 17 (defining cross-referenced terms); *see also* Disclosure Statement at i (GST-1492) (explaining that the proposed "injunction will cover all asbestos-related personal injury and wrongful death Claims and Demands based in whole or in part on the alleged conduct or products of THAN").

[281] *See* Individual Ballot at 3, 4 (GST-1479); Master Ballot at 3 (GST-1479).

[282] THAN Trust Dist. Proc. at 23-26, 43 (GST-1492).

[283] Individual Ballot at 4 (GST-1479) (directing that one "indicate whether the undersigned holds a Class 4 Asbestos PI Claim against THAN that is based on one of the following diseases").

[284] Individual Ballot at 4 (GST-1479) ("The undersigned holder of a Class 4 Asbestos PI Claim hereby votes to" accept or reject the plan.).

[285] Individual Ballot at 5 (GST-1479).

[286] Master Ballot at 3, 6-7, 8 (GST-1479).

[287] Master Ballot at 3-4 (GST-1479).

[288] Master Ballot at 5 (GST-1479).

[289] Master Ballot at 5 (GST-1479).

38

39

**T.** *In re United States Mineral Products Company, d/b/a Isolatek International,* **Case No. 01-2471 (Bankr. D. Del.)**

Holders of Asbestos PI Claims voted on one Class 4 Special Ballot the United States Mineral Products Company ("USM") bankruptcy. Asbestos PI Claims encompassed Asbestos-Related Personal Injury Claims and Indirect Asbestos-Related Personal Injury Claims.[290] Asbestos-Related Personal Injury Claims were any claim against USM (or any entity for which USM is liable) for personal injury relating to asbestos.[291] Indirect Asbestos-Related Personal Injury Claims were any claim against USM by any (co)defendant for contribution, reimbursement, indemnity, etcetera related to Asbestos PI Claims.[292]

### 1. Special Ballots for Individual Claimants

To complete the Special Ballot, a creditor had to certify that, to the best of his knowledge, he had been injured by asbestos products manufactured, sold, or used by USM.[293] For those voting only one Asbestos PI Claim, the person then had to vote on the plan,[294] and sign and date the ballot.

### 2. Special Ballots for Multiple Claimants

If an attorney was voting multiple Asbestos PI Claims, he had to complete a separate certification.[295] The attorney had to submit "a complete list ... with the name of each asbestos claimant on whose behalf a special ballot is cast."[296] The attorney then voted to accept or reject the plan.[297] The attorney had to certify that, *inter alia,* he was authorized to vote for each of the holders of Class 4 Asbestos PI Claims against USM and could provide written authorization to that effect for each Claimant.[298] He also certified that "to the best of the undersigned's knowledge, information and belief, each such claimant holds a valid compensable Claim against the Debtor for an asbestos-related injury caused by the Debtor" and "as to each and every asbestos claimant on behalf of which the undersigned shall cast a vote ... the undersigned has such information as may be necessary to support the assertion of a Claim against the Debtor, and the nature of the injury asserted."[299] He also acknowledged that the certification was given in

---

[290] Plan at 2 (GST-1431).

[291] Plan at 3 (GST-1431).

[292] Plan at 11 (GST-1431).

[293] Special Ballot at 3 (GST-1475) ("The undersigned creditor holds an Asbestos-Related Personal Injury Claim or an Indirect Asbestos-Related Personal Injury Claim ... against United States Mineral Products Company, Debtor, and certifies that to the best of his, her or its knowledge such he, she or it has suffered injury caused by the products manufactured, used or sold by the Debtor.").

[294] *Id.* ("The undersigned holder of the Class 4 Asbestos PI Claim votes" to accept or reject the plan.").

[295] *Id.* ("If this Special Ballot is voted by an authorized attorney voting multiple claims, do not sign here – see separate certification below.") (emphasis omitted).

[296] *Id.*

[297] *Id.* at 4 ("The undersigned, voting a multiple Special Ballot in Class 4, votes as follows: (please check one): To Accept the Plan: ____ votes (at $1.00 per Claim) in the aggregate sum of $1.00 [or] To Reject the Plan: ____ votes (at $1.00 per Claim) in the aggregate sum of $1.00[.]").

[298] *Id.*

[299] *Id.*

40

compliance with Rule 2019.[300]   Finally, "[t]he undersigned certifies and declares under the penalty of perjury that the foregoing is true and correct."[301]

---

[300] *Id.*

[301] *Id.* at 5.

41

## U. *In re USG Corporation*, Case No. 01-2094 (Bankr. D. Del.)

Holders of Asbestos Personal Injury Claims voted through Class 4 Individual Ballots and Master Ballots (collectively, "Ballots"). An Asbestos Personal Injury Claim was a claim for personal harms arising from exposure to or the presence of asbestos for which any Debtor[302] had liability; this included claims for contribution, reimbursement, etcetera, related to Asbestos Personal Injury Claims.[303]

### 1. Individual Ballots

The Individual Ballot had three components. The individual first had to vote on the plan.[304] Thereafter, the individual had to "designate **only one** of the following disease categories as the basis for your Asbestos Personal Injury Claim."[305] Each disease category required "USG/A.P. Green Exposure,"[306] which was "meaningful and credible exposure" to an asbestos product for which any Debtor or A.P. Green had legal responsibility.[307] If an individual asserted an Asbestos Personal Injury Claim but was unable to meet the requisite exposure criteria for the disease levels, the individual was not required to select a disease category.[308] Finally, the individual was required to certify under penalty of perjury that, *inter alia*, he was a holder of an Asbestos Personal Injury Claim or was authorized to vote on behalf of such holder.[309] He also certified that "[t]he holder of such Asbestos Personal Injury Claim has been exposed to an asbestos-containing product such that the claimant holds an Asbestos Personal Injury Claim, as defined in the Plan and described in the Disclosure Statement."[310] In addition, he verified that "[i]f a disease category is selected [on the ballot], the holder of such Asbestos Personal Injury Claim has the disease category indicated above and meets the criteria for that disease category . . . based on medical records or similar documentation."[311]

### 2. Master Ballots

---

[302] USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company, and Stocking Specialists, Inc. (collectively, "USG") were the Debtors. *See, e.g.*, Plan at 1, 6 (GST-1518); Individual Ballot at 1, n.1 (GST-7152).

[303] Plan at 2-3 (GST-1518).

[304] Individual Ballot at 2 (GST-7152) ("The undersigned, a holder of an Asbestos Personal Injury Claim, votes to" accept or reject the plan.).

[305] *Id.* at 2 (emphasis in original).

[306] *Id.* at 2-3.

[307] Individual Voting Instructions at 1 n. 2 (GST-7152); *see also* Plan at 10 (GST-1518) (defining "A.P. Green" as A.P. Green Industries, Inc., A.P. Green Refractories Co., or any of their affiliates or specified predecessors).

[308] Individual Ballot at 2 (GST-7152) ("If you believe that you hold an Asbestos Personal Injury Claim as defined in the Plan, but do not meet the medical and exposure criteria for any of the disease categories identified below, your Asbestos Personal Injury Claim will be counted for voting purposes only in the amount of $1.00 and you are not required to select a disease category below.").

[309] *Id.* at 4.

[310] *Id.* at 4.

[311] *Id.* at 4; *see also* Individual Ballot Instructions at 3 (GST-7152) (explaining that the certifications included that the holder of the Asbestos Personal Injury Claim "has the disease category indicated and meets the medical and exposure criteria for that disease category based on medical records or similar documentation in such holder's file").

42

The Master Ballot required similar information and certifications. First, the attorney had to certify how "the individuals listed on the Exhibit required in Item 3, all of whom are holders of Asbestos Personal Injury Claims in Class 7 under the Plan," voted on the Plan.[312] Next, the attorney had to "summarize the votes of the holders of Asbestos Personal Injury Claims for whom you are voting, according to disease category."[313] These were the same disease categories, with the same exposure requirements, as in the Individual Ballot.[314] The instructions regarding a claimant who could not meet the exposure criteria also mirrored the Individual Ballot.[315] In addition, the attorney had to provide as an Exhibit to the Ballot a list of such holders with pertinent identifying information as well as the claimant's disease category and vote on the plan.[316] Finally, the attorney had to certify under penalty of perjury, *inter alia*, that "[e]ach of the individuals set forth on the Exhibit is an Asbestos PI Claimant that holds an Asbestos Personal Injury Claim in Class 7 under the Plan" and that the attorney represented and was authorized to vote on behalf of all such individuals.[317] The attorney further certified that "[t]he disease category indicated for each individual set forth on the Exhibit is true and correct and based on medical records or similar documentation" and that the attorney is authorized "to represent such individual's disease category."[318]

---

[312] Master Ballot at 2 (GST-7152).
[313] *Id.* at 2.
[314] *See id.* at 2; Master Ballot Instructions at 2-3 (GST-7152).
[315] *See* Master Ballot at 2 (GST-7152); Master Ballot Instructions at 2-3 (GST-7152).
[316] Master Ballot at 2 (GST-7152).
[317] *Id.* at 3.
[318] *Id.* at 3.

43

**V.** *In re W.R. Grace & Co., et al.,* **Case No. 01-bk-01139 (Jointly Administered) (Bankr. D. Del.)**

Each holder of an Asbestos PI Claim had a single vote on the plan, which was weighted according to the disease category that formed the basis for the holder's asserted Asbestos PI Claim.[319]

### 1. Individual Ballots

By definition, the Grace Ballot disease levels required "meaningful and credible exposure" to Grace asbestos-containing products or vermiculite from the Libby Mine.[320] To qualify as a holder of an Asbestos PI Claim, one had to have a personal injury claim based upon the presence of or exposure to any asbestos, asbestos-containing product, or vermiculite produced by or on behalf of any of the Grace Debtors.[321] Individual Ballots required identification of a pertinent disease level.[322] Individuals were required to certify, under penalty of perjury, that the Claimant had been exposed to asbestos products such that they had Asbestos PI Claims and also that they had the asserted disease level.[323]

### 2. Master Ballots

The attorney preparing a Master Ballot had to provide an exhibit that, *inter alia,* listed each holder of an Asbestos PI Claim covered by the Master Ballot as well as "the disease level of the Claimant." If an attorney believed that "a Client holds an Asbestos PI Claim as defined in the Plan, but does not meet the medical and exposure criteria for any of the disease levels, . . . [the attorney was] not required to identify a disease level on the Exhibit." In completing the ballot, the attorney had to indicate whether all or only some "of the individuals listed on the Exhibit accompanying this Master Ballot, all of whom are Holders of Class 6 Asbestos PI Claims, accept [or reject] the Plan." The attorney also had to summarize for each disease category the (i) total votes, (ii) votes accepting the plan, and (iii) votes rejecting the plan. In addition, attorneys were required to certify, under penalty of perjury, (i) that the disease level, if indicated, was true and correct based upon medical records or comparable documentation and (ii) that the attorney was authorized, under relevant law, to represent the disease level and to vote the client's claim to either accept or reject the plan.

---

[319] Grace Voting Procedures at 6 (GST-1458).

[320] *See, e.g.,* Grace Master Ballot Voting Instructions at 6-8 (GST-0245); Grace Individual Ballot Voting Instructions at 4 (GST-7151).

[321] *See* Grace Plan at 11-13 (GST-1504).

[322] *See* Individual Ballot at 1 (GST-7151); Grace Individual Ballot Voting Instructions at 3 (GST-7151).

[323] *See* Grace Individual Ballot Voting Instructions at 7 (GST-7151) ( "I have/The Claimant has been exposed to an asbestos-containing product or material with the result that the claimant has an Asbestos PI Claim (as defined in the Plan) for which the Debtors have legal liability." "I have/The Claimant has the Disease Level asserted in Item 3 of this Ballot based on medical records or similar documentation in the possession of the signatory or in the possession of the Claimant's attorney or physician.").

44