# EXHIBIT E

3020

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

**CONFIDENTIAL PORTIONS INCLUDED**

IN RE:

GARLOCK SEALING TECHNOLOGIES,   No. 10-BK-31607
LLC, et al,
    Debtors.   VOLUME XI-B
AFTERNOON SESSION
MONDAY, AUGUST 5, 2013

TRANSCRIPT OF ESTIMATION TRIAL
BEFORE THE HONORABLE GEORGE R. HODGES,
UNITED STATES BANKRUPTCY JUDGE

**CONFIDENTIAL PORTIONS INCLUDED**

**APPEARANCES**:

  On Behalf of Debtor:

    GARLAND S. CASSADA, ESQ.
    Robinson Bradshaw & Hinson, PA
    101 North Tryon Street, Suite 1900
    Charlotte, North Carolina 28246

    JONATHAN C. KRISKO, ESQ.
    Robinson Bradshaw & Hinson PA
    101 North Tryon Street, Suite 1900
    Charlotte, North Carolina 28246

    LOUIS ADAM BLEDSOE, III, ESQ.
    Robinson Bradshaw & Hinson, PA
    101 North Tryon Street, Suite 1900
    Charlotte, North Carolina 28246

    RICHARD C. WORF, ESQ.
    Robinson Bradshaw & Hinson, PA
    101 North Tryon Street, Suite 1900
    Charlotte, North Carolina 28246

3025

# I N D E X

| | DIRECT | CROSS | REDIR | RECROSS |
|---|---|---|---|---|
| Charles L. Bates............................ | | | 3026 | 3031 |
| Richard L. Magee......... | 3034 | 3097 | | |

# E X H I B I T S

Debtors' Exhibits No.:                                    ADMITTED

ACC's Exhibits No:.                                       ADMITTED

                                                              PAGE

Reporter's Certificate.................................3159

Cross - Magee

A.      I was responsible for this language.  I haven't read it all, but I'm assuming if it's pulled right from the language that I was certainly responsible for it.  I won't claim complete authorship but, yes, I was responsible for it.

Q.      We tried to just reproduce it on our opening we used it but we couldn't read it.  So we've retyped it in.  Now it says right up front, as Mr.  Cassada asked you, settlements are made without any admission of liability.

A.      That's correct.

Q.      That's pretty standard, isn't it?  I mean if you're settling something, neither side is acknowledging anything.  They're just saying we're done.  We're paying an amount of money.  We're not agreeing we're liable but we're moving on.

A.      That's exactly the point we're trying to make, Mr.  Guy.  We're not a acknowledging liability when we make settlements.

Q.      Got it.  We agree on it.  But when you settled cases, you did consider factors that were relevant to trial risk.  So, for example, you did consider the jurisdiction; right?

A.      Again, as I just explained, in cases that presented risk we considered a number of factors including jurisdiction.

3120

Cross - Magee

Q.      And that makes a difference.  Because in some jurisdictions there could be bigger verdicts than others; right?

A.      No question about it.

Q.      And the law's favorable to plaintiffs in some jurisdictions and it's unfavorable to plaintiffs in others; right?

A.      I'm not sure what you mean by "favorable" and "unfavorable," but certainly plaintiffs have had better results in some jurisdictions than others.

Q.      Such as New York and Illinois and Delaware and Pennsylvania.  Right?

A.      I would say -- well, we could probably bicker over which jurisdictions.  The point is that some jurisdictions have higher verdict potentials than other there's, no question about it.

Q.      When you were settling, you also considered the factor of the nature and extent of the disease, and we're talking about Mesothelioma.  But you were considering other diseases, right, when you settled?

A.      Right.  That, obviously, is talking about whether it's Mesothelioma, whether it's lung or other cancer, or whether it's a nonmalignant condition.

Q.      You needed medical evidence of the disease, didn't you?

Cross - Magee

A.      If a case was presented as a Mesothelioma case, I believe I testified that we would have to have a diagnosis -- a confirmed diagnosis of Mesothelioma.

Q.      And the age was important, wasn't it?  Because the younger the plaintiff, the potential of greater trial risk; right?

A.      Well, no.  Actually, I would say that differently Mr. Guy.  The younger the plaintiff, the higher potential damages.  The trial -- I don't believe that would -- I don't believe the age of the claimant would go one way or the other to the trial risk, but the age of the claimant would certainly factor into the amount of damages that a claimant would get if he were successful at trial.

Q.      Okay.  That's fair.  Let's work with damages.
        The occupation could impact damages?

A.      Certainly.

Q.      Because someone who's a doctor and earning a lot of money, you need to compensate them for that; right?

A.      Well, you know, it's economic damages and what their loss -- lost payment or lost income would be. Right.

Q.      Now here's an important one:  The presence or absence of other possible causes.  That's other companies' products, isn't it?

Cross - Magee

A.      That would be what that would be referring to.
Yes.

Q.      And alternative sources of payment.  That would be
other companies and trusts; correct?

A.      That's correct.

Q.      So, this is 2006.  You're clearly considering
these factors when you're settling cases.  Obviously, you
considered your legal defenses.  Right?

A.      That was first and foremost.  Yes.

Q.      And that's the low-dose Chrysotile defense that we
heard about for a few days; correct?

A.      Well that's certainly one of the defenses.
Another defense would be exposure to the product.  But,
yes, that's a defense.

Q.      Right.  Now, this is also key.  The next
paragraph:  Before any payment on --

A.      You left off the last line, whether the actions is
an individual or part of a group.  Absolutely important
because that's how you save costs.  That's how you avoid
costs:  You settle them as part of a group.

Q.      So if a plaintiff's firm comes to you and says
I've got 20 cases to resolve, that's better than saying
they only have one.  Right?

A.      Certainly, if you can avoid the cost in the 20
cases then that makes that attractive, more attractive

3123

Cross - Magee

than just avoiding the cost in one case.

Q.      Now, you would never pay anybody under settled claims unless you have a medical report acceptable to Garlock.

A.      For a disease claim that's correct.

Q.      That would certainly be true because you can't fake Mesothelioma.  You either have it or you don't; right?

A.      I'm sorry?

Q.      You can't fake Mesothelioma.  You either have it or you don't.

A.      There's been a few cases of disputed Mesothelioma but, in general, Mesothelioma is a disease that has a clear diagnosis.

Q.      And I think everybody's in agreement it's a horrible disease and it's got a very short period of time before you are diagnosed and you die.  Right?

A.      That's unfortunately true.  There have been -- there have been advances there that have prolonged the lives of some claimants, but it's a horrible disease.

Q.      Now in addition, you needed sworn testimony other evidence that the claimant worked with or around Garlock products; right?

A.      Absolutely.

Q.      Why did you need that?

Cross - Magee

A.     Well we weren't going to pay a claim if there was not exposure to Garlock products.  That's why, again, those two first two requirements you've got to demonstrate.  You've got the disease and you've got to demonstrate exposure to Garlock products.

Q.     Mr. Magee, is that a fair representation of the factors that you considered from the 10-K?

A.     There's a number of factors and, I think, that overall probably is a fair overall statement.  It doesn't weight the factors or anything else and it's one part of the -- it's one part of, as I said, significant disclosures that's throughout the disease.

       I didn't mean to put an arrow on there.

Q.     That's okay.

       I mean this with the greatest respect.  That's a merit analysis that you went through, isn't it, sir?  You're looking at all those factors.  You're weighing them and you're making a decision as to what is the right amount to pay.  And I understand you're not admitting liability, but you're weighing the amount, right amount of money to pay, at that point where the two places in defendants are in agreement to resolve the claim.  Right?

A.     There's certainly some merits factors included here.  But Mr. Guy, I think I've testified pretty clearly and repeatedly that where you are paying an