**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| GARLOCK SEALING TECHNOLOGIES LLC, et al.[1] | ) | Case No. 10-31607 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**REPLY OF THE COMMITTEE TO DEBTORS' RESPONSE IN SUPPORT OF FEE EXAMINER'S MOTION FOR PROPOSED PROFESSIONAL GUIDELINES**

The Official Committee of Asbestos Personal Injury Claimants (the "**Committee**"), by and through the undersigned, hereby replies to Debtors Response in Support of Fee Examiner's Motion for Proposed Professional Guidelines (the "**Garlock Response**") [Dkt. No. 4617], which itself responded to the Fee Examiner Motion for Proposed Professional Guidelines (the "**Motion**") [Dkt. No. 4561]. In support of this Reply, the Committee respectfully represents as follows:

1.  As a result of a painstaking process of meeting and conferring, many potential disputes have been reconciled and nearly complete agreement has been achieved on the sole matter presented by the Motion, namely, the promulgation of uniform standards for professionals' fees and expenses ("**Guidelines**") in these jointly administered cases. Only one provision is now disputed. As to that provision, involving project billing, the Committee has accepted the Fee Examiner's original request, yet the Debtors are seeking an embellishment that would be intrusive and unprecedented. Apart from that, the Debtors have chosen to raise in the Garlock Response their dissatisfaction with Committee counsel's expenses for computer-based

---

[1] The Debtors include Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd. and The Anchor Packing Company.

1625451

research. That subject, however, does not involve the articulation of the proposed standard – as to which the Committee, again, has accepted the Fee Examiner's proposed language. Instead, the Debtors put forth their partisan view of issues they anticipate will arise in the application of that standard; they attempt to prejudice the Court before the issue has been framed and presented in an actual request for reimbursement governed by the prospective Guidelines.

2. The Fee Examiner filed his Motion on April 20, 2015, attaching certain suggested guidelines. On April 22, 2015, the Committee circulated proposed revisions to the draft guidelines to the FCR, the Debtors, and Coltec and arranged a meeting of the parties to discuss their respective views and attempt to forge a consensus. On April 27, 2015, the FCR circulated additional proposed revisions to that same group. On May 11, 2015, the Debtors and Coltec circulated their own joint proposed revisions. The parties then had several telephonic meet-and-confers within that group, and parties also communicated with the Fee Examiner directly. Finally, the Fee Examiner had a telephonic meet-and-confer with all parties on the afternoon of May 21, 2015.

3. As noted above, substantial agreement was indeed achieved, as reflected in Exhibits A and B to the Garlock Response. Nevertheless, the Garlock Response addresses two aspects of the guidelines -- *Section 6—Project Billing,* and *Section 2—Computer Research.*

*Section 6—Project Billing*

4. In the wake of the May 21 conference, the Committee has agreed to the Project Billing language proposed by the Fee Examiner in the Motion. At that conference, moreover, both the Fee Examiner and the FCR expressed their satisfaction with that original language. The Debtors nevertheless ask the Court to impose an alternative standard devised by themselves, one

that would enable them to dictate precisely how the Committee's professionals define their projects.

5.  The Debtors would modify the original Project Billing proposal so as to empower any party to cause "any project within a category to be included in a separate sub-category" for *other professionals representing opposing parties*, and then mandate that all professionals record their time in that sub-category. Garlock Response, Exhibit A at 4. The Debtors have pointed to no precedent for this intrusive procedure. So far as we know, no such precedent exists. Nor is there any demonstrated need for it.

6.  The Debtors' embellishment upon the Project Billing standard is objectionable and unworkable. First of all, this change would unnecessarily add significant time and duplication of effort to the process of time submission, because as a practical matter such "sub-categories" would be defined only retrospectively after the submission of monthly fee applications containing such time entries (and possibly even later), and would thus force professionals to restate multitudinous time entries. It would also introduce confusing inconsistencies between a professional's monthly fee applications and the corresponding interim fee applications.

7.  Second, the Debtors' standard would force opponents to categorize their time in subjective "sub-categories" defined by their adversaries. Professionals are entitled to reasonable latitude in structuring their projects and reporting their time accordingly. The Fee Examiner's original proposed Project Billing section, as attached to his Motion, recognized this. The embellishment the Debtors are holding out for does not.

8.  The Debtors state that the purpose of their proposal is to "make it easier for the Fee Examiner and other parties" to determine how much time was spent on a particular matter.

Garlock Response at 3. But they are merely prophesying difficulties in reviewing Project Billing that may or may not arise once that style of billing has been adopted and implemented. It would be better for the Court to await the framing of particular issues in the context of reviewing actual fee requests rather than to adopt the Debtors' intrusive approach in the abstract.

9. In sum, the first sentence of the "Project Billing" section of the Fee Examiner Guidelines is appropriate in the form attached as Exhibit A to the Garlock Response, but the second sentence should be replaced by the second sentence of that section as submitted originally with the Fee Examiner's Motion, so as to read as follows: "In addition, any litigation project in which the fees are expected to exceed $50,000 or do exceed such amount should be included in a separate litigation category."

*Section 2—Computer Research*

10. The Committee does not object to the "Computer Research" provision of the Fee Examiner Guidelines. Its professionals will substantiate all electronic research charges by submitting with their fee applications documentation showing "the actual cost and how the cost is calculated, as well as the name of the person conducting the research." Garlock Response, Exh. A, at 8, ¶ 2. Exemplars of the billing reports that Caplin & Drysdale will submit to meet these requirements are attached as Exhibit 1 hereto. In addition, the fee applications themselves will "describe the general subject matter of such research," as called for by the Fee Examiner Guidelines. Garlock Response, Exh. A, at 8, ¶ 2.

11. Thus, the articulation of the applicable standard is not in dispute. That is why nothing in the Garlock Response addresses the specific language of the Guidelines pertaining to computerized research. Yet, the Debtors use the Garlock Response to repeat arguments they have made and lost before that Caplin & Drysdale's electronic research expenses are too high.

The Debtors note that they have twice objected to that firm's electronic research expenses as excessive (Garlock Response at 4 & n.2) but fail to mention that both times this Court rejected their objections and approved those expenses in their entirety on an interim basis. When overruling one such objection, Judge Hodges made this observation:

> It's a lot of money but this is significant complex litigation and, in some cases, a somewhat unique approach, hotly contested by excellent lawyers on all sides and that just leads to large bills. I can find no basis to reduce the fee and expense request that has been made here at this time . . . . Garlock has taken an aggressive approach, which is its right, and I state that as a fact, not as a complaint. That is their right, but I think an aggressive response is a natural consequence of that and that just drives the cost up.

*See, e.g.,* Hr'g Tr. at 86-87, May 24, 2012.

12. The Debtors compare Caplin & Drysdale's research charges to those of one of their own counsel (Robinson, Bradshaw), ignoring that, while Caplin & Drysdale conducts virtually all legal research for the Committee, the Debtors split such work among three different firms (Rayburn, Cooper; Robinson, Bradshaw; and Schachter, Harris). Furthermore, the Debtors' lawyers work hand in glove with those representing its parent, Coltec, whose lawyers do not submit fees or expenses in this bankruptcy at all. The Committee's legal research charges in these cases have undoubtedly been substantial, but they have been necessary and appropriate in light of the Debtors and Coltec's unprecedented efforts to cap their asbestos liability through Chapter 11 without complying with section 524(g) of the Bankruptcy Code, efforts that raise many fundamental questions about bankruptcy, tort, corporate responsibility, and the proper interplay of these complex subjects.

13. Caplin & Drysdale bills for computer-based legal research on a "pass-through" basis, without markup, as noted in the Declaration of Trevor W. Swett III attached as Exhibit C to the Garlock Response. That Declaration was before Judge Hodges when he approved those

charges in a prior interim period.  The Debtors' eagerness to renew their attacks on such charges has nothing to do with the language of this Section of the Guidelines and is irrelevant to the Motion; instead, such attacks are a transparent attempt to color the Fee Examiner's review of Caplin & Drysdale's charges going forward and to prejudice the Court.  The appropriate response is for the Court to adopt the agreed Guidelines and allow the Fee Examiner's review of all professionals' fees and expenses to go forward in the normal course, declining to anticipate or prejudge whatever issues may emerge from that process.

WHEREFORE, the Committee respectfully requests that the Court enter the Fee Examiner Guidelines submitted to the Court as Exhibit A to the Garlock Response, with the exception of the second sentence of the "Project Billing" provision, which should be replaced by the corresponding sentence of the Fee Examiner's original proposal (quoted ¶ 9 *supra*), and grant such other and further relief as the Court deems just and equitable.

Dated:  May 26, 2015                              **CAPLIN & DRYSDALE, CHARTERED**

By: */s/ Trevor W. Swett III*
Trevor W. Swett III
(tswett@capdale.com)
Kevin C. Maclay
(kmaclay@capdale.com)
One Thomas Circle, N.W.
Washington, DC  20005
Telephone:  (202) 862-5000

Elihu Inselbuch
(einselbuch@capdale.com)
375 Park Avenue, 35th Floor
New York, NY  10152-3500

**MOON WRIGHT & HOUSTON, PLLC**

Travis W. Moon
(tmoon@mwhattorneys.com)
227 West Trade Street, Suite 1800
Charlotte, NC  28202
Telephone: (704) 944-6560

*Attorneys for the Official Committee of Asbestos Personal Injury Claimants*

- 7 -